DAVIDOFF HUTCHER & CITRON LLP          *Hearing Date: September 8, 2022*
*Attorneys for Karen Acker & David Acker*     *Hearing Time: 10:00 a.m.*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

                                                    Chapter 11

MARK STEVEN ACKER,                                  Case No. 22-22359 (SHL)

                                  Debtor.
-------------------------------------------------------------X

**NOTICE OF HEARING ON CREDITORS KAREN ACKER AND
DAVID ACKER'S MOTION TO CONVERT THE DEBTOR'S
CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7
PURSUANT TO 11 U.S.C. §1112(b) AND SUCH OTHER AND
FURTHER RELIEF AS THE COURT DEEMS JUST**

        **PLEASE TAKE FURTHER NOTICE**, that upon the annexed motion (the "Motion") of

creditors Karen Acker and David Acker, the undersigned will move, on September 8, 2022 at

10:00 a.m. before the Honorable Sean H. Lane, Bankruptcy Judge, via Zoom® for Government

at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl, at the United States Bankruptcy

Court, 300 Quarropas Street, White Plains, New York 10601, or as soon thereafter as counsel

may be heard, to consider the Motion and the Debtor's request therein for entry of an order:

        1.      Converting the Debtor's Chapter 11 case to a case under Chapter 7
                pursuant to 11 U.S.C. §1112(b); and

        2.      Such other and further relief as is just under the circumstances.

**PLEASE TAKE FURTHER NOTICE,** that the Hearing will be held via via Zoom® for

Government at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl in advance of the

hearing.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to any of the relief

requested in the Motion shall be made in writing, filed with the Court on the Court's Electronic

Case Filing System at www.ecf.nysb.uscourts.gov (Login and password required) with a copy

delivered directly to Hon. Sean H. Lane and served upon the undersigned no later than seven

days prior.

Dated: New York, New York
     July 29, 2022

                   DAVIDOFF HUTCHER & CITRON LLP
                   *Attorneys for Karen Acker & David Acker*
                   120 Bloomingdale Road, Suite 100
                   White Plains, New York 10605
                   (914) 381-7400


                   By: */s/ Jonathan S. Pasternak*
                       Jonathan S. Pasternak
                       Robert L. Rattet

DAVIDOFF HUTCHER & CITRON LLP          *Hearing Date: September 8, 2022*
*Attorneys for David & Karen Acker*          *Hearing Time: 10:00 a.m.*
605 Third Avenue
New York, NY 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

MARK STEVEN ACKER,                          Chapter 11
                                            Case No. 22-22359 (SHL)

                    Debtor.
-------------------------------------------------------------------X


**MOTION BY DAVID & KAREN ACKER FOR AN ORDER CONVERTING THE
DEBTOR'S CHAPTER 11 BANKRUPTCY CASE TO A CASE UNDER CHAPTER 7
OF THE BANKRUPTCY CODE**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

   David and Karen Acker (the "Movants"), by their attorneys, Davidoff Hutcher & Citron

LLP, as and for their motion, pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code, hereby

move for entry of an order converting the Chapter 11 Case of Mark Steven Acker (the "Debtor")

to a case under Chapter 7 (the "Motion").

## I. <u>INTRODUCTION</u>

   1.  It is apparent from the onset of this Chapter 11 Case and from the recent Section

341(a) meeting (the "341(a) Meeting") held on July 20, 2022, that there is substantial cause for

conversion of this Chapter 11 Case to a Chapter 7 Case, and that such conversion is in the best

interest of creditors.

1

2.     As will be readily explained below, the Debtor has most recently demonstrated through material inaccuracies and omissions in his petition, schedules, and Local Rule 1007 affidavit, along with his shocking and unreliable testimony in the 341(a) Meeting, that he lacks any capacity to be his own fiduciary in this Chapter 11 Case. Moreover, the Debtor is incapable of reorganization.

3.     The Debtor's filing of this Chapter 11 Case is just another in a series of bad faith actions initiated by the Debtor in various pre-petition litigation resulting in significant damages and non-dischargeable claims held by Movants, and to further obscure the various assets and interests in property that he may have fraudulently transferred during pre-petition litigation to be discussed below.

4.     Only through the appointment of a Chapter 7 trustee will the Debtor's assets, liabilities, and financial affairs be made fully transparent, and his estate, including what is believed to be significant avoidance actions, properly and fully administered.

5.     For the following reasons and legal arguments, the Movants seek an order converting the Debtor's Chapter 11 Case to Chapter 7.

## II. JURISDICTION AND VENUE

6.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is 11 U.S.C. § 1112(b).

## III. BACKGROUND

7.     The Movants are siblings to the Debtor and due to conduct solely by the Debtor, have been embroiled in vexatious and at times spurious litigation, related to their father's estate, the Estate of Stanley Acker (the "Estate") and the Matter of the Irrevocable Life Insurance Trust,

Stanley Acker, Grantor dated October 1, 1987 (the "1987 Trust"). Both matters are still pending in Palm Beach County, Florida. The Debtor has already been found to have committed tortious acts and breached his duties in his capacity as a fiduciary in both cases.

8. Throughout the administration of the Estate, the Debtor fought with the Movants extensively, in breach of his fiduciary duties, causing numerous and duplicative litigation and legal fees that plagued and sapped the administration of the Estate, despite previously agreeing to a valid and enforceable settlement agreement to resolve these issues (the "2010 SA"). Over the course of the trial, multiple witnesses testified, including the parties, previous estate counsel, previous court appointed co-personal representative/fiduciary Kirk Friedland, and New York and Florida counsel.

9. The 2010 SA was entered into by the parties on November 16, 2010, approved by order of the Florida Court, and is a binding contract under Florida law, entered into by the parties willingly, knowingly, and voluntarily. In connection with an audit by the Internal Revenue Service ("IRS") pending at the time, the 2010 SA specifically states that the Debtor "agrees, for himself and those acting under his direction, not to interfere or thwart the pending audit, or appellate proceedings, or take any steps that might cause the imposition of any tax or penalties that would not otherwise have been imposed upon the Estate." Furthermore, the 2010 SA specifically states that the Debtor specifically agrees to waive any objections to "any attorney's fees and costs paid from the Estate or trust for services incurred in connection with the Florida Litigations." As defined by the 2010 SA, the "Florida Litigations" include the Estate action.

10. Additionally, the 2010 SA specifically states that MA waives any right to future accountings for any periods arising after December 31, 2009. Also, the parties to the 2010 SA addressed outstanding issues pertaining to an accounting action (the "Accounting Action") brought by their father, Stanley Acker's, second wife. The Debtor specifically agreed to "withdraw with

prejudice the objections that he has filed" in the Accounting Action, and that the Movants "counsel shall take the lead defense position in the Accounting Action." The 2010 SA specifically provides that the parties "have fully discussed this agreement with their attorneys with respect to the meaning and effect of the provisions of this agreement and have voluntarily chosen to sign this agreement, fully understand its content, meaning, legal effect and consequences, free of any duress or coercion."

11.     Ultimately on February 20th, 2020, the Florida Court issued a final judgment (the "Judgment") against the Debtor, annexed hereto as Exhibit "A", finding inter alia, that the Debtor was in such material breach of the 2010 SA and of his fiduciary duties that the Estate incurred substantial unnecessary attorneys' fees and costs, and suffered actual damages, which include, but are not limited to:

a.     Significant expenditure and waste of the Estate assets on attorney's fees and other costs and expenses to enforce the terms of the 2010 SA, and to resist actions and conduct by the Debtor in contravention of the 2010 SA; and

b.     Significant expenditure and waste of the personal assets of the Ackers on attorney's fees and other costs and expenses to enforce the terms of the 2010 SA, and to resist actions and conduct by the Debtor in contravention of the 2010 SA.

12.     The Judgment and the Movants expert witness, Peter Forman, described the Debtor's conduct toward the Estate as "pure animus", in violation of Florida Law, and probate rules, and stated specifically to the following:

a.     The 2010 SA contained restrictions regarding the removal of a newly appointed co-fiduciary which stated that removal of the neutral co-fiduciary could only be done with the unanimous consent of all the fiduciaries.

b. Once the 2010 SA was executed, there should not have been proactive and voluntary contact with the Internal Revenue Service from [the Debtor].

c. A fiduciary is required to comply with the fiduciary requirements of the trust code and of the probate code and [the Debtor] took steps to increase potential taxes, penalties and interest is a breach of fiduciary duty.

d. [the Debtor's] communication with the IRS was not in the best interest of the Estate.

e. In the New York litigation, [the Debtor] participated in the proceeding and his actions were directly adverse to the interest of the Estate and Trust because he provided information concerning the assets of the Trust creating an issue as to whether certain prior representations made by Estate and Trust counsel were false. Thus, advocating against the Estate and Trust and in favor of Arlene Acker.

f. [the Debtor] gave privileged information of the Estate and Trust to Arlene Acker's counsel in direct opposition to the interest of the Estate and Trust This was a violation of his duties as a fiduciary and adverse to the interests of the Estate and Trust.

g. Mr. Peter Forman testified that [the Debtor's] behavior as it relates to the properties, 150 Burd Street and 60 Cedar Hill, [was] in violation of his duties as a fiduciary. [For example], [h]e communicated with prospective purchasers and made false claims regarding environmental concerns. These claims made by [the Debtor] created additional delays and caused the Estate and Trust to incur further unnecessary costs and expenses.

h. The legal fees incurred by the Tannenbaum law firm as a result of the filing and prosecution of the Accounting Action in New York were reasonable and necessary

in defending the counterclaims raised and have been rendered beneficial to the Estate.

13.    Accordingly, the Florida Court awarded the following damages in favor of the Movants and against the Debtor, which are to be surcharged from the Debtor's share of the Estate or Martial Trust, or otherwise imposed against him personally:

   a.   Tannenbaum Helpern attorneys' fees related to the Accounting Action, as testified to by expert Peter Forman, Esq.: $362,500.00;

   b.   Proskauer Rose attorneys' fees not related to the [litigation instituted in Florida by the Debtor as to matters that were specifically released as part of the 2010 SA or lacked merit (the "Declaratory Action")], as testified to by expert Peter Forman, Esq., Jonathan Galler, and Karen Acker: $225,500.00;

   c.   Proskauer Rose attorneys' fees related to the Declaratory Action, as testified to by expert Peter Forman, Esq.: $254,000.00;

   d.   Gutter Chavez attorneys' fees, as testified to by expert Peter Forman, Esq.: $58,000.00;

   e.   Additional fees incurred in the Marital Trust action since trial began in March 2019, as testified to by Karen Acker: $60,000.00;

   f.   TOTAL [JUDGMENT]: $960,000

14.    In addition to the Judgment, the Movants have additional claims against the Debtor including:

   a.   The valuation of the Debtor's interest in the Stanley Acker Estate– The Debtor has not disclosed his interest in the Estate or that he is a one third beneficiary of anything left in the Estate after the Movants finish the ongoing litigation and

administration of the Estate. Currently, the Estate has approximately $1,300,000. Moreover, the Movants intend to file a motion approving terms of the 2010 SA that sets forth that i) given "the ultimate resolution of the [then] pending IRS audit ... required the Estate to pay less than $4,054,977" and ii) given the fact that the Estate ultimately paid $459,883.00 for resolution of the said IRS audit, then the difference between these two amounts (or $3,595,094.00) shall be divided so that Karen Acker and David Acker receive 90% (or $3,235,584.60) and Mark Acker shall receive 10% (or $359,509.40).. Put simply, the Debtor's interests in the Stanley Acker Estate, and specifically his tentative right to receipt of $359,509.40, was not disclosed.

b. The 1987 Trust litigation – The Debtor has not disclosed this ongoing litigation where in 2019 the Debtor was removed as the sole trustee for breach of his fiduciary duty and other misappropriations of money. There are several orders from the Court providing Movants with legal fees against the Debtor. By decision of the Movants attorney and now due to the automatic stay imposed by this Chapter 11 case, hearings regarding this litigation are not yet taking place. The Movants attorney anticipates that the potential amount against the Debtor could be in amount in excess of $300,000-400,000 (including Movants' attorney's fees and costs).

c. Bluegate LLC - This was an entity owned by the Movants and the Debtor. The Debtor has refused to pay expenses regarding management of this entity and owes the Movants an estimated $6,462.65.

d.  KMD Management – This was also an entity owned by the Movants and the Debtor. The Debtor has refused to pay his one third share of the costs of this entity, and owes the Movants an estimated amount of $19,200.00.

15.     The Debtor appealed the Judgment and said appeal was denied on January 27, 2022, making the Judgment now final. A copy of the order denying the Debtor's appeal is annexed hereto as Exhibit "B".

16.     On March 18, 2022, the Movants entered the Judgment at the Rockland County Clerk's Office.

17.     In response to the Movants' entry of the Judgment, and 90 days later, the Debtor commenced this case by filing a petition under Chapter 11 of the Bankruptcy Code on June 15, 2022 (the "Petition Date").

18.     On July 13, 2022, the Debtor filed his schedules ("Schedules") and statement of financial affairs ("SOFA") after a request for an extension of time to file on June 28, 2022. A copy of the Debtor's petition and schedules as filed are annexed hereto as Exhibit "C".

19.     Despite the granted extension of time to file Schedules and SOFA, these documents are rife with inaccuracies and omissions. In view of the presence of competent, well-regarded bankruptcy counsel, these misstatements must be regarded as deliberate or at the least wantonly reckless.

20.     From an analysis of the Debtor's petition and schedules it is initially apparent that there are numerous assets and interests in property the Debtor did not include, whether intentional or not. Such inconsistencies and omissions in the Debtor's petition and schedules include:

a.  The Stanley Acker Intervivos Trust -  While the Debtor did list an interest in this trust that encompasses the Stanley Acker Estate, he did not identify a value,

specifying an unknown amount. In fact, the Debtor receives and for years has received bank statements for this Trust and Estate, so his lack of disclosure is not forthcoming. As mentioned above, this Trust has approximately $1,300,000 that although the Debtor is a one third beneficiary, the distribution of this asset is still in litigation.

b.  The Marital Trust – There is no mention anywhere in the petition or schedules of the Debtor's interest in the Stanley Acker Marital Trust, which the Debtor also receives statements and has for years, yet claims Movants control it and he has no information. This trust was set up in the Stanley Acker Revocable Interivos Trust by the Debtor's late father and contains roughly $3,900,000.00 in assets to be divided in equal one-third shares between the Debtor and the Movants.

c.   The 1987 Trust – There is no mention in the Debtor's SOFA of the Debtor's one third beneficiary interest in the 1987 Trust, of which the Movants are also one third beneficiaries. The Debtor was the sole trustee of the 1987 Trust until he was removed by the Florida Courts, who twice found that the Debtor breached his fiduciary duties. The court appointed an outside trustee to continue to manage, and upon information and belief, the Movants believe there is approximately $80,000 in the bank account of which all three beneficiaries have an equal one third share interest. The Debtor did not declare this either as an entity he has an interest in, nor did he even attempt to identify this as an unknown potential value. The Debtor claimed in the 341 meeting that the Movants manipulated the numbers of this trust which is ridiculous since he was the sole trustee of this trust until removed by the court and replaced with another trustee appointed by the court. Movants do not have

and never had any control of this trust or its assets. There is also ongoing litigation related to this trust, that as mentioned above will likely result in a judgment against the Debtor for approximately $300,000.00 to $400,000.00.

d. The Stanley Acker Family Limited Partnership ("SA FLP") – There is no mention in the Debtor's SOFA of the Debtor's interest in this partnership or, of which the Movants are also partners. The Movants can represent that the Debtor received a total distribution in July 2021 of $530,000 plus in October of 2020, an additional $50,000. The Debtor's total disbursement received within the last two years is estimated to be $580,000. The Debtor also received a distribution of $500,000 in 2014 from other assets that the partnership sold. The Debtor did not disclose any of these distributions in his SOFA, or otherwise satisfactorily account for such distributions.

e. Orchard Lane Property - Another asset the Debtor did not disclose in his SOFA was his interest and sale of real estate at 3 Orchard Lane, Congers, New York 10920. To resolve some intensive litigation and save cost further litigating, the Movants settled with the Debtor in June of 2019 to help resolve some estate and SA FLP matters and agreed to have the Estate transfer a piece of this real estate to the Debtor. Upon information and belief, the Debtor sold it (to the same buyer the Movants sold the SA FLP properties to) in January 2021 for $355,000. In light of this, and the other transfers, there is no satisfactory account of the insufficiency of assets to meet liabilities

f. The Shirley Acker Irrevocable Trust– The Debtor's interest in this trust, created by the late mother of the Debtor and the Movants, was also omitted by the Debtor from

the Schedules and SOFA. The Movants have closed this trust and have proposed to the Debtor to release its remaining funds and divide them equally. However, the Debtor has still not agreed to sign the release of funds, and as such approximately $4,000.00 is still pending release to Debtor.

g. The 1993 Trust – The Debtor and the Movants' late father had another insurance trust called the 1993 Trust, funded by insurance policies. Their father provided $100,000 each to go to the Debtor's three children and David Acker's one child. Then their father wanted his brother, their uncle Robert Acker, to receive $100,000, but the language of the trust affected such a distribution. Karen Acker undertook with David Acker and the Debtor to make their uncle whole. The Movants did so right away, and the Debtor signed a promissory note of which he is still in default. The Debtor failed to disclose this liability in his schedules and even testified at the 341(a) Meeting that he was not aware of this debt.

h. MSA Consulting Corporation ("MSA") – Although the Debtor included reference to an interest in MSA in his schedules, his attorney proposed an amendment to remove the Debtor from having any ownership interest in MSA. Neither the attorney nor the Debtor disclosed his past sole ownership of this entity, nor did he disclose that he recently added his spouse as an officer of MSA in October 2019, and he made his spouse the CEO and removed himself as an officer of MSA in December 2019. Nowhere in the Schedules or SOFA is this mentioned, and at the 341 Meeting(a), the Debtor's attorney only identified that she was making an amendment and removing Mark as having any ownership of this entity. Upon

information and belief the Movants believe this entity may be holding assets or have held assets in recent years.

i.  Omitted Litigation – In the Debtor's SOFA, the Debtor failed to include his litigation entitled *Mark Acker And Rochelle Acker V. Goosetown Enterprises, Inc., Harley-Davidson Inc., Harley-Davidson Motor Company, Inc., Harley-Davidson Motor Company Group, LLC, and H-D U.S.A., LLC*, pending in Supreme Court, Rockland County, Index No. 030868/2021, pertaining to his accident where he alleges product liability against Harley Davidson in their manufacturing of his motorcycle. This additionally should have been disclosed as an asset, that being a claim against a third party. At the 341(a) Meeting, the Debtor's attorney confirmed this lawsuit existed and proposed to amend the schedules to include it, but she claimed that the attorney representing Mark said it would likely be worth nothing though he intended to continue with it.

j.  IMA Construction Corporation ("IMA") – Upon information and belief, the Movants believe that the Debtor had an interest as an officer or director in IMA, and subsequently transferred his whole interest to his spouse. Per the New York Secretary of State's website, the Debtor's spouse, Rochelle Acker, is listed as the sole officer. Additionally, in 2021, IMA sold an asset for over $500,000.00. The value of IMA is not mentioned as his asset, nor if not his asset, the transfer of this asset is not disclosed. Upon information and belief, the Debtor and his spouse had been officers for over 20 years until four months after the $960K judgment was ordered. In July 2020, the Debtor removed himself as CEO and an officer of IMA leaving his spouse as sole officer and CEO. The Debtor's spouse became the sole

recipient of the sale of the real estate asset in that entity in 2021. Nowhere in the Debtor's petition or schedules is any of this mentioned. At the 341(a) Meeting, the Debtor testified that he did not know when he transferred his interest to his spouse.

k. Galaxy Fine Arts – Upon information and belief, the Movants believe the Debtor was the owner of this entity, which maintained a collection of Star Trek collectibles worth an estimated $1,5000,000. The Debtor has not made any disclosure as to his relationship with this entity, and it is unknown if the collection was sold or what the Debtor's current interest is. At the 341(a) Meeting, the Debtor was not sure of the specifics of these assets.

l. WWII Collection – Upon information and belief, the Movants believe that on or about October 2019 the Debtor became in possession of a collection of WWII memorabilia worth an estimated $150,000 as valued by the Debtor's friend in 2008. The Debtor failed to disclose this collection, and it is unknown what the current status or disposition of this collection is.

m. Elleance – Upon information and belief, the Movants believe the Debtor acquired on or about October 2019 valuable jewelry belonging to this entity. At the 341(a) Meeting, the Debtor testified that he sold all of his jewelry to pay bills but cannot recall the specifics of any of these transactions. No mention of any jewelry or transfers of jewelry are mentioned in the Debtor's petition and schedules.

n. Omitted Automobile – At the 341(a) Meeting, the Debtor testified that he used to own a Porsche 911 within the last 6 years that was sold by his son to pay bills. The Debtor does not recall any more specifics as to this transaction other than selling

the car for a price between $40,000 and $45,000, and there is no mention in the petition or schedules of the Debtor's interest in this automobile or its disposition.

o. Elephant Tusk – While the Debtor does state in his schedules that he is in possession of an elephant tusk, he dubiously lists the value as "unknown". Upon information and belief, the Movants believe this tusk was valued at $60,000.00 per an insurance policy in 2002 and the Debtor previously verbally communicated to the Movants that the tusk may be worth $150,000.00. The Movants find it hard to believe the Debtor is not aware of the value of such an unusual asset despite his long ownership of it, and the previous insurance coverage of it.

21. On July 20, 2022, the 341(a) Meeting was held. At the 341(a) Meeting the Debtor was unable to explain or account for the assets listed above or their likely disposition, demonstrating the urgent need for the conversion of this Chapter 11 Case. When asked about the various transfers of assets and his current interests in them, the Debtor was barely able to recall a single one. A copy of the transcript from the 341(a) Meeting is annexed hereto as Exhibit "D".

22. From the facts stated above, it is incontrovertible that the Debtor has continued to demonstrate his inability to act as a fiduciary, or interest in paying the Judgment and investigating numerous estate causes of action that appear to exist. It is glaringly apparent from the numerous omissions and inconsistencies in the Debtor's disclosures of his assets, that this case should be converted to Chapter 7 immediately to protect this estate from further harm.

## IV. ARGUMENTS

### A. Cause Exists to Convert this Case to Chapter 7

23. The Movants are a party in interest and, therefore, "ha[ve] standing to request the conversion from Chapter 11 to Chapter 7 pursuant to [Section] 1112(b)." *In re Johnston*, 149 B.R.

158, 161 (B.A.P. 9th Cir. 1992). *See In re E. Coast Airways, Ltd.*, 146 B.R. 325, 335 (Bankr. E.D.N.Y. 1992) (a creditor with only a disputed claim against the Chapter 11 estate has standing to bring a motion to convert pursuant to 11 U.S.C. § 1112(b)).

24.     Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that the Court shall convert or dismiss a case if the movant establishes cause, unless the court determines that unusual circumstances exist such that conversion or dismissal would not be in the best interests of creditors and the estate.[1] Indeed, upon a showing of "cause", the Debtor's case must be converted unless the court makes specific findings that unusual circumstances "establish that the requested conversion is not in the best interests of the creditors and the estate."[2]

25.     Section 1112(b)(4), in turn, provides a non-exhaustive list of what constitutes cause. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) ("It is important to note that this list is illustrative, not exhaustive.") (quoting the statute's legislative history stating that "'the list [contained in § 1112(b)] is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.' House Report No. 95–595, 95th Cong., 1st Sess. at 405–6, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6363–64"). "Accordingly, courts have also determined that conversion or dismissal of a Chapter 11 case is warranted for other reasons." *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011).

26.     Once the court determines that cause has been shown, it "has no choice, and no discretion, and must dismiss or convert the Chapter 11 case." *Lynch v. Barnard*, 590 B.R. 30, 36

---

[1] 11 U.S.C. § 1112(b)(1); and see, *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007) (noting the statutory language change "from permissive to mandatory" and finding cause existed to convert the debtor's cases where the value in the estate was diminishing rapidly at the expense of creditors as extensive administrative costs from professional fees were accumulating while the case lingered in Chapter 11).
[2] *Id.*

(E.D.N.Y. 2018), aff'd sub nom. *In re Lynch*, 795 Fed. Appx. 57 (2d Cir. 2020) (internal citations omitted). "Once a party establishes cause, a court must examine whether dismissal or conversion of a case under chapter 7 is in the best interests of the creditors and the estate." *In re BH S & B Holdings*, LLC, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

27.     Therefore, "[t]he Court will apply a two-step analysis in determining whether to dismiss or convert this case. First, it will consider whether "cause" exists for relief under the statute. If it does, the Court will determine whether dismissal or conversion of the case is in the best interest of the creditors and the estate." *In re Kuvykin*, 18-10760 (JLG), 2019 WL 989414, at *5 (Bankr. S.D.N.Y. Feb. 26, 2019) (quotations omitted).

28.     Here, cause exists to convert the Debtor's Chapter 11 Case to Chapter 7 because (a) the Debtor has already been found by a court of competent jurisdiction to have been an incompetent fiduciary, (b) the Debtor has displayed a complete inability to account for his assets, liabilities, and financial affairs, (c) the Debtor is incapable of reorganization, (d) the Debtor cannot confirm a plan without the Movants' consent, and (e) an independent fiduciary is needed to investigate all of the Debtor's pre-petition transactions and potential avoidable transfers.

29.     There is cause under §1112(b)(4)(A) if there is both (i) substantial or continuing loss to or diminution of the estate and (ii) absence of a reasonable likelihood of rehabilitation. *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). The two prongs for establishing cause to convert under §1112(b)(4)(A) are present here.

30.     On the first prong, the section refers to either "substantial" or "continuing" in the disjunctive. Accordingly, when discussing whether there is substantial or continuing loss to or diminution of the estate, "[t]here need not be a significant diminution in the estate to satisfy Section 1112(b)[1]." *In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr.E.D.N.Y.1992); *In re*

*Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)("All that need be found is that the estate is suffering some diminution in value."); Loop Corp. v. U.S. Tr., 379 F.3d 511, 516 (8th Cir. 2004)("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow-including that resulting only from administrative expenses-effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of §1112(b)(1)."); *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992). ("In the context of [a debtor living at the expense of the creditors], every dollar expended by the debtor from the [funds that are property of the estate] thereby reduces and diminishes the property of the estate.") *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the elements of § 1112(b)(1) are satisfied") (citation omitted).

31.     Here, the Debtor is not operating any business, is unable to pay his ongoing financial obligations, and is not generating any substantial income, yet continues to incur administrative expenses in, inter alia, professional fees.[3]

32.     The costs of administering and winding up an estate are factored into the § 1112(b)(4)(A) loss analysis. *See In re Brutsche*, 476 B.R. 298, 305 (Bankr. D.N.M. 2012) ("professional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses"); *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) (evidence of "extensive administrative costs from professional fees that [were] accumulating" supported a finding of

---

[3] The Debtor has no income to pay for the continuing expenses being incurred in connection with real estate owned at 47 Tranquility Road, Suffern, New York 10901.

"substantial and continuing diminution of the estate"). Surely, a Chapter 7 trustee would administer this case at less expense, and with greater transparency and efficiency.

33.     The second part of § 1112(b)(4)(A) also is easily met here, because rehabilitation of the Debtor is neither envisioned nor possible.

34.     The concept of rehabilitation under § 1112(b)(4)(A) is interpreted as follows:

> Rehabilitation of the debtor's estate, as that term is used in § 1112(b)(1), is not synonymous with reorganization as that term is used in Chapter 11. Collier on Bankruptcy explains the distinction between the terms:
>
> "Rehabilitate" has been defined to mean "to put back in good condition; re-establish on a firm, sound basis." Rehabilitation, as used in section 1112(b)(1), does not mean the same thing as reorganization, as such term is used in chapter 11. Since a debtor can be liquidated in chapter 11, the ability to confirm a plan of reorganization is considerably different than reaching a firm, sound financial base.
>
> Collier on Bankruptcy, ¶ 1112.03[i], p. 1112–15 (footnotes omitted). The distinction is significant. Rehabilitation of a debtor's estate implies the re-establishment of a sound financial basis, a concept which necessarily involves establishing a cash flow from which current obligations can be met. Reorganization, on the other hand, can involve simple liquidation and distribution of assets.

*In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988). *See In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992) ("[r]ehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include a complete liquidation"); *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (rehabilitation "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met"); *In re Herb Philipson's Army*, 18-61376 (DD), 2019 WL 11031654, at *7 (Bankr. N.D.N.Y. Dec. 19, 2019) ("rehabilitation is a different and much more demanding standard than reorganization").

35.     Here, the Debtor has no likelihood of rehabilitation because he has no business to rehabilitate, has little to no income, and has already indicated a desire to liquidate. Indeed, at the

341(a) Meeting, the Debtor stated the purpose of filing for bankruptcy was to "Put it behind me. I don't know. I mean, it's -- the debt is the main issue –". (See Exhibit D, page 22). Additionally, the Debtor testified that his only sources of income are $716 every two weeks in workers compensation and social security disability. (See Exhibit D, page 15). **There is nothing in the Debtor's estate to reorganize.**

### B. The Debtor Has Already Been Found by a Court of Competent Jurisdiction to Have Been an Incompetent Fiduciary

36.     As explained previously, the Debtor has been found to have been an incompetent fiduciary during the Estate and 1987 Trust litigation by the Florida Court.

37.     In the attached Judgment (Exhibit "A") the Florida Court stated "[The Debtor] acted in contravention of his fiduciary duties by: (a) litigating and advancing claims that were released in the 2010 SA, both in and out of Court; (b) supporting Arlene Acker and her counsel in the Accounting Action by appearing in person in that Action over at least a five (5) year period as a party, regularly taking positions in opposition to the Estate's legal position; (c) providing her counsel and the New York court with privileged and confidential Estate-related financial information; (d)providing inaccurate and/or misleading information regarding the Estate's financial status to the New York court, leading to an Order requiring that the Marital Trust be funded immediately and subsequently reversed on appeal; (e) instituting litigation, including the Declaratory Action filed in Florida, as to matters that were specifically released as a part of the 2010 SA or that lacked merit; (f) interfered with and thwarted the pending lRS audit, raising claims that he had specifically released, including actions that might have caused imposition of taxes or penalties that might not otherwise have been imposed on the Estate; and (g) repeatedly attempted to improperly remove the Court-appointed third-party co-fiduciary." (See Exhibit A).

38.     The Florida Court further stated in the Judgment "[The Debtor] simultaneously (a) re-litigated matters and issues that he had released, (b) maintained a position in violation of the 2010 SA and adverse to the Estate in the Accounting Action and (c) demanded that the Marital Trust be funded immediately, while making claims of IRS tax fraud by the Estate. Further, after executing the 2010 SA and release, [the Debtor] had unilateral, intentional and substantial interference with the IRS regarding the pending audit in violation of the 2010 SA." *Id*.

39.     Such findings clearly demonstrate the Debtor's continuing inability to be a fiduciary, and as such the Debtor should not be left as its own statutory trustee.

**C. The Debtor has Demonstrated a Complete Inability to Account for His Assets, Liabilities, and Financial Affairs**

40.     As outlined extensively above, the Debtor has made at least 13 material omissions or inconsistencies regarding his assets, liabilities, and transfers of property believed to be worth an estimated several million dollars.

41.     Furthermore, when asked about these various omissions and inconsistencies at the 341(a) Meeting, the Debtor was not able to adequately recall or account for a single one of them. Testimony at the Debtor from the 341(a) Meeting further elicits this point:

    a.  When asked about his interest in the SA FLP, the Debtor said "unknown, I cannot answer that", despite evidence to the contrary. (See Exhibit D, Page 26).

    b.  When asked what level of review the Debtor did in preparation of his petition and schedules, the Debtor said "I don't get – it's very difficult" regarding anything related to his late father's Estate or the Martial Trust. (See Exhibit D, Page 27).

    c.  When asked how much the Debtor received in pre-petition distributions from the SA FLP, the Debtor replied "Again, I can't answer that off the top of my head. I'm sorry." (See Exhibit D, Page 28).

d. When asked about his interest in the Revocable Inter Vivos Stanley Acker Settlor Trust, the Debtor replied "I still do not have information on that. I'm sorry". (See Exhibit D, Page 33).

e. When asked if the Debtor ever transferred equity interest in IMA to his wife, the Debtor replied "I don't have an answer to that because the company is hers. I just don't know how it was transferred over." (See Exhibit D, Page 34).

f. Additionally, when the Debtor was then asked about where the proceeds went for a property sold by IMA in 2021, the Debtor replied, "I have no – I don't know." (See Exhibit D, Page 35).

g. When asked about when the sale of the Debtor's Porsche took place, which was not mentioned in the Debtor's schedules, the Debtor replied "That I can't tell you off the top of my head. I know it was quite a few years ago." (See Exhibit D, Page 40).

h. When asked about the sale of jewelry from Elleance and in response to being asked the date of when they were sold, the Debtor replied "Karen and David know the date on that. I'm not sure. They have the records." (See Exhibit D, Page 40).

i. When asked about receiving property from the Estate and when it was sold, the Debtor replied "No comment. I honestly can't tell you the date on that. All I know is the monies were used to pay bills, whatever was left." (See Exhibit D, Page 42).

j. When asked about his receiving an IRA from the Estate in 2016, the Debtor replied, "I don't remember 2016, I'm sorry." (See Exhibit D, Page 42).

k. When asked about if the Debtor owes any money to his uncle, Robert Acker, the Debtor replied, "No. I do not." (See Exhibit D, Page 46). This statement is contrary

to the Movants' position that the Debtor signed and is in default of a promissory note in favor of the Debtor's uncle.

42.　　In summary of the Debtor's testimony, the Debtor basically failed to recall or remember anything relating to his financials. It is apparent the Debtor has materially failed to disclose all of his assets and liabilities and cannot account for them, and therefore cannot properly administer his own estate.

**D. The Debtor Cannot Confirm a Plan Without Movants' Consent**

43.　　Movants are the only substantial creditors of the Debtor, and control well over one-half in number and two-thirds in dollar amount of the unsecured creditor claims.

44.　　Without a consenting class, the Debtor is unable to confirm a plan. *See, e.g. Boston Post Road Ltd. P'ship v. Federal Deposit Ins. Corp. (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477 (2d Cir. 1994) (confirmation was properly denied for failure to obtain the acceptance of an impaired non-insider class of creditors where debtor tried to gerrymander the voting classes by separately classifying the secured lender's unsecured deficiency claim from other unsecured creditors and where debtor sought to impair claims of holders of security deposits by increasing the interest rate).

45.　　Courts have dismissed chapter 11 cases based on the unlikelihood of the debtor being able to confirm a plan over the objection of a creditor. *See In re 266 Washington Assocs.*, 141 B.R. 275 (Bankr. E.D.N.Y. 1992) (dismissing debtor's chapter 11 case based on improper classification of lender's deficiency claim and debtor's inability to effectuate a confirmable plan); *In re 499 W. Warren Street Assocs. Ltd. P'ship*, 151 B.R. 307 (Bankr. N.D.N.Y. 1992) (same); *In re Lumbar Exch. Ltd. P'ship*, 125 B.R. 1000 (Bankr. D. Minn. 1991) (same).

46. "Succinctly stated, a plan may not be confirmed unless either (1) it is approved by two-thirds in amount and more than one half in number of each 'impaired' class, 11 U.S.C. § 1126(c), 1129(a)(8); or (2) at least one impaired class approves the plan, § 1129(a)(10), and the debtor fulfills the cramdown requirements of § 1129(b) to enable confirmation notwithstanding the plan's rejection by one or more impaired classes." *In re 499 W. Warren St. Associates, Ltd. P'ship*, 151 B.R. 307, 310 (Bankr. N.D.N.Y. 1992) (internal quotation marks omitted).

47. Thus, the Debtor cannot confirm any Plan over Movants' objection.

48. 11 U.S.C. §1112(b) gives the Court and creditors the option to prefer conversion of the case to one under Chapter 7 to dismissal.

49. In this instance, because of the significant investigation needed to determine the full amount of the Debtor's assets, liabilities, financial affairs, likely avoidable transfers, and substantial avoidance claims, the Movants prefer conversion to dismissal as being in the best interests of all creditors.

50. Furthermore, conversion of this Debtor's Chapter 11 Case to Chapter 7 is more appropriate than dismissal because in a case under this jurisdiction with similar circumstances, this Court found that:

"Having found cause to convert or dismiss the Debtor's case, the Court further concludes that conversion, rather than dismissal, is in the best interest of the creditors and the estate. In the Debtors Schedule A/B: Assets—Real and Personal Property [ECF No. 17] ("Schedule A/B"), the Debtor lists an account receivable in the amount of $1,045,509. At the Hearing, in response to the Court's question about this receivable, the Debtor's counsel explained that the receivable is owing to the Debtor by its president and sole shareholder, Mr. Friedman. Moreover, a copy of the Debtor's lease agreement with Tunnel Management, an entity in which Mr. Friedman holds a one-third ownership interest (Pisciotta Decl. ¶ 15, Exh. U), has yet to be provided to the Court. In addition, the holders of the Lender Claims, the two largest unsecured claims, with the possible exception of Capital One (depending upon the extent, if any, of Capital One's deficiency claim), are solely owned by Mr. Friedman. A chapter 7 trustee would be best positioned to recover the receivable listed on Schedule A/B upon conversion and to investigate the Lender Claims and the rights and obligations of the Debtor and Tunnel Management under the purported

23

lease agreement between the parties, and thereby maximize the estate's value for the benefit of all creditors. In light of these facts, the Court also finds that equality of distribution would be best ensured by conversion, as opposed to dismissal."

*In re Red Bull Taxi Inc.*, 2017 WL 1753234, at *5 (Bankr. S.D.N.Y. May 3, 2017)

**E. An Independent Fiduciary is Needed to Investigate Millions of Potentially Avoidable Transactions Committed by the Debtor**

51.     As stated above and as learned in the Debtor's testimony at the 341(a) Meeting, there are potentially millions of avoidable transactions made by the Debtor that require investigation by an independent third party.

52.     These avoidable transactions include but are not limited to:

   a. The transfer of any distribution the Debtor received from SA FLP and the 1987 Trust;

   b. The transfer of the Debtor's interest in IMA and MSA to his spouse;

   c. The sale of the Debtor's Porsche 911;

   d. The sale of real estate at 3 Orchard Lane;

   e. The sale of jewelry potentially belonging to Elleance, and the Debtor's interest in said property and organization;

   f.  The Debtor's interest in Galaxy Fine Arts and status of its property; and

   g. The Debtor's gun collection and WWII memorabilia.

53.     From the Debtor's testimony at the 341(a) Meeting, the Debtor has made it clear he cannot remember or account for the transfer or status of any of these assets above.

54.     In sum, the Debtor has demonstrated that he cannot act as a qualified fiduciary for his creditors and has demonstrated he is in breach of these duties, and therefore a Chapter 7 Trustee is a proper party to evaluate these claims in a neutral, independent matter, and if necessary, can prosecute avoidance actions to ensure the creditors receive a maximum distribution from the estate.

## V. NOTICE OF MOTION

55.     The Movants intend to serve all creditors and parties in interest, the Debtor and counsel for the Debtor file (i) first class mail; and (ii) by Electronic Filing and electronic mail to each person receiving electronic notices and that filed a notice of appearance in this case.

56.     The Movants submit that the relief requested is reasonable and proper and is in the best interest of creditors.

57.     No prior application for this relief has been made.

**WHEREFORE,** The Movants request that this Motion be granted, and the Court enter an order converting the Chapter 11 Case to Chapter 7, with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 29, 2022

                        DAVIDOFF HUTCHER & CITRON LLP


                        By: _/s/ Robert L. Rattet_
                            Robert L. Rattet, Esq.
                        605 Third Avenue
                        New York, New York 10158
                        (212) 557-7200
                        rlr@dhclegal.com

                        _Attorneys for David & Karen Acker_

EXHIBIT "A"

Filing # 103659425 E-Filed 02/20/2020 04:47:56 PM

CFN 20200069490 NYSCEF: 03/18/2022
OR BK 31252 PG 1740
RECORDED 02/26/2020 15:55:08
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1740-1749; (10Pgs)

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 502008CP001929XXXXSB
Division IX

IN RE:

**FILED**

THE ESTATE OF STANLEY ACKER
    Deceased

Mar 18 2022

**ROCKLAND COUNTY
CLERK'S OFFICE**

<u>**FINAL JUDGMENT**</u>

    THIS MATTER, came before the Court trial on March 4, 5, and 6, 2019

and November 4, 5, and 6, 2019, and the Court, over the course of numerous days, heard the

testimony of the parties and the expert witness, heard arguments of counsels, considered and

reviewed all relevant evidence, reviewed the Court file, and reviewed the relevant case law

provided and the Court also considered the intelligence, frankness, credibility, character, and

competence of each witness, while being cognizant of the interests of each party in the outcome

of the case. The Court has attempted to distill the testimony and salient facts together with the

findings and conclusions necessary to a resolve this case; in summarizing the substance of the

witnesses' testimony, the Court has not included every detail nor attempted to state non-essential

facts.[1] The Court has relied on these evaluations in determining the disputed issues of fact, and

giving the evidence and testimony the weight they deserve, makes the following findings of fact

and conclusions of law:

<u>**FINDINGS OF FACT**</u>

---

[1] Inserting and analyzing each and every detail of the decade of litigation and over 1500 docket entries would prove
nearly impossible.

1

Petitioners David Acker ("DA") Karen Acker ("KA") and Mark Acker ("MA") are siblings and Co-Personal Representatives of the Estate of Stanley Acker, their father (the "Estate"). As such, each of KA, DA, and MA have fiduciary duties to their co-fiduciaries and to the beneficiaries of the Estate. Over the past decade, the siblings have engaged in continuous and egregious legal warfare, which has delayed the finality of their father's estate. Over the course of the trial, multiple witnesses testified, including the parties, previous estate counsel, previous co-personal representative/fiduciary Kirk Friedland, New York counsel and the current co-fiduciary, Tasha Dickinson.

On November 16, 2010, DA, KA and MA entered into a valid and enforceable settlement agreement ("2010 SA") to resolve extensive and expensive ligation. The 2010 SA was approved by Order of this Court.(D.E 407) and is a binding contract under Florida law, entered into by the parties willingly, knowingly and voluntarily. In connection with an audit by the Internal Revenue Service ("IRS") pending at the time, the 2010 SA specifically states that MA "agrees, for himself and those acting under his direction, not to interfere or thwart the pending audit, or appellate proceedings, or take any steps that might cause the imposition of any tax or penalties that would not otherwise have been imposed upon the Estate." Furthermore, the 2010 SA specifically states that MA specifically agrees to waive any objections to "any attorney's fees and costs paid from the Estate or Trust for services incurred in connection with the Florida Litigations." As defined by the 2010 SA, the "Florida Litigations" include this matter, Case No. 502008CP001929XXXXSB. Additionally, the 2010 SA specifically states that MA waives any right to future accountings for any periods arising after December 31, 2009. Also, the parties to the 2010 SA addressed outstanding issues pertaining to an accounting action brought by Stanley Acker's second wife, referred to as the Accounting Proceeding. MA specifically agreed to

2

"withdraw with prejudice the objections that he has filed" in the Accounting Proceeding, and

that KA's and DA's "counsel shall take the lead defense position in the Accounting Proceeding."

The 2010 SA specifically provides that the parties "have fully discussed this agreement with

their attorneys with respect to the meaning and effect of the provisions of this agreement and

have voluntarily chosen to sign this agreement, fully understand its content, meaning, legal effect

and consequences, free of any duress or coercion."

At every turn, MA breached his obligations under the agreement. MA acted in

contravention of his fiduciary duties by: (a) litigating and advancing claims that were released in

the 2010 SA, both in and out of Court; (b) supporting Arlene Acker and her counsel in the

Accounting Action by appearing in person in that Action over at least a five (5) year period as a

party, regularly taking positions in opposition to the Estate's legal position; (c) providing her

counsel and the New York court with privileged and confidential Estate-related financial

information; (d) providing inaccurate and/or misleading information regarding the Estate's

financial status to the New York court, leading to an Order requiring that the Marital Trust be

funded immediately and subsequently reversed on appeal; (e) instituting litigation, including the

Declaratory Action filed in Florida, as to matters that were specifically released as a part of the

2010 SA or that lacked merit; (f) interfered with and thwarted the pending IRS audit, raising

claims that he had specifically released, including actions that might have caused imposition of

taxes or penalties that might not otherwise have been imposed on the Estate; and (g) repeatedly

attempted to improperly remove the Court-appointed third-party co-fiduciary.

MA simultaneously (a) re-litigated matters and issues that he had released, (b)

maintained a position in violation of the 2010 SA and adverse to the Estate in the Accounting

3

Action and (c) demanded that the Marital Trust be funded immediately, while making claims of

IRS tax fraud by the Estate.

Further, after executing the 2010 SA and release, MA had unilateral, intentional and

substantial interference with the IRS regarding the pending audit in violation of the 2010 SA.

MA also filed lawsuits which delayed the resolution of issues under consideration by the IRS.

After executing the 2010 SA and release, MA continued to argue for full and immediate funding

of the Marital Trust despite having released KA and DA of those claims as part of the 2010 SA

and release. After executing the 2010 SA and release, MA initiated efforts and actions to obtain

accountings of the Estate, despite the agreement. After executing the 2010 SA and release, MA

pursued claims against KA and DA that he had raised prior to entering into the 2010 SA, and

which were expressly released by him. After executing the 2010 SA and release, MA attempted

to maneuver specifically against decisions established by majority vote, which required the

Estate to incur extensive legal fees to defend against MA's conduct. Such conduct by MA was

directly at odds with his fiduciary duties to the Estate, his co-fiduciaries, and his co-

beneficiaries. Still further, MA failed to participate regularly in Estate fiduciary meetings. On

occasions when MA has attended meetings, he was disruptive. MA ignored requests to come to

order, he would interrupt others and would talk over the person speaking. MA's serial failures to

participate in the performance of the co-fiduciaries functions is a breach of section 736.0703(3),

Florida Statutes.

Petitioners' expert witness, Peter Forman, Esq., who has over 30 years of probate

experience, testified credibly that MA's behavior toward the Estate was due to "pure animus," in

violation of Florida law and probate rules and stated specifically to the following:

4

FILED: ROCKLAND COUNTY CLERK 03/18/2022 02:32 PM
NYSCEF DOC. NO. 2

INDEX NO. 031106/2022

CFN 2022ROCEIVED NYSCEF: 03/18/2022
BOOK 31252 PAGE 1744
5 OF 10

    a. The 2010 SA contained restrictions regarding the removal of a newly appointed co- fiduciary which stated that removal of the neutral co-fiduciary could only be done with the unanimous consent of all the fiduciaries.

    b. Once the 2010 SA was executed, there should not have been proactive and voluntary contact with the Internal Revenue Service from Mark Acker.

    c. A fiduciary is required to comply with the fiduciary requirements of the trust code and of the probate code and MA took steps to increase potential taxes, penalties and interest is a breach of fiduciary duty.

    d. Mark Acker's communication with the IRS was not in the best interest of the Estate.

    e. In the New York litigation, Mark Acker participated in the proceeding and his actions were directly adverse to the interest of the Estate and Trust because he provided information concerning the assets of the Trust creating an issue as to whether certain prior representations made by Estate and Trust counsel were false. Thus, advocating against the Estate and Trust and in favor of Arlene Acker.

    g. Mark Acker gave privileged information of the Estate and Trust to Arlene Acker's counsel in direct opposition to the interest of the Estate and Trust. This was a violation of his duties as a fiduciary and adverse to the interests of the Estate and Trust.

    h. Mr. Peter Forman testified that Mark Acker's behavior as it relates to the properties, 150 Burd Street and 60 Cedar Hill, in violation of his duties as a fiduciary. He communicated with prospective purchasers and made false claims regarding environmental concerns. These claims made by Mark Acker created additional delays, and caused the Estate and Trust to incur further unnecessary costs and expenses.

    j. The legal fees incurred by the Tannenbaum law firm as a result of the filing and prosecution of the accounting action in New York were reasonable and necessary in defending the counterclaims raised and have been rendered beneficial to the Estate.

## CONCLUSIONS OF LAW

Beyond the provisions of the 2010 SA, Florida law imposes significant duties

upon personal representatives and trustees. Under Sections 733.602(1) and 733.609(1), Florida

Statutes, a personal representative must observe the same standards of care applicable to trustees.

5

FILED: ROCKLAND COUNTY CLERK 03/18/2022 02:42 PM
NYSCEF DOC. NO. 2
INDEX NO. 031106/2022
CFN 2022-00057479 RECEIVED NYSCEF: 03/18/2022
BOOK 31252 PAGE 1745
6 OF 10

*See also State v. Lahurd*, 632 So. 2d 1101, 1104 (Fla. 4th DCA 1994) ("The personal representative, like a trustee, is a fiduciary in handling the estate for the beneficiaries. As such, he or she is to observe the standard of care in dealing with the estate as a prudent trustee exercises in dealing with property of the trust."). Personal representatives and trustees have a duty to resolve issues in accordance with a decedent's will as expeditiously and efficiently as is consistent with the best interests of the Estate and to administer the trust in good faith and impartially as a prudent person would, exercise reasonable care, skill, and caution. A fiduciary has a duty to refrain from exploiting the fiduciary relationship for the fiduciaries' personal benefit. *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) ("A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts.").Fla. Stat. § 736.0804 (2007); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003) (finding that a fiduciary administering trust property owes a fundamental common law duty as trustee to preserve and maintain trust assets; "the standard of responsibility is 'such care and skill as a man of ordinary prudence would exercise in dealing with his own property.'"). *See also* Fla. Stat. § 736.0803 (2007); Fla. Stat. § 736.0802 (2016).

Mr. Forman's testimony is credible. Pursuant to 733.901(2), Florida Statutes, the instant actions filed by KA and DA are not barred by any statute of limitations. MA's testimony was not credible and from his actions it is clear he did not adhere to Florida law regarding personal representatives and trustees. Furthermore, he failed to abide by multiple terms of the 2010 SA by taking actions, including but not limited to:

6

a) Interference with the IRS and its Audit, including but not limited to seeking to have a *higher tax* burden imposed upon the Estate, which led to the imposition of significant additional and unnecessary legal and other professional fees upon the Estate;

b) MA's interference in the Accounting Proceeding;

c) Repeatedly attempting to unilaterally remove the court-appointed fiduciary;

d) Objecting to, and/or blocking payment of administrative expenses, including professional fees incurred in connection with the administration of the Estate;

e) Refusal to abide by the terms of the 2010 SA requiring that all future accountings be waived;

f) Contacting the IRS and making false allegations of a conspiracy;

g) Failing to abide by the duties imposed upon fiduciaries, such as MA, duties to (i) carry out the decedent's intent; (ii) to administer and close the estate in the most efficient manner possible; (iii) to respect and abide, and not hinder, the majority decisions made by his co-fiduciaries; and (iv) to act, at all times, in the best interests of the Estate; and

h) By acting in his own personal interests instead of acting in the best interests of the Estate.

What the evidence showed was that this was not a grand conspiracy against MA, but instead a crusade by MA to ruin his siblings while wasting the estate assets in the process. MA breached the 2010 SA by repeatedly contacting the IRS, making false allegations of a conspiracy by KA & DA of fraud, which continued to delay the resolution of IRS issues. Even after the IRS found in favor of KA and DA, MA initiated an internal investigation into the IRS investigators who were involved in the IRS' decision-making. Furthermore, MA breached the 2010 SA by contacting the IRS in an effort to have a higher valuation imposed on certain assets, including the "Elleance Inventory," a collection of precious metals and gemstones that constitutes one of the personal property assets of the Estate, appraised by an independent reputable firm. MA also breached the 2010 SA by interfering with the Estate tax audit and the ongoing Estate tax appeal process by surreptitiously providing huge volumes of documentation directly to the IRS, without

7

FILED: ROCKLAND COUNTY CLERK 03/18/2022 02:32 PM
NYSCEF DOC. NO. 2

INDEX NO. 031106/2022

CFN 20BRCOF51MFD NYSCEF: 03/18/2022
BOOK 31252 PAGE 1747
8 OF 10

providing that documentation to his co-fiduciaries and also communicating with the IRS without advising his co-fiduciaries of his conversations with the IRS, even when asked to do so by his co-fiduciaries. Those submissions and communications were contrary to the best interests of the Estate. MA breached the 2010 SA by interfering with, and failing to cooperate with the Estate tax audit by refusing to timely provide documentation required to be submitted to the IRS, for purposes of supporting claimed deductions. MA's conduct thwarted any potential effort by the Estate to claim additional deductions. MA breached the 2010 SA by initiating further litigation against KA and DA, within weeks of the signing of the 2010 SA, which alleged that he was being "frozen out" of the administration, despite having released these claims as a part of the 2010 SA. Even after being compelled to withdraw his objections in the Accounting Proceeding, MA also breached the 2010 SA by continuing to conduct and maintain a campaign of interference, objections and obstruction of the Accounting Proceeding, in and out of court .All of the foregoing conduct by MA was directly at odds with his fiduciary duties to the Estate, his co-fiduciaries, and his co-beneficiaries.

The Court accordingly finds that MA breached his fiduciary duties to the Estate, his co-fiduciaries, and his co-beneficiaries. MA's actions dictate application of the Inequitable Conduct Doctrine recognized by the Florida Supreme Court in *Bitterman v. Bitterman*, 714 So. 2d 356 (Fla. 1998). As applied by the Florida Supreme Court, this doctrine permits an award of attorneys' fees and costs against a party personally where they acted egregiously, in bad faith, vexatious, wantonly, or for oppressive reasons. Independently and collectively, the Court finds that MA's breaches of the 2010 SA, his breaches of fiduciary duties, and other actions were egregious, in bad faith, vexatious, wanton, or oppressive.

By reason of MA's material breaches of contract and breaches of fiduciary duties,

8

FILED: ROCKLAND COUNTY CLERK 03/18/2022 02:32 PM

NYSCEF DOC. NO. 2

INDEX NO. 031106/2022

CFN 20200007574P RECEIVED NYSCEF: 03/18/2022
BOOK 31252 PAGE 1748
9 OF 10

the Estate incurred substantial unnecessary attorneys' fees and costs, and suffered actual

damages, which include, but are not limited to:

    a) Significant expenditure and waste of Estate Assets on attorney's fees and other costs and expenses to enforce the terms of the 2010 SA, and to resist actions and conduct by MA in contravention of this 2010 SA; and

    b) Significant expenditure and waste of the personal assets of DA and KA on attorney's fees and other costs and expenses to enforce the terms of the 2010 SA, and to resist actions and conduct by MA in contravention of this 2010 SA.

Accordingly, the Court hereby awards the following damages in favor of KA and

DA against MA, which shall be surcharged from MA's share of the Estate or Marital Trust

or otherwise imposed against him personally:

    a. Tannenbaum Helpern attorneys' fees related to the Accounting Action, as testified to by expert Peter Forman, Esq.: **$362,500.00;**

    b. Proskauer Rose attorneys' fees *not* related to the Declaratory Action, as testified to by expert Peter Forman, Esq., Jonathan Galler, and KA: **$225,500.00;**

    c. Proskauer Rose attorneys' fees related to the Declaratory Action, as testified to by expert Peter Forman, Esq.: **$254,000.00;**

    d. Gutter Chavez attorneys' fees, as testified to by expert Peter Forman, Esq.: **$58,000.00;**

    e. Additional fees incurred in the Marital Trust action since trial began in March 2019, as testified to by KA: **$60,000.00;**

    f. **TOTAL:** $960,000

Furthermore, all of MA's Counterclaims and Motion for Setoff are hereby **DENIED.**

The Court retains jurisdiction to enforce this order and any other order it deems just and proper.

**DONE AND ORDERED** in Delray Beach, Palm Beach County, Florida on this 20th

day of February 2020.

15TH JUDICIAL CIRCUIT

CFN 20200 RECEIVED NYSCEF: 03/18/2022
BOOK 31252 PAGE 1749
10 OF 10

Copies furnished to all parties of record

10



I hereby certify the foregoing is a true copy of the record in my office
with redactions, if any as required by law as of this day, Mar 11, 2022.
Joseph Abruzzo, Clerk, Palm Beach County, Florida.
BY _____ Deputy Clerk

## AFFIDAVIT PURSUANT TO CPLR § 5402

STATE OF ARIZONA    )
                        ) ss.:
COUNTY OF _Maricopa_ )

    **KAREN ACKER**, being duly sworn, deposes and says:

    1.  That on or about the 20th day of February, 2022, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida entered a judgment in favor of myself, Karen Acker, and my brother, David Acker, against Mark Acker for the sum of $960,000.00. A copy of that judgment, duly authenticated in accordance with CPLR § 4540, is annexed hereto and filed herewith.

    2.  That the aforesaid judgment was not obtained by default or by confession of judgment.

    3.  That the judgment is unsatisfied in whole and there remains unpaid thereon the sum of $960,000.00.

    4.  That the enforcement of the judgment has not been stayed.

    5.  That the last known address of Mark Acker, the judgment debtor, is 2305 Round Pointe Drive, Haverstraw, New York 10927.

KAREN ACKER

Sworn to before me this
_15th_ day of March, 2022.

Notary Public

HASHWAN BAHOURA
Notary Public - Arizona
Maricopa County
Commission # 611637
My Comm. Expires Sep 4, 2025

## AFFIDAVIT PURSUANT TO CPLR § 5402

STATE OF VERMONT    )
                     ) ss.:

COUNTY OF Windsor    )

**DAVID ACKER**, being duly sworn, deposes and says:

1. That on or about the 20th day of February, 2022, the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida entered a judgment in favor of myself, David Acker, and my sister, Karen Acker, against Mark Acker for the sum of $960,000.00. A copy of that judgment, duly authenticated in accordance with CPLR § 4540, is annexed hereto and filed herewith.

2. That the aforesaid judgment was not obtained by default or by confession of judgment.

3. That the judgment is unsatisfied in whole and there remains unpaid thereon the sum of $960,000.00.

4. That the enforcement of the judgment has not been stayed.

5. That the last known address of Mark Acker, the judgment debtor, is 2305 Round Pointe Drive, Haverstraw, New York 10927.

_____
DAVID ACKER

Sworn to before me this
16 day of March, 2022.

_____
Notary Public

exp 01/31/2023

AMY RAWLING
Commission
No. 157.0012906
Notary Public State of Vermont

## ADDRESSES FOR JUDGMENT CREDITORS

David Acker
100 Fairbanks Rd.
Grafton, VT  05146

Karen Acker
5214 East Ocotillo Rd.
Care Creek, AZ 85331

DONNA GORMAN SILBERMAN
COUNTY CLERK

EXHIBIT "B"

DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARK ACKER,**
Appellant,

v.

**ESTATE OF STANLEY ACKER, KAREN ACKER** and **DAVID ACKER,**
Appellees.

No. 4D20-1461

[January 27, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 502008CP001929XXXXSBIX.

Donna Greenspan Solomon of Solomon Appeals, Mediation & Arbitration, Fort Lauderdale, for appellant.

David K. Markarian of The Markarian Group, Palm Beach Gardens, for appellees Karen Acker and David Acker.

PER CURIAM.

*Affirmed.*

MAY, GERBER and LEVINE, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***

# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT, 110 SOUTH TAMARIND AVENUE, WEST PALM BEACH, FL 33401

January 27, 2022

**CASE NO.: 4D20-1461**
L.T. No.:   502008CP001929XXXXSB
IX

MARK ACKER                              v.   ESTATE OF STANLEY ACKER

---

Appellant / Petitioner(s)                      Appellee / Respondent(s)

**BY ORDER OF THE COURT:**

ORDERED that appellant's October 25, 2021 amended motion for appellate attorney's fees is denied. Further,

ORDERED that appellant's October 5, 2021 motion for appellate attorney's fees as sanctions against appellees and their counsel is denied.


Served:

cc:  David  Glickman            David Markarian            Donna Greenspan Solomon
     Randolph M. Brombacher     Tasha K. Pepper-Dickinson  Theodore S. Kypreos

ms



**LONN WEISSBLUM, Clerk**
**Fourth District Court of Appeal**

## IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
### FOURTH DISTRICT, 110 SOUTH TAMARIND AVENUE, WEST PALM BEACH, FL 33401

January 27, 2022

**CASE NO.: 4D20-1461**
L.T. No.:   502008CP001929XXXXSB
IX

MARK ACKER                                v.   ESTATE OF STANLEY ACKER

_____          _____
Appellant / Petitioner(s)                         Appellee / Respondent(s)

## BY ORDER OF THE COURT:

ORDERED that appellee's May 26, 2021 motion for appellate attorney's fees is granted pursuant to the 2010 settlement agreement and sections 733.106(3), 733.6175(2), 733.6171(1) and 733.6171(4), Florida Statutes. On remand, the trial court shall set the amount of the attorney's fees to be awarded for this appellate case. If a motion for rehearing is filed in this court, then services rendered in connection with the filing of the motion, including, but not limited to, preparation of a responsive pleading, shall be taken into account in computing the amount of the fee. Further,

ORDERED that the motion for costs filed by David K. Markarian is denied without prejudice to seek costs in the trial court.


Served:

cc:  David  Glickman            David Markarian            Donna Greenspan Solomon
     Randolph M. Brombacher     Tasha K. Pepper-Dickinson  Theodore S. Kypreos
     Clerk Palm Beach

ms


_Lonn Weissblum_

**LONN WEISSBLUM, Clerk**
**Fourth District Court of Appeal**



# IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT, 110 SOUTH TAMARIND AVENUE, WEST PALM BEACH, FL 33401

February 25, 2022

**CASE NO.: 4D20-1461**
L.T. No.:    502008CP001929XXXXSB IX

MARK ACKER                          v.    ESTATE OF STANLEY ACKER

---

Appellant / Petitioner(s)                    Appellee / Respondent(s)

## BY ORDER OF THE COURT:

ORDERED that appellant's February 8, 2022 motion for rehearing is denied.

Served:

cc:  David  Glickman              David Markarian              Donna Greenspan Solomon
     Randolph M. Brombacher       Tasha K. Pepper-Dickinson    Theodore S. Kypreos

kr

**LONN WEISSBLUM, Clerk**
**Fourth District Court of Appeal**

EXHIBIT "C"

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7
☒ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Check if this is an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy

02/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- |
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Mark<br>First name<br><br>Steven<br>Middle name<br><br>Acker<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br>Include your married or maiden names. |  |  |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-2372 |  |

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|

**4.** **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

☒ I have not used any business name or EINs.

Business name(s)

EIN

☐ I have not used any business name or EINs.

Business name(s)

EIN

**5.** **Where you live**

2305 Round Pointe Drive
Haverstraw, NY 10927
Number, Street, City, State & ZIP Code

Rockland
County

**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**If Debtor 2 lives at a different address:**

Number, Street, City, State & ZIP Code

County

**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.

Number, P.O. Box, Street, City, State & ZIP Code

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

☒ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
Explain. (See 28 U.S.C. § 1408.)

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---|---|

**7.   The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)*). Also, go to the top of page 1 and check the appropriate box.

- ☐ Chapter 7
- ☒ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

---

**8.   How you will pay the fee**

☒ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.   Have you filed for bankruptcy within the last 8 years?**

☒ No.
☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

---

**10.   Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☒ No
☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
|---|---|---|---|---|
| District | _____ | When _____ | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When _____ | Case number, if known | _____ |

---

**11.   Do you rent your residence?**

☐ No.    Go to line 12.
☒ Yes.    Has your landlord obtained an eviction judgment against you?

- ☒ No. Go to line 12.
- ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☒ No.    Go to Part 4.

☐ Yes.    Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☐ No.    I am not filing under Chapter 11.

☒ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☒ No.
☐ Yes.

What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____

_____
Number, Street, City, State & Zip Code

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☒ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1    Mark Steven Acker                                         Case number _(if known)_ _____

| **Part 6:** | **Answer These Questions for Reporting Purposes** |
|---|---|

**16. What kind of debts do you have?**

16a. **Are your debts primarily consumer debts?** _Consumer debts_ are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

☒ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** _Business debts_ are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts

_____

**17. Are you filing under Chapter 7?**

☒ No.    I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

☒ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**19. How much do you estimate your assets to be worth?**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☒ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☒ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

| **Part 7:** | **Sign Below** |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Mark Steven Acker
_____              _____
Mark Steven Acker                                          Signature of Debtor 2
Signature of Debtor 1

Executed on   June 15, 2022                          Executed on  _____
              MM / DD / YYYY                                        MM / DD / YYYY

Debtor 1    Mark Steven Acker                                          Case number _(if known)_ _____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.   I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

/s/ Dawn Kirby                                          Date    June 15, 2022
Signature of Attorney for Debtor                                    MM / DD / YYYY

Dawn Kirby
Printed name

Kirby Aisner & Curley LLP
Firm name

700 Post Road
Suite 237
Scarsdale, NY 10583
Number, Street, City, State & ZIP Code

Contact phone    (914) 401-9500          Email address    dkirby@kacllp.com

2733004 NY
Bar number & State

---

# United States Bankruptcy Court
## Southern District of New York, White Plains Division

In re    Mark Steven Acker                             Case No. _____

                                    Debtor(s)                 Chapter      11

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ **FLAT FEE**

     For legal services, I have agreed to accept ......................................................   $ _____

     Prior to the filing of this statement I have received ........................................   $ _____

     Balance Due .....................................................................................   $ _____

☒ **RETAINER**

     For legal services, I have agreed to accept and received a retainer of ..........................   $       26,800.00

     The undersigned shall bill against the retainer at an hourly rate of ..............................   $        550.00
     [Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved
     fees and expenses exceeding the amount of the retainer.

2. The source of the compensation paid to me was:

     ☐ Debtor      ☒ Other (specify):      Rochelle Acker, Debtor's Wife

3. The source of compensation to be paid to me is:

     ☐ Debtor      ☒ Other (specify):      The Debtor and the fees are personally guaranteed by Debtor's Wife.

4. ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

     a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
     b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
     c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
     d. [Other provisions as needed]
         a. To give advice to the Debtor with respect to its powers and duties as Debtor in Possession and the continued management of its property and affairs.
         b. To negotiate with creditors of the Debtor and work out a plan of reorganization and take the necessary legal steps in order to effectuate such a plan including, if need be, negotiations with the creditors and other parties in interest.
         c. To prepare the necessary answers, orders, reports and other legal papers required for the Debtor's protection from its creditors under Chapter 11 of the Bankruptcy Code.
         d. To appear before the Bankruptcy Court to protect the interest of the Debtor and to represent the Debtor in all matters pending before the Court.
         e. To attend meetings and negotiate with representatives of creditors and other parties in interest.
         f. To advise the Debtor in connection with any potential sale of the business.
         g. To represent the Debtor in connection with obtaining post-petition financing, if necessary.
         h. To take any necessary action to obtain approval of a disclosure statement and confirmation of a plan of reorganization.
         i. To perform all other legal services for the Debtor which may be necessary for the preservation of the Debtors estate and to promote the best interests of the Debtor, its creditors and it

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
         Representation in an Adversary Proceeding, subject to further agreement with the Debtor.

In re    Mark Steven Acker                                    Case No. _____
                    Debtor(s)

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
## (Continuation Sheet)

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

June 15, 2022                                          /s/ Dawn Kirby
*Date*                                                 Dawn Kirby
                                                       *Signature of Attorney*
                                                       Kirby Aisner & Curley LLP
                                                       700 Post Road
                                                       Suite 237
                                                       Scarsdale, NY 10583
                                                       (914) 401-9500   Fax:
                                                       dkirby@kacllp.com
                                                       *Name of law firm*

# United States Bankruptcy Court
## Southern District of New York, White Plains Division

In re    Mark Steven Acker                              Case No. _____

                                       Debtor(s)         Chapter     11 _____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:    June 15, 2022                    /s/ Mark Steven Acker

                                                Mark Steven Acker

                                                  Signature of Debtor

David Acker
c/o David K. Markarian, Esq.
The Markarian Group 2925 PGA Boulevard,
Palm Beach Gardens, FL 33410


Gusrae Kaplan PLLC
120 Wall Street
New York, NY 10005


Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346


Karen Acker
c/o David K. Markarian, Esq.
The Markarian Group 2925 PGA Boulevard,
Palm Beach Gardens, FL 33410


Merrill Lynch Credit Card
PO Box 15289
Wilmington, DE 19886-5289


Morrison Brown Argiz & Farra
600 3rd Avenue, 3rd Floor
New York, NY 10016


NYC Corporation Counsel
100 Church Street
New York, NY 10007


NYS Dept. of Taxation & Finance
Bankruptcy/ Special Procedures Section
PO Box 5300
Albany, NY 12205-0300


Office of the United States Trustee
US Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014


PHH Mortgage Services
3000 Leadenhall Road
Mount Laurel, NJ 08054


Randolph M. Brombacher, Esq.
Saavedra Goodwin
312 SE 17th Street, Second Floor
Fort Lauderdale, FL 33316


Solomon Appeals, Mediation & Arbitration
Donna Greenspan Solomon, Esq.
901 S Federal Highway, Suite 300
Fort Lauderdale, FL 33316

| | | | |
|---|---|---|---|
| Debtor 1 | Mark Steven Acker | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | 22-22359 | | |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:    Summarize Your Assets

|  |  | Your assets<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B............................................................ | $            750,000.00 |
|  | 1b. Copy line 62, Total personal property, from Schedule A/B...................................................... | $            7,463.86 |
|  | 1c. Copy line 63, Total of all property on Schedule A/B................................................................ | $            757,463.86 |

### Part 2:    Summarize Your Liabilities

|  |  | Your liabilities<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $            702,531.88 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy  the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*............................... | $            70,244.02 |
|  | 3b. Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... | $            1,000,491.00 |
|  | Your total liabilities | $            1,773,266.90 |

### Part 3:    Summarize Your Income and Expenses

|  |  | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*.............................................................. | $            6,462.60 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*............................................................... | $            5,655.00 |

### Part 4:    Answer These Questions for Administrative and Statistical Records

6.  **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐  No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

☒  Yes

7.  **What kind of debt do you have?**

☒  **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

☐  **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$            4,736.94

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $     0 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $     70244.02 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $     0 |
| 9d. Student loans. (Copy line 6f.) | $     0 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $     0 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$     0 |
| 9g. **Total.** Add lines 9a through 9f. | $     70244.02 |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor 1 | Mark Steven Acker | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION

Case number  22-22359

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once.   If an asset fits in more than one category, list the asset in the category where you think it fits best.   Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☒ Yes.   Where is the property?

1.1

| 47 Tranquility Road | **What is the property?** Check all that apply | |
|---|---|---|
| Street address, if available, or other description | ☒ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| Suffern              NY    10901 | ☐ Land | **Current value of the entire property?** **Current value of the portion you own?** |
| City          State      ZIP Code | ☐ Investment property | $1,500,000.00        $750,000.00 |
| | ☐ Timeshare | |
| | ☐ Other | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| Rockland | **Who has an interest in the property?** Check one | Joint tenant |
| County | ☐ Debtor 1 only | |
| | ☐ Debtor 2 only | |
| | ☐ Debtor 1 and Debtor 2 only | |
| | ☒ At least one of the debtors and another | ☐ **Check if this is community property** (see instructions) |
| | Other information you wish to add about this item, such as local property identification number: | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................................................=>**      $750,000.00

Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☒ Yes

| 3.1 Make: | Chevrolet | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

3.1   Make:   Chevrolet
Model:   Suburban
Year:   2001
Approximate mileage:
Other information:

Who has an interest in the property? *Check one*
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $1,956.00 | $1,956.00 |

3.2   Make:   Red
Model:   Trailer
Year:   1999
Approximate mileage:
Other information:

Who has an interest in the property? *Check one*
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| Unknown | Unknown |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☒ No
☐ Yes

5  **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.........................................................=>**

$1,956.00

**Part 3:    Describe Your Personal and   Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☒ Yes.   Describe.....

   | Household Goods, Furnishings & Appliances | $3,000.00 |
   |---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☒ Yes.   Describe.....

   | Television, Computer & Cellphone | $1,000.00 |
   |---|---|

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ☒ Yes.   Describe.....

   | [4] Abstract Paintings; Dolphin Table; Tusk | Unknown |
   |---|---|

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☒ No
   ☐ Yes.  Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☐ No
    ☒ Yes.  Describe.....

    | Glock 23 (Duty Gun) Glock 19 and a Glock 43 | Unknown |

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☒ Yes.  Describe.....

    | Miscellaneous Wearing Apparel & Shoes | $600.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☒ No
    ☐ Yes.  Describe.....

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☒ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☒ No
    ☐ Yes.  Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .......................................................................... | $4,600.00 |

| **Part 4:** | Describe Your Financial Assets |

| Do you own or have any legal or equitable interest in any of the following? | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ☒ No
    ☐ Yes.................................................................................................

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ☒ Yes........................           Institution name:

    | 17.1. | Checking | Chase Bank xx6375 (Joint with Wife) | $706.85 |
    | 17.2. | Savings | Chase Bank xx9328 (Joint with Wife) | $200.01 |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ☐ No
    ☒ Yes.................           Institution or issuer name:
    | Chase Brokerage Account xx7653 | $1.00 |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                         Best Case Bankruptcy

| Chase Brokerage Account xx7661 | | $0.00 |
|---|---|---|

**19.** **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☒ No

☐ Yes. Give specific information about them...................

<table>
<tr><td>Name of entity:</td><td>% of ownership:</td></tr>
</table>

**20.** **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.

*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No

☐ Yes. Give specific information about them

Issuer name:

**21.** **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No

☒ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| Retirement Account | Chase Bank xx0464 | $0.00 |
| Retirement Account | Chase Bank xx0466 | $0.00 |

**22.** **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☒ No

☐ Yes. ...................... Institution name or individual:

**23.** **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☒ No

☐ Yes............ Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**

26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☒ No

☐ Yes............ Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25.** **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☐ No

☒ Yes. Give specific information about them...

| Revocable Intervivos Stanley Acker Settlor Trust | Unknown |
|---|---|

**26.** **Patents, copyrights, trademarks, trade secrets, and other intellectual property**

*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☒ No

☐ Yes. Give specific information about them...

**27.** **Licenses, franchises, and other general intangibles**

*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☒ No

☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28.** **Tax refunds owed to you**

☒ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29.** **Family support**

*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☒ No

☐ Yes. Give specific information......

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,    workers' compensation, Social Security
   benefits; unpaid loans you made to someone else

   ☒ No
   ☐ Yes.   Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ☐ No
   ☒ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| Guardian Life Insurance Company of America (Death Benefits) | | $0.00 |

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
   someone has died.
   ☒ No
   ☐ Yes.   Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ☒ No
   ☐ Yes.   Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ☐ No
   ☒ Yes.   Describe each claim.........

| | |
|---|---|
| Application made to Federal Government that provides assistance to Officers who were catastrophically injured in the line of duty | Unknown |

35. **Any financial assets you did not already list**
   ☒ No
   ☐ Yes.   Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
    for Part 4. Write that number here**.................................................................................................................    $907.86

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ☐ No. Go to Part 6.
   ☒ Yes.   Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

38. **Accounts receivable or commissions you already earned**
   ☒ No
   ☐ Yes.   Describe.....

39. **Office equipment, furnishings, and supplies**
   *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
   ☒ No
   ☐ Yes.   Describe.....

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
   ☒ No
   ☐ Yes.   Describe.....

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

41.  **Inventory**
☒ No
☐ Yes.   Describe.....

42.  **Interests in partnerships or joint ventures**
☐ No
☒ Yes.   Give specific information about them...................

| Name of entity: | % of ownership: | |
| --- | --- | --- |
| MSA Consulting Corp. | _____ % | $0.00 |

43.  **Customer lists, mailing lists, or other compilations**
☒ No.
☐ **Do your lists include personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

☒ No
☐ Yes.   Describe.....

44.  **Any business-related property you did not already list**
☒ No
☐ Yes. Give specific information.........

45.  **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
     for Part 5. Write that number here**............................................................................................................    $0.00

**Part 6:**   **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☒ No. Go to Part 7.
☐ Yes.   Go to line 47.

**Part 7:**   **Describe All Property You Own or Have an Interest in That You Did Not List Above**

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
☒ No
☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here**  ...................................    $0.00

**Part 8:**   **List the Totals of Each Part of this Form**

| | | |
| --- | --- | --- |
| 55.  **Part 1: Total real estate, line 2**  ........................................................................................ | | $750,000.00 |
| 56.  **Part 2: Total vehicles, line 5** | $1,956.00 | |
| 57.  **Part 3: Total personal and household items, line 15** | $4,600.00 | |
| 58.  **Part 4: Total financial assets, line 36** | $907.86 | |
| 59.  **Part 5: Total business-related property, line 45** | $0.00 | |
| 60.  **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61.  **Part 7: Total other property not listed, line 54** | + $0.00 | |
| 62.  **Total personal property.** Add lines 56 through 61... | $7,463.86 | Copy personal property total    $7,463.86 |
| 63.  **Total of all property on Schedule A/B.** Add line 55 + line 62 | | $757,463.86 |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Mark Steven Acker |
| | First Name     Middle Name     Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION |
| Case number (if known) | 22-22359 |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

**4/22**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.    11 U.S.C. § 522(b)(3)

   ☒ You are claiming federal exemptions.    11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| 47 Tranquility Road, Suffern, NY 10901 Rockland County<br>Line from *Schedule A/B*: 1.1 | $750,000.00 | ☒         $15,425.00<br>☐   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| 2001 Chevrolet Suburban<br>Line from *Schedule A/B*: 3.1 | $1,956.00 | ☒         $1,956.00<br>☐   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(2) |
| Household Goods, Furnishings & Appliances<br>Line from *Schedule A/B*: 6.1 | $3,000.00 | ☒         $3,000.00<br>☐   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Television, Computer & Cellphone<br>Line from *Schedule A/B*: 7.1 | $1,000.00 | ☒         $1,000.00<br>☐   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Miscellaneous Wearing Apparel & Shoes<br>Line from *Schedule A/B*: 11.1 | $600.00 | ☒         $600.00<br>☐   100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor 1 Mark Steven Acker | | Case number (if known) 22-22359 | |
|---|---|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Chase Bank xx0464<br>Line from *Schedule A/B*: 21.1 | $0.00 | ☒ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| Chase Bank xx0466<br>Line from *Schedule A/B*: 21.2 | $0.00 | ☒ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| Guardian Life Insurance Company of America (Death Benefits)<br>Line from *Schedule A/B*: 31.1 | $0.00 | ☒ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(7) |
| Application made to Federal Government that provides assistance to Officers who were catastrophically injured in the line of duty<br>Line from *Schedule A/B*: 34.1 | Unknown | ☒ $27,900.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(11)(D) |
| Application made to Federal Government that provides assistance to Officers who were catastrophically injured in the line of duty<br>Line from *Schedule A/B*: 34.1 | Unknown | ☐<br>☒ 100% of fair market value, up to any applicable statutory limit | 5 U.S.C. § 8346(a) |

3. **Are you claiming a homestead exemption of more than $189,050?**
(Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

☒ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐ No

    ☐ Yes

| | |
|---|---|
| Debtor 1 | Mark Steven Acker |
| | First Name       Middle Name       Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION |
| Case number (if known) | 22-22359 |

☐ Check if this is an amended filing

## Official Form 106D
# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**
  ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
  ☒ Yes. Fill in all of the information below.

**Part 1:**    List All Secured Claims

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion**<br>If any |
|---|---|---|---|

| 2.1 | PHH Mortgage Services | | | | |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| **2.1** PHH Mortgage Services<br>Creditor's Name<br><br><br>3000 Leadenhall Road<br>Mount Laurel, NJ 08054<br>Number, Street, City, State & Zip Code<br><br>**Who owes the debt?** Check one.<br>☒ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br><br>Date debt was incurred _____ | **Describe the property that secures the claim:**<br>47 Tranquility Road, Suffern, NY 10901<br>Rockland County<br><br>**As of the date you file, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Nature of lien.** Check all that apply.<br>☒ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____<br><br>Last 4 digits of account number _7608_ | $699,924.88     $1,500,000.00     $0.00 |

| | | |
|---|---|---|
| **2.2** Rockland Employees Fcu<br>Creditor's Name<br><br><br>140 Old Orangeburg Rd<br>Orangeburg, NY 10962-1157<br>Number, Street, City, State & Zip Code<br><br>**Who owes the debt?** Check one.<br>☒ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br><br>Date debt was incurred _2015-01_ | **Describe the property that secures the claim:**<br>2001 Chevrolet Suburban<br><br><br>**As of the date you file, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Nature of lien.** Check all that apply.<br>☒ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____<br><br>Last 4 digits of account number _0002_ | $2,607.00     $1,956.00     $0.00 |

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $702,531.88 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $702,531.88 |

| Part 2: | List Others to Be Notified for a Debt That You Already Listed |
|---|---|

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

| | |
|---|---|
| Debtor 1 | Mark Steven Acker |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION |
| Case number (if known) | 22-22359 |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**
   ☐ No. Go to Part 2.
   ☒ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| 2.1 | Internal Revenue Service | Last 4 digits of account number   2377 | $70,244.02 | $66,475.28 | $3,768.74 |

Priority Creditor's Name
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346
Number Street City State Zip Code

When was the debt incurred?   2019

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
☒ No
☐ Yes

**As of the date you file the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☒ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____ Income Taxes

### Part 2:   List All of Your NONPRIORITY Unsecured Claims

3. **Do any creditors have nonpriority unsecured claims against you?**
   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.
   ☒ Yes.

4. **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

Total claim

| 4.1 | Bank of America | Last 4 digits of account number   8432 | $22,899.00 |

Nonpriority Creditor's Name
PO Box 982238
El Paso, TX 79998-2238

**When was the debt incurred?**   2006-05

Number Street City State Zip Code

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

**Is the claim subject to offset?**
☒ No
☐ Yes

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   Credit card purchases

---

| 4.2 | Bank of America | Last 4 digits of account number   4462 | $17,592.00 |

Nonpriority Creditor's Name
PO Box 982238
El Paso, TX 79998-2238

**When was the debt incurred?**   2007-04

Number Street City State Zip Code

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

**Is the claim subject to offset?**
☒ No
☐ Yes

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   Credit card purchases

---

| 4.3 | Gusrae Kaplan PLLC | Last 4 digits of account number | $0.00 |

Nonpriority Creditor's Name
120 Wall Street
New York, NY 10005

**When was the debt incurred?**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

☐ Contingent
☐ Unliquidated
☒ Disputed

**Type of NONPRIORITY unsecured claim:**

**Is the claim subject to offset?**
☒ No
☐ Yes

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify

---

| 4.4 | Merrill Lynch Credit Card | Last 4 digits of account number | $0.00 |

Nonpriority Creditor's Name
PO Box 15289
Wilmington, DE 19886-5289

**When was the debt incurred?**

Number Street City State Zip Code

**Who incurred the debt? Check one.**

**As of the date you file, the claim is:** Check all that apply

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

**Is the claim subject to offset?**
☒ No
☐ Yes

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   Credit card purchases

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| 4.5 | Merrill Lynch Credit Card | Last 4 digits of account number ___ ___ ___ ___ | $0.00 |

**Nonpriority Creditor's Name**

PO Box 15289
Wilmington, DE 19886-5289

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   Credit card purchases

---

| 4.6 | Morrison Brown Argiz & Farra | Last 4 digits of account number ___ ___ ___ ___ | $0.00 |

**Nonpriority Creditor's Name**

600 3rd Avenue, 3rd Floor
New York, NY 10016

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☒ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   _____

---

| 4.7 | Solomon Appeals, Mediation & Arbitration | Last 4 digits of account number ___ ___ ___ ___ | Unknown |

**Nonpriority Creditor's Name**

Donna Greenspan Solomon, Esq.
901 S Federal Highway, Suite 300
Fort Lauderdale, FL 33316

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a   community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☒ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify   Legal Fees

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor 1 | Mark Steven Acker | | Case number (if known) | 22-22359 |
|---|---|---|---|---|

| 4.8 | The Estate of Stanley Acker | | | | $960,000.00 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name
c/o David K. Markarian, Esq.
The Markarian Group
2925 PGA Boulevard, Suite 204
Palm Beach Gardens, FL 33410
Number Street City State Zip Code

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**Who incurred the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☐ No
☒ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☒ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify     Judgment

---

**Part 3:    List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
Bank of America
Attn: Bankruptcy
4909 Savarese Cir
Tampa, FL 33634-2413

On which entry in Part 1 or Part 2 did you list the original creditor?
Line 4.1 of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
Bank of America
Attn: Bankruptcy
4909 Savarese Cir
Tampa, FL 33634-2413

On which entry in Part 1 or Part 2 did you list the original creditor?
Line 4.2 of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
Randolph M. Brombacher, Esq.
Saavedra Goodwin
312 SE 17th Street, Second Floor
Fort Lauderdale, FL 33316

On which entry in Part 1 or Part 2 did you list the original creditor?
Line 4.8 of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
Karen Acker
c/o David K. Markarian, Esq.
The Markarian Group
2925 PGA Boulevard, Suite 204
Palm Beach Gardens, FL 33410

On which entry in Part 1 or Part 2 did you list the original creditor?
Line 4.8 of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
David Acker
c/o David K. Markarian, Esq.
The Markarian Group
2925 PGA Boulevard, Suite 204
Palm Beach Gardens, FL 33410

On which entry in Part 1 or Part 2 did you list the original creditor?
Line 4.8 of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Part 4:    Add the Amounts for Each Type of Unsecured Claim**

6.  **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | Total Claim | |
|---|---|---|---|---|---|
| **Total claims** | 6a. | **Domestic support obligations** | 6a. | $ | 0.00 |

| | | | |
|---|---|---|---|
| **from Part 1** | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ | 70,244.02 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ | 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | 70,244.02 |

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ | 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ | 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ | 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 1,000,491.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 1,000,491.00 |

| | | | |
|---|---|---|---|
| Debtor 1 | Mark Steven Acker | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | 22-22359 | | |

☐ Check if this is an amended filing

# Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1.  **Do you have any executory contracts or unexpired leases?**
    ☒ No. Check this box and file this form with the court with your other schedules.    You have nothing else to report on this form.
    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| Name, Number, Street, City, State and ZIP Code | |
| 2.1 | |
| Name | |
| Number          Street | |
| City                        State          ZIP Code | |
| 2.2 | |
| Name | |
| Number          Street | |
| City                        State          ZIP Code | |
| 2.3 | |
| Name | |
| Number          Street | |
| City                        State          ZIP Code | |
| 2.4 | |
| Name | |
| Number          Street | |
| City                        State          ZIP Code | |
| 2.5 | |
| Name | |
| Number          Street | |
| City                        State          ZIP Code | |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Mark Steven Acker | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | 22-22359 | | |

☐ Check if this is an amended filing

# Official Form 106H
# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

☐ No
☒ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☒ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| | *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|---|
| 3.1 | Rochelle Acker 2305 Round Pointe Drive Haverstraw, NY 10927 | ☐ Schedule D, line _____ ☒ Schedule E/F, line 2.1 ☐ Schedule G _____ Internal Revenue Service |

| | |
|---|---|
| Debtor 1 | Mark Steven Acker |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION |
| Case number (If known) | 22-22359 |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Employment

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Employment status** | ☐ Employed<br>☒ Not employed | ☒ Employed<br>☐ Not employed |
| | **Occupation** | Retired Police Officer | Teacher's Aide |
| | **Employer's name** | | Haverstraw-Stony Point Central School |
| | **Employer's address** | | 65 Chapel Street<br>Garnerville, NY 10923 |
| | **How long employed there?** | | |

### Part 2: Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ 3,183.44 |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ 0.00 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $ 0.00 | $ 3,183.44 |

|  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here ............................................................ | 4. | $ _____ 0.00 | $ _____ 3,183.44 |

**5. List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ _____ 0.00 | $ _____ 655.83 |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ _____ 0.00 | $ _____ 95.51 |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ _____ 0.00 | $ _____ 0.00 |
| 5d. | Required repayments of retirement fund loans | 5d. | $ _____ 0.00 | $ _____ 0.00 |
| 5e. | Insurance | 5e. | $ _____ 0.00 | $ _____ 0.00 |
| 5f. | Domestic support obligations | 5f. | $ _____ 0.00 | $ _____ 0.00 |
| 5g. | Union dues | 5g. | $ _____ 0.00 | $ _____ 58.44 |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ _____ 0.00 + | $ _____ 0.00 |

| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ _____ 0.00 | $ _____ 809.78 |
|---|---|---|---|---|
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ _____ 0.00 | $ _____ 2,373.66 |

**8. List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ _____ 0.00 | $ _____ 0.00 |
| 8b. | Interest and dividends | 8b. | $ _____ 0.00 | $ _____ 0.00 |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ _____ 0.00 | $ _____ 0.00 |
| 8d. | Unemployment compensation | 8d. | $ _____ 0.00 | $ _____ 0.00 |
| 8e. | Social Security | 8e. | $ _____ 2,537.00 | $ _____ 0.00 |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ _____ 0.00 | $ _____ 0.00 |
| 8g. | Pension or retirement income | 8g. | $ _____ 0.00 | $ _____ 0.00 |
| 8h. | Other monthly income. Specify: Worker's Compensation | 8h.+ | $ _____ 1,551.94 + | $ _____ 0.00 |

| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 4,088.94 | $ 0.00 |
|---|---|---|---|---|

| 10. | **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 4,088.94 + $ 2,373.66 = $ 6,462.60 |
|---|---|---|---|

**11.** State all other regular contributions to the expenses that you list in *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____                                                                    11.  +$ _____ 0.00

**12.** **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies                                    12.  $ _____ 6,462.60

**Combined monthly income**

**13.** Do you expect an increase or decrease within the year after you file this form?
☒ No.
☐ Yes. Explain: _____

Debtor 1        Mark Steven Acker

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION

Case number      22-22359
(If known)

Check if this is:
- [ ] An amended filing
- [ ] A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses                                    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1:   Describe Your Household

1. **Is this a joint case?**
   - [x] No. Go to line 2.
   - [ ] Yes. **Does Debtor 2 live in a separate household?**
     - [ ] No
     - [ ] Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   [x] No

   Do not list Debtor 1 and    [ ] Yes.   Fill out this information for
   Debtor 2.                               each dependent..............

   Do not state the
   dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | [ ] No  [ ] Yes |
| _____ | _____ | [ ] No  [ ] Yes |
| _____ | _____ | [ ] No  [ ] Yes |
| _____ | _____ | [ ] No  [ ] Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   [x] No   [ ] Yes

### Part 2:   Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

**Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)**

| | Your expenses |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.        4. $ _____ 3,705.00

   **If not included in line 4:**

   4a.  Real estate taxes                                        4a. $ _____ 0.00
   4b.  Property, homeowner's, or renter's insurance            4b. $ _____ 50.00
   4c.  Home maintenance, repair, and upkeep expenses           4c. $ _____ 50.00
   4d.  Homeowner's association or condominium dues             4d. $ _____ 0.00

5. **Additional mortgage payments for your residence,** such as home equity loans   5. $ _____ 0.00

6. **Utilities:**
   6a.  Electricity, heat, natural gas                          6a. $ _____ 250.00
   6b.  Water, sewer, garbage collection                        6b. $ _____ 0.00
   6c.  Telephone, cell phone, Internet, satellite, and cable services   6c. $ _____ 200.00

| | | | |
|---|---|---|---|
| 6d. | Other. Specify: | 6d. $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. $ | 650.00 |
| 8. | **Childcare and children's education costs** | 8. $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | 50.00 |
| 10. | **Personal care products and services** | 10. $ | 50.00 |
| 11. | **Medical and dental expenses** | 11. $ | 50.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | 150.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | 50.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ | 20.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a.  Life insurance | 15a. $ | 230.00 |
| | 15b.  Health insurance | 15b. $ | 0.00 |
| | 15c.  Vehicle insurance | 15c. $ | 150.00 |
| | 15d.  Other insurance. Specify: | 15d. $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | 0.00 |
| 17. | **Installment or lease payments:** | | |
| | 17a.  Car payments for Vehicle 1 | 17a. $ | 0.00 |
| | 17b.  Car payments for Vehicle 2 | 17b. $ | 0.00 |
| | 17c.  Other. Specify: | 17c. $ | 0.00 |
| | 17d.  Other. Specify: | 17d. $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | |
| | 20a.  Mortgages on other property | 20a. $ | 0.00 |
| | 20b.  Real estate taxes | 20b. $ | 0.00 |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| | 20e.  Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. | **Other:** Specify: | 21. +$ | 0.00 |

22. **Calculate your monthly expenses**

| | | |
|---|---|---|
| 22a. Add lines 4 through 21. | $ | 5,655.00 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| 22c. Add line 22a and 22b.  The result is your monthly expenses. | $ | 5,655.00 |

23. **Calculate your monthly net income.**

| | | |
|---|---|---|
| 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | 6,462.60 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 5,655.00 |
| 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | 807.60 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☒ No.

☐ Yes.   | Explain here:

Fill in this information to identify your case:

| Debtor 1 | Mark Steven Acker | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | 22-22359 | | |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☒ No

☐ Yes. Name of person _____ Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

X /s/ Mark Steven Acker                    X _____
Mark Steven Acker                             Signature of Debtor 2
Signature of Debtor 1

Date   July 13, 2022                          Date _____

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | Mark Steven Acker | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK, WHITE PLAINS DIVISION | | |
| Case number (if known) | 22-22359 | | |

☐ Check if this is an amended filing

## Official Form 107

## Statement of Financial Affairs for Individuals Filing for Bankruptcy                04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.   If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

**1.    What is your current marital status?**

☒  Married
☐  Not married

**2.    During the last 3 years, have you lived anywhere other than where you live now?**

☒  No
☐  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

**3.    Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☒  No
☐  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

**4.    Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☒  No
☐  Yes. Fill in the details.

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Sources of income Check all that apply. | Gross income (before deductions and exclusions) |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                 Best Case Bankruptcy

**5.    Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐  No
☒  Yes. Fill in the details.

| | Debtor 1<br>Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) | Debtor 2<br>Sources of income<br>Describe below. | Gross income<br>(before deductions and exclusions) |
|---|---|---|---|---|
| **For last calendar year:**<br>(January 1 to December 31, 2021 ) | Social Security Benefits | $30,443.00 | | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2020 ) | Social Security Benefits | $30,048.00 | | |

---

**Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy**

**6.    Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐  No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

☐  No.    Go to line 7.

☐  Yes    List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

☒  Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☒  No.    Go to line 7.

☐  Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

**7.    Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**

*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

☒  No
☐  Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

**8.    Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**

Include payments on debts guaranteed or cosigned by an insider.

☒  No
☐  Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

| Part 4: | Identify Legal Actions, Repossessions, and Foreclosures |
|---------|--------------------------------------------------------|

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody
   modifications, and contract disputes.

   ☐ No
   ☒ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---------------------------|--------------------|-----------------|--------------------|
| Chubb National Insurance Company v. Mark Acker<br>031483/2022 | Underinsured Motorist | Supreme Court of the State of New York<br>County of Rockland | ☒ Pending<br>☐ On appeal<br>☐ Concluded |
| Rogers, Habas & Eisen, P.C. v. Mark Acker and Rochelle Acker<br>036817/2018 | Collection | Supreme Court of the State of New York<br>County of Rockland | ☒ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ☒ No. Go to line 11.
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---------------------------|----------------------------------------------------|------|----------------------|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
    ☒ No
    ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---------------------------|---------------------------------------|-----------------------|--------|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
    ☒ No
    ☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---------|--------------------------------------|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
    ☒ No
    ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|-------------------------------------------------------------------------------------------------------------|--------------------|--------------------------|-------|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
    ☒ No
    ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|--------------------------------------------------------------------------------------------------------------------------------------|-------------------------------|-----------------------|-------|

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                                          Best Case Bankruptcy

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☒ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

| Part 7: | List Certain Payments or Transfers |
|---|---|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☒ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Kirby Aisner & Curley LLP<br>700 Post Road, Suite 237<br>Scarsdale, NY 10583<br>www.kacllp.com<br>Rochelle Acker (Wife) | | 06/15/2022 | $26,800.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

☒ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☒ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

☒ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20.   Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☒ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21.   Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

☒ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22.   Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

☒ **No**
☐ **Yes. Fill in the details.**

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**   Identify Property You Hold or Control for Someone Else

23.   Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

☒ **No**
☐ **Yes.   Fill in the details.**

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

☒   *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
☒   *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
☒   *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24.   Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

☒ **No**
☐ **Yes. Fill in the details.**

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**25.** **Have you notified any governmental unit of any release of hazardous material?**

☒ No
☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| | | | |

**26.** **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☒ No
☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|
| | | | |

### Part 11:   Give Details About Your Business or Connections to Any Business

**27.** **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)
☐ A partner in a partnership
☐ An officer, director, or managing executive of a corporation
☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies.   Go to Part 12.
☒ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| MSA Consulting Corp.<br>47 Tranquility Road<br>Suffern, NY 10901 | | EIN:   13-3955910<br><br>From-To |

**28.** **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☒ No
☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

### Part 12:   Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

/s/ Mark Steven Acker _____       _____
Mark Steven Acker                                   **Signature of Debtor 2**
**Signature of Debtor 1**

**Date**   July 13, 2022 _____       **Date**   _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
☒ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
☒ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

> You are an individual filing for bankruptcy, and
>
> Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

## The types of bankruptcy that are available to individuals

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

> Chapter 7 - Liquidation
>
> Chapter 11 - Reorganization
>
> Chapter 12 - Voluntary repayment plan for family farmers or fishermen
>
> Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $78 | administrative fee |
| +    $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

> most taxes;
>
> most student loans;
>
> domestic support and property settlement obligations;

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com                                                          Best Case Bankruptcy

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

## Chapter 11: Reorganization

|   | $1,167 | filing fee |
|---|---|---|
| + | $571 | administrative fee |
|   | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

**Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.**

**Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.**

**You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.**

**Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|---|---|
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|---|---|
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

**Warning: File Your Forms on Time**

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

# United States Bankruptcy Court
## Southern District of New York, White Plains Division

| In re | Mark Steven Acker | | Case No. | 22-22359 |
|---|---|---|---|---|
| | | Debtor(s) | Chapter | 11 |

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ **FLAT FEE**

| | | |
|---|---|---|
| For legal services, I have agreed to accept ..................................................... | $ | |
| Prior to the filing of this statement I have received ....................................... | $ | |
| Balance Due ..................................................................................................... | $ | |

☒ **RETAINER**

| | | |
|---|---|---|
| For legal services, I have agreed to accept and received a retainer of........................... | $ | 26,800.00 |
| The undersigned shall bill against the retainer at an hourly rate of............................... | $ | 550.00 |

[Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved fees and expenses exceeding the amount of the retainer.

2. The source of the compensation paid to me was:

   ☐ Debtor    ☒ Other (specify):    Rochelle Acker, Debtor's Wife

3. The source of compensation to be paid to me is:

   ☐ Debtor    ☒ Other (specify):    The Debtor and the fees are personally guaranteed by Debtor's Wife.

4. ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
       a. To give advice to the Debtor with respect to its powers and duties as Debtor in Possession and the continued management of its property and affairs.
       b. To negotiate with creditors of the Debtor and work out a plan of reorganization and take the necessary legal steps in order to effectuate such a plan including, if need be, negotiations with the creditors and other parties in interest.
       c. To prepare the necessary answers, orders, reports and other legal papers required for the Debtor's protection from its creditors under Chapter 11 of the Bankruptcy Code.
       d. To appear before the Bankruptcy Court to protect the interest of the Debtor and to represent the Debtor in all matters pending before the Court.
       e. To attend meetings and negotiate with representatives of creditors and other parties in interest.
       f. To advise the Debtor in connection with any potential sale of the business.
       g. To represent the Debtor in connection with obtaining post-petition financing, if necessary.
       h. To take any necessary action to obtain approval of a disclosure statement and confirmation of a plan of reorganization.
       i. To perform all other legal services for the Debtor which may be necessary for the preservation of the Debtors estate and to promote the best interests of the Debtor, its creditors and it

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
       Representation in an Adversary Proceeding, subject to further agreement with the Debtor.

In re    Mark Steven Acker                                          Case No.    22-22359
                    Debtor(s)

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
## (Continuation Sheet)

**CERTIFICATION**

        I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

July 13, 2022                                           /s/ Dawn Kirby
*Date*                                                  Dawn Kirby
                                                        *Signature of Attorney*
                                                        Kirby Aisner & Curley LLP
                                                        700 Post Road
                                                        Suite 237
                                                        Scarsdale, NY 10583
                                                        (914) 401-9500   Fax:
                                                        dkirby@kacllp.com
                                                        *Name of law firm*

EXHIBIT "D"

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-22359

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    MARK STEVEN ACKER,

8

9              Debtor.

10

11   - - - - - - - - - - - - - - - - - - - -x

12              Office of the United States Trustee

13              Southern District of New York

14              201 Varick Street, Room 1006

15              New York, NY 10014

16              July 20, 2022

17              2:04 p.m.

18

19

20   341 Meeting of Creditors

21

22

23   B E F O R E:

24   SHANNON SCOTT

25   TRUSTEE

1 A P P E A R A N C E S :

2

3 UNITED STATES DEPARTMENT OF JUSTICE

4    Attorney for the U.S. Trustee

5    201 Varick Street, Suite 1006, 10th floor

6    New York, New York 10014

7

8 BY: SHANNON SCOTT

9

10 KIRBY AISNER & CURLEY LLP

11    Attorney for the Debtor

12    700 Post Road, #237

13    Scarsdale, NY 10583

14

15 BY: DAWN KIRBY

16

17 TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, LLP

18    Attorney for Karen Acker, David Acker, Robert Acker

19    900 Third Avenue

20    New York, NY 10022

21

22 BY: MICHAEL RIELA

23

24

25

1 A P P E A R A N C E S :

2

3 DAVIDOFF HUTCHER & CITRON LLP

4    Attorneys for Karen Acker, David Acker

5    605 Third Avenue

6    New York, BY 10158

7

8 BY: JAMES GLUCKSMAN

9    ROBERT RATTET

10    MAX DUVAL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 Transcribed by: Sonya Ledanski Hyde

1        P R O C E E D I N G S

2    MS. SCOTT: Hello?

3    MS. KIRBY: Yes. Just give me one second.

4    MS. SCOTT: All right. All right, everyone. Let

5 the record reflect that today is -- good afternoon -- July

6 20, 2022. The time is 2:04 p.m. This is the meeting of In

7 re Mark Steven Acker, Case Number 22-22359.

8    My name is Shannon Scott. I am a trial attorney

9 in the Office of the United States Trustee, a component of

10 the U.S. Department of Justice, and I am the presiding

11 officer at this hearing.

12    Pursuant to the Judicial Code, the United States

13 Trustee supervises the administration of bankruptcy cases

14 under the Bankruptcy Code. The Debtor is required to appear

15 to be examined under oath regarding the bankruptcy case. By

16 law, the examination must be and is being recorded. All

17 persons questioning the Debtor must state their names and

18 indicate who they represent.

19    At this time, I would like to take appearances of

20 who is on the phone. I will start with the Debtor and the

21 Debtor's counsel. Please state your name and address for

22 the Debtor.

23    MS. KIRBY: Good afternoon --

24    MR. ACKER: Mark Acker --

25    MS. KIRBY: Oh, go ahead, Mark.

1    MR. ACKER: Mark Acker, 2305 Round Pointe Drive,

2 Haverstraw, New York 10927.

3    MS. SCOTT: Okay, and --

4    MS. KIRBY: And Dawn Kirby --

5    MS. SCOTT: Go ahead.

6    MS. KIRBY: Dawn Kirby, Kirby Aisner & Curley,

7 representing the Debtor.

8    MS. SCOTT: Okay. Just one thing, for example,

9 Mr. Acker, you kind of broke up. If you're on speaker, it

10 might be best to just not be on speaker or put yourself very

11 close to the phone. A lot of the answer was in and out and

12 it just wasn't clear.

13    All right. I'm going to take the next appearance

14 --

15    MR. ACKER: Okay.

16    MS. SCOTT: I will clarify on the record though

17 after I swear you in the Debtor's address and whatnot. But

18 I want to take the creditors' appearances. One by one, can

19 one person go and let's try and do this orderly. Proceed.

20    MR. RIELA: Good afternoon, Ms. Scott. My name is

21 Michael Riela, from the law firm Tannenbaum Helpern Syracuse

22 & Hirschtritt. I'm representing Karen and David Acker with

23 respect to the meeting today. I understand that both Karen

24 and David are also dialed in, as well as their uncle, Robert

25 Acker.

1    MS. SCOTT: Okay. Okay. That was very clear.
2 Thank you. An y other creditors on the phone?
3    MR. GLUCKSMAN: Yes. We represent Mark and Karen
4 -- David and Karen as well. Davidoff Hutcher & Citron,
5 James Glucksman. And I think is Robert Rattet on the line
6 as well as Max DuVal?
7    MR. RATTET: (Indiscernible) on the line.
8    MR. GLUCKSMAN: Okay, and we are for Karen and
9 David Acker.
10    MS. SCOTT: Okay. Are you like -- can you explain
11 why there's two counsel? I mean, is one specific counsel
12 for a specific reason?
13    MR. RIELA: Sure. Let me explain this. This is
14 Michael Riela. I had been involved in this case through
15 now. I am actually leaving my law firm effective this
16 Friday to take an in-house counsel job. So the Davidoff
17 firm after today is going to represent David and Karen
18 throughout the case.
19    I'm involved with today because I've had a little
20 bit of involvement with matters prepetition and Karen and
21 David thought it would be most efficient for me to handle
22 the questioning for today's meeting. But after today's
23 meeting, you will not see me again.
24    MS. SCOTT: All right. Perfect. Thank you.
25 Okay. Anyone else?

1    MR. RIELA: You're welcome.
2    MS. SCOTT: Thank you. Okay. Anybody else that I
3 haven't heard from? Okay. Will the Debtor please raise
4 your right hand? Mr. Acker --
5    MR. ACKER: It's raised.
6    MS. SCOTT: Okay. Mr. Acker, do you swear or
7 affirm to tell the truth, the whole truth and nothing but
8 the truth?
9    MR. ACKER: Yes. I do.
10    MS. SCOTT: Okay, and I know you answered this
11 before. But you were breaking up a little bit. So will you
12 please state your full name, current address and last four
13 digits of your Social Security for the record?
14    MR. ACKER: Okay. It's Mark Acker. It's 2305
15 Round Pointe Drive in Haverstraw, New York 10927, and the
16 last four digits, 2375.
17    MS. SCOTT: Thank you. That was much clearer.
18 And Ms. Kirby, can you please make your appearance on the
19 record for the Debtor?
20    MR. ACKER: Good afternoon. Dawn Kirby, Kirby
21 Aisner & Curley, representing the Debtor. Thank you.
22    MS. SCOTT: Thank you. Mr. Acker, did you read
23 the petitions, schedules, statements and related documents
24 before you signed them?
25    MR. ACKER: Yes, ma'am.

1    MS. SCOTT: Do you wish to make any amendments to
2 the petitions, schedules or statements at this time?
3    MR. ACKER: Dawn has one --
4    MS. KIRBY: This is Dawn Kirby --
5    MR. ACKER: Yeah.
6    MS. KIRBY: There is one change. We went over
7 everything in detail before this call, and I mistakenly
8 listed a company named MSA Consulting Corp, which actually
9 belongs and has for a very long time to the Debtor's wife,
10 not the Debtor. So I'm going to need to make an amendment
11 on that.
12    MS. SCOTT: Okay, and Mr. Acker, you have
13 authorized the filings of the petitions, schedules,
14 statements and related documents in this case; is that
15 correct?
16    MR. ACKER: Yes, ma'am.
17    MS. SCOTT: Have you ever filed for
18 bankruptcy before?
19    MR. ACKER: No. I have not.
20    MS. SCOTT: And have you established a post-
21 petition bank account, a debtor in possession bank account
22 at this time?
23    MR. ACKER: I did. But it was -- the bank kind of
24 messed up (indiscernible) I've had to do it now.
25    MS. SCOTT: Okay.

1    MR. ACKER: With the DIP account.
2    MS. KIRBY: This is Dawn. I can clarify. Mr.
3 Acker was -- prepetition banked with Chase which, as we all
4 know on this call, will only sometimes do DIP accounts for
5 existing clients. Mr. Acker went and asked for that and
6 brought the proof of the bankruptcy filing and somebody
7 opened up an account which he believed was a debtor in
8 possession account. But when he provided me the documents,
9 it was very unclear.
10    So he went back to the bank, and the fellow who
11 opened the account said, well, I'm not sure what that is.
12 Let me talk to my supervisor and we'll call you when we can
13 take care of it. So we're working on it.
14    MS. SCOTT: Okay.
15    MS. KIRBY: We may have to use a different bank if
16 ultimately they won't do.
17    MS. SCOTT: Okay. I will say just for that
18 purpose, I'm going to leave the meeting open. But I'll get
19 to that at the end of the -- at the end of the meeting.
20 Okay. Mr. Acker, what type of insurance do you presently
21 have?
22    MR. ACKER: Personal insurance, like life
23 insurance?
24    MS. SCOTT: Yeah. Any type of insurance. Do you
25 have auto, medical, homeowner's, renter's?

3 (Pages 6 - 9)

1      MR. ACKER:  Yeah.  Yeah.  I have life insurance
2  and on one vehicle, one trailer, I have vehicle insurance
3  and trailer insurance.
4      MS. SCOTT:  Okay, and homeowner's?
5      MR. ACKER:  Homeowner's?  It's a little
6  complicated.  But I believe I have a percentage in a
7  homeowner's.  I'm not sure.  I have to kind of leave that to
8  Dawn because we've been trying to figure that out.
9      MS. KIRBY:  I can clarify.  Mr. Acker and his wife
10  use an insurance agent who sent over maybe ten pages of
11  documents to me.  However we need to arrange a call with the
12  insurance agent because the first set of documents go from
13  Page 4 of 8 through Page 8 of 8 (indiscernible) documents,
14  same thing, go through Page (indiscernible) there are things
15  that are missing here.
16      MS. SCOTT:  Okay.
17      MS. KIRBY:  It seems apparent from what's here,
18  although it's confusing, that there's renter's insurance,
19  that there is homeowner's insurance and (indiscernible)
20  insurance.
21      MS. SCOTT:  Okay.  Okay.  So --
22      MS. KIRBY:  But I need to work on getting you the
23  full documents and confirm all that and --
24      MS. SCOTT:  Okay.  That's -- okay.  That's an open
25  item then.  So Mr. Acker, you list 47 Tranquility Road,

1  Suffern, New York on your schedules as property owned as a
2  joint tenant; is that correct?
3      MR. ACKER:  That's --
4      MS. SCOTT:  Okay, and you own that with your wife?
5      MR. ACKER:  That is correct.
6      MS. SCOTT:  Okay, and it's not tenancy by the
7  entirety?
8      MR. ACKER:  I'm not sure what that means.  I'm
9  sorry.
10      MS. SCOTT:  Okay, and you listed the value as $1.5
11  million; is that correct, the value of the entire property -
12  -
13      MR. ACKER:  That's --
14      MS. SCOTT:  -- not just your interest; is that
15  correct?
16      MR. ACKER:  That's -- yes.
17      MS. SCOTT:  Okay.  So you also list the current
18  value of the portion you own as $750,000; is that correct?
19      MR. ACKER:  Just bear with me for one second.
20      MS. SCOTT:  Sure.
21      MR. ACKER:  There's a mortgage (indiscernible) so
22  that may be high.  I don't know how that would work.
23      MS. SCOTT:  Well, I guess my point is that you're
24  claiming a joint tenancy.  So you're claiming that the
25  percentage of value is half of the $1.5.  So the current

1  value of the portion you own which is listed on the
2  schedules is $750,000; is that correct?
3      MR. ACKER:  After I pay the mortgage, yes.
4      MS. SCOTT:  Okay.
5      MS. KIRBY:  I'm sorry.  Mr. Acker (indiscernible)
6  question correctly --
7      MR. ACKER:  No, no.  That's -- that's -- yeah,
8  that was --
9      MS. KIRBY:  Mr. Acker, on the PDF of the schedules
10  that you have in front of you, it's on Page 3 of 36, that's
11  where Ms. Scott is looking.  And if you do recall, you
12  called me and we went over this question a day ago.
13      MS. SCOTT:  Right.  I'm not asking about the
14  mortgage technically.  I'm only asking about the percentage
15  -- the current value of the portion you own as an individual
16  debtor.
17      MR. ACKER:  I would say -- but I'm kind of
18  confused.  What does the mortgage take first?  Because, I
19  mean, obviously the 750 and 750 split is $1.5 million.  But
20  that doesn't include paying the mortgage.
21      MS. SCOTT:  Right.  I'm not asking you about the
22  mortgage.  I'll get to that question in a minute.  I'm just
23  asking the percentage of --
24      MR. ACKER:  Okay.
25      MS. SCOTT:  -- your portion of the value that you

1  own is $750,000 is what you listed; is that correct?
2      MR. ACKER:  That's correct.
3      MS. SCOTT:  Okay.  Just bear with me.  if I'm
4  silent, it's because I'm on my computer taking notes.  Okay,
5  and on Schedule D for the creditors who have claims secured
6  by property, you list PHH Mortgage Services, and the amount
7  of the claim, and this is secured by, as listed, the
8  property at 47 Tranquility Road, you list the amount of the
9  claims of the secured creditor as approximately $699,000; is
10  that correct?
11      MR. ACKER:  That's correct.
12      MS. SCOTT:  Okay.
13      MS. KIRBY:  And I don't know if you want
14  additional information.  But that's the amount of the proof
15  of claim that they filed.  That's where we got that number.
16      MS. SCOTT:  Oh, okay.  Okay.  That's good to know.
17  Thank you.  Mr. Acker, you list on creditors who have
18  unsecured claims an Internal Revenue Service claim in the
19  amount of $70,244.02 and a priority amount of $66,475.28.
20  What is that?  What is that derived from?  Is that just
21  general IRS personal tax claims?
22      MR. ACKER:  No.  There was a period in 2019 that I
23  needed to cash out my IRAs and my investment, and there were
24  penalties on that just because I had to pay attorney fees
25  and stuff like that.

1      MS. SCOTT: Okay.

2      MR. ACKER: So that's where that came from.

3      MS. SCOTT: All right, and Mr. Acker, what is your

4   occupation currently?

5      MR. ACKER: Completely disabled at this time.

6      MS. SCOTT: Okay, and what did you do prior to

7   being disabled?

8      MR. ACKER: I was a police officer in Rockland

9   County, New York. I worked for two agencies.

10      MS. SCOTT: Okay, and how long were you engaged in

11   that line of work?

12      MR. ACKER: Thirty (indiscernible) --

13      MS. SCOTT: I'm sorry. You cut out. Thirty?

14   Thirty?

15      MR. ACKER: Thirty years. Thirty years. That's

16   correct.

17      MS. SCOTT: Thirty years. Okay, and how -- can

18   you describe what put you on disability? What happened?

19      MR. ACKER: Yeah. I was a -- I'm a police

20   motorcycle instructor, and I was going to a detail in New

21   Jersey and catastrophic failure on my motorcycle which put

22   me down the Palisades Parkway, and then I had a near fatal -

23   - it was basically a near fatal accident.

24      MS. SCOTT: Okay. So was that -- I mean, you were

25   on your way to work? Did you receive any compensation from

1   your employer for that? Can you describe how that works?

2      MR. ACKER: Yes. I was -- I was already

3   (indiscernible) already. So I was on (indiscernible) on

4   going to Jersey. I receive every two weeks $716.

5      MS. SCOTT: Okay, and that's worker's

6   compensation?

7      MR. ACKER: That's correct.

8      MS. SCOTT: And do you receive disability from

9   either the state or your employer at all, any other

10   disability?

11      MR. ACKER: I'm taking SSDI. It's Social Security

12   Disability.

13      MS. SCOTT: Okay. So your income since the

14   accident which was prepetition and currently is the worker's

15   comp and the SSDI; is that correct?

16      MR. ACKER: That's correct.

17      MS. SCOTT: And do you have any other sources of

18   income?

19      MR. ACKER: No, ma'am.

20      MS. SCOTT: Okay. I did want to clarify that I

21   believe the analyst at the U.S. Trustee's office at the IDI

22   meeting, it was answered or testified that your wife, who's

23   not -- a non-debtor, she is involved in some businesses, as

24   well as Ms. Kirby stating she's going to be amending the

25   petition.

1      I just want to clarify on the record that the

2   Debtor does not have any ownership interest directly or

3   indirectly in your non-debtor wife's business or businesses;

4   is that correct?

5      MR. ACKER: That's correct.

6      MS. SCOTT: Okay, and I notice the Debtor did not

7   list any payments to any monthly credit card as expenses on

8   the petition and schedules. Does the Debtor make any

9   payments, credit card payments, any monthly credit card

10   payments?

11      MR. ACKER: (indiscernible) small amount to

12   American (indiscernible) that's it.

13      MS. SCOTT: I'm sorry. That --

14      MR. ACKER: My wife pays those bills.

15      MS. SCOTT: Okay.

16      MR. ACKER: (indiscernible) pays them. I don't

17   pay them.

18      MS. SCOTT: So your wife pays your credit card

19   bills?

20      MR. ACKER: Yes.

21      MS. SCOTT: Okay.

22      MR. ACKER: Well, yeah. I would say yes.

23      MS. SCOTT: And are you living at the residence,

24   your -- the home that you own with your wife? Do you live

25   there?

1      MR. ACKER: No. We do not.

2      MS. SCOTT: So do you -- okay. So do you rent?

3   Do you rent the premises where you live now? I'll get to --

4   I'll get to the property. But do you pay rent to someone

5   and live -- because you don't live there?

6      MR. ACKER: Yes (indiscernible) to the

7   (indiscernible) location.

8      MS. SCOTT: I'm sorry. You broke up a little bit.

9   I heard you said you pay rent and then what did you say?

10      MR. ACKER: In Haverstraw. That's the Haverstraw

11   address I gave you earlier.

12      MS. SCOTT: Okay. Okay, and how much is that rent

13   monthly?

14      MR. ACKER: It's about $3,400. My wife also pays

15   that as well.

16      MS. SCOTT: Okay, and so -- just give me a second.

17   So the property that you own in Suffern, is that vacant?

18      MR. ACKER: That is correct. It's vacant.

19      MS. SCOTT: Okay, and is the mortgage in the

20   Suffern property, is that being paid up to date? Is there a

21   foreclosure action? What is the status?

22      MR. ACKER: It's paid up to date. My wife is

23   paying that as well.

24      MS. SCOTT: Okay, and how about real estate taxes?

25      MR. ACKER: Taxes, we're behind by I think

5 (Pages 14 - 17)

1 (indiscernible) --
2          MS. SCOTT: I'm sorry. I don't know if I heard --
3 I heard you say you were behind by I think, and then I
4 didn't hear anything.
5          MR. ACKER: Yeah. Two years.
6          MS. SCOTT: Okay. Two years, and that's property
7 taxes?
8          MR. ACKER: That's correct.
9          MS. SCOTT: All right, and I want to ask you about
10 the legal actions listed. If you can -- I'll just go one by
11 one. There's two here. Chubb National Insurance v. Mark
12 Acker, could you please give me the status of that action?
13          MR. ACKER: I was in -- I was T-boned on patrol in
14 my squad car on my village and the individual who hit me
15 maxed on his insurance at $25,000. So the attorney is going
16 after Chubb for the balance of what he feels is the
17 reasonable compensation.
18          MS. SCOTT: Okay. So the insurance company, your
19 insurance company, your employer's insurance company or the
20 uninsured --
21          MR. ACKER: No, mine.
22          MS. SCOTT: Yours
23          MR. ACKER: My insurance company.
24          MS. SCOTT: Okay. Because it says Chubb v. Mark
25 Acker.

1          MR. ACKER: The other --
2          MS. SCOTT: It says you're the defendant.
3          MR. ACKER: Yeah.
4          MS. SCOTT: Okay.
5          MR. ACKER: Did I answer that correctly?
6          MS. SCOTT: Well, there may be some cross-claims.
7 But what is the status? Is there any -- there's no judgment
8 in that case; is that correct?
9          MR. ACKER: Yeah. There's no (indiscernible) at
10 all in that. No.
11          MS. SCOTT: Okay, and I see that's a 2022 case.
12 So it's fairly recent; is that correct?
13          MR. ACKER: That's correct.
14          MS. SCOTT: Okay, and the Rogers, Habas & Eisen v.
15 Mark Acker and Rochelle Acker, what is that case? What is
16 the subject matter of that case?
17          MR. ACKER: That was also an estate matter. But
18 that was satisfied. So they just never removed it off the
19 docket.
20          MS. SCOTT: Oh, okay. I'm getting to another set
21 of questions. Just give me a second.
22          MR. ACKER: Not a problem.
23          MS. SCOTT: Ms. Kirby, can you just point me to
24 the -- oh, I found it. Okay. Never mind. Okay. Can you
25 give me some background and an explanation as to the

1 unsecured debt that's listed on 4.8 for the Estate of
2 Stanley Acker?
3          MR. ACKER: What page is that on?
4          MS. SCOTT: Sixteen of thirty-six.
5          MR. ACKER: Okay. That's the judgment.
6          MS. SCOTT: Okay. It's a judgment. So the --
7          MR. ACKER: That's the judgment.
8          MS. SCOTT: Okay, and that was -- was that
9 litigated in state court?
10          MR. ACKER: In West Palm Beach --
11          MS. SCOTT: I'm sorry. I didn't hear the last --
12 what was that?
13          MR. ACKER: That was in West Palm Beach.
14          MS. SCOTT: West Palm Beach. Okay, and what was
15 the subject matter of the now judgment?
16          MR. ACKER: It's still out there, still pending.
17          MS. SCOTT: Okay. What was the dispute?
18          MR. ACKER: An estate matter in regards to, oh God
19 -- there was a dispute in regards to opinions as far as how
20 the estate was being run and what I felt was correct and
21 what the other two parties felt was correct, and the dispute
22 -- the tail end of the trial, over the last four days of the
23 trial, three or four days of the trial took place after my -
24 - I had the near fatal accident. And I wasn't in a position
25 to defend myself, and the last four days of the trial

1 destroyed me. Basically that's what happened.
2          MS. SCOTT: Okay. Is this a default judgment?
3          MR. ACKER: I don't believe so.
4          MS. SCOTT: Okay, and you had counsel representing
5 you at the time?
6          MR. ACKER: The counsel representing me at the
7 time was part-time after I had the accident. She didn't --
8 she said she was only going to deal with the defense but not
9 do anything on the offense, and that's the reason why I feel
10 there's -- the failure of this case came against me.
11          MS. SCOTT: Are you -- have you made any attempt
12 to dispute the judgment in the court that issued it?
13          MR. ACKER: We tried to appeal it, and the appeal
14 did not work as well because I just -- as I said, I don't
15 have -- I didn't have and I don't have the money for
16 aggressive legal (indiscernible) .
17          MS. SCOTT: Okay, and to confirm, the Estate of
18 Stanley Acker is your father; is that correct?
19          MR. ACKER: That's correct.
20          MS. SCOTT: Okay. Have you filed your annual tax
21 returns? Did you file for 2021?
22          MR. ACKER: '19, '20, '21. I believe I did. Yes.
23          MS. SCOTT: Okay. Are you entitled to any
24 refunds?
25          MR. ACKER: $400 I think was one refund. The

6 (Pages 18 - 21)

1 other one was $50.

2      MS. SCOTT: Okay. Do you individually have any

3 ownership interests in any business, either directly or

4 indirectly?

5      MR. ACKER: No. I do not.

6      MS. SCOTT: Do any businesses or individuals owe

7 you any money?

8      MR. ACKER: Yes. But the money that's owed is

9 money that (indiscernible) insurance company on the police

10 motorcycle.

11      MS. SCOTT: Okay. Is that part of -- can you

12 elaborate? I'm sorry.

13      MR. ACKER: Well, the police motorcycle was my

14 personal vehicle that I used for the escort work. And after

15 the accident, it was $27,000 that they were supposed to pay

16 me. But the broker messed up, and I just didn't have the

17 assets to dispute it. So it's out there and it's went

18 nowhere.

19      MS. SCOTT: Okay. Are you saying your employer

20 collected it?

21      MR. ACKER: No. No one collected it. It was

22 never paid by the insurance company.

23      MS. SCOTT: Okay. What must be done in order for

24 you to successfully reorganize in Chapter 11?

25      MR. ACKER: Put it behind me. I don't know. I

1 mean, it's -- the debt is the main issue --

2      MS. KIRBY: This is Dawn.

3      MR. ACKER: Go ahead, Dawn.

4      MS. KIRBY: Well, I mean, Ms. Scott, the Debtor's

5 significant asset is 47 Tranquility and has been on the

6 market for quite some time. He has a prepetition real

7 estate broker who's engaged and still showing the property.

8 I'm working with her to finalize retention papers.

9 There have been some small bites and offers that weren't

10 solid. But it's -- and the market's softened up a little

11 bit since the interest rates up to 6 percent. But what our

12 goal is, is to find a buyer and sell the property and

13 distribute the proceeds --

14      MS. SCOTT: Okay.

15      MS. KIRBY: -- to creditors.

16      MS. SCOTT: All right.

17      MS. KIRBY: Yeah, and he knows he has to -- the

18 contract has to be approved by the court, the sale has to be

19 approved by the court. We've gone over all of that stuff.

20      MS. SCOTT: Okay. At this time, I'm going to open

21 up the floor to any creditors that wish to ask any

22 questions.

23      MR. RIELA: Thank you, Ms. Scott. This is Michael

24 Riela, of Tannenbaum Helpern again, representing Karen and

25 David Acker, who are also on the line. Their uncle, Robert

1 Acker is also a creditor. I don't represent him personally.

2 But he's also a creditor here.

3      My questions are obviously going to be focused on

4 the documents, Mr. Acker, that you filed with the court. I

5 guess maybe before I begin the questions, just so I don't

6 forget about it, we will -- we do request the following

7 documents from Mr. Acker or his counsel, those being the

8 last two years of Mr. Acker's federal --

9      MS. KIRBY: Michael?

10      MR. RIELA: Yes?

11      MS. KIRBY: Michael, you can just send me an

12 email. I'll work with you on that.

13      MR. RIELA: Okay. Very well. Okay. I will do

14 so. But that'll be federal and state tax returns, bank

15 statements and other financial accounts as well as a title

16 report for the 47 Tranquility Road property. So thank you

17 very much, Ms. Kirby (indiscernible) --

18      MS. KIRBY: Send me an email. I'm very willing to

19 work with you. It's not a problem.

20      MR. RIELA: Thank you so much. Okay. So first

21 couple of questions I have, Mr. Acker, relate to the 47

22 Tranquility Road property. You earlier testified before Ms.

23 Scott that you and your family no longer live at that

24 property. When did you and your wife move out of that

25 property?

1      MR. ACKER: Just around four years ago.

2      MR. RIELA: Four years ago. Okay. Has anyone

3 else other than you or your --

4      MR. ACKER: Correct.

5      MR. RIELA: I'm sorry. Go ahead.

6      MR. ACKER: I said it was approximately four

7 years. I'm sorry.

8      MR. RIELA: Approximately. Okay. Has anyone else

9 other than you and your family lived there since you moved

10 out?

11      MR. ACKER: I had two renters in the very

12 beginning, and then the broker -- the current broker told me

13 to not have any current renters and to have the house deep

14 cleaned so it would sell, which it still has not.

15      MR. RIELA: When did the last renter moved out of

16 the house?

17      MR. ACKER: Well over a year-and-a-half ago.

18      MR. RIELA: And how long have you had this

19 property listed for sale?

20      MR. ACKER: I think about five years or so.

21      MR. RIELA: So you had it listed while you and

22 your wife were still there about five years ago and

23 continuously throughout --

24      MR. ACKER: At the very beginning, correct.

25      MR. RIELA: So I'm now going to turn to, Mr.

1 Acker, your schedules, and I'll point you to the specific
2 ones as the questions come up. Earlier you testified to Ms.
3 Scott that you have no interest in any businesses. However
4 have you been a limited partner of the Stanley Acker Family
5 Limited Partnership within the last year?
6     MR. ACKER: Unknown. I can't even answer that.
7 Based on the way the estate's been run, I have no idea what
8 Karen and David have done. So I can't answer that because
9 I'm not sure.
10     MR. RIELA: So you do not know whether you have
11 any partnership or any interest at all in the entity called
12 Stanley Acker Limited Partnership?
13     MR. ACKER: No. I'd have to look into that to
14 find out.
15     MR. RIELA: When you prepared your schedules and
16 statements of financial affairs, did you undertake a
17 specific review of all of the assets such as interest in
18 businesses?
19     MR. ACKER: Could you repeat that? I'm sorry.
20     MR. RIELA: I'm curious as to what level of due
21 diligence you performed in connection with performing your
22 schedules and statements of financial affairs. You told me
23 just now that you'd look into something that I had just
24 asked about.
25     MS. KIRBY: What specifically are you asking?

1 That's a very --
2     MR. ACKER: In regards to anything which is --
3     MS. KIRBY: -- broad question. Can you specify?
4 Because even I don't know how to answer that. What are you
5 asking?
6     MR. RIELA: So when you prepared your schedules,
7 your schedules and your statement of financial affairs in
8 particular with respect to Number 19 on Schedule A, it's
9 asking for non-publicly-traded stock and interest in
10 incorporated or unincorporated businesses. What level of
11 review did you do to determine how to answer that particular
12 question?
13     MR. ACKER: When it comes to my own -- you know,
14 my wife's businesses and my stuff or whatever, there's
15 really nothing. But if you're talking in regards to
16 anything estate related, I don't get -- it's very difficult.
17 Karen and David end up doing what they feel they
18 want to do with your firm and they've made adjustments.
19 They've removed me off of the officers and I think even some
20 of the companies they've closed a whole range of companies.
21 And I've received nothing that I was purportedly an owner
22 in. So they've -- they basically left me in the lurch here.
23 They don't cc me on stuff. They make decisions on
24 (indiscernible) basis that I'm not aware of.
25     MS. KIRBY: I think we're getting -- we're very

1 far astray of what the 341 meeting is for. Sir, is there is
2 some information that you would like us to have, please send
3 it to us. But the 341 meeting is not a deposition. So if
4 we could just continue --
5     MR. RIELA: No. It's fine. Totally agreed. And
6 the purpose of this was to determine whether Mr. Acker has
7 disclosed all of his assets in his schedules. So let me --
8 just with respect to that, I do have a follow-up question
9 specifically with respect to money that he may have
10 received.
11     Mr. Acker, have you ever received distributions on
12 account of your interest in the Stanley Acker Family Limited
13 Partnership interest in 2021?
14     MR. ACKER: I have received distributions from the
15 Stanley Acker Family Limited Partnership, yes.
16     MR. RIELA: How much did you receive --
17     MS. KIRBY: Sorry. The specific -- the specific
18 question was in 2021. Did you hear that?
19     MR. ACKER: Oh, I don't -- I don't believe in '21.
20 I think everything was prior to. I think it was '20 and
21 under.
22     MR. RIELA: Okay. How about 2020?
23     MR. ACKER: Again, I can't answer that off the top
24 of my head. I'm sorry.
25     MS. KIRBY: These are very detailed, specific

1 questions we can find the answers to. But people generally
2 don't know things like that off the top of their head,
3 when's the last date you got a distribution. But we will be
4 happy to follow up with the information.
5     MR. RIELA: I appreciate that, and the reason I'm
6 asking, for the benefit of everybody here, including Ms.
7 Scott, is that in the statement of financial affairs,
8 Question Number 5, Mr. Acker said his yearly income from
9 Social Security benefits is $30,443 (indiscernible) '20
10 Social Security benefits, $3,048. According to our records,
11 Mr. Acker received approximately $530,000 from the Stanley
12 Acker Family Limited Partnership interest, his interest in
13 that, in 2021. It's not on the schedules provided with the
14 statement of financial affairs. In 2020, we believe it was
15 (indiscernible) --
16     MS. KIRBY: Thank you. Would you please send me
17 that information? It sounds like you didn't call me in
18 advance --
19     MR. RIELA: Sure.
20     MS. KIRBY: -- and there's a lot of information
21 you have that I don't. So I would really appreciate if you
22 would send me what you're talking about.
23     MR. RIELA: I'm sorry. Ms. Scott? I'm sorry.
24     MS. KIRBY: No, no. It's Dawn Kirby. I want to
25 get things right.

8 (Pages 26 - 29)

1     MR. RIELA: All right.

2     MS. KIRBY: So if you are in possession of

3  information that I'm not, please reach out to me. I don't

4  know that. You know, I'm looking right now at the Question

5  Number 5, alimony, child support, Social Security,

6  unemployment, public benefits, pension, rental income,

7  interest dividends, money from lawsuits, royalty and

8  gambling, lottery winnings. I'm not sure it would qualify

9  for that answer. But again --

10     MR. RIELA: Yeah. Look --

11     MS. KIRBY: -- if there's information you want me

12  to have, please let me know.

13     MR. RIELA: Okay. I'll send you stuff. But

14  again, for the record, we believe that these were monies --

15  again, these were examples of other income. It's not just

16  limited to that and that were not listed in Item Number 5 in

17  the statement of financial affairs. I'll move --

18     MS. SCOTT: Well, let me just -- let me just

19  interject --

20     MS. KIRBY: (indiscernible) as to what happened

21  and what should be listed. But I wish you had called me

22  first because this is taking a very long time and it's not

23  supposed to.

24     MS. SCOTT: Well, I just want to interject. This

25  is Shannon Scott, for the U.S. Trustee --

1     MR. RIELA: (indiscernible)

2     MS. SCOTT: Hello. This is Shannon Scott, for the

3  U.S. Trustee. I do believe a $530,000 distribution two

4  years prior to the filing should be listed. I won't

5  identify where at this point.

6     But that is something that I believe would

7  interest creditors. I just wanted to state that on the

8  record, and I understand, Ms. Kirby, you may not have the

9  information. But that seems like something the Debtor would

10  remember of receiving such a large distribution. I just

11  wanted to put that on the record.

12     MR. ACKER: Well, let me -- can I mention one

13  thing?

14     MS. SCOTT: Yes. Go ahead.

15     MR. ACKER: I can tell you that I've had no money

16  and the attorney that's been working on the estate for me

17  who's been working part-time, she's been -- when there's

18  been any distributions, she's taken over 60 percent of any

19  distributions that have come to me in legal fees, put it

20  into her accounts and then she took the money and then it

21  was distributed to me and then the monies that -- whatever

22  monies were left from any distributions I received were

23  basically to pay down all credit cards and all debt that I

24  was able to pay down at that time, if that helps.

25     MR. RIELA: I'm going to go through the next

1  several other entities and trusts very briefly here. To the

2  extent -- just so Ms. Scott and the creditors on the phone

3  and Ms. Kirby, you said you're hearing this for the first

4  time.

5     Mr. Acker, do you have a benefit interest in a

6  1987 life insurance trust?

7     MR. ACKER: I don't know at his juncture based on

8  the way they've been running --

9     MR. RIELA: Do you know what the value of that

10  current -- of that interest in that trust might be?

11     MR. ACKER: No. But anything related to the

12  Estate of Stanley Acker, any companies or anything that

13  you're going to ask me about, as I said, I do not have any

14  definitive information because, as I've said, they've

15  manipulated the numbers from the get-go. So I can't give

16  you any information. I would strongly recommend that you

17  send it to Dawn in writing so we could do some research.

18     MR. RIELA: I guess you'll have the same answer, I

19  suppose, with respect to the Stanley Acker Marital Trust, a

20  different trust?

21     MR. ACKER: That's correct.

22     MR. RIELA: Do you also bear an interest in the

23  Stanley Acker Marital Trust?

24     MR. ACKER: Yes. Karen and David have full

25  control of that trust. I have no idea what they've done

1  with it.

2     MR. RIELA: And I notice in Schedule Number 25,

3  you state that your interest in the Revocable Inter Vivos

4  Stanley Acker Settlor Trust is unknown. Do you have an

5  estimate as to how much your interest in that entity would

6  be?

7     MR. ACKER: I still do not have information on

8  that. I'm sorry.

9     MS. KIRBY: You know, I object to this. This is -

10  - your clients are controlling these items. So Mr. Acker,

11  the Debtor, just testified he's been blacked out from all of

12  this information. They're in possession of it. This is not

13  a proper questioning for a 341 meeting, and I wish you would

14  have called me first because I would have loved to talk

15  these issues through instead of ambushing us at the 341

16  meeting.

17     MR. RIELA: Ms. Scott, if I may proceed, just a

18  few more questions. Here again, I think this may be helpful

19  for understanding perhaps the full scope of Mr. Acker's

20  assets or potential assets.

21     MS. SCOTT: Okay. That was Ms. Kirby speaking.

22  And yes, you can -- this is Shannon Scott. You can ask a

23  few more questions. That's fine.

24     MR. RIELA: Okay. Thank you, Ms. Scott. I'll be

25  very brief here.

1    Mr. Acker, did you incorporate an entity called
2 IMA Construction Corp.?
3    MR. ACKER: That's my wife's company.
4    MR. RIELA: Do you own any equity interest in
5 that?
6    MR. ACKER: No. I do not.
7    MR. RIELA: Did you ever own equity interest in
8 that entity?
9    MR. ACKER: There is no equity. I would say I'm
10 uncertain at this point in the very, very beginning prior to
11 2006.
12    MR. RIELA: Did you ever transfer equity -- any
13 equity interest in that company to your wife?
14    MR. ACKER: I don't have an answer to that because
15 the company's hers. I just don't know how it was
16 transferred over.
17    MR. RIELA: So you're saying it was transferred
18 over?
19    MR. ACKER: I think initially I opened it up. But
20 that was 20, 30 years ago probably and then there was a
21 reasoning. I mean, I had a near fatal bout of cancer in
22 2002 and that's what triggered the protection of what I had
23 to my wife because we weren't sure how the cancer situation
24 was going to pan out.
25    MR. RIELA: Thank you. In early 2021, around

1 February of 2021, did IMA Construction sell its assets,
2 specifically a property located at 50 Tranquility Road?
3    MR. ACKER: That's -- again, that's my wife's
4 company. So you're asking me something that's not mine.
5    MR. RIELA: You do not know the answer to that
6 question?
7    MR. ACKER: I don't want to speak for my wife.
8    MS. KIRBY: He's answered the question.
9    MR. RIELA: I'm curious as to --
10    MR. ACKER: I believe the house was sold. I know
11 the house was sold. That was the asset. But I'm not sure
12 of the date. That's the only problem. I don't know if it
13 was '20 or '21 or earlier.
14    MR. RIELA: Okay. Regardless of the date for now,
15 which you can certainly take a look at, do you know
16 approximately what that property was sold for?
17    MR. ACKER: It was under 500. It was like
18 $400,000-and-something, I think, if I can remember
19 correctly.
20    MR. RIELA: What happened to that money? What
21 happened to that money?
22    MR. ACKER: As I said, it's my wife's --
23    MS. KIRBY: Only if you know. That's a very
24 specific question, and only if you know. Don't guess.
25    MR. ACKER: I have no -- I don't know. I mean,

1 that's easy (indiscernible) --
2    MR. RIELA: Do you have an interest in an entity
3 called Galaxy Fine Art which held a Star Trek collection?
4    MR. ACKER: No. I do not.
5    MR. RIELA: Did you ever have an interest in such
6 an entity?
7    MR. ACKER: In the very -- prior to 2002, I
8 probably did.
9    MR. RIELA: And you do not own that entity
10 anymore?
11    MR. ACKER: No. I do not.
12    MR. RIELA: Well, this entity apparently held a
13 Star Trek collection. Do you have any estimate as to what
14 the value of that collection was?
15    MR. ACKER: I'd have to search that out. That's
16 many years.
17    MR. RIELA: Do you recall representing to anyone,
18 either verbally or in writing, that the collection was worth
19 approximately $1.5 million?
20    MR. ACKER: I don't know. As I said --
21    MS. KIRBY: That's a very broad question. Who did
22 -- who was he speaking to?
23    MR. RIELA: Does he remember telling anybody that
24 he believes that the value of the Star Trek collection was
25 around $1.5 million?

1    MS. KIRBY: You know what --
2    MR. ACKER: I have no --
3    MS. KIRBY: -- we're in a 341 meeting. We're
4 talking about a company that he just testified he hasn't
5 owned for decades and you're asking about the assets of a
6 company he does not own and has not owned for decades.
7 That's not a proper question here. It's not proper.
8    MR. RIELA: We'd be interested in knowing about
9 when he transferred that entity and what consideration he
10 received. Ms. Scott, I have a few more questions. Sorry to
11 take a little while. But there is a lot here, certainly by
12 way of assets that don't appear to have been disclosed. Mr.
13 Acker --
14    MS. KIRBY: I think this might be more appropriate
15 for a 2004 order. It's been an hour. You're asking about
16 assets he does not own so far.
17    MR. RIELA: Obviously, Ms. Scott, you're the
18 presiding officer. I think the intent is to take a Rule
19 2004 examination in any event. But the focus of this has
20 been in connection with (indiscernible) --
21    MS. SCOTT: I'll allow for a few more questions.
22    MS. KIRBY: Well, if you're going to do it anyway,
23 then why do it twice?
24    MR. RIELA: I'm sorry. Ms. Scott was speaking.
25    MS. SCOTT: I'll allow for a few more questions.

10 (Pages 34 - 37)

1  I do think while some questions may be a little bit of a
2  fishing expedition, I do think there are relevant questions
3  with regard to any interest or distributions.  If you can
4  stay on that line of questioning, that would be great.
5       MR. RIELA:  Yes.  Of course I will.  I will.  Mr.
6  Acker, in Schedule A, Item 33, you list that you have no
7  claims against third parties.  Do you have a lawsuit pending
8  against Harley-Davidson pertaining to your accident, your
9  motorcycle accident?
10      MR. ACKER:  No.  That's --
11      MS. KIRBY:  Again, I'm sorry -- there is an
12 amendment we need to make.  I was contacted by Michael
13 Greenspan, who's a local personal injury attorney who I've
14 known from other cases.  There was a lawsuit that I didn't
15 put in the schedules, and I'm sorry, I should have said at
16 the beginning that's another retention application we've
17 been working on.
18      And there's a small tort lawsuit and a products
19 liability which Mr. Greenspan told me realistically
20 ultimately it has zero value whatsoever and he wants to
21 continue it.  And I told him that we will need court
22 authority to do that first.  So you'll see papers on that.
23      MR. RIELA:  Okay.  Thank you, Ms. Kirby.  I won't
24 phrase this as a question in the interest of time but more
25 of a statement because it relates to something that Mr.

1  Acker had said earlier in connection with an answer to Ms.
2  Scott's question.
3       There's actually additional litigation in which
4  Mr. Acker is involved not listed in Item Number 9 in the
5  statement of financial affairs, particularly with respect to
6  a litigation regarding a 1987 trust and also in connection
7  with the Estate of Stanley Acker, litigation which actually
8  is not pending anymore.  There actually was a judgment that
9  was entered in February of 2020.  So just to clarify the
10 record with respect to those litigations.
11      MS. KIRBY:  I will add that I spoke at length with
12 Donna Solomon, Ms. Acker's counsel in the Florida estate
13 matter and was not -- I guess you just said that these were
14 litigations that aren't pending any longer.  I wasn't
15 alerted as to anything (indiscernible) but again you have
16 (indiscernible) sorry, my microphone just broke.  If you
17 have a different opinion or there's a lawsuit in Florida
18 that Ms. Solomon didn't advise me of, please let me know.
19      MR. RIELA:  Thank you.  Mr. Acker, on Question
20 Number 3 of Schedule A, you list a 2001 Chevy Suburban and a
21 trailer.  Have you ever owned a Porsche automobile?
22      MR. ACKER:  Yes.
23      MR. RIELA:  What happened to it?
24      MR. ACKER:  My son sold the Porsche to pay bills.
25      MR. RIELA:  What was (indiscernible) exchange for

1  that sale?
2       MR. ACKER:  What do you mean exchange?  He sold
3  the Porsche for me so I could pay bills.
4       MR. RIELA:  Okay.  How much did he sell it for?
5  I'm sorry.  I should have phrased it that way.  How much did
6  he sell the Porsche for?
7       MR. ACKER:  I think for $40 -- for $40,000 or
8  $45,000 I think he sold it for.
9       MR. RIELA:  When did that sale take place?
10      MR. ACKER:  That I can't tell you off the top of
11 my head.  I know it was quite a few years ago.
12      MR. RIELA:  Did you own -- did you own any other
13 cars or other vehicles during the last two years?
14      MR. ACKER:  The truck and that's it, the 2001
15 Suburban.
16      MR. RIELA:  Did you ever receive a distribution of
17 Elian (ph) jewel cases containing things like diamonds and
18 other precious gems?
19      MR. ACKER:  Yes.  I did.  That was also -- that
20 stuff was used to pay bills as well and all related to the
21 estate.
22      MR. RIELA:  Okay, and which did you receive
23 (indiscernible) --
24      MR. ACKER:  Karen and David know the date on that.
25 I'm not sure.  They have the records.

1       MR. RIELA:  So you do not own that jewelry
2  anymore?
3       MR. ACKER:  As soon as it came in, it was used to
4  pay bills, just like all the other distributions.
5       MR. RIELA:  Okay (indiscernible) --
6       MR. ACKER:  I'm sorry.  Go ahead.
7       MR. RIELA:  Oh, no.  Go ahead.  You were still
8  answering the question.  Please, go ahead.
9       MR. ACKER:  No.  I was just saying that any
10 distributions that have taken place, any, have all been to
11 pay bills and/or legal fees and mostly in the legal fee
12 area.  I mean, I think the estate, I think Karen and David
13 have surpassed $8 or $9 million themselves to fight me.
14      MR. RIELA:  Did you obtain certain property, real
15 property from the Estate of Stanley Acker in or about August
16 of 2020?
17      MR. ACKER:  The date, I don't know.  But the
18 property I received, 3 percent of that property went to the
19 attorney and the rest went to pay bills.
20      MR. RIELA:  When did you -- when did you sell that
21 property?
22      MR. ACKER:  You'd have to talk to Karen and David.
23 They know when I got the -- I basically slipped it after the
24 estate (indiscernible) --
25      MR. RIELA:  Would it be fair to estimate around

11 (Pages 38 - 41)

1 2020?

2 MR. ACKER: No comment. I honestly can't tell you

3 the date on that. All I know is the monies were used to pay

4 bills, whatever was left.

5 MR. RIELA: Okay. So (indiscernible) I'll just

6 note they should have been on Title 5, the statement of

7 financials. But it wasn't. Let me take a look here.

8 MR. ACKER: That's -- it was within the period

9 (indiscernible) okay. Go ahead.

10 MR. RIELA: Okay. In question -- sorry, the

11 answer to Question Number 21 on Schedule A, you state that

12 you have no retirement or pension accounts; is that correct?

13 MR. ACKER: That's correct.

14 MR. RIELA: Did your father give you an IRA that

15 was valued maybe somewhere around $300,000 around 2016?

16 MR. ACKER: No recollection, and if he did, the

17 monies, whatever monies I had were all used to pay legal

18 fees and my bills. So it is what it is.

19 MR. RIELA: You remember -- you remember receiving

20 an IRA (indiscernible) --

21 MR. ACKER: I don't remember 2016. I'm sorry.

22 MR. RIELA: Did you list all of your guns on

23 Schedule A, Item Number 10? You list three Glocks.

24 Anything more?

25 MR. ACKER: That's correct. That's what I --

1 nothing more.

2 MR. RIELA: Did you ever own more guns than that?

3 MR. ACKER: Probably prior to 2002. But whatever

4 additional firearms I had, I gave them to my son and my

5 wife.

6 MR. RIELA: When did you give those guns to your

7 son and your wife?

8 MR. ACKER: Well, prior to 2002.

9 MR. RIELA: Have you ever transferred assets to --

10 have you ever transferred assets to your wife, your children

11 or other family members or friends during the last six

12 years?

13 MS. KIRBY: That's pretty broad. That could be a

14 present. Can you narrow what you're asking, please? Is

15 there something specific on the schedules you're referring

16 to?

17 MR. RIELA: Yeah. I think with respect to the

18 statement of financial affairs, it asks for a one-year

19 lookback with respect to transfers. I asked for six years

20 given that it's the old New York state fraudulent transfer.

21 MS. KIRBY: So excluding gifts or do you want to

22 know (indiscernible) --

23 MR. RIELA: Excluding gifts to minors

24 (indiscernible) --

25 MS. KIRBY: (indiscernible) can you please specify

1 what you're asking?

2 MR. RIELA: I'm not asking about -- we're talking

3 about transfers of material assets. Let's see here. We're

4 talking about transfers of real material assets, equity in

5 businesses, houses, guns, anything like that during the last

6 six years.

7 MS. KIRBY: So from 2014 to current, to today?

8 MR. RIELA: Yes. Yes.

9 MR. ACKER: That's going back too far. And

10 anything that I do is always done -- is always checked with

11 my accountant to make sure that any transfers are done

12 appropriately and based on IRS rules and laws.

13 MR. RIELA: In 2019, did you transfer the title --

14 did you and your wife transfer the title at 47 Tranquility

15 to just your wife only?

16 MR. ACKER: Yes, we did.

17 MR. RIELA: Why did you --

18 MR. ACKER: Because at that point, as I said, most

19 of the assets -- first, 2019, I had a near fatal accident

20 and I'm a hundred percent disabled at this point and still

21 uncertain about where it was going to go, and that's why

22 that asset was switched over to her in 2019.

23 MR. RIELA: Right before you switched over that

24 asset, again, 47 Tranquility from joint ownership between

25 you and your wife to just your wife, did a law firm calls

1 Rogers, Habas & Eisen obtain a judgment against you?

2 MR. ACKER: Yes. At that point they felt they had

3 money due and owing to them. I didn't have the necessary

4 funds to defend myself and the judge -- at that point we

5 ended up putting it back in both names because it wasn't

6 worth the fight or -- I didn't have the monies to fight it

7 basically.

8 MR. RIELA: So do I have it right that you made

9 the transfer -- you and your wife made the transfer of the

10 property in 2019 -- I'm sorry, 2018, forgive me -- to both

11 you, to just your wife after this judgment was entered and

12 then later actually your wife then transferred it back with

13 you jointly.

14 MR. ACKER: Yes, because it wasn't worth the -- we

15 didn't have the money to fight it and (indiscernible) just

16 to transfer it back than to fight it on a legal basis.

17 MR. RIELA: Did a court order you to -- did any

18 court order Ms. Acker, your wife, to transfer the property

19 back to both --

20 MS. KIRBY: This is far beyond the scope of a 341

21 meeting. This is not in the schedules or statements of

22 financial affairs. Court orders are a matter of public

23 record. So feel free to look it up.

24 MR. RIELA: All right. I think this will be my

25 last question and then we'll be doing a Rule 2004 motion, or

1 the Davidoff firm will. Do you owe your brother -- I'm
2 sorry, your father's brother, your uncle, Robert Acker, any
3 money?
4     MR. ACKER: No. I do not.
5     MR. RIELA: I think that is all that I have here,
6 Ms. Scott and Ms. Kirby. Thank you very much for --
7     MS. SCOTT: Okay. Thank you. All right. I'm
8 going to keep the meeting open, and I will adjourn it for
9 two weeks from today. I need it -- I need a DIP account --
10 proof of opening a DIP account. Let me just get my calendar
11 up.
12     Okay. August 3rd at 2 o'clock, and also
13 classification, I believe, on the insurance and if there are
14 any amendments, I may want to review them and ask some
15 questions at that time. So if you don't mind being
16 available, and at this time, I am adjourning the 341
17 meeting.
18     MS. KIRBY: Ms. Scott?
19     MS. SCOTT: Yes.
20     MS. KIRBY: I'm so sorry.
21     MS. SCOTT: It's okay.
22     MS. KIRBY: I have an appearance before Judge
23 Kinsella in the Northern District --
24     MS. SCOTT: Okay.
25     MS. KIRBY: -- on a contested motion to appoint a

1 Chapter 11 trustee at 1 o'clock on August 3rd.
2     MS. SCOTT: All right. You --
3     MS. KIRBY: So I guess I can (indiscernible) --
4     MS. SCOTT: You want to do it --
5     MS. KIRBY: (indiscernible) definitely be more
6 than an hour.
7     MS. SCOTT: Okay. Do you want to do it the 10th?
8 That way we can ensure that everything -- that has plenty,
9 plenty of time for any --
10     MS. KIRBY: Could we do like the 8th or --
11     MS. SCOTT: Yeah. Well --
12     MS. KIRBY: Or even Tuesday, the 2nd --
13     MS. SCOTT: How about the -- how about the 4th?
14 Thursday, the 4th?
15     MS. KIRBY: Well, if I do not win the motion to
16 appoint the trustee, then the movant is going to take
17 depositions of my clients all before --
18     MS. SCOTT: Okay. All right. Did you say
19 Tuesday, the 9th is okay?
20     MS. KIRBY: No. The 9th and 11th, I'm away on
21 vacation. But I could do the 8th or I could do the 2nd.
22     MS. SCOTT: All right. We'll do the 8th at 2:00.
23 Is everyone okay with that schedule if necessary?
24     MR. RIELA: I'll defer to the Davidoff firm.
25     MR. RATTET: Yeah. That's fine.

1     MS. SCOTT: Okay. All right. At this time,
2 adjourning the meeting, the 341 meeting to August 8th, at
3 2:00. Everyone have a nice afternoon. Thank you.
4     MS. KIRBY: Thank you.
5
6
7
8     C E R T I F I C A T I O N
9
10 I, Sonya Ledanski Hyde, certified that the foregoing
11 transcript is a true and accurate record of the proceedings.
12
13
14
15 Sonya Ledanski Hyde
16
17
18
19
20
21
22
23
24
25

1
2 Veritext Legal Solutions
3 330 Old Country Road
4 Suite 300
5 Mineola, NY 11501
6
7 Date: July 25, 2022
8
9
10     (Whereupon these proceedings were concluded at
11 0:00 PM)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 50

```
1               I N D E X
2
3               RULINGS
4                         Page      Line
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 51

```
1           C E R T I F I C A T I O N
2
3       I, Sonya Ledanski Hyde, certified that the foregoing
4   transcript is a true and accurate record of the proceedings.
5
6   Sonya V. Ledanski Hyde
7
8   Sonya Ledanski Hyde
9
10
11
12
13
14
15
16
17
18
19
20  Veritext Legal Solutions
21  330 Old Country Road
22  Suite 300
23  Mineola, NY 11501
24
25  Date:  July 25, 2022
```

| & |
|---|
| **&** 2:10,17 3:3 5:6,22 6:4 7:21 19:14 45:1 |

| 0 |
|---|
| **0:00** 49:11 |

| 1 |
|---|
| **1** 47:1 |
| **1.5** 11:10 12:19 36:19,25 |
| **1.5.** 11:25 |
| **10** 42:23 |
| **10014** 1:15 2:6 |
| **10022** 2:20 |
| **1006** 1:14 2:5 |
| **10158** 3:6 |
| **10583** 2:13 |
| **10927** 5:2 7:15 |
| **10th** 2:5 47:7 |
| **11** 22:24 47:1 |
| **11501** 49:5 51:23 |
| **11th** 47:20 |
| **12151** 51:6 |
| **19** 21:22 27:8 |
| **1987** 32:6 39:6 |

| 2 |
|---|
| **2** 46:12 |
| **20** 1:16 4:6 21:22 28:20 29:9 34:20 35:13 |
| **2001** 39:20 40:14 |
| **2002** 34:22 36:7 43:3,8 |
| **2004** 37:15,19 45:25 |

**2006** 34:11
**201** 1:14 2:5
**2014** 44:7
**2016** 42:15,21
**2018** 45:10
**2019** 13:22 44:13,19,22 45:10
**2020** 28:22 29:14 39:9 41:16 42:1
**2021** 21:21 28:13,18 29:13 34:25 35:1
**2022** 1:16 4:6 19:11 49:7 51:25
**21** 21:22 28:19 35:13 42:11
**22-22359** 1:3 4:7
**2305** 5:1 7:14
**237** 2:12
**2375** 7:16
**25** 33:2 49:7 51:25
**25,000** 18:15
**27,000** 22:15
**2:00** 47:22 48:3
**2:04** 1:17 4:6
**2nd** 47:12,21

| 3 |
|---|
| **3** 12:10 39:20 41:18 |
| **3,048** 29:10 |
| **3,400** 17:14 |
| **30** 34:20 |
| **30,443** 29:9 |
| **300** 49:4 51:22 |
| **300,000** 42:15 |

**33** 38:6
**330** 49:3 51:21
**341** 1:20 28:1,3 33:13,15 37:3 45:20 46:16 48:2
**36** 12:10
**3rd** 46:12 47:1

| 4 |
|---|
| **4** 10:13 |
| **4.8** 20:1 |
| **40** 40:7 |
| **40,000** 40:7 |
| **400** 21:25 |
| **400,000** 35:18 |
| **45,000** 40:8 |
| **47** 10:25 13:8 23:5 24:16,21 44:14,24 |
| **4th** 47:13,14 |

| 5 |
|---|
| **5** 29:8 30:5,16 42:6 |
| **50** 22:1 35:2 |
| **500** 35:17 |
| **530,000** 29:11 31:3 |

| 6 |
|---|
| **6** 23:11 |
| **60** 31:18 |
| **605** 3:5 |
| **66,475.28.** 13:19 |
| **699,000** 13:9 |

| 7 |
|---|
| **70,244.02** 13:19 |
| **700** 2:12 |
| **716** 15:4 |

**750** 12:19,19
**750,000** 11:18 12:2 13:1

| 8 |
|---|
| **8** 10:13,13,13 41:13 |
| **8th** 47:10,21,22 48:2 |

| 9 |
|---|
| **9** 39:4 41:13 |
| **900** 2:19 |
| **9th** 47:19,20 |

| a |
|---|
| **able** 31:24 |
| **accident** 14:23 15:14 20:24 21:7 22:15 38:8 38:9 44:19 |
| **account** 8:21,21 9:1,7,8,11 28:12 46:9,10 |
| **accountant** 44:11 |
| **accounts** 9:4 24:15 31:20 42:12 |
| **accurate** 48:11 51:4 |
| **acker** 1:7 2:18 2:18,18 3:4,4 4:7,24,24 5:1,1 5:9,15,22,25 6:9 7:4,5,6,9,14,14 7:20,22,25 8:3,5 8:12,16,19,23 9:1,3,5,20,22 10:1,5,9,25 11:3 11:5,8,13,16,19 11:21 12:3,5,7,9 |

12:17,24 13:2
13:11,17,22
14:2,3,5,8,12,15
14:19 15:2,7,11
15:16,19 16:5
16:11,14,16,20
16:22 17:1,6,10
17:14,18,22,25
18:5,8,12,13,21
18:23,25 19:1,3
19:5,9,13,15,15
19:17,22 20:2,3
20:5,7,10,13,16
20:18 21:3,6,13
21:18,19,22,25
22:5,8,13,21,25
23:3,25 24:1,4,7
24:21 25:1,4,6
25:11,17,20,24
26:1,4,6,12,13
26:19 27:2,13
28:6,11,12,14
28:15,19,23
29:8,11,12
31:12,15 32:5,7
32:11,12,19,21
32:23,24 33:4,7
33:10 34:1,3,6,9
34:14,19 35:3,7
35:10,17,22,25
36:4,7,11,15,20
37:2,13 38:6,10
39:1,4,7,19,22
39:24 40:2,7,10
40:14,19,24
41:3,6,9,15,17
41:22 42:2,8,13
42:16,21,25
43:3,8 44:9,16
44:18 45:2,14

45:18 46:2,4
**acker's** 24:8
33:19 39:12
**action** 17:21
18:12
**actions** 18:10
**add** 39:11
**additional** 13:14
39:3 43:4
**address** 4:21
5:17 7:12 17:11
**adjourn** 46:8
**adjourning**
46:16 48:2
**adjustments**
27:18
**administration**
4:13
**advance** 29:18
**advise** 39:18
**affairs** 26:16,22
27:7 29:7,14
30:17 39:5
43:18 45:22
**affirm** 7:7
**afternoon** 4:5,23
5:20 7:20 48:3
**agencies** 14:9
**agent** 10:10,12
**aggressive** 21:16
**ago** 12:12 25:1,2
25:17,22 34:20
40:11
**agreed** 28:5
**ahead** 4:25 5:5
23:3 25:5 31:14
41:6,7,8 42:9
**aisner** 2:10 5:6
7:21

**alerted** 39:15
**alimony** 30:5
**allow** 37:21,25
**ambushing**
33:15
**amending** 15:24
**amendment**
8:10 38:12
**amendments** 8:1
46:14
**american** 16:12
**amount** 13:6,8
13:14,19,19
16:11
**analyst** 15:21
**annual** 21:20
**answer** 5:11
19:5 26:6,8 27:4
27:11 28:23
30:9 32:18
34:14 35:5 39:1
42:11
**answered** 7:10
15:22 35:8
**answering** 41:8
**answers** 29:1
**anybody** 7:2
36:23
**anymore** 36:10
39:8 41:2
**anyway** 37:22
**apparent** 10:17
**apparently**
36:12
**appeal** 21:13,13
**appear** 4:14
37:12
**appearance** 5:13
7:18 46:22

**appearances**
4:19 5:18
**application**
38:16
**appoint** 46:25
47:16
**appreciate** 29:5
29:21
**appropriate**
37:14
**appropriately**
44:12
**approved** 23:18
23:19
**approximately**
13:9 25:6,8
29:11 35:16
36:19
**area** 41:12
**arrange** 10:11
**art** 36:3
**asked** 9:5 26:24
43:19
**asking** 12:13,14
12:21,23 26:25
27:5,9 29:6 35:4
37:5,15 43:14
44:1,2
**asks** 43:18
**asset** 23:5 35:11
44:22,24
**assets** 22:17
26:17 28:7
33:20,20 35:1
37:5,12,16 43:9
43:10 44:3,4,19
**astray** 28:1
**attempt** 21:11
**attorney** 2:4,11
2:18 4:8 13:24

18:15 31:16
38:13 41:19
**attorneys** 3:4
**august** 41:15
46:12 47:1 48:2
**authority** 38:22
**authorized** 8:13
**auto** 9:25
**automobile**
39:21
**available** 46:16
**avenue** 2:19 3:5
**aware** 27:24

**b**

**b** 1:23
**back** 9:10 44:9
45:5,12,16,19
**background**
19:25
**balance** 18:16
**bank** 8:21,21,23
9:10,15 24:14
**banked** 9:3
**bankruptcy** 1:1
4:13,14,15 8:18
9:6
**based** 26:7 32:7
44:12
**basically** 14:23
21:1 27:22
31:23 41:23
45:7
**basis** 27:24
45:16
**beach** 20:10,13
20:14
**bear** 11:19 13:3
32:22
**beginning** 25:12
25:24 34:10

38:16
**believe** 10:6
15:21 21:3,22
28:19 29:14
30:14 31:3,6
35:10 46:13
**believed** 9:7
**believes** 36:24
**belongs** 8:9
**benefit** 29:6
32:5
**benefits** 29:9,10
30:6
**best** 5:10
**beyond** 45:20
**bills** 16:14,19
39:24 40:3,20
41:4,11,19 42:4
42:18
**bit** 6:20 7:11
17:8 23:11 38:1
**bites** 23:9
**blacked** 33:11
**boned** 18:13
**bout** 34:21
**breaking** 7:11
**brief** 33:25
**briefly** 32:1
**broad** 27:3
36:21 43:13
**broke** 5:9 17:8
39:16
**broker** 22:16
23:7 25:12,12
**brother** 46:1,2
**brought** 9:6
**business** 16:3
22:3
**businesses** 15:23
16:3 22:6 26:3

26:18 27:10,14
44:5
**buyer** 23:12

**c**

**c** 2:1 3:1 4:1
48:8,8 51:1,1
**calendar** 46:10
**call** 8:7 9:4,12
10:11 29:17
**called** 12:12
26:11 30:21
33:14 34:1 36:3
**calls** 44:25
**cancer** 34:21,23
**car** 18:14
**card** 16:7,9,9,18
**cards** 31:23
**care** 9:13
**cars** 40:13
**case** 1:3 4:7,15
6:14,18 8:14
19:8,11,15,16
21:10
**cases** 4:13 38:14
40:17
**cash** 13:23
**catastrophic**
14:21
**cc** 27:23
**certain** 41:14
**certainly** 35:15
37:11
**certified** 48:10
51:3
**change** 8:6
**chapter** 22:24
47:1
**chase** 9:3
**checked** 44:10

**chevy** 39:20
**child** 30:5
**children** 43:10
**chubb** 18:11,16
18:24
**citron** 3:3 6:4
**claim** 13:7,15,18
**claiming** 11:24
11:24
**claims** 13:5,9,18
13:21 19:6 38:7
**clarify** 5:16 9:2
10:9 15:20 16:1
39:9
**classification**
46:13
**cleaned** 25:14
**clear** 5:12 6:1
**clearer** 7:17
**clients** 9:5 33:10
47:17
**close** 5:11
**closed** 27:20
**code** 4:12,14
**collected** 22:20
22:21
**collection** 36:3
36:13,14,18,24
**come** 26:2 31:19
**comes** 27:13
**comment** 42:2
**comp** 15:15
**companies**
27:20,20 32:12
**company** 8:8
18:18,19,19,23
22:9,22 34:3,13
35:4 37:4,6
**company's**
34:15

| | | | d | defendant 19:2 |
|---|---|---|---|---|

**compensation**
  14:25 15:6
  18:17
**completely** 14:5
**complicated**
  10:6
**component** 4:9
**computer** 13:4
**concluded** 49:10
**confirm** 10:23
  21:17
**confused** 12:18
**confusing** 10:18
**connection**
  26:21 37:20
  39:1,6
**consideration**
  37:9
**construction**
  34:2 35:1
**consulting** 8:8
**contacted** 38:12
**containing**
  40:17
**contested** 46:25
**continue** 28:4
  38:21
**continuously**
  25:23
**contract** 23:18
**control** 32:25
**controlling**
  33:10
**corp** 8:8 34:2
**correct** 8:15
  11:2,5,11,15,18
  12:2 13:1,2,10
  13:11 14:16
  15:7,15,16 16:4
  16:5 17:18 18:8

19:8,12,13
  20:20,21 21:18
  21:19 25:4,24
  32:21 42:12,13
  42:25
**correctly** 12:6
  19:5 35:19
**counsel** 4:21
  6:11,11,16 21:4
  21:6 24:7 39:12
**country** 49:3
  51:21
**county** 14:9
**couple** 24:21
**course** 38:5
**court** 1:1 20:9
  21:12 23:18,19
  24:4 38:21
  45:17,18,22
**credit** 16:7,9,9
  16:18 31:23
**creditor** 13:9
  24:1,2
**creditors** 1:20
  5:18 6:2 13:5,17
  23:15,21 31:7
  32:2
**cross** 19:6
**curious** 26:20
  35:9
**curley** 2:10 5:6
  7:21
**current** 7:12
  11:17,25 12:15
  25:12,13 32:10
  44:7
**currently** 14:4
  15:14
**cut** 14:13

**d**

**d** 4:1 13:5 50:1
**date** 17:20,22
  29:3 35:12,14
  40:24 41:17
  42:3 49:7 51:25
**david** 2:18 3:4
  5:22,24 6:4,9,17
  6:21 23:25 26:8
  27:17 32:24
  40:24 41:12,22
**davidoff** 3:3 6:4
  6:16 46:1 47:24
**davidson** 38:8
**dawn** 2:15 5:4,6
  7:20 8:3,4 9:2
  10:8 23:2,3
  29:24 32:17
**day** 12:12
**days** 20:22,23
  20:25
**deal** 21:8
**debt** 20:1 23:1
  31:23
**debtor** 1:9 2:11
  4:14,17,20,22
  5:7 7:3,19,21
  8:10,21 9:7
  12:16 15:23
  16:2,3,6,8 31:9
  33:11
**debtor's** 4:21
  5:17 8:9 23:4
**decades** 37:5,6
**decisions** 27:23
**deep** 25:13
**default** 21:2
**defend** 20:25
  45:4

**defendant** 19:2
**defense** 21:8
**defer** 47:24
**definitely** 47:5
**definitive** 32:14
**department** 2:3
  4:10
**deposition** 28:3
**depositions**
  47:17
**derived** 13:20
**describe** 14:18
  15:1
**destroyed** 21:1
**detail** 8:7 14:20
**detailed** 28:25
**determine** 27:11
  28:6
**dialed** 5:24
**diamonds** 40:17
**different** 9:15
  32:20 39:17
**difficult** 27:16
**digits** 7:13,16
**diligence** 26:21
**dip** 9:1,4 46:9,10
**directly** 16:2
  22:3
**disability** 14:18
  15:8,10,12
**disabled** 14:5,7
  44:20
**disclosed** 28:7
  37:12
**dispute** 20:17,19
  20:21 21:12
  22:17
**distribute** 23:13
**distributed**
  31:21

**distribution** 29:3 31:3,10 40:16
**distributions** 28:11,14 31:18 31:19,22 38:3 41:4,10
**district** 1:2,13 46:23
**dividends** 30:7
**docket** 19:19
**documents** 7:23 8:14 9:8 10:11 10:12,13,23 24:4,7
**doing** 27:17 45:25
**donna** 39:12
**don't** 11:22 13:13 16:16 17:5 18:2 21:3 21:14,15 22:25 24:1,5 27:4,16 28:19,19 29:2 29:21 30:3 32:7 34:14,15 35:7 35:12,25 36:20 37:12 41:17 42:21 46:15
**drive** 5:1 7:15
**due** 26:20 45:3
**duval** 3:10 6:6

**e**

**e** 1:23,23 2:1,1 3:1,1 4:1,1 48:8 50:1 51:1
**earlier** 17:11 24:22 26:2 35:13 39:1
**early** 34:25
**easy** 36:1
**effective** 6:15
**efficient** 6:21
**eisen** 19:14 45:1
**either** 15:9 22:3 36:18
**elaborate** 22:12
**elian** 40:17
**email** 24:12,18
**employer** 15:1,9 22:19
**employer's** 18:19
**ended** 45:5
**engaged** 14:10 23:7
**ensure** 47:8
**entered** 39:9 45:11
**entire** 11:11
**entirety** 11:7
**entities** 32:1
**entitled** 21:23
**entity** 26:11 33:5 34:1,8 36:2 36:6,9,12 37:9
**equity** 34:4,7,9 34:12,13 44:4
**escort** 22:14
**established** 8:20
**estate** 17:24 19:17 20:1,18 20:20 21:17 23:7 27:16 31:16 32:12 39:7,12 40:21 41:12,15,24
**estate's** 26:7
**estimate** 33:5 36:13 41:25
**event** 37:19
**everybody** 29:6
**examination** 4:16 37:19
**examined** 4:15
**example** 5:8
**examples** 30:15
**exchange** 39:25 40:2
**excluding** 43:21 43:23
**existing** 9:5
**expedition** 38:2
**expenses** 16:7
**explain** 6:10,13
**explanation** 19:25
**extent** 32:2

**f**

**f** 1:23 48:8 51:1
**failure** 14:21 21:10
**fair** 41:25
**fairly** 19:12
**family** 24:23 25:9 26:4 28:12 28:15 29:12 43:11
**far** 20:19 28:1 37:16 44:9 45:20
**fatal** 14:22,23 20:24 34:21 44:19
**father** 21:18 42:14
**father's** 46:2
**february** 35:1 39:9
**federal** 24:8,14
**fee** 41:11
**feel** 21:9 27:17 45:23
**feels** 18:16
**fees** 13:24 31:19 41:11 42:18
**fellow** 9:10
**felt** 20:20,21 45:2
**fight** 41:13 45:6 45:6,15,16
**figure** 10:8
**file** 21:21
**filed** 8:17 13:15 21:20 24:4
**filing** 9:6 31:4
**filings** 8:13
**finalize** 23:8
**financial** 24:15 26:16,22 27:7 29:7,14 30:17 39:5 43:18 45:22
**financials** 42:7
**find** 23:12 26:14 29:1
**fine** 28:5 33:23 36:3 47:25
**firearms** 43:4
**firm** 5:21 6:15 6:17 27:18 44:25 46:1 47:24
**first** 10:12 12:18 24:20 30:22 32:3 33:14 38:22 44:19

fishing 38:2
five 25:20,22
floor 2:5 23:21
florida 39:12,17
focus 37:19
focused 24:3
follow 28:8 29:4
following 24:6
foreclosure
  17:21
foregoing 48:10
  51:3
forget 24:6
forgive 45:10
found 19:24
four 7:12,16
  20:22,23,25
  25:1,2,6
fraudulent
  43:20
free 45:23
friday 6:16
friends 43:11
front 12:10
full 7:12 10:23
  32:24 33:19
funds 45:4

**g**

g 4:1
galaxy 36:3
gambling 30:8
gems 40:18
general 13:21
generally 29:1
getting 10:22
  19:20 27:25
gifts 43:21,23
give 4:3 17:16
  18:12 19:21,25
  32:15 42:14

43:6
given 43:20
glocks 42:23
glucksman 3:8
  6:3,5,8
go 4:25 5:5,19
  10:12,14 18:10
  23:3 25:5 31:14
  31:25 32:15
  41:6,7,8 42:9
  44:21
goal 23:12
god 20:18
going 5:13 6:17
  8:10 9:18 14:20
  15:4,24 18:15
  21:8 23:20 24:3
  25:25 31:25
  32:13 34:24
  37:22 44:9,21
  46:8 47:16
good 4:5,23 5:20
  7:20 13:16
great 38:4
greenspan 38:13
  38:19
guess 11:23 24:5
  32:18 35:24
  39:13 47:3
guns 42:22 43:2
  43:6 44:5

**h**

habas 19:14
  45:1
half 11:25 25:17
hand 7:4
handle 6:21
happened 14:18
  21:1 30:20
  35:20,21 39:23

happy 29:4
harley 38:8
haverstraw 5:2
  7:15 17:10,10
head 28:24 29:2
  40:11
hear 18:4 20:11
  28:18
heard 7:3 17:9
  18:2,3
hearing 4:11
  32:3
held 36:3,12
hello 4:2 31:2
helpern 2:17
  5:21 23:24
helpful 33:18
helps 31:24
high 11:22
hirschtritt 2:17
  5:22
hit 18:14
home 16:24
homeowner's
  9:25 10:4,5,7,19
honestly 42:2
hour 37:15 47:6
house 6:16
  25:13,16 35:10
  35:11
houses 44:5
hundred 44:20
hutcher 3:3 6:4
hyde 3:25 48:10
  48:15 51:3,8

**i**

idea 26:7 32:25
identify 31:5
idi 15:21

ima 34:2 35:1
include 12:20
including 29:6
income 15:13,18
  29:8 30:6,15
incorporate
  34:1
incorporated
  27:10
indicate 4:18
indirectly 16:3
  22:4
indiscernible
  6:7 8:24 10:13
  10:14,19 11:21
  12:5 14:12 15:3
  15:3 16:11,12
  16:16 17:6,7
  18:1 19:9 21:16
  22:9 24:17
  27:24 29:9,15
  30:20 31:1 36:1
  37:20 39:15,16
  39:25 40:23
  41:5,24 42:5,9
  42:20 43:22,24
  43:25 45:15
  47:3,5
individual 12:15
  18:14
individually
  22:2
individuals 22:6
information
  13:14 28:2 29:4
  29:17,20 30:3
  30:11 31:9
  32:14,16 33:7
  33:12

initially 34:19
injury 38:13
instructor 14:20
insurance 9:20
9:22,23,24 10:1
10:2,3,10,12,18
10:19,20 18:11
18:15,18,19,19
18:23 22:9,22
32:6 46:13
intent 37:18
inter 33:3
interest 11:14
16:2 23:11 26:3
26:11,17 27:9
28:12,13 29:12
29:12 30:7 31:7
32:5,10,22 33:3
33:5 34:4,7,13
36:2,5 38:3,24
interested 37:8
interests 22:3
interject 30:19
30:24
internal 13:18
investment
13:23
involved 6:14,19
15:23 39:4
involvement
6:20
ira 42:14,20
iras 13:23
irs 13:21 44:12
issue 23:1
issued 21:12
issues 33:15
item 10:25 30:16
38:6 39:4 42:23

items 33:10
i'm 12:5 14:13
26:20

**j**

james 3:8 6:5
jersey 14:21
15:4
jewel 40:17
jewelry 41:1
job 6:16
joint 11:2,24
44:24
jointly 45:13
judge 45:4 46:22
judgment 19:7
20:5,6,7,15 21:2
21:12 39:8 45:1
45:11
judicial 4:12
july 1:16 4:5
49:7 51:25
juncture 32:7
justice 2:3 4:10

**k**

karen 2:18 3:4
5:22,23 6:3,4,8
6:17,20 23:24
26:8 27:17
32:24 40:24
41:12,22
keep 46:8
kind 5:9 8:23
10:7 12:17
kinsella 46:23
kirby 2:10,15
4:3,23,25 5:4,4
5:6,6,6 7:18,20
7:20 8:4,4,6 9:2
9:15 10:9,17,22

12:5,9 13:13
15:24 19:23
23:2,4,15,17
24:9,11,17,18
26:25 27:3,25
28:17,25 29:16
29:20,24,24
30:2,11,20 31:8
32:3 33:9,21
35:8,23 36:21
37:1,3,14,22
38:11,23 39:11
43:13,21,25
44:7 45:20 46:6
46:18,20,22,25
47:3,5,10,12,15
47:20 48:4
know 7:10 9:4
11:22 13:13,16
18:2 22:25
26:10 27:4,13
29:2 30:4,4,12
32:7,9 33:9
34:15 35:5,10
35:12,15,23,24
35:25 36:20
37:1 39:18
40:11,24 41:17
41:23 42:3
43:22
knowing 37:8
known 38:14
knows 23:17

**l**

large 31:10
law 4:16 5:21
6:15 44:25
laws 44:12
lawsuit 38:7,14
38:18 39:17

lawsuits 30:7
leave 9:18 10:7
leaving 6:15
ledanski 3:25
48:10,15 51:3,8
left 27:22 31:22
42:4
legal 18:10
21:16 31:19
41:11,11 42:17
45:16 49:2
51:20
length 39:11
level 26:20
27:10
liability 38:19
life 9:22 10:1
32:6
limited 26:4,5
26:12 28:12,15
29:12 30:16
line 6:5,7 14:11
23:25 38:4 50:4
list 10:25 11:17
13:6,8,17 16:7
38:6 39:20
42:22,23
listed 8:8 11:10
12:1 13:1,7
18:10 20:1
25:19,21 30:16
30:21 31:4 39:4
litigated 20:9
litigation 39:3,6
39:7
litigations 39:10
39:14
little 6:19 7:11
10:5 17:8 23:10
37:11 38:1

**live** 16:24 17:3,5
17:5 24:23
**lived** 25:9
**living** 16:23
**llp** 2:10,17 3:3
**local** 38:13
**located** 35:2
**location** 17:7
**long** 8:9 14:10
25:18 30:22
**longer** 24:23
39:14
**look** 26:13,23
30:10 35:15
42:7 45:23
**lookback** 43:19
**looking** 12:11
30:4
**lot** 5:11 29:20
37:11
**lottery** 30:8
**loved** 33:14
**lurch** 27:22

**m**

**ma'am** 7:25
8:16 15:19
**main** 23:1
**manipulated**
32:15
**marital** 32:19,23
**mark** 1:7 4:7,24
4:25 5:1 6:3
7:14 18:11,24
19:15
**market** 23:6
**market's** 23:10
**material** 44:3,4
**matter** 1:5 19:16
19:17 20:15,18
39:13 45:22

**matters** 6:20
**max** 3:10 6:6
**maxed** 18:15
**mean** 6:11 12:19
14:24 23:1,4
34:21 35:25
40:2 41:12
**means** 11:8
**medical** 9:25
**meeting** 1:20 4:6
5:23 6:22,23
9:18,19 15:22
28:1,3 33:13,16
37:3 45:21 46:8
46:17 48:2,2
**members** 43:11
**mention** 31:12
**messed** 8:24
22:16
**michael** 2:22
5:21 6:14 23:23
24:9,11 38:12
**microphone**
39:16
**million** 11:11
12:19 36:19,25
41:13
**mind** 19:24
46:15
**mine** 18:21 35:4
**mineola** 49:5
51:23
**minors** 43:23
**minute** 12:22
**missing** 10:15
**mistakenly** 8:7
**money** 21:15
22:7,8,9 28:9
30:7 31:15,20
35:20,21 45:3

45:15 46:3
**monies** 30:14
31:21,22 42:3
42:17,17 45:6
**monthly** 16:7,9
17:13
**mortgage** 11:21
12:3,14,18,20
12:22 13:6
17:19
**motion** 45:25
46:25 47:15
**motorcycle**
14:20,21 22:10
22:13 38:9
**movant** 47:16
**move** 24:24
30:17
**moved** 25:9,15
**msa** 8:8

**n**

**n** 2:1 3:1 4:1
48:8 50:1 51:1
**name** 4:8,21
5:20 7:12
**named** 8:8
**names** 4:17 45:5
**narrow** 43:14
**national** 18:11
**near** 14:22,23
20:24 34:21
44:19
**necessary** 45:3
47:23
**need** 8:10 10:11
10:22 38:12,21
46:9,9
**needed** 13:23
**never** 19:18,24
22:22

**new** 1:2,13,15
2:6,6,20 3:6 5:2
7:15 11:1 14:9
14:20 43:20
**nice** 48:3
**non** 15:23 16:3
27:9
**northern** 46:23
**note** 42:6
**notes** 13:4
**notice** 16:6 33:2
**number** 4:7
13:15 27:8 29:8
30:5,16 33:2
39:4,20 42:11
42:23
**numbers** 32:15
**ny** 1:15 2:13,20
49:5 51:23

**o**

**o** 1:23 4:1 48:8
51:1
**o'clock** 46:12
47:1
**oath** 4:15
**object** 33:9
**obtain** 41:14
45:1
**obviously** 12:19
24:3 37:17
**occupation** 14:4
**offense** 21:9
**offers** 23:9
**office** 1:12 4:9
15:21
**officer** 4:11 14:8
37:18
**officers** 27:19
**oh** 4:25 13:16
19:20,24 20:18

28:19 41:7
**okay** 5:3,8,15
6:1,1,8,10,25
7:2,3,6,10,14
8:12,17,25 9:14
9:17,20 10:4,16
10:21,21,24,24
11:4,6,10,17
12:4,24 13:3,4
13:12,16,16
14:1,6,10,17,24
15:5,13,20 16:6
16:15,21 17:2
17:12,12,16,19
17:24 18:6,18
18:24 19:4,11
19:14,20,24,24
20:5,6,8,14,17
21:2,4,17,20,23
22:2,11,19,23
23:14,20 24:13
24:13,20 25:2,8
28:22 30:13
33:21,24 35:14
38:23 40:4,22
41:5 42:5,9,10
46:7,12,21,24
47:7,18,19,23
48:1
**old** 43:20 49:3
51:21
**ones** 26:2
**open** 9:18 10:24
23:20 46:8
**opened** 9:7,11
34:19
**opening** 46:10
**opinion** 39:17
**opinions** 20:19

**order** 22:23
37:15 45:17,18
**orderly** 5:19
**orders** 45:22
**owe** 22:6 46:1
**owed** 22:8
**owing** 45:3
**owned** 11:1 37:5
37:6 39:21
**owner** 27:21
**ownership** 16:2
22:3 44:24

## p

**p** 2:1,1 3:1,1 4:1
**p.m.** 1:17 4:6
**page** 10:13,13
10:14 12:10
20:3 50:4
**pages** 10:10
**paid** 17:20,22
22:22
**palisades** 14:22
**palm** 20:10,13
20:14
**pan** 34:24
**papers** 23:8
38:22
**parkway** 14:22
**part** 21:7 22:11
31:17
**particular** 27:8
27:11
**particularly**
39:5
**parties** 20:21
38:7
**partner** 26:4
**partnership**
26:5,11,12
28:13,15 29:12

**patrol** 18:13
**pay** 12:3 13:24
16:17 17:4,9
22:15 31:23,24
39:24 40:3,20
41:4,11,19 42:3
42:17
**paying** 12:20
17:23
**payments** 16:7,9
16:9,10
**pays** 16:14,16
16:18 17:14
**pdf** 12:9
**penalties** 13:24
**pending** 20:16
38:7 39:8,14
**pension** 30:6
42:12
**people** 29:1
**percent** 23:11
31:18 41:18
44:20
**percentage** 10:6
11:25 12:14,23
**perfect** 6:24
**performed**
26:21
**performing**
26:21
**period** 13:22
42:8
**person** 5:19
**personal** 9:22
13:21 22:14
38:13
**personally** 24:1
**persons** 4:17
**pertaining** 38:8

**petition** 8:21
15:25 16:8
**petitions** 7:23
8:2,13
**ph** 40:17
**phh** 13:6
**phone** 4:20 5:11
6:2 32:2
**phrase** 38:24
**phrased** 40:5
**place** 20:23 40:9
41:10
**please** 4:21 7:3
7:12,18 18:12
28:2 29:16 30:3
30:12 39:18
41:8 43:14,25
**plenty** 47:8,9
**pm** 49:11
**point** 11:23
19:23 26:1 31:5
34:10 44:18,20
45:2,4
**pointe** 5:1 7:15
**police** 14:8,19
22:9,13
**porsche** 39:21
39:24 40:3,6
**portion** 11:18
12:1,15,25
**position** 20:24
**possession** 8:21
9:8 30:2 33:12
**post** 2:12 8:20
**potential** 33:20
**precious** 40:18
**premises** 17:3
**prepared** 26:15
27:6

prepetition 6:20
9:3 15:14 23:6
present 43:14
presently 9:20
presiding 4:10
37:18
pretty 43:13
prior 14:6 28:20
31:4 34:10 36:7
43:3,8
priority 13:19
probably 34:20
36:8 43:3
problem 19:22
24:19 35:12
proceed 5:19
33:17
proceedings
48:11 49:10
51:4
proceeds 23:13
products 38:18
proof 9:6 13:14
46:10
proper 33:13
37:7,7
property 11:1
11:11 13:6,8
17:4,17,20 18:6
23:7,12 24:16
24:22,24,25
25:19 35:2,16
41:14,15,18,18
41:21 45:10,18
protection 34:22
provided 9:8
29:13
public 30:6
45:22

publicly 27:9
purportedly
27:21
purpose 9:18
28:6
pursuant 4:12
put 5:10 14:18
14:21 22:25
31:11,19 38:15
putting 45:5

q
qualify 30:8
question 12:6,12
12:22 27:3,12
28:8,18 29:8
30:4 35:6,8,24
36:21 37:7
38:24 39:2,19
41:8 42:10,11
45:25
questioning
4:17 6:22 33:13
38:4
questions 19:21
23:22 24:3,5,21
26:2 29:1 33:18
33:23 37:10,21
37:25 38:1,2
46:15
quite 23:6 40:11

r
r 1:23 2:1 3:1
4:1 48:8 51:1
raise 7:3
raised 7:5
range 27:20
rates 23:11
rattet 3:9 6:5,7
47:25

reach 30:3
read 7:22
real 17:24 23:6
41:14 44:4
realistically
38:19
really 27:15
29:21
reason 6:12 21:9
29:5
reasonable
18:17
reasoning 34:21
recall 12:11
36:17
receive 14:25
15:4,8 28:16
40:16,22
received 27:21
28:10,11,14
29:11 31:22
37:10 41:18
receiving 31:10
42:19
recollection
42:16
recommend
32:16
record 4:5 5:16
7:13,19 16:1
30:14 31:8,11
39:10 45:23
48:11 51:4
recorded 4:16
records 29:10
40:25
referring 43:15
reflect 4:5
refund 21:25

refunds 21:24
regard 38:3
regarding 4:15
39:6
regardless 35:14
regards 20:18
20:19 27:2,15
relate 24:21
related 7:23
8:14 27:16
32:11 40:20
relates 38:25
relevant 38:2
remember 31:10
35:18 36:23
42:19,19,21
removed 19:18
27:19
rent 17:2,3,4,9
17:12
rental 30:6
renter 25:15
renter's 9:25
10:18
renters 25:11,13
reorganize
22:24
repeat 26:19
report 24:16
represent 4:18
6:3,17 24:1
representing 5:7
5:22 7:21 21:4,6
23:24 36:17
request 24:6
required 4:14
research 32:17
residence 16:23
respect 5:23
27:8 28:8,9

32:19 39:5,10
43:17,19
**rest** 41:19
**retention** 23:8
38:16
**retirement**
42:12
**returns** 21:21
24:14
**revenue** 13:18
**review** 26:17
27:11 46:14
**revocable** 33:3
**riela** 2:22 5:20
5:21 6:13,14 7:1
23:23,24 24:10
24:13,20 25:2,5
25:8,15,18,21
25:25 26:10,15
26:20 27:6 28:5
28:16,22 29:5
29:19,23 30:1
30:10,13 31:1
31:25 32:9,18
32:22 33:2,17
33:24 34:4,7,12
34:17,25 35:5,9
35:14,20 36:2,5
36:9,12,17,23
37:8,17,24 38:5
38:23 39:19,23
39:25 40:4,9,12
40:16,22 41:1,5
41:7,14,20,25
42:5,10,14,19
42:22 43:2,6,9
43:17,23 44:2,8
44:13,17,23
45:8,17,24 46:5
47:24

**right** 4:4,4 5:13
6:24 7:4 12:13
12:21 14:3 18:9
23:16 29:25
30:1,4 44:23
45:8,24 46:7
47:2,18,22 48:1
**road** 2:12 10:25
13:8 24:16,22
35:2 49:3 51:21
**robert** 2:18 3:9
5:24 6:5 23:25
46:2
**rochelle** 19:15
**rockland** 14:8
**rogers** 19:14
45:1
**room** 1:14
**round** 5:1 7:15
**royalty** 30:7
**rule** 37:18 45:25
**rules** 44:12
**rulings** 50:3
**run** 20:20 26:7
**running** 32:8

**s**

**s** 2:1 3:1 4:1
**sale** 23:18 25:19
40:1,9
**satisfied** 19:18
**saying** 22:19
34:17 41:9
**says** 18:24 19:2
**scarsdale** 2:13
**schedule** 13:5
27:8 33:2 38:6
39:20 42:11,23
47:23
**schedules** 7:23
8:2,13 11:1 12:2

12:9 16:8 26:1
26:15,22 27:6,7
28:7 29:13
38:15 43:15
45:21
**scope** 33:19
45:20
**scott** 1:24 2:8
4:2,4,8 5:3,5,8
5:16,20 6:1,10
6:24 7:2,6,10,17
7:22 8:1,12,17
8:20,25 9:14,17
9:24 10:4,16,21
10:24 11:4,6,10
11:14,17,20,23
12:4,11,13,21
12:25 13:3,12
13:16 14:1,3,6
14:10,13,17,24
15:5,8,13,17,20
16:6,13,15,18
16:21,23 17:2,8
17:12,16,19,24
18:2,6,9,18,22
18:24 19:2,4,6
19:11,14,20,23
20:4,6,8,11,14
20:17 21:2,4,11
21:17,20,23
22:2,6,11,19,23
23:4,14,16,20
23:23 24:23
26:3 29:7,23
30:18,24,25
31:2,2,14 32:2
33:17,21,22,24
37:10,17,21,24
37:25 46:6,7,18
46:19,21,24

47:2,4,7,11,13
47:18,22 48:1
**scott's** 39:2
**search** 36:15
**second** 4:3 11:19
17:16 19:21
**secured** 13:5,7,9
**security** 7:13
15:11 29:9,10
30:5
**see** 6:23 19:11
38:22 44:3
**sell** 23:12 25:14
35:1 40:4,6
41:20
**send** 24:11,18
28:2 29:16,22
30:13 32:17
**sent** 10:10
**service** 13:18
**services** 13:6
**set** 10:12 19:20
**settlor** 33:4
**shannon** 1:24
2:8 4:8 30:25
31:2 33:22
**showing** 23:7
**signature** 51:6
**signed** 7:24
**significant** 23:5
**silent** 13:4
**sir** 28:1
**situation** 34:23
**six** 20:4 43:11
43:19 44:6
**sixteen** 20:4
**slipped** 41:23
**small** 16:11 23:9
38:18

social 7:13 15:11
29:9,10 30:5
softened 23:10
sold 35:10,11,16
39:24 40:2,8
solid 23:10
solomon 39:12
39:18
solutions 49:2
51:20
somebody 9:6
son 39:24 43:4,7
sonya 3:25
48:10,15 51:3,8
soon 41:3
sorry 11:9 12:5
14:13 16:13
17:8 18:2 20:11
22:12 25:5,7
26:19 28:17,24
29:23,23 33:8
37:10,24 38:11
38:15 39:16
40:5 41:6 42:10
42:21 45:10
46:2,20
sounds 29:17
sources 15:17
southern 1:2,13
speak 35:7
speaker 5:9,10
speaking 33:21
36:22 37:24
specific 6:11,12
26:1,17 28:17
28:17,25 35:24
43:15
specifically
26:25 28:9 35:2

specify 27:3
43:25
split 12:19
spoke 39:11
squad 18:14
ssdi 15:11,15
stanley 20:2
21:18 26:4,12
28:12,15 29:11
32:12,19,23
33:4 39:7 41:15
star 36:3,13,24
start 4:20
state 4:17,21
7:12 15:9 20:9
24:14 31:7 33:3
42:11 43:20
statement 27:7
29:7,14 30:17
38:25 39:5 42:6
43:18
statements 7:23
8:2,14 24:15
26:16,22 45:21
states 1:1,12 2:3
4:9,12
stating 15:24
status 17:21
18:12 19:7
stay 38:4
steven 1:7 4:7
stock 27:9
street 1:14 2:5
strongly 32:16
stuff 13:25
23:19 27:14,23
30:13 40:20
subject 19:16
20:15

suburban 39:20
40:15
successfully
22:24
suffern 11:1
17:17,20
suite 2:5 49:4
51:22
supervises 4:13
supervisor 9:12
support 30:5
suppose 32:19
supposed 22:15
30:23
sure 6:13 9:11
10:7 11:8,20
26:9 29:19 30:8
34:23 35:11
40:25 44:11
surpassed 41:13
swear 5:17 7:6
switched 44:22
44:23
syracuse 2:17
5:21

t

t 18:13 48:8,8
51:1,1
tail 20:22
take 4:19 5:13
5:18 6:16 9:13
12:18 35:15
37:11,18 40:9
42:7 47:16
taken 31:18
41:10
talk 9:12 33:14
41:22
talking 27:15
29:22 37:4 44:2

44:4
tannenbaum
2:17 5:21 23:24
tax 13:21 21:20
24:14
taxes 17:24,25
18:7
technically
12:14
tell 7:7 31:15
40:10 42:2
telling 36:23
ten 10:10
tenancy 11:6,24
tenant 11:2
testified 15:22
24:22 26:2
33:11 37:4
thank 6:2,24 7:2
7:17,21,22
13:17 23:23
24:16,20 29:16
33:24 34:25
38:23 39:19
46:6,7 48:3,4
thing 5:8 10:14
31:13
things 10:14
29:2,25 40:17
think 6:5 17:25
18:3 21:25
25:20 27:19,25
28:20,20 33:18
34:19 35:18
37:14,18 38:1,2
40:7,8 41:12,12
43:17 45:24
46:5
third 2:19 3:5
38:7

**thirty** 14:12,13
14:14,15,15,17
20:4
**thought** 6:21
**three** 20:23
42:23
**thursday** 47:14
**time** 4:6,19 8:2,9
8:22 14:5 21:5,7
21:7 23:6,20
30:22 31:17,24
32:4 38:24
46:15,16 47:9
48:1
**title** 24:15 42:6
44:13,14
**today** 4:5 5:23
6:17,19 44:7
46:9
**today's** 6:22,22
**told** 25:12 26:22
38:19,21
**top** 28:23 29:2
40:10
**tort** 38:18
**totally** 28:5
**traded** 27:9
**trailer** 10:2,3
39:21
**tranquility**
10:25 13:8 23:5
24:16,22 35:2
44:14,24
**transcribed** 3:25
**transcript** 48:11
51:4
**transfer** 34:12
43:20 44:13,14
45:9,9,16,18

**transferred**
34:16,17 37:9
43:9,10 45:12
**transfers** 43:19
44:3,4,11
**trek** 36:3,13,24
**trial** 4:8 20:22
20:23,23,25
**tried** 21:13
**triggered** 34:22
**truck** 40:14
**true** 48:11 51:4
**trust** 32:6,10,19
32:20,23,25
33:4 39:6
**trustee** 1:12,25
2:4 4:9,13 30:25
31:3 47:1,16
**trustee's** 15:21
**trusts** 32:1
**truth** 7:7,7,8
**try** 5:19
**trying** 10:8
**tuesday** 47:12
47:19
**turn** 25:25
**twice** 37:23
**two** 6:11 14:9
15:4 18:5,6,11
20:21 24:8
25:11 31:3
40:13 46:9
**type** 9:20,24

**u**

**u.s.** 2:4 4:10
15:21 30:25
31:3
**ultimately** 9:16
38:20

**uncertain** 34:10
44:21
**uncle** 5:24 23:25
46:2
**unclear** 9:9
**understand** 5:23
31:8
**understanding**
33:19
**undertake** 26:16
**unemployment**
30:6
**unincorporated**
27:10
**uninsured** 18:20
**united** 1:1,12
2:3 4:9,12
**unknown** 26:6
33:4
**unsecured** 13:18
20:1
**use** 9:15 10:10

**v**

**v** 18:11,24 19:14
**vacant** 17:17,18
**vacation** 47:21
**value** 11:10,11
11:18,25 12:1
12:15,25 32:9
36:14,24 38:20
**valued** 42:15
**varick** 1:14 2:5
**vehicle** 10:2,2
22:14
**vehicles** 40:13
**verbally** 36:18
**veritext** 49:2
51:20
**village** 18:14

**vivos** 33:3

**w**

**want** 5:18 13:13
15:20 16:1 18:9
27:18 29:24
30:11,24 35:7
43:21 46:14
47:4,7
**wanted** 31:7,11
**wants** 38:20
**way** 14:25 26:7
32:8 37:12 40:5
47:8
**we've** 10:8 23:19
38:16
**weeks** 15:4 46:9
**welcome** 7:1
**went** 8:6 9:5,10
12:12 22:17
41:18,19
**west** 20:10,13,14
**whatnot** 5:17
**whatsoever**
38:20
**when's** 29:3
**wife** 8:9 10:9
11:4 15:22
16:14,18,24
17:14,22 24:24
25:22 34:13,23
35:7 43:5,7,10
44:14,15,25,25
45:9,11,12,18
**wife's** 16:3
27:14 34:3 35:3
35:22
**willing** 24:18
**win** 47:15
**winnings** 30:8

| | |
|---|---|
| **wish** 8:1 23:21 30:21 33:13 | 7:15 11:1 14:9 43:20 |
| **work** 10:22 11:22 14:11,25 21:14 22:14 24:12,19 | **z** |
| **worked** 14:9 | **zero** 38:20 |
| **worker's** 15:5 15:14 | |
| **working** 9:13 23:8 31:16,17 38:17 | |
| **works** 15:1 | |
| **worth** 36:18 45:6,14 | |
| **writing** 32:17 36:18 | |

**x**

**x** 1:4,11 50:1

**y**

**y** 6:2
**yeah** 8:5 9:24
  10:1,1 12:7
  14:19 16:22
  18:5 19:3,9
  23:17 30:10
  43:17 47:11,25
**year** 25:17 26:5
  43:18
**yearly** 29:8
**years** 14:15,15
  14:17 18:5,6
  24:8 25:1,2,7,20
  25:22 31:4
  34:20 36:16
  40:11,13 43:12
  43:19 44:6
**york** 1:2,13,15
  2:6,6,20 3:6 5:2