| | |
|---|---|
| KIRBY AISNER & CURLEY LLP<br>*Attorneys for the Debtor*<br>700 White Plains Road, Suite 237<br>Scarsdale, New York 10583<br>(914) 401-9500<br>Dawn Kirby, Esq.<br>dkirby@kacllp.com | *Hearing Date: September 8, 2022*<br>*Hearing Time: 10:00 a.m.*<br><br>*Reply Deadline: August 31, 2022 at 5:00 p.m.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

MARK STEVEN ACKER,

                                Debtor.
------------------------------------------------------------X

Chapter 11
Case No. 22-22359 (SHL)

## DEBTOR'S OBJECTION TO THE MOTION OF CREDITORS KAREN ACKER AND DAVID ACKER TO CONVERT THE DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 PURSUANT TO 11 U.S.C. §1112(b) AND SUCH OTHER AND <u>FURTHER RELIEF AS THE COURT DEEMS JUST</u>

**TO:**    **HONORABLE SEAN H. LANE,**
           **UNITED STATES BANKRUPTCY JUDGE**

       Mark Steven Acker, the above-captioned debtor and debtor-in-possession ("**Debtor**"), by his attorneys, Kirby Aisner & Curley LLP, hereby submits this objection (the "**Objection**") to the motion (the "**Motion**")[1] of creditors Karen Acker and David Acker ("**Movants**") pursuant to §1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") in support of an order converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code. In support of his Objection, the Debtor respectfully sets forth and alleges as follows:

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1.　The Motion should be denied because Movants have failed to demonstrate the necessary "cause" to warrant conversion. The Debtor's intention in the Chapter 11 Case is to sell his assets for the benefit of all creditors, not just Movants. Prior to filing his Chapter 11 Case, the Debtor was involved in a highly contentious family feud with Movants regarding their father's Estate. By filing the Chapter 11 Case, the Debtor hoped to bring a level professionalism and resolution to the situation. Unfortunately, it is already apparent that Movant's team of lawyers are continuing to escalate the unnecessary animosity between the Debtor and Movants by prosecuting unnecessarily and premature litigation and refusing to use the Chapter 11 Case, bankruptcy venue, and new set of eyes to realize an outcome (besides the one demanded by Movants) that would benefit everyone.

2.　The Motion was filed a mere forty-five (45) days after the Debtor filed his Chapter 11 Case, before the Debtor had an opportunity initiate his reorganization efforts which includes a sale of 47 Tranquility Road, Suffern, New York ("**47 Tranquility**"). The Motion contains a plethora of baseless allegations and unnecessary vitriol, which is demonstrative of Movants' high emotions. The Debtor should be afforded the opportunity to continue his efforts, which will not only provide the greatest recovery to the Debtor's creditors, but in the most expeditious manner. Conversion to Chapter 7 is contrary to the best interests of the Debtor's estate and creditors, and Movants have failed to show cause for such relief.

**RELEVANT BACKGROUND**

3.　It should be clear to the Court that this case involves a highly contentious, decades-long dispute between family members. But more importantly, this case should focus on the Debtor's legitimate desire to sell his most significant asset, 47 Tranquility, for the benefit of <u>all</u>

creditors.

4. The Debtor suffered a traumatic brain injury as a result of a motorcycle accident. He is subsisting on social security and worker's compensation. He recognizes the finality of the judgement and the need to liquidate his real estate investment to pay creditors, which is why the Chapter 11 Case was filed - to have the opportunity to stabilize his personal life, liquidate most of his non-exempt assets, and formulate a plan of reorganization.

5. Although the Debtor is a beneficiary of the Estate and the Marital trust, the Movants pursued a judgment against him, which is in the name of the Estate, which judgment is to be paid from the Estate and/or Marital Trust. Regardless, approximately 89 days before the Petition Date, Movants caused the judgment to be docketed in Rockland County, thereby creating a judgment lien on 47 Tranquility which would create an impediment for the Debtor's sale of the property.

6. The Debtor has already declared his intention to seek to avoid the judgment lien as a preference so that he could sell 47 Tranquility and fund a chapter 11 plan of reorganization. In an effort to streamline the process to allow an expedited sale, and to minimize legal fees to the Debtor and Movants, the Debtor had proposed to Movants consenting to avoid the judgment; however, Debtor's efforts have not been successful. Instead, Movants' energy and resources have been focused and directed on continued attacks against the Debtor, includes filing the premature Motion which contains ramblings of "ancient history", Movants' subjective summary of the litigation, much of which is not relevant to the Motion.

7. Movant argues that the Debtor's Schedules and SOFA are inaccurate. However, much of the "inaccuracies" are mere speculation with no substance behind them. The Debtor's valuation of some of assets are subject to dispute with Movants, or more accurately are subject to the old adage "something is worth what someone will pay" which is a true unknown. The Motion

itself, Movants agreed that these assets are subject to litigation, and they could only provide only estimated values.

**ARGUMENT**

8. Section 1112 of the Bankruptcy Code provides that a bankruptcy court may convert a case from Chapter 11 to Chapter 7 upon a showing of cause. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). "The moving party has the burden of demonstrating cause" for conversion. *Id.*; *In re AdBrite Corp.*, 290 B.R. 209, 218 (Bankr. S.D.N.Y. 2003). "Cause" must be assessed against the backdrop that conversion is a "drastic measure" and should not be done prematurely. *In re Waterworks, Inc.*, 538 B.R. 445, 460 (Bankr. N.D. Ill. 2015) (quoting *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr. N.D.N.Y. 1989)).

9. Only once a court determines that "cause" exists does the court decide whether conversion is in the best interests of the creditors and the estate. *BH S & B Holdings*, 439 B.R. at 346. A bankruptcy court has broad equitable discretion to determine if cause exists and how to ultimately adjudicate the case. *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007); *BH S&B Holdings*, 439 B.R. at 346.

10. Where a debtors' assets or liabilities are comprised of complex lawsuits, Chapter 11 provides the most efficient method of achieving an orderly reorganization because debtors and their advisers are familiar with the nature of the lawsuits and can best manage them. Courts have specifically recognized that an orderly reorganization under Chapter 11 is a better option than liquidation under Chapter 7 in these circumstances. Bench Decision, *In re MSR Hotels & Resorts, Inc.,* No. 13-11512 [Docket No. 157], 2013 WL 5716897, Oct. 1, 2013 Hr'g Tr. at 43:3–12 (Bankr. S.D.N.Y. Oct. 1, 2013) (citing *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985–86 (Bankr. N.D.N.Y. 1988)); *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019) ("[A] chief purpose of the

bankruptcy laws [is] to secure a prompt and effectual resolution of bankruptcy cases within a limited period.") (internal quotations omitted); 7 COLLIER ON BANKRUPTCY ¶ 1106.03.

11. Further, "mere conclusory allegations with no citations to the record or any legal authority for support does not constitute adequate briefing." *In re Julian*, No. 11-30151 LMW, 2012 WL 506573, at *4 (Bankr. D. Conn. Feb. 15, 2012)(citing *MacArthur v. San Juan County,* 495 F.3d 1157, 1160–61 (10th Cir.2007)); *N/S Corp. v. Liberty Mut. Ins. Co.,* 127 F.3d 1145, 1146 (9th Cir.1997)("[W]hile the opening brief is replete with assertions of fact and assertions about the record, it contains a mere handful of generalized record citations. The brief leaves it up to the court to attempt to find the asserted information;" brief stricken from the record (citations omitted).); *Glidepath Holding v. Spherion Corp.,* 590 F.Supp.2d 435, 459 n. 9 (S.D.N.Y.2007) ("[T]he Court has no obligation to consider an argument for which a party has cited no legal authority...."); *Field Day, LLC v. County of Suffolk,* No. 04–CV–2202(DRH)(WDW), 2005 WL 2445794, at * 18 n. 8 (E.D.N.Y. Sept. 30, 2005), *aff'd in part, rev'd in part,* 463 F.3d 167 (2d Cir.2006) ("[B]ecause ... [the defendant] cites absolutely no authority to support ... [its argument], the Court will not consider it.").

12. Movants seek to convert this Chapter 11 Case pursuant to §1112(b)(4)(A) on the basis that there is a continuing or substantial loss to, or diminution of, the estate and the absence of a reasonable likelihood of rehabilitation. The statute is conjunctive. Movants must prove both that there is continuing or substantial loss to the estate, and the absence of a reasonable likelihood of rehabilitation. *In re Adbrite Corp.*, 290 B.R at 214. They have failed to do so.

13. It is important to note that Movants filed their Florida judgment in Rockland County in an attempt to ruin the Debtor's prospects to sell 47 Tranquility for the benefit of all of his creditors and since the chapter 11 filing have refused to cooperate with the sale process.

### A. There Is No Substantial Or Continuing Loss To Or Diminution Of The Estate

14. As conversion is a drastic measure, courts require more than ordinary course administrative costs to establish "substantial" or "continuing" loss for the purposes of §1112(b)(4)(A). Instead, courts undertake a "full evaluation of the present condition of the estate." *In re AdBrite Corp.*, 290 B.R. at 215.

15. Movants complain that the Debtor "is not operating any business, is unable to pay his ongoing financial obligations, and is not generating any substantial income, yet continues to incur administrative expenses in, inter alia, professional fees," and that this satisfies the first prong.[2]

16. Preliminarily, Movants note in footnote 3 of the Motion that the Debtor has no income to pay for the continuing expenses being incurred in connection with 47 Tranquility. The Debtor has stated his intention to sell 47 Tranquility, and proposed doing such in a manner that would be cost effective and minimize attorney fees, which Movant has not agreed to. So, Movant complains that the Debtor cannot afford 47 Tranquility, yet they are blockade and impediment to an immediate sale of the Property, only requiring the Debtor to incur additional legal fees, which ironically is the other reason Movant states for substantial or continuing loss to the Debtor's estate.

17. Where, as here, the primary determinant of the value of the estate is defensive litigation, "the Debtors must expend professional fees", and "the mere accrual of professional fees does not constitute a continuing loss to the estate." *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015). This is particularly so where those professional fees are directly tied to the movant's own litigious behavior. *In re MSR Hotels and Resorts, Inc.*, No. 13-11512 [Docket No. 157], 2013 WL 5716897, Oct. 1, 2013 Hr'g Tr. *In MSR Hotels*, the movant (a litigation

---

[2] Motion ¶31.

claimant) sought to convert the debtor's case to Chapter 7 because the debtor had no business prospects, conceded that it was going to wind down, and had only "three large creditors and a few additional de minimis creditors" and assets that would be sold outside of a plan. *Id.*, Hr'g Tr. at 42:4–20. After affirming that Chapter 11 plans of liquidation are permissible, the court held that because the case encompassed "a long history of protracted and contentious litigation" among various parties, it was apparent that the debtor's bankruptcy was necessary to allow the debtor the "opportunity to implement a sale of its assets free of such litigation." *Id.*, Hr'g Tr. at 44:1–8. As the Court in that case observed, "the appointment of a Chapter 7 Trustee" would not "necessarily result in lower cost to the estate, as it would take extensive time and effort for such a Chapter 7 Trustee to familiarize him or herself with the complex facts and arguments in this case" and the litigation claimant that moved for conversion "cannot have it both ways, and cannot pin the blame for the cost of its own litigation tactics on the debtor." *Id.*, Hr'g Tr. at 44:20–24. The same observations hold true here.

18. Similarly, in *TMT Procurement*, the debtors filed for bankruptcy in June 2013, sold their operational assets in mid-2014, and possessed $16.5 million in cash and certain shares in an unaffiliated company. *Id.*, 534 B.R. at 915–16. The debtors' indirect equity holder filed a motion seeking conversion to Chapter 7 on the basis of § 1112(b)(4)(A), arguing that the estate faced substantial losses and had no prospect of rehabilitation. *Id.* at 917. The court rejected the notion that professional fees constituted a continuing loss to the estate, after "tak[ing] into account the individual circumstances of the debtors", because "the assets [were] relatively stable in value and [were] no longer being diminished through operational losses." *Id.* at 920. Further, the court concluded that "mere accrual of professional fees does not constitute a continuing loss to the estate" because professional fees were necessary to prosecute litigation that would generate a

substantial sum for the estate. *Id*. As long as the "only risk of loss looking forward would be the continued accumulation of professionals' fees", continuing to spend money prosecuting the chapter 11 cases was not an instance of "the debtor in possession [] gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Id*. at 922 (citing *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004)).

19. Here, the Debtor: (i) is able to pay the ongoing costs of the Chapter 11 Case and has a significant amount of unencumbered assets with which to do so; (ii) is not incurring actual operating losses; and (iii) should be afforded the opportunity to attempt propose and confirm his plan and, if successful, wind up and distribute his assets to his creditors, free of Movants' litigations which he has been defending for many years.

20. Conversion to of the Debtor's case is not warranted since any other result would (a) allow Movants, who do not yet have allowed claims, to have it both ways and rely on the costs of Debtor defending against their claims (which would also exist outside of bankruptcy, over a lengthier period of time) as justification for conversion; and (b) deprive the Debtor of his choice of counsel, who have been involved in these litigations from the and require a Chapter 7 trustee and its professionals to spend extensive time and effort familiarizing themselves with complex facts and history (as well as take a commission on any distribution). See *In re All Am. Of Ashburn, Inc.*, 40 B.R. 104, 109 (Bankr. N.D. Ga. 1984) (denying motion to convert to Chapter 7 where administrative expenses may be greater because of duplicative work that would be done by new counsel for the chapter 7 trustee); *In re R & S St. Rose Lenders, LLC*, No. 11-14973, 2016 WL 3536533, at *6 (Bankr. D. Nev. May 18, 2016) (denying motion to convert to Chapter 7 in part due to time and costs involved in appointing trustee to administer the proceeding).

21. Unlike the cases discussed above which are directly on point, the key authorities relied upon by Movants involved vastly different circumstances to the present case. In those cases, common scenarios were where the debtor was administratively insolvent, had professed a desire to rehabilitate but had no chance of any form of rehabilitation from the outside, or had been languishing in Chapter 11 for lengthy periods with no prospect of confirming a plan. *See, e.g., In re Brutsche,* 476 B.R. 298, 305 (Bankr. D.N.M. 2021) (converting a chapter 11 case to a chapter 7 case where after nearly 1 year, the debtor's business of developing and selling real estate was gone after orders that lifted the stay to allow creditors to exercise their rights in that real estate, finding substantial and continuing loss to the estate on account of the substantial decline in equity in the real estate, and mounting legal fees); *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa 2007) (after 9 months in bankruptcy, the case converting to Chapter 7 after the court analyzed and focused on the monthly operating reports which showed a sharp decline in the debtor's cash position, noting as an aside that "further troubling is the extensive administrative costs from professional fees that are accumulating as the case linger in Chapter 11").

22. Interpreting § 1112(b)(4)(A) in the strict reading pressed by Movants is precisely what the Eighth Circuit in *Loop* cited by Movants cautioned against: mandating *per se* conversion of a chapter 11 liquidation case. The Eight Circuit expected that a court will (and should) have discretion to opt neither to convert nor dismiss, despite cause, if the facts and circumstances of the case warrant maintaining the Chapter 11.[3]

**B. There Is A Reasonable Likelihood Of Rehabilitation**

---

[3] Although *Loop* relied on the statute's permissive language, ad under BAPCPA, the statute was subsequently changed to be mandatory rather than permissive (i.e., shall convert, rather than may convert), courts have reaffirmed the "wide discretion" they possess in determining "cause", even after BAPCPA. *See, e.g., In re Prods. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008) ("Moreover, courts have wide discretion in determining what constitutes such cause."); *In re McKenna*, 580 B.R. 1, 10 (Bankr. D.R.I. 2017) ("The Court has wide discretion in determining cause . . . .").

23. Movants further contend that there is no reasonable likelihood of the Debtor's rehabilitating because the Debtor "has no business to rehabilitate, has little to no income, and has already indicated a desire to liquidate."[4] But Movants acknowledge that liquidations are permissible under Chapter 11. In that context, the confirmation of a plan which liquidates assets in the face of the Debtor otherwise not being unable to entirely fund a plan from disposable income is an appropriate avenue of rehabilitation.

24. This is consistent with the purpose of §1112(b)(4)(A), to "prevent the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation", *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995), and the point of rehabilitation: to "stem the debtor's losses and place the debtor's business enterprise back on solid financial footing within a reasonable amount of time." 7 COLLIER ON BANKRUPTCY ¶ 1112.04.

25. Here, Debtor, by way of this Chapter 11 Case, seeks to sell 47 Tranquility to stem the losses from its maintenance, and use his portion of the sale proceeds to fund a payment to his creditors. The Debtor is not taking a gamble at the expense of creditors. Rather, the Debtor has reasonably concluded that his strategy will return more value to his creditors than spending the next decade enmeshed in contentious litigation. Movant therefore clearly has not and cannot demonstrate at this nascent stage, two (2) months into the Chapter 11 Case, that there is a reasonable likelihood that Debtor will fail to rehabilitate.

26. Movant argues that the Debtor cannot confirm plan over their objection, and thus the Debtor cannot successfully reorganize. The Movants offer nothing to support their contention that the Debtor cannot confirm a plan. The Debtor can propose and confirm a plan even in the face

---

[4] Motion ¶35.

of an object by Movants if (i) the allowed claims are not impaired, or (ii) the impaired claims vote to accept.

27. Finally, a finding that there is no reasonable likelihood of rehabilitation is most often made in the context of Chapter 11 cases where debtors have been languishing in bankruptcy for years with no clear path forward. Often they will have tried and failed to confirm a plan, sometimes more than once. *See In re Herb Philipson's Army*, Case No. 18-61376 (DD), 2019 WL 11031654; *Loop Corp. v. U.S. Trustee*, 379 F.3d at 517–19. In that context, it is understandable that a court may want to avoid the additional expense of preparing a plan and disclosure statement and a subsequent solicitation, all the while as the debtor's inability to meet current expenses is deepening. This Chapter 11 Case, however, will be a mere three (3) months old by the hearing on the Motino. It would be extraordinary under the circumstances to deprive the Debtor of his opportunity to prosecute this Chapter 11 Case.

**C. Movants' Baseless Allegations of Incompetence Do Not Warrant Conversion**

28. In an attempt to gain a litigation advantage by converting the Debtor's case to a Chapter 7 Case and having an unfamiliar Chapter 7 Trustee assume the Debtor's role in the litigations, Movants argue that prior findings in the litigations render the Debtor "incompetent" and justify conversion of the Chapter 11 Case.

29. Generally, pre-petition misconduct, alone, is insufficient to support a finding of "cause" under §1112(b); however, when the misconduct is so severe, "it can be given greater weight as part of the totality of circumstances establishing cause." *See In re Picacho Hills Util. Co., Inc.*, 518 B.R. 75, 80 (Bankr. D.N.M. 2014); *In re Mazzocone*, 180 B.R. 782, 788 (Bankr. E.D. Pa. 1995) (holding that a debtor's misconduct during the pendency of the bankruptcy should have been considered by the bankruptcy court in determining the appellant's motion to convert the

debtor's Chapter 11 case); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 [7] (16th ed. 2017) (when parties disagree on conversion, the court should consider, among other factors, "whether the debtor had engaged in misconduct and whether the creditors are in need of a chapter 7 case to protect their interests").

30. Here, Movants attempt to stretch finding by the Florida Court that certain estate related expenses are due from the Debtor to his siblings to support their position that the Debtor is incompetent, as well as Movants' characterization of "material omissions or inconsistencies" regarding his assets. As set forth above and in the Motion, the Debtor listed assets and valued them as unknown, because they were unknown. Due to the ongoing litigation, the value of some of the Debtor's assets are not liquidated and cannot be established. Had the Debtor approximate a value for certain of those assets (which it seems is what Movants want the Debtor to do), Movants would have presumably attacked the Debtor's value and accused the Debtor of misrepresenting the value of his assets. Further, the Debtor's inability to recall specifics related to assets and transactions, some dating six (6) years prior, does not render the Debtor incompetent, rather it renders him human. The Debtor cannot and should not be expected to recall details going back several years. He is not Google.

31. Notably, Movants have not requested their own appraisal or sought any information through a Fed. R. Bankr. P. Rule 2004 examination.

**D. There Are Unusual Circumstances Warranting A Denial Of Conversion**

32. The presence of "unusual circumstances" also warrants denying conversion. Pursuant to § 1112(b)(2), the Court may not convert the case if (1) "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the

best interests of creditors and the estate"; and (2) the debtor or another party in interest establishes that:

    a. "there is a reasonable likelihood that a plan will be confirmed within [applicable] timeframes"; and
    b. "the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) . . . for which there exists a reasonable justification for the act or omission;" and
    c. the act or omission "will be cured within a reasonable period of time fixed by the court."

33. The text of the statute is unclear as to whether the "unusual circumstances" exception can be used if cause for conversion/dismissal under § 1112(b)(4)(A) has been established. *In re Alston*, 756 F. App'x 160, 164 n.3 (3d Cir. 2019) (acknowledging conflicting case law but not deciding the matter). Cases decided before the Bankruptcy Technical Corrections Act of 2010 analyzed unusual circumstances even when "cause" was found under § 1112(b)(4)(A*). See In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008) (finding cause under § 1112(b)(4)(A) and nonetheless proceeding to analysis of unusual circumstances). The Bankruptcy Technical Corrections Act, which incorporated the standalone "unusual circumstances" exception into § 1112(b)(2), was "not intended to enact any substantive change to the Bankruptcy Code." *Pawtucket Credit Union v. Picchi (In re Picchi)*, 448 B.R. 870, 872 (1st Cir. B.A.P. 2011) (citing 156 Cong. Rec. H7158); see also 156 Cong. Rec. S10508 (describing amendments as "purely technical"). Therefore, the better reading of the statute is that the "unusual circumstances" exception applies to all "cause" shown, including under § 1112(b)(4)(A). *See In re Ashley Oaks Dev. Corp.*, 458 B.R. 280, 284 (Bankr. D.S.C. 2011) (holding that "unusual circumstances" exception applies to all "cause" shown).

34. The statute does not define "unusual circumstances", but courts generally look for "unusual facts or circumstances [that] demonstrate that the purpose of chapter 11 would be better

served by maintaining the case as a chapter 11 proceeding." *In re Orbit Petroleum, Inc.*, 395 B.R. at 149–50. Here there are multiple unusual circumstances. First, as described above, maintaining these cases in Chapter 11 (rather than Chapter 7) fulfills the purposes of Chapter 11 of maximizing recovery to legitimate stakeholders, by allowing Debtor and his existing professionals to manage the claims adjudication process concerning longstanding litigations in which Debtor and his existing professionals have been embroiled for years. Second, the Debtor has not had a chance to file a plan, which the Debtor believes will pay all allowed creditor claims in full. Moreover, it is only the ongoing litigations that are preventing a liquidation of the Debtor's assets, namely 47 Tranquility. Movants should not be able to leverage the existence of their own claims and the legal spend they are necessitating by their actions in this case to convert it to Chapter 7, in order to effectively hold-up the case and extract settlement value from Debtor.

35. Finally, proceeding under Chapter 7 would not be any less expensive, and likely more costly, because new professionals would have to learn the complex history, facts and law pertaining to Debtor's litigations (the claims allowance process will be equally necessary in a Chapter 7 proceeding). The balance of costs also disfavors conversion.

36. The Movants' premature Motion filled with reams of baseless hypotheticals and baseless suppositions is demonstrative of their behavior throughout their dispute with their siblings; spending enormous sums in fees to undermine their brother who is seeking to use the benefits of bankruptcy for proper purposes and for the benefit of <u>all</u> his creditors.

## **CONCLUSION**

37. The Debtor filed this Chapter 11 Case with intentions of liquidating his assets and repaying his creditors. The Debtor's estate has taken the necessary and appropriate steps to move this case towards a successful conclusion, only to be thwarted by Movants. The Debtor submits

that conversion is premature and unwarranted and accordingly submits that permitting a chapter 11 plan process to proceed would be in the best interests of his estate and creditors.

**WHEREFORE**, the Debtor respectfully requests that the Court deny the Motion in its entirety and grant the Debtor such other and further relief as is just and proper under the circumstances.

Dated: Scarsdale, New York
      August 29, 2022

                                KIRBY AISNER & CURLEY LLP
                                *Attorneys for the Debtor*
                                700 Post Road, Suite 237
                                Scarsdale, New York 10583
                                (914) 401-9500

                    By: */s/ Dawn Kirby*
                                Dawn Kirby