| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>*Attorneys for David & Karen Acker*<br>120 Bloomingdale Road, Suite 100<br>White Plains, New York 10605<br>(914) 381-7400<br>Robert L. Rattet, Esq.<br>Jonathan S. Pasternak, Esq. | *Hearing Date: September 14, 2022*<br>*Hearing Time: 10:00 a.m.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

MARK STEVEN ACKER,　　　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　Case No. 22-22359 (SHL)

　　　　　　　Debtor.
------------------------------------------------------------------X

**RESPONSE OF DAVID & KAREN ACKER IN FURTHER SUPPORT OF MOTION
FOR ORDER CONVERTING THE DEBTOR'S CHAPTER 11 BANKRUPTCY CASE
TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

　　　　David and Karen Acker (the "Movants"), by their attorneys, Davidoff Hutcher & Citron LLP, as and for their motion, pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code, hereby submit this Response (a) in response to the Objection filed by Mark Steven Acker (the "Debtor") and (b) in further support of Movants' motion to convert the Debtor's case to a case under Chapter 7 (the "Motion").

**I. SUMMARY OF RESPONSE**

　　　　1.　　In sum, the Debtor's Objection does not refute the numerous glaring deficiencies in the ongoing prosecution of the Debtor's Chapter 11 case; nor does it adequately refute the obvious fact that the Debtor is wholly incapable of (a) acting as his own fiduciary or (b) confirming even a liquidating plan over the objection of Movants, who are by far the largest (and one of the

1

only) creditors of the Debtor, holding claims in excess of $2,600,000. It is simply impossible for the Debtor to confirm a 100% plan, given the size of Movants' claims and the lack of sufficient assets (at least those known and disclosed) to pay creditors 100%.

2. The Debtor is also hopelessly conflicted in prosecuting the Chapter 11 case as it is clear from the Debtor's responses made at the 341A and the *continuing* lack of disclosures in his Schedules that the Debtor has no intention of investigating or prosecuting avoidance actions against his spouse and other related parties. There is simply no need to sell the Debtor's assets in a Chapter 11 proceeding. Instead, an independent fiduciary can easily liquidate the Debtor's few remaining assets and conduct a thorough investigation into the Debtor's pre-petition affairs and transfers made during the past six years, of which the Debtor incredulously claims he has absolutely no recollection or supporting documentation.

3. Further, a Florida court has already adjudicated Debtor to be an incompetent fiduciary and bad actor and he now seeks to continue his multi-decade litigious dispute with his siblings, continuing the diminution and dissipation of his (and their) assets, *despite* the Movants' overtures and attempts to reach a global settlement both *before and after* the Chapter 11 case filing. The Debtor has refused to even respond to the Movants' most recent offer and instead tries to paint the Movants in a negative light without providing a shred of evidence. It is apparent from the onset of this Chapter 11 Case, from the Section 341(a) meetings (the "341(a) Meeting") held on July 20, 2022 and August 8, 2022 and from the continuing lack of disclosures[1], that there is substantial cause for conversion of this Chapter 11 Case to a Chapter 7 Case, and that such conversion is in the best interest of creditors.

---

[1] As discussed below, the Schedules, as amended, still contain material omissions. Moreover, the Debtor has failed to file *any* operating reports to date.

## A. THE DEBTOR'S SCHEDULES, AS AMENDED, STILL CONTAIN MATERIAL OMISSIONS AND LACK FULL DISCLOSURE

4. In the Motion, the Movants point out multiple material and glaring omissions of disclosures of assets and income. *See* Motion, Par. 20. In a half-baked attempt to cure these glaring deficiencies, the Debtor filed amended Schedules on August 19, 2022 [ECF Doc. 23]. The amended Schedules, however, continue to omit the following material assets, liabilities, and financial affairs of the Debtor:

    a. Schedule B-10 still fails to fully disclose the Debtor's gun collection which is believed to be sizeable. A trustee will be able to discover and inspect the full extent of the Debtor's gun collection as well as other valuables the Debtor is believed to still possess or has failed to disclose or account for their disposition.

    b. Schedule F continues to fail to disclose the Debtor's liability to his father's brother, Robert Acker.

    c. SOFA 9 fails to disclose that the Debtor is a party to ongoing litigation in the Stanley Acker Trust which was the subject to Movants' recent judgment. Debtor also fails to disclose that the Debtor is a party to ongoing litigation in the 1987 Trust matter, of which Movants are awaiting determination of monetary amounts with respect to judgments already awarded against Debtor.

    d. SOFA 13 fails to disclose the Debtor's transfer of his interests in IMA Construction to his spouse in July 2020 for what is believed to be for no consideration and therefore a fraudulent convenance.[2]

---

[2] The transfer took place 5 months after the Movants won their $960,000 Judgment against the Debtor, and the asset that was held in this corporation was subsequently sold by his wife in January of 2021 for over $500,000.

e. SOFA 5 and 13 fail to disclose the Debtor's transfer and sale of Estate property that he acquired personally in 2020 and sold in January 2021 for $355,000.

f. SOFA 5 fails to disclose the $530,000 distribution received by the Debtor from the Stanley Acker Family Limited Partnership.

g. Schedule B32 and SOFA 27 fail to disclose the Debtor's ownership interests in the last 4 years of entities such as (a) MSA Consulting, (b) IMA Construction, (c) Stanley Acker Family Limited Partnership, (d) the Stanley Acker Trust, (e) the 1987 Trust and (f) The Acker Marital Trust. Such interests of the Debtor exceed over $2,000,000.

Moreover, the amended Schedules fail to disclose and/or account for *multiple* other valuable assets believed to be owned by the Debtor in recent years. Motion, Par. 20. The Debtor has now testified under oath at two 341A meetings and sworn on two sets of declarations concerning his schedules, having amended the schedules only after Movants pointed out numerous omissions and lack of disclosure to the Debtor at the initial 341A meeting. Incredibly, the Debtor's schedules, even as amended, are woefully deficient and lacking in full and complete disclosure, to which the Debtor casts off such omissions cavalierly as "I don't recall", or "I used to pay bills", or, as counsel put, "the Debtor is not google"! The Debtor's use and disposition of over $1,000,000 in trust and partnership related distributions made to him in 2021 simply cannot be explained as having been used to pay ordinary bills and begs for further investigation as to how these proceeds were distributed, transferred, or perhaps even converted into other undisclosed assets. The Debtor continues to demonstrate that he lacks any capacity to be his own fiduciary in this Chapter 11 Case and an independent fiduciary is necessary to maximize Debtor's estate and protect the creditors.

## B. THE DEBTOR IS INCAPABLE OF REORGANIZATION

5. Movants' claims alone may exceed $2,600,000. *See* Motion, Pars. 13 and 14. The Debtor fails to dispute any of these detailed claims in his Objection, merely stating a proof of claim has yet to be filed.

6. The Debtor has only recently moved for a bar date, and the Court has not set such a date yet.

7. Moreover, the Movants' claims are non-dischargeable. Movants are in the process of filing a non-dischargeability complaint to have the Court determine the non-dischargeable nature of Movants' claims against the Debtor.

8. The Debtor asserts in his Schedules that the total current value of his assets is only $757,463.86 before exemptions[3].

9. Since the Debtor claims to be fully disabled and has no source of regular income, the Debtor's promise to confirm a 100% plan is an impossibility.

10. Movants intend to object to any plan promulgated by the Debtor as such plan, in addition to being incapable of feasibility, would result in a far smaller distribution to creditors than Movants believe would occur in a Chapter 7.

11. According to the Debtor, he only has one asset to liquidate – 47 Tranquility (the "47 property"). A plan is not needed to sell the 47 property; moreover, the Debtor has proven incapable of selling this property despite attempting to do so for the past 5 years.[4]

---

[3] In the Objection, the Debtor argues that the Chapter 11 is needed to properly value the Debtor's assets. However, there is no need for this Court to determine the value of any of the very few assets actually disclosed by the Debtor, and the Debtor's other largest asset, his interest in the Stanley Acker Trust and Acker Marital Trust, can and should be determined by the state court in Florida. To that end, Movants have requested the Debtor to consent to a modification of the stay to permit such necessary actions to go forward in Florida to properly administer the parties' father's estates. Despite having made a proposal, similar to the Debtor's failure to respond to Movants' recent global settlement offer, the Debtor has not responded.

12. Even if the Debtor were to successfully sell the 47 property, the Debtor has no other assets or income that he has disclosed, to contribute to a liquidating plan.[5]

13. Given there are no other impaired classes of creditors other than the class including Movants' unsecured claims, the Debtor cannot confirm a plan under either Section 1129(a) or (b) in the face of a rejecting ballot from the Movants. Motion, Par. 44-46. This Court has preemptively curtailed liquidating plan efforts like the one proposed by the Debtor, which plan would only add to the increasing cost and erosion of the Debtor's estate. *See also In re Kanterman*, 88 B.R. 26, 28-29 (S.D.N.Y. 1988) (debtor's plan deemed futile in the face of inability to obtain necessary consents for a plan).

14. Since the Debtor is incapable of proposing a 100% "unimpaired" plan and further incapable of confirming any plan over Movants' rejecting vote, conversion of the Chapter 11 case, as opposed to dismissal, is in the best interests of all creditors[6], given the suspected enormity of avoidance claims belonging to the bankrupt estate. *See Red Bull Taxi Inc.*, Motion at Par. 50.

---

[4] Debtor's assertion that Movants' do not consent to a sale of the 47 property is misplaced. The Debtor has demanded removal of Movants' judgment lien, which, based on the likely size of Debtor's estate in Chapter 7, is an unavoidable lien under Section 547(b)(5). In fact, the Movants support a sale of the 47 property, however it should be conducted by a Chapter 7 trustee to ensure fairness and integrity given the Debtor's past misconduct and mismanagement of his assets. Further, Debtor has had this property on the market for the last 5 years and curiously has not sold in the hottest of markets.

[5] The Debtor has already admitted he cannot confirm a plan of reorganization. Creditors will fare far better in Chapter 7 than under any conceivable Chapter 11 liquidating plan.

[6] Debtor, in his Objection, misleads the Court in implying there are significant other creditors of the Debtor. In fact, other than Movants' claim, the Debtor has scheduled only 7 unsecured claims totaling less than $41,000. Given the non-dischargeable nature of Movants' claims, it is incomprehensible why the Debtor filed for Chapter 11 or would seek to confirm a plan for $41,000 in other unsecured claims, leading one to conclude that the Debtor's true motive in filing the Chapter 11 case was another in a series of bad faith liquidation tactics employed by the Debtor against Movants over the past almost 2 decades.

### C. THE DEBTOR IS INCAPABLE OF ACTING AS HIS OWN FIDUCIARY

15. In the Objection, the Debtor seeks to "sweep under the carpet" the myriad of prejudicial rulings made in Florida court relating to the Debtor's pre-petition misconduct, mismanagement, and malicious conduct against the Movants as if it never happened and that the Court should not consider these bad acts in considering whether an independent fiduciary is required in the Chapter 11 case.

16. First, Debtor misquotes the prevailing law on the impact of pre-petition misconduct on the need for a trustee. In addition to the cases cited in Movants' Motion, Movants refer the Court to *In re Stein & Day, Inc.* 87 B.R. 290, 294 (Bankr. S.D.N.Y. 1988) (pre-petition misconduct grounds alone for appointment of trustee); *see also In re McCordi Corp.*, 6 B.R. 172 (Bankr. S.D.N.Y. 1980) (pre-petition fraudulent conduct cause for appointment of trustee). Given the extreme and habitual nature of the Debtor's pre-petition misconduct and, in particular, breaches of fiduciary duty, the Debtor's estate is put at grave risk and harm if the Debtor were permitted to act as his own fiduciary.

17. Moreover, given (a) the Debtor's overall mismanagement of his Chapter 11 case to date (continuing losses[7], inadequate schedules, no operating reports, etc.) and (b) the Debtor's complete unwillingness to disclose or investigate numerous significant fraudulent transfers likely made by the Debtor during the past six years, it is clearly in the best interests of creditors to convert the case to Chapter 7 so that an independent, competent trustee may properly and fairly administer the Debtor's bankrupt estate.

---

[7] The Debtor continues to fail to admit or address his ongoing losses due to his marginal income and continued ongoing expenses, let alone the significant Chapter 11 professional fees he is incurring, all leading to the continued diminution and erosion of the bankrupt estate.

### D. THE OBJECTION FAILS TO ADDRESS THE DEBTOR'S PRE-PETITION AND POST-PETITION GROSS MISCONDUCT AND MISMANAGEMENT

18. The Objection fails to refute or dispute the material facts that constitute cause for conversion, including (a) the numerous instances of the Debtor's pre-petition misconduct and breach of fiduciary duties as found by the Florida state court; (b) the Debtor's total inability to account for and various questionable transfers or transactions including over the past 2 years; (c) the Debtor's continued material omissions in his Schedules, even after such specific deficiencies were pointed out to him and his counsel at the 341A meetings; (d) the Debtor's failure to respond to 2 separate settlement proposals made by Movants during the Chapter 11 case; and (e) the Debtor's failure to file any monthly operating reports.

19. The Debtor does not refute these critical facts because he simply cannot. Instead, the Debtor has demonstrated to the Court that he only desires to continue his decades-long disputes with Movants at, now, the sole expense and cost of the Debtor's estates and its creditors. This is simply not a legitimate use of Chapter 11, and the estate and creditors will be best served by the immediate appointment of a Chapter 7 trustee who can and will thoroughly investigate the Debtor's assets, liabilities, affairs, and transactions, sell the 47 property and fully administer all of the Debtor's assets *and estate causes of action*[8] to the material benefit of all creditors.

---

[8] The Debtor is both incapable and unwilling to prosecute the estate causes of action that likely exist against his spouse and other related parties.

**WHEREFORE,** the Movants request that the Motion be granted, and the Court enter an order converting the Chapter 11 Case to Chapter 7, with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
August 31, 2022

                                        DAVIDOFF HUTCHER & CITRON LLP

                                        By:  */s/ Jonathan S. Pasternak*
                                              Jonathan S. Pasternak
                                        120 Bloomingdale Road, Suite 100
                                        White Plains, New York 10605
                                        (914) 381-7400
                                        jsp@dhclegal.com

                                        *Attorneys for David & Karen Acker*