| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>120 Bloomingdale Road, Suite 100<br>White Plains, New York 10605<br>(914) 381-7400<br>Jonathan S. Pasternak, Esq.<br>James B. Glucksman, Esq. | *Hearing Date: 10/12/2022*<br>*Hearing Time: 10:00 a.m.* |

*Attorneys for Karen and David Acker*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                                                        Chapter 11
                                                                                                Case No. 22-22359 (SHL)
MARK STEVEN ACKER,

                                        Debtor.
-------------------------------------------------------------------X

## MOTION OF KAREN AND DAVID ACKER FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

**TO THE HONORABLE, SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE:**

1. Karen and David Acker (the "Ackers" or "Movants"), by and through their attorneys, Davidoff Hutcher & Citron LLP, hereby move this Court (the "Motion") pursuant to Section 362(d)(1) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court Southern District of New York (the "Local Rules"), for entry of an order granting relief from the automatic stay to enable Movants and the Debtor to finalize all matters relating to their decedent father's trusts and estates pending in state court (as further defined herein as the "Subject State Court Actions") so that, inter alia, the Debtor and his estate can finally determine the extent of his interests, which is necessary to have the Debtor's bankrupt estate fully administered.

1

2. In support of the Motion, Movants submit the Declaration of Randolph M. Brombacher, Esq., state court attorney for Movants in the 1987 Trust litigation (the "Brombacher Declaration"), and the Declaration of David K. Markarian, Esq., state court attorney for Movants in the Estate litigation, copies of which are annexed hereto as Exhibits "A" and "B", respectively. In further support of the Motion, Movants respectfully state as follows:

**INTRODUCTION**

3. On June 15, 2022 (the "Petition Date"), the above captioned debtor (the "Debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") and has been continued in possession of its property and management of its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee, committees or examiner has been appointed heretofore.

5. This Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**BACKGROUND**

7. The Movants are siblings of the Debtor. Due to bad conduct solely by the Debtor, Movants have been embroiled in vexatious and at times spurious litigation, related to their father's estate, the Estate of Stanley Acker (the "Estate") and the Matter of the Irrevocable Life Insurance Trust, Stanley Acker, Grantor dated October 1, 1987 (the "1987 Trust") (collectively, the "Subject State Court Actions").[1] Both matters are still pending in the Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida, Probate Division (the "Florida Court"). The Debtor has

---

[1] The full caption of the Estate litigation is The Estate of Stanley Acker (Case No: 502008CP001929XXXXSB), and the full caption of the 1987 Trust litigation is In re: Matter of the Irrevocable Life Insurance Trust, Stanley Acker, Grantor dated October 1, 1987 (Case No: 502014CP004382XXXXSB).

already been found to have committed willful and malicious tortious acts and to have breached his duties in his capacity as a fiduciary to the Movants in both cases.

8. Throughout the administration of the Estate, the Debtor breached his fiduciary duties, causing claims arising from numerous and duplicative litigation and legal fees that plagued and sapped the administration of the Estate, which directly harmed the Movants despite previously agreeing to a valid and enforceable settlement agreement to resolve these issues (the "2010 SA").

9. The 2010 SA was entered into by the parties on November 16, 2010, approved by order of the Florida Court, and is a binding contract under Florida law, entered into by the parties willingly, knowingly, and voluntarily.

10. The 2010 SA specifically provides that the parties "have fully discussed this agreement with their attorneys with respect to the meaning and effect of the provisions of this agreement and have voluntarily chosen to sign this agreement, fully understand its content, meaning, legal effect and consequences, free of any duress or coercion.

11. Ultimately, on February 2020 the Florida Court issued a final Judgment (the "Judgment") against the Debtor finding inter alia, the Debtor was in material breach of the 2010 SA. The Judgment specifically supported the Movants' expert witness. The Court specifically found:

> "Mr. Forman's testimony is credible. Pursuant to 733.901(2), Florida Statues, the instant actions filed by KA and DA (Petitioners) are not barred by any statute of limitations. MA's (Debtor's) testimony was not credible and from his actions it is clear he did not adhere to Florida law regarding personal representatives and trustees. Furthermore he failed to abide by multiple terms of the 2010 SA (Settlement Agreement) by taking actions including but not limited to:
>
> a) *Interference with the IRS and Audit, including but not limited to seeking to have a higher tax burden imposed upon the Estate, which led to the imposition of significant additional and unnecessary legal and other professional fees upon the Estate;*

> b) *MA's interference in the Accounting Proceeding;*
> c) *Repeatedly attempting to unilaterally remove the court appointed fiduciary;*
> d) *Objecting to, and/or blocking payment of administrative expenses, including professional fees incurred in connection with the administration of the Estate;*
> e) *Refusal to abide by the terms of the 2010 SA requiring that all future accounting be waived;*
> f) *Contacting the IRS and making false allegations of a conspiracy;*
> g) *Failing to abide by the duties imposed upon fiduciaries, such as MA, duties to (i)carry out the decedent's intent; (ii) to administer and close the estate in the most efficient manner possible; (iii) to respect and abide, and not hinder, the majority decisions made by his co-fiduciaries; and (iv) to act, at all times, in the best interests of the Estate; and*
> h) *By acting in his own personal interests instead of acting in the best interests of the Estate."*

12. The Judgment also found that "[Movants]' expert witness, Peter Forman, Esq, who has over 30 years of probate experience, testified credibly that the Debtor's behavior toward the Estate was "pure animus", in violation of Florida Law, and probate rules…." Debtor's misconduct has not only been found in Florida but also in New York where he continued filing lawsuits against Movants and wherein the Honorable Judge Thomas E Walsh, II New York State Supreme Court, by Order dated December 15, 2014, stated: "Nonetheless, [Movants] have made out a compelling case that [Debtor] is motivated by animus, and that he is willing to sacrifice a reasonable sale price to spite his siblings."

13. In the Judgment, the Florida Court awarded, inter alia, the following damages in favor of the Movants and against the Debtor, which are to be surcharged from the Debtor's share of the Estate or Martial Trust, or otherwise imposed against him personally:

   a. Tannenbaum Halpern attorneys' fees related to the Accounting Action, as testified to by expert Peter Forman, Esq.: $362,500.00;

    b. Proskauer Rose attorneys' fees not related to the Declaratory Action as testified to by expert Peter Forman, Esq., Jonathan Galler, and Karen Acker: $225,500.00;

    c. Proskauer Rose attorneys' fees related to the Declaratory Action, as testified to by expert Peter Forman, Esq.: $254,000.00;

    d. Gutter Chavez attorneys' fees, as testified to by expert Peter Forman, Esq.: $58,000.00;

    e. Additional fees incurred in the Marital Trust action since trial began in March 2019, as testified to by Karen Acker: $60,000.00;

    f. TOTAL: $960,000

14. The Judgment also found that "[Debtor] breached his fiduciary duties to the Estate, his co-fiduciaries, and his co-beneficiaries. [Debtor's] actions dictate application of the Inequitable Conduct Doctrine recognized by the Florida Supreme Court in *Bitterman v Bitterman*, 714 So. 2d 356 (Fla.1988). As applied by the Florida Supreme Court, this doctrine permits an award of attorney's fees and costs against a party personally where they acted egregiously, in bad faith, vexations, wantonly, or for oppressive reasons. Independently and collectively, the Court finds that [Debtor's] breaches of the 2010 SA, his breaches of fiduciary duties, and other actions were egregious, in bad faith, vexations, wanton or oppressive."

15. With regard to the 1987 Trust, the Florida Court has found, on at least two occasions that the Debtor breached his fiduciary duties as a result of the Debtor's misappropriation of funds from the 1987 Trust resulting in inter alia, the Debtor's removal as the sole trustee of the 1987 Trust.

16. Further, the Debtor, and as established in similar litigation concerning the 2010 SA, was acting with animus directed at the Movants in administration of the 1987 Trust.

17. As a result of the Debtor's misconduct, the Florida Court removed the Debtor as the sole trustee and appointed an outside trustee to continue to manage the 1987 Trust.

18. The Debtor, as found by the Florida Court in connection with parallel litigation concerning the 2010 SA has, breached his fiduciary duties to the Movants in connection with the 1987 Trust, in a like and similar manner. The Honorable Judge French in the 15th Judicial circuit in and for Palm Beach County, Florida in May of 2016 found the Debtor in breach of the 2010 SA stating, "Mark Acker, who is the trustee, has breached his fiduciary duty by not complying with the statute…." "We've got a continuing act of – of breach of fiduciary duty, breach of compliance with the statutes that - - that require every trust — to follow, but I guess Mr. Mark Acker thinks he doesn't have to abide by these rules." And just over two years later the successor judge (for Judge French), the Honorable Samantha Schosberg Feuer, 15th Judicial Court in Palm Beach County, Delray Beach, Florida, on December 7, 2018 wrote in her order "Respondent Mark Acker shall be surcharged for payments and/or loans he made in his capacity as Trustee and for using Trust Funds for a) matters for his own use and/or personal benefit, b) overpayment of attorney's fees, c) overpayment of accountants' fee and/or d) for improperly document loans (as set forth in the Motion for Partial Summary Judgment; the Court reserves ruling as to amount of surcharge."

19. In summary, the outstanding estate litigation that is still needed to be concluded in the Subject State Court Actions are as follows:

>   (1) A proposed motion to limit the distributions from the Estate to the Movants and the Debtor, with 45 percent to each of the two Movants and 10 percent to the Debtor, as stipulated in the 2010 SA Paragraph 3, and as a result of the positive results achieved by Movants' attorneys with the IRS audit in the Estate;

(2) Determination of the pro rata reimbursements in the Estate, contemplated under paragraph five (5) of the 2010 Settlement Agreement dated November 16, 2010, which are entitled to preference. An evidentiary hearing must be held at which the Court will determine proper amounts to be set-off or charged-off against such reimbursements;

(3) Determination of the Movants' reasonable Estate attorney's fees and costs in connection with the administration of the Subject State Court Actions and the lien filed there upon;

(4) Determination of both Movant's and Debtor's reasonable attorney's fees and costs in connection with the administration of the Estate;

(5) Determining the fees to be awarded to the Movants' Estate court counsel, who are entitled to prevailing party reasonable attorney's fees and costs relating to the trial on March 4, 5, and 6, 2019 and November 4, 5, and 6, 2019;

(6) Determination of fees to be awarded to the Movants relating to reasonable attorney's fees and costs relating to the Debtor's denied appeal of the Estate Judgment, pursuant to a January 27, 2022 Order by the Fourth District Court of Appeals;

(7) Determination of attorney's fees and damages to be awarded to the Movants relating to several 1987 Trust court orders awarding Movants fees and damages against Debtor for the Debtor's bad actions that also resulted in his removal as a trustee of the 1987 Trust, and

(8) Ultimate closure and resolution of the Subject State Court Actions.

# RELIEF SOUGHT

## A. Limited Stay Relief

20. Movants seek an order granting modification of the automatic stay imposed by 11 U.S.C.§ 362(a) pursuant to 11 U.S.C. § 362(d) to permit the continuation of the Subject State Court Actions, for the purpose of, *inter alia*, liquidating their claims against each other and determining the Debtor's resulting residual interest in the Estate and the 1987 Trust, to the point of entry of judgment, but with enforcement stayed pending further order of the Bankruptcy Court.

21. Irrespective of the source of recovery for any judgment to be entered against the Debtor in the Subject State Court Actions, Movants require relief from the automatic stay to enable them to liquidate their claims, and for the Debtor's estate to determine its interests in the Estate and the 1987 Trust so that the Debtor's bankrupt estate can be fully administered. Allowing Movants relief from the automatic stay to continue the Subject State Court Actions, complete their litigation resolving their claims against the Debtor, and for final determination of the parties' interests in the Estate and the 1987 Trust will enable the final determination of the interests of the Debtor's estate. Movants do not seek at this time to collect any judgment from the Debtor, in personam or otherwise, at this time but reserve the right to do so in future bankruptcy court proceedings or through the pending adversary proceeding no. 22-07038 commenced by Movants to determine the nondischargeability of, inter alia, the Judgment.

22. By this Motion, Movants seek entry of an Order, a proposed copy of which is annexed hereto as Exhibit "C", granting Movants relief from the automatic stay "for cause" pursuant to section 362(d)(1) of the Bankruptcy Code to allow for the continuation of the Subject State Court Actions to the enable Movants to liquidate their claims and for the Debtor's interests in the Estate, the 1987 Trust and Marital Trust to be finally determined.

# MOVANTS ARE ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

### A. Modifying the Automatic Stay for Cause under 11 U.S.C. § 362(d)(l) and the Second Circuit's *Sonnax* Opinion

23. Section 362 of the Bankruptcy Code provides for a broad stay of acts to collect debts against the debtor or to affect property of the estate. Sections 362(d)(l), however, requires the Court to grant relief from the stay upon a showing of "cause" for such relief, which "cause" is present under the circumstances of this case.

24. Though the Bankruptcy Code does not define the phrase "for cause," in determining whether "cause" exists to lift the automatic stay to allow for the continuation of prepetition litigation, the United States Court of Appeals for the Second Circuit in *Sonnax Indus., Inc. v. Tri Components Prod. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990) (the *"Sonnax* Factors") considers the following twelve (12) factors when making such a determination: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms (collectively, the *"Sonnax* Factors"). Sonnax, 907 F.2d at 1286; *See also In re New York Medical Grp.*, PC, 265 B.R. 408 (Bankr. S.D.N.Y.

2001); *In re Res. Cap., LLC,* No. 12-12020 (MG), 2012 WL 3249641, at *3 (Bankr. S.D.N.Y. Aug. 7, 2012). No single factor is controlling in this analysis, and "cause" must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 143 (2d Cir. 1999)).

   **B. Under the Second Circuit's *Sonnax* Opinion, Cause Exists under 11 U.S.C. § 362(d)(l) to Modify the Stay to Permit Movants to Liquidate Their Claims in the Subject State Court Actions**

   25. Based on application of the *Sonnax* Factors to the instant Motion, Movants submit that "cause" exists for relief from the automatic stay to enable Movants to continue to prosecute the Subject State Court Actions to liquidate their claims and determine the Debtor's ultimate interests in the Subject State Court Actions.

   26. The Subject State Court Actions are trust and estates disputes involving multi-million dollar claims that have been ongoing for at least fifteen (15) years. Not lifting the stay would impose a continued burden on the Movants, who have been working towards resolving their claims against the Debtor in the Subject State Court Actions for many years and expended significant time and resources to do so. The Debtor's bankruptcy filing should not prevent the Subject State Court Actions from moving forward, particularly where there are numerous assets potentially available to satisfy claims, and the Debtor's bankrupt estate needs to determine its remaining interests in the Estate and the 1987 Trust to be able to fully administer such bankrupt estate. Further, the State Court has significant prior knowledge of these matters. The Bankruptcy Court would need to expend significant and unnecessary time familiarizing itself with matters within the rightful jurisdiction (and lengthy history) of another court.

### C. Whether Relief Would Result in a Partial or Complete Resolution of the Issues

27. Under the first *Sonnax* factor, modifying the automatic stay would not result in a partial or incomplete resolution of the issues between the Movants and the Debtor. To the contrary, allowing the Subject State Court Actions to continue to finish the litigation of the Movants' claims would result in a complete resolution of the Subject State Court Actions, including the determination of the Debtor's remaining interests in the Estate and the 1987 Trust, and to bring an end to over fifteen (15) years of complex litigation. By granting the limited relief sought herein, this Court will not be burdened with the difficult task of resolving the complex legal and factual trust and estate issues in the Subject State Court Actions that are already being considered and ruled on by the Circuit Court of the Fifteenth Judicial Circuit of Palm Beach County, Florida, Probate Division. Furthermore, the resolution of the Subject State Court Actions will result in a final determination of Movants' claims and the Debtor's remaining interests in the Estate and the 1987 Trust. Accordingly, the first *Sonnax* factor supports the limited modification of the automatic stay for purposes of the continued pursuit of the Subject State Court Actions.

### D. Lack of Any Connection with or Interference with the Bankruptcy Case

28. The second *Sonnax* factor also weighs heavily in favor of stay modification because the underlying Subject State Court Actions have only a limited connection with the Debtor's bankruptcy case. The allegations raised in the Subject State Court Actions concern damages suffered by the Movants from, inter alia, the Debtor's breach of his fiduciary duties. Issues raised in the Subject State Court Actions are completely unrelated to matters in the Debtor's bankruptcy case as the allegations have occurred years before the bankruptcy case, except to the extent that they have generated allowable claims for Movants. Furthermore, no

issue in the Subject State Court Actions will affect the Debtor's ability to reorganize its business operations, since the Debtor has none, and no bankruptcy expertise is necessary for Movants to continue to litigate the Subject State Court Actions.

29. The Subject State Court Actions also pose no risk of interference with the Debtor's bankruptcy case, particularly because Movants are seeking stay relief at this time solely to liquidate the amount of their claims. To the contrary, allowing the Movants to continue the Subject State Court Actions will also ultimately aid the Debtor in the administration of its bankruptcy case with respect to both, the claim distribution, and the estate valuation process. The second *Sonnax* factor weighs in favor of granting Movants' Motion.

### E. Whether the Other Proceeding Involves the Debtor as a Fiduciary

30. The third *Sonnax* factor is relevant in this matter. The pending Subject State Court Actions, and the claims alleged by the Movants against the Debtor involve the Debtor's past conduct as a fiduciary. A proceeding in which the debtor is a fiduciary generally need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditor (H.R.Rep.No.595, 95th Cong., 1st Session 343-4 (1977). Here the Subject State Court Actions involve the Debtor's conduct as, inter alia, a current (as well as former) fiduciary. This factor weighs in favor of granting Movants' Motion.

### F. Whether a Specialized Tribunal with Necessary Expertise has Been Established to Hear the Cause of Action

31. The Probate Division of the Circuit Court of the Fifteenth Judicial Circuit of Palm Beach County, Florida is clearly a specialized tribunal with necessary expertise for hearing the Subject State Court Actions. Moreover, although federal courts are fully capable to hear and determine issues arising under state law, the Movants' remaining claims (and the Debtor's interests in the Estate and the 1987 Trust) are rooted specifically under state

law and the state court may be better situated to consider and determine such issues.

### G. Whether the Debtor's Insurer Has Assumed Full Responsibility for Defending the Action

32. The Movants do not believe insurance is applicable to the Subject State Court Actions; therefore, at best, this factor is neutral.

### H. Whether the Action Primarily Involves Third Parties

33. The Subject State Court Actions do not involve any third parties other than Tasha Dickinson acting as court appointed independent fiduciary of the Estate and court appointed trustee of the 1987 Trust. This factor is neutral if not weighs in favor of the Movants.

### I. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors

34. Litigation in the Subject State Court Actions would not prejudice the interests of the Debtor's other creditors. If the Movants were forced to liquidate their claims in the Bankruptcy Court, creditors generally would be forced to bear the costs of re-litigating the dispute already so far along in the Subject State Court Actions. Additionally, a determination of the Debtor's liability for the Movants' claims will allow the Debtor to have a better understanding of the financial position of its estate. Moreover, completion of the Subject State Court Actions is necessary to for the creditors to be able to evaluate the Debtor's assets and for the Movants to be able to participate in any distributions from their future liquidation or other disposition. This *Sonnax* factor weighs in favor of lifting the stay.

### J. Whether the Claim Arising from the Other Action 1s Subject to Equitable Subordination

35. The eighth *Sonnax* factor, whether the Movants' claims are subject to equitable subordination under 11 U.S.C. § 510(c), weighs in favor stay relief, as Movants' claims are not subject to equitable subordination.

### K. Whether Movant's Success in the Other Proceeding Would Result in a Judicial Lien Avoidable by the Debtor

36. The ninth *Sonnax* factor weighs in favor of stay relief, as any further judgments obtained by Movants in the Subject State Court Actions would not be subject to lien avoidance in the Debtor's bankruptcy case.

### L. The Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation

37. The interests of judicial economy and the expeditious and economical resolution of the Subject State Court Actions strongly favor lifting the automatic stay. As discussed above, all parties will bear additional costs if the Movants are forced to litigate their claims at issue in the Subject State Court Actions in the Debtor's bankruptcy case and forced to familiarize the Court with matters already within the knowledge of the State Court. The nature of these claims cannot be determined in isolation. Leaving the stay in place will unnecessarily and further delay the resolution of the Subject State Court Actions (and the Debtor's remaining interests in them) and will prejudice not only the parties to the Subject State Court Actions, but other estate creditors due to (a) the existence of an unliquidated claim of potentially significant magnitude, and (b) the current uncertainty of the Debtor's remaining interests in the Estate, the 1987 Trust and the Marital Trust. Moreover, given the multi-party nature of the transaction, it would be extremely inefficient to have the Bankruptcy Court resolve claims against one defendant when it lacks jurisdiction as to the

others.

### M. Whether the Parties are Ready for Trial in the Other Proceeding

38.     The eleventh *Sonnax* factor requires the court to consider whether the parties are ready for trial in the non-bankruptcy proceeding. *Sonnax,* 907 F.2d at 1276. This factor also weighs in favor of lifting the stay, as the Subject State Court Actions can be completed through non-trial motion practice or can be ready for deliberation with minimal additional efforts.[2]

### N. Impact of the Stay on the Parties and the Balance of Harms

39.     The balance of the harms clearly favors lifting the automatic stay. All parties have expended a significant amount of resources to complete a considerable amount of discovery and defend various motions in the Subject State Court Actions. Much of that value will be lost if the stay is left in place and the parties are forced to litigate in a piecemeal manner. Moreover, the Debtor's estate cannot be fully administered without a final determination of the Debtor's remaining interests in the Estate, the 1987 Trust and the Marital Trust, which will be accomplished through a lifting of the stay.

### CONCLUSION

40.     For all of the foregoing reasons, the *Sonnax* factors strongly support lifting the automatic stay to allow the Movants and parties to proceed with the Subject State Court Actions to permit the final determination of the parties' claims and interest, both necessary to administer the Debtor's estate properly and fully.

---

[2] The State Court judge has suggested that matters be put on or restored to the calendar as soon as the stay in the Debtor's Chapter 11 case is lifted.

**WHEREFORE**, Movants request that the Court grant all of the relief requested in this Motion and grants Movants such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
      September 27, 2022

                            DAVIDOFF HUTCHER & CITRON LLP
                            *Attorneys for David and Karen Acker*
                            120 Bloomingdale Road, Suite 100
                            White Plains, New York 10605
                            (914) 381-7400

                            By: */s/ Jonathan S. Pasternak*
                                  Jonathan S. Pasternak, Esq.