UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:

          Chapter 11

MARK STEVEN ACKER,        Case No. 22-22359(SHL)

      Debtor.
------------------------------------------------------X

## DECLARATION OF RANDOLPH MAX BROMBACHER, ESQ.

I, Randolph Max Brombacher, declare as follows:

1. I am counsel of record on behalf of and/or for David Acker and Karen Acker in *In re: Matter of the Irrevocable Life Insurance Trust, Stanley Acker, Grantor, Dated October 1, 1987*, Florida State Circuit Court Case No. 50 2014 CP 04382 XXXX SB in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (hereinafter referred to as "Florida State Trust Litigation").

2. I am also counsel of record on behalf of and/or for David Acker and Karen Acker in *In re: The Estate of Stanley Acker*, Florida State Circuit Court Case No. 50 2008 CP 001929 XXXX SB in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (hereinafter referred to as "Florida State Estate Litigation").

3. I submit this Declaration in support of the *Motion of Karen and David Acker for Entry of an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* at issue in the above captioned action.

### Florida State Trust Litigation

4. I am familiar with the Florida State Litigation, having been lead counsel in this matter since its inception in September, 2014, when undersigned Affiant filed a Declaratory Action (on behalf and/or for Karen and David Acker) pursuant to, *inter alia,* Fla. Stat. § 86.011, § 86.041 and § 736.0201(4), seeking:

a) a declaration as to Mark Acker's "breach of fiduciary duty and breach of trust";

b) "an accounting [of the Trust] from the date of death of Grantor to present";

c) the disposition of certain assets of the Life Insurance Trust; and

d) an award of costs and reasonable attorney's fees pursuant to Fla. Stat. § 736.1004, § 736.1005, and § 86.081.

5.  In November, 2014, Mark Acker filed his Verified Answer, Counterclaim and Affirmative Defenses to the Petition stated that "between 1997 and 2010 … the Life Insurance Trust was under the control of Stanley Acker and Karen Acker and/or David Acker, [and] there were numerous transactions involving loans to various family business entities, and at this time a substantial unknown remains due and owing to the Life Insurance Trust."[1] In addition, Mark Acker averred that:

a) the "Trust loaned [$]430,000.00 to Stanley Acker[2], and that loan[Promissory Note] has not been fully paid back";

b) the Trust made "loans to Acker Realties in 2008-2009 ($22,500.00) …. Burd Street Development Corp. in 2009-2010 ($108,000.00) …. Orchard Realty, Inc. in 2008-2010 ($10,500.00) …. Edgewater Lane, LLC since 2008 ($272,000.00) …. 5000 Inc. in 2008 ($198,000.00) [totaling $611,000.00]"; and

c) "since Stanley Acker's death in 2008, there have been a total of at least $1,275,062.47 in loans made by the Life Insurance Trust".

---

[1] See Respondent's Verified Answers, Counterclaim, and Affirmative Defenses ¶ 9, (Docket Entry 10 in Florida State Litigation).

[2] After Stanley Acker's passing, his Estate has assumed all loan obligations for the said $430,000.00 loan; at present, the Life Insurance Trust is still owed the principal amount of $110,180.00 and there is dispute between parties as to whether the five percent (5%) interest rate is to be applied since due date, July 23, 2013, which would result in Estate owing the Life Insurance Trust an additional $34,035.05 (as of October 1, 2019 – per diem of $15.093150684).

6. The gravamen of the Florida State Litigation therefore arises out of, *inter alia*, Mark Acker's active and seemingly intentional misrepresentations of certain facts and obligations regarding his administration and management of the Life Insurance Trust and his failure to ever provide any Accounting for the Trust until February 2016.

7. It is undisputed that the court in the Florida State Litigation found that Mark Acker breached his fiduciary duty by, *inter alia*, failing to account to Petitioner's and/or provide backup accounting for same. Moreover it is undisputed that Mark Acker by and through his then counsel attempted to disregard and/or circumvent the clear dictates of Judge French's June 2, 2016 Order to not " use any funds or assets of the Trust to pay attorneys' fees or costs …in connection with the instant litigation" by directly writing undersigned counsel's clients (i.e., David and Karen Acker) to inform them of Mark Ackers' intent to use Trust funds to pay for New York litigation involving the exact same $430,000.00 Loan/Promissory Note at issue in these proceedings.[3]

8. On December 7, 2018, the court in the Florida State Litigation granted Petitioners' Motion for Partial Summary Judgment and ordering :

> a) That Tasha Pepper Dickinson, Esq. be appointed as Trustee;
>
> b) That Mark Acker be surcharged for i) matters for his own use and/or personal benefit, ii) overpayment of attorneys' fees, iii) overpayment of accountants' fees and/or iv) for improperly documented loans (as set forth in the Motion for Partial Summary Judgment), reserving ruling as to amount of surcharge; and
>
> c) That Petitioners be awarded their reasonable attorneys' fees and costs in connection with Motion for Partial Summary Judgment, reserving ruling as to amount;
>
> d) The parties be prepared to present evidence to the Court at the final hearing on the value of the assets of the Trust.[4]

---

3 See *Summons and Notice of Summary Judgment in Lieu of Complaint*, filed on November 23, 2016 in Supreme Court, New York County, Index Number 656154/2016.
4 See Order on Petitioners' Motion for Summary Judgment, dated December 7, 2018 (Docket Entry 132 in Florida State Litigation).

9. Likewise, the record shows that Mark Acker failed to document the professional legal and accounting services paid for by the Trust and/or failed to properly document/provide backup documentation for such services. In addition, many of the legal or accounting services provided appear to be for matters unrelated to the Trust and are in furtherance of Mark Acker's own personal interests or concerns. Notwithstanding Mark Acker's fiduciary obligations and the Court's January 11, 2017 Order to provide certain backup documentation, Mark Acker, nevertheless has failed to ever provide same.

10. Moreover, Mark Acker has failed to ever provide proper documentation as set forth in the Court's November 15, 2018 Order regarding the transfer of certain Nokia Stock from the Life Insurance Trust to his wife, Rochelle Acker.

11. Finally, there is issue of principal balance due to the Trust from the Estate of Stanley Acker in the amount of $110,180.00. The parties are in agreement that principal amount of $110,180.00 remain due and owing the Trust arising from a certain $430,000.00 Loan/Promissory Note.

12. As Mark Acker was the sole Trustee responsible for the proper administration of the Trust, who has failed to properly oversee the Trust and has deliberately disregarded of his fiduciary duties, so as to warrant his removal and the appointment of Tasha Pepper Dickinson as the successor Trustee, it is expected that any and all expenses associated with the Florida State Litigation and the appointment of Tasha Pepper Dickinson as successor Trustee will be surcharged to Mark Acker.

**Florida State Estate Litigation**

13. I am familiar with the Florida State Estate Litigation, having been counsel in this matter – in conjunction with David K. Markarian, Esq. and/or The Markarian Group - since October 23, 2019.

14. I am also familiar with a certain September 13, 2022 *Declaration of David K. Markarian in Support of Karen and David Acker for Entry of an Order Granting Relief from the Automatic Stay pursuant 11 U.S.C. § 362(d),* and concur with the representations set forth in said Declaration.

15. In addition to the matters set forth in paragraph 9 of Mr. Markarian's said Declaration, the determination of pro rata reimbursements as contemplated in paragraph three (3) of the Estate 2010 Settlement Agreement also remains as outstanding matter that should be determined by the Florida court.

16. In essence, paragraph three (3) of the Estate 2010 Settlement Agreement states that should "the ultimate resolution of the [then] pending IRS audit ... requires the Estate to pay less than [the then projected amount of] $4,054,977", then the difference between the actual amount paid to the IRS and the then projected amount (i.e., $4,054,977) shall be divided so that Karen Acker and David Acker receive 90% and Mark Acker shall receive 10%.

17. Given the fact that the Estate ultimately paid $459,883.00 for resolution of the said IRS audit, undersigned counsel has prepared motion – to be filed in the Florida State Estate Litigation upon lifting of stay in the above captioned matter (or as soon as legally permissible) – requesting a) that the payouts set forth in paragraph three (3) of 2010 Settlement Agreement be entitled to preference/priority payment (subject to "set-off" or "charge-off" amounts which are to be determined at evidentiary hearing) as decreed by the Florida court in its June 24, 2022 Order

and b) that the difference between the projected amount due the IRS (i.e., $4,054,977) and the amount actually paid the IRS (i.e., $459,883.00) is $3,595,094.00 and shall be divided so that Karen Acker and David Acker receive 90% (or $3,235,584.60) and Mark Acker shall receive 10% (or $359,509.40).

    I declare until penalty of perjury that the foregoing is true and correct as of this 23rd day of September, 2022.

                                                 */s/ Randolph M. Brombacher*
                                                 RANDOLPH MAX BROMBACHER