KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Julie Cvek Curley, Esq.
JCurley@kacllp.com

**Hearing Date: March 7, 2023**
**Hearing Time: 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

MARK STEVEN ACKER,

         Debtor.
-------------------------------------------------------------X

Chapter 11
Case No. 22-22359-shl

### NOTICE OF HEARING ON DEBTOR'S MOTION FOR ENTRY OF AN ORDER DISMISSING THIS CHAPTER 11 CASE

**PLEASE TAKE NOTICE,** that upon the Motion dated February 11, 2023 (the "**Motion**") of Mark Steven Acker, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by his attorneys, Kirby Aisner & Curley LLP, for entry of an order dismissing this Chapter 11 Case, a hearing with be conducted via ***Zoom for Government*** before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York (White Plains Division) on the **7th day of March, 2023 at 10:00 a.m**., together with such other and further relief as is just, proper and equitable under the circumstances.

**PLEASE TAKE FURTHER NOTICE,** that this hearing shall take place virtually using Zoom for Government. If you wish to appear at the hearing, you must register your appearance utilizing the Electronic Appearance portal (http://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl) located on the Court's website by 4:00 p.m. the day prior to the hearing.

**PLEASE TAKE FURTHER NOTICE,** that objections to the relief requested in the Motion must be in writing, stating with specificity the basis or bases on which such party in interest

objects to the within Motion, filed with the Bankruptcy Court at the Court's website www.nysb.uscourts.gov (Password and Login Required) (with a copy delivered directly to Chambers) and served upon Kirby Aisner & Curley LLP, 700 Post Road, Suite 237, Scarsdale, New York 10583, Attn: Julie Cvek Curley, Esq., so as to be received no later than seven (7) days prior to the hearing date.

Dated: Scarsdale, New York
       February 11, 2023

                                    KIRBY AISNER & CURLEY LLP
                                    *Attorneys for the Debtor*
                                    700 Post Road, Suite 237
                                    Scarsdale, New York 10583
                                    (914) 401-9500

                                    By: */s/ Julie Cvek Curley*
                                          Julie Cvek Curley, Esq.

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Julie Cvek Curley, Esq.
JCurley@kacllp.com

Hearing Date: *March 7, 2023*
Hearing Time: *10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

MARK STEVEN ACKER,

Debtor.
------------------------------------------------------------X

Chapter 11
Case No. 22-22359-shl

# DEBTOR'S MOTION FOR ENTRY OF AN
# ORDER DISMISSING THIS CHAPTER 11 CASE

**TO:** **THE HONORABLE SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE:**

Marl Steven Acker (the "**Debtor**") by his attorneys Kirby Aisner & Curley, LLP, hereby files this motion ("**Motion**") for entry of an order dismissing the above-captioned chapter 11 case pursuant to §§ 105 and 305(a) of title 11 of the United States Code (the "**Bankruptcy Code**"). In support of this Motion, the Debtor respectfully represents as follows:

## INTRODUCTION

1. The Debtor seeks to have the above-captioned bankruptcy case dismissed. Now that the Debtor's attempt to facilitate a settlement with his siblings, David and Karen Acker (the "**Siblings")** has failed and the automatic stay has been vacated to permit the litigation to proceed in the Florida Court, at this time there is no longer a bankruptcy purpose that can be served since this Chapter 11 Case constitutes a two-party dispute between the Debtor and his Siblings, who have stated their intentions to blockade the Debtor from confirming a Chapter 11 Plan. Prior to

filing his Chapter 11 Case, for the past fourteen (14) years, the Debtor has been involved in a highly contentious family feud and related litigations with his Siblings regarding their father's Estate. By filing this Chapter 11 Case, the Debtor hoped to bring a level professionalism and resolution to decades long litigation. Unfortunately, the Siblings are using this Chapter 11 Case to instead escalate the litigation by asserting millions of dollars of false and unsubstantiated claims against the Debtor in an attempt to convince this Court that their claims are legitimate, when they've been dismissed with prejudice, or not awarded against the Debtor. There is no prejudice to the Debtor or his creditors by dismissing the Chapter 11 Case. The Debtor's assets far exceed his legitimate debts. His non-exempt assets total no less than $1.8 million and his legitimate liabilities are approximately $1million - $960,000 of which is held by the Siblings. However, the Siblings have inflated their claim to $2.61 million, including claims against the Debtor which have either been dismissed with prejudice or not even awarded against the Debtor, so they could say that the Debtor doesn't have assets to repay them and manipulate this Court to permit them and their army of attorneys to continue their vexatious litigation and harass the Debtor and his family. It is the best interests of all parties and a save on judicial resources to dismiss the Chapter 11 Case so the Debtor and his Siblings can continue their litigations in the state courts, which are the appropriate venues to resolve their disputes. For these reasons, and for the reasons set forth herein, the Debtor respectfully requests that his Chapter 11 Case be dismissed.

**BACKGROUND**

2.      Nearly fifteen years ago, on March 6, 2008, after the Debtor's father passed away, the Debtor has been engaged in litigation with his Siblings related to their father's estate, including but not limited to: (a) the Stanley Acker Family Limited Partnership (the "**SA FLP**"); (b) the Stanley Acker Revocable Trust (the "**Estate/Trust**"); (c) the Irrevocable Life Insurance

Trust, Stanley Acker, Grantor dated October 1, 1987 (the "**1987 Trust**"); and (d) the Marital Trust (for the lifetime beneficiary Arlene Acker) (the "**Marital Trust**", together with the SA FLP, Estate/Trust, and 1987 Trust, where applicable, the "**SA Trusts and Estate**").

3. The value of the SA Trusts and Estate total approximately $5,422,507.77,[1] with the Debtor's interest valued at approximately $1,410,926.38.[2]

4. Throughout the administration of the SA Trusts and Estate, the Debtor and his Siblings continued in litigation pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "**Florida Court**"): (i) *In re: Matter of the Irrevocable Life Insurance Trust, Stanley Acker, Grantor, Dated October 1, 1987,* Case No. 50 2014 CP 04382 XXXX SB (the "**Trust Litigation**"), and (ii) *In re: The Estate of Stanley Acker,* Case No. 50 2008 CP 001929 XXXX SB (the "**Estate Litigation**", and together with the Trust Litigation, the "**Florida State Court Actions**").

5. The Debtor and the Siblings attempted to resolve their disputes in 2010 and entered into an agreement (the "**2010 Agreement**") which was supposed to equalize the decisions related to the SPA Trusts and Estate; respect to decisions as co-personal representatives and co-trustees, the Debtor would have 2 votes and the Siblings would have 2 votes (1 for David and 1 for Karen), as well as the appointment of a neutral, impartial, and independent fiduciary (the "**Fiduciary**") to hold the tie-breaking vote, amongst other agreements and stipulations.

6. Nevertheless, a pattern set in from 2011 through 2017 whereby the Siblings and the Fiduciary used their combined votes to override the Debtor. Most obvious to that point was

---

[1] As of 12/31/2022, the balance in the Estate/Trust bank accounts totals $1,345,657.32, and the balance in the Marital Trust bank accounts totals $3,776,850.45. The Court Appointed Fiduciary is holding approximately $300,000 in her bank account.

[2] This is based on the Debtor having a 10% interest in the Estate/Trust assets. If it is determined that the Debtor has a 1/3 interest in those assets ($543,066.91), then the value increases to $1,789,427.57.

3

the refusal to pay the Debtor's attorney's fees while the Siblings and Fiduciary approved and paid their own legal fees. During this period, the Fiduciary approved *millions of dollars* in fees to the Siblings' attorneys, and the Siblings approved *in excess of one million dollars* in fees to the Fiduciary. Between 2011 and 2016, $3,072,535.88 was paid in legal fees on behalf of the Siblings and the Fiduciary, while a mere $19,795.97 was approved to the Debtor's attorneys, notwithstanding invoices and requests for fees in excess of $1 million.

7. This dispute regarding the payment of legal fees was argued before the Florida Court and after a 2-day trial, an order was entered approving the Debtor's attorneys' fees (the "**Fee Order**"). Unfortunately, there was a finding in the Fee Order that the Debtor's conduct was "adverse and detrimental." Not only was that finding erroneous (it was later reversed on Appeal), but given that the Debtor had to fight and litigate to receive the same treatment his Siblings were giving each other, his conduct was justified. To that point, his Siblings and the Fiduciary continued to conspire with each to deprive the Debtor of the financial resources to protect himself from them taking advantage of him- the Fiduciary and Siblings refused to pay $447,272.61awarded in the Fee Order, and filed an appeal.

8. On appeal, the Court found that the Fee Order had an inconsistency in its findings and there was no testimony supporting the conclusion that that the Debtor's conduct was "adverse and detrimental" to the Estate. The Court reversed and remanded the Fee Order and directed the Florida Court to enter a new order without the inconsistency it found regarding the conclusion that the Debtor's conduct was "adverse and detrimental" to the Estate. On remand, the Florida Court entered an amended Fee Order which removed the inconsistency, but also reduced the fee award by $144,152.656, with $106,385.65 of that amount neither explained nor justified! After the Debtor had spent millions of dollars from his own savings paying attorneys to represent him, he had to proceed *pro se*.

4

9. The Fiduciary ultimately resigned after the Debtor filed a motion for his removal bringing to the Court's attention that the Fiduciary admitted to a "mistake" by not taking a vote on a settlement stipulation with the Debtor's prior counsel which released the Estate but left the Debtor liable, and he was replaced by a new Fiduciary.

10. Before the Fiduciary resigned and while he was approving the Siblings' legal fees, the Siblings used the assets of the SA Trusts and Estate to fund litigation against the Debtor for breach of the 2010 Agreement to recover from the Debtor the legal fees the Fiduciary paid their attorneys. So, not only did the Siblings and Fiduciary scheme to deprive the Debtor of counsel (by not paying his legal fees), but they also then sought to have the Debtor personally pay their fees! During the trial on this issue, while at work, the Debtor had a near fatal accident which resulted in the Debtor having a severe Traumatic Brain Injury (TBI). The trial should have been adjourned to allow the Debtor to recover, but it nonetheless proceeded. The Siblings and their army of attorneys were able to convince the Florida Court that the Debtor breach the 2010 Agreement and his fiduciary duties, and awarded judgment against the Debtor and in favor of the Siblings, and directing the Debtor to pay the Siblings attorneys' fees in the amount of $960,000 (the "**Judgment**"), which amount was to be surcharged from the Debtor's share of the SA Trusts and Estate. At this time, the Debtor's share of the SA Trusts and Estate is valued at $1,410,926.38, more than enough to satisfy the Judgment.

11. Notwithstanding that the Judgment provided that it be surcharged from the Debtor's share of the SA Trusts and Estate, on March 18, 2022, the Siblings filed the Judgment in Rockland County, New York so it became a lien on the Debtor's property, 47 Tranquility Road, Suffern, New York (the "**Property**").

12. The Debtor filed this Chapter 11 Case on June 15, 2022 so that he could preserve

his ability to remove the inappropriately filed Judgment as a lien on the Property.

13. The Siblings, using this Court as a new forum to attempt to assert claims against the Debtor, filed a $2.61 million proof of claim (the "**Siblings Claim**"), somehow fabricating $1.65 million in new claims against the Debtor. The addendum to the Siblings Claim computes the claim amount as follows:

| Judgment | $960,000 |
| Attorneys' Fees in Relation to the Judgment | $650,000 |
| Damages and legal fees related to the 1987 Trust | $400,000 |
| Misappropriated funds from the 1987 Trust | $600,000 |
| Total: | $2,610,000 |

14. Other than the Judgment, none of the other claims or amounts in the Siblings Claim have been awarded in the Florida State Court Actions.

15. The Siblings Claim against the Debtor for "Misappropriated funds from the 1987 Trust" was already dismissed <u>with prejudice</u> by the Florida Court in the Trust Litigation. Accordingly, there is no basis for "Damages and legal fees related to the 1987 Trust" portion of the Siblings Claim. These two items alone inflate the Siblings Claim by $1 million.

16. Further, there has been no allowance to the Siblings for the $650,000 for "Attorneys' Fees in Relation to the Judgment" and there has been nothing produced to support that absurd amount. If this portion of the claim refers the charging lien of the Siblings' attorneys (the Markarian Team), this lien is against the Siblings only, not the Debtor.

17. In addition, the Siblings, through their counsel, had a proof of claim filed on behalf of the Debtor's uncle, Robert Acker, who had not previously raised any claims against the Debtor and is now, conveniently for the Siblings, materializing.

18. The inflated Siblings Claim and Robert Acker's claim were filed to give a false impression to this Court and other interested parties, who have not dealt with our disputes, that

their claims against the Debtor are much more significant than they actually are, hoping for a windfall in allowing them, and to use the inflated claims as leverage in this Chapter 11 Case.

19. To reiterate, the only amount that the Siblings are owed by the Debtor is the Judgment in the amount of $960,000 – which includes their attorneys' fees.

20. Regarding the claim filed by Solomon Appeals, Mediation & Arbitration (the "**Solomon Claim**"), it is not supported by any substantiating documents, and any claims for legal fees need to be addressed in the Florida State Court Actions. The charging liens attached to the Solomon Claim were satisfied by the Debtor from the proceeds of the sale of 3 Orchard Street (an asset of the SA FLP that the Florida Court directed be transferred to the Debtor after it caught the Siblings trying to manipulate the SA FLP assets by claiming it had NO value).

21. The only other legitimate creditors of the Debtor are: (2) Bank of America credit cards and Federal and State Taxes.

22. The Debtor's interest in the SA Trusts and Estate valued at approximately $1,410,926.38 is more than sufficient to repay his legitimate creditors. In addition, the Debtor's interest in the Property is estimated at $450,000.[3]

23. To summarize, the Debtor's (non-exempt) assets and liabilities are:

|  | **Liabilities** |  | **Assets** |
|---|---|---|---|
| Siblings Claim | $960,000 | 47 Tranquility | $450,000 |
| Solomon Claim ($200,336.18 disputed) | $0 | SA Trusts and Estate | $1,410,926.38 |
| Bank of America Credit Cards | $40,491.58 |  |  |
| Tax Debt | $78,016.03 |  |  |
| MBAF CPAs ($11,585 disputed) | $0 |  |  |
| David Acker ($68,543 disputed) | $0 |  |  |
| **Total:** | **$1,078,507.61** | Total | $1,860,926.38 |

---

[3] The Debtor received an offer on the house for $1.69 million, less the mortgage payoff $770,000, less $20,000 closing costs, leaves $900,000, so at 50% distribution to the Debtor would be $450,000.

7

24. As shown from the summary above, the Debtor has sufficient assets to repay his creditors, with nearly $800,000 in excess.

25. The Debtor had hoped that by filing the Chapter 11 Case and bringing his disputes with the Siblings to a new venue with new attorneys and perspectives to try and (finally) effectuate a settlement failed and instead the Siblings have continued to use their army of lawyers (there have been appearances and pleadings filed by FIVE(!!!) attorneys for the Siblings in this case alone).

26. With the automatic stay no longer in place with respect to the Florida State Court Actions and those actions continuing, the Debtor and the Siblings are left litigating in two different venues.

27. Further, the Debtor's Chapter 11 Case cannot continue until the Florida State Court Actions have been resolved. The Siblings have already indicated that they intent to vote to reject any plan of reorganization. So, until the Siblings Claim is determined and liquidated in the Florida State Court Actions, it is impossible for the Debtor to confirm a plan. Given that, at best, the Chapter 11 Case would be at a standstill. Thus, until the Florida State Court Actions have been fully adjudicated, there is no benefit for this Chapter 11 Case continuing and it should be dismissed.

## **RELIEF REQUESTED**

28. Section 305(a)(1) of the Bankruptcy Code permits a bankruptcy court to dismiss any bankruptcy case where "the interests of creditors and the debtor would be better served by such dismissal ..." 11 U.S.C. §305(a)(1).

29. Although Section 305 has historically been used to dismiss involuntary cases, courts have found the statute to be applicable to voluntary cases as well. *See, e.g., In re Monitor Single Lift I Ltd.,* 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008).

30. This Court has considered the following factors in rendering its decision

under Section 305(a):

1) The economy and efficiency of administration.
2) Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
3) Whether federal proceedings are necessary to reach a just and equitable solution;
4) Whether there is an alternative means of achieving an equitable distribution of assets;
5) Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
6) Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
7) The purpose for which bankruptcy jurisdiction has been sought.

*In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 464–65 (Bankr.S.D.N.Y.2008); *See also, In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002); *In re TPG Troy, LLC*, 492 B.R. 150, 160 (Bankr. S.D.N.Y. 2013).

31. "While all factors are considered, not all are given equal weight in every case" and the decision under Section 305(a)(1) should be made on a case-by-case basis. *In re Monitor Single Lift I, Ltd.,* 381 B.R. at 464-5.

32. As stated by the Eastern District of New York Bankruptcy Court in *In re Duratech Industries*, "a significant factor in favor of dismissing a case pursuant to § 305(a)(1) is the absence of a true bankruptcy purpose, particularly where the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." 241 B.R. 291, 300 (Bankr E.D.N.Y. 1999) (dismissing a chapter 11 case where the debtor's ability to reorganize depended entirely on the outcome of pending state court litigation between the debtor and a creditor). Bankruptcy Courts in the Second Circuit have routinely held that a Bankruptcy Court is not the appropriate venue to entertain a two-party dispute. *E.g., In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr S.D.N.Y.

9

1992)(dismissing a chapter 11 case that was filed by one of the two feuding shareholders to try and liquidate the debtor's assets); *In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y 2007) (stating that a bankruptcy court is compelled to abstain under section 305 where a bankruptcy consists of a two-party dispute "for which the parties have adequate remedies in state court.").

### A. *Factor (1), the economy and efficiency of administration would be served if the dispute between the Debtor and the Siblings is adjudicated in the Florida Court.*

33. Factor (1), the economy and efficiency of administration, weighs in favor of dismissal because the Florida Court, as opposed to this Court, is the most economic and efficient forum to resolve the dispute between the Debtor and the Siblings. *See In re Newbury Operating LLC*, No. 20-12976, 2021 Bankr. LEXIS 773 at *38 (Bankr. S.D.N.Y. March 25, 2021) (finding state court was a more efficient forum than bankruptcy court to resolve a two-party dispute because: the debtor was not operating, had de minimis assets and did not qualify for discharge; the creditors did not require the protection of the automatic stay; and the parties in interest would not be prejudiced if the action were adjudicated in state court rather than bankruptcy court).

34. Here, it would be more efficient for the disputes between the Debtor and the Siblings to be adjudicated in the Florida Court. The nature of the disputes are not grounded in the Bankruptcy Code, and instead focuses claims against each other relative to the SA Trust and Estate, issues that can only be adjudicated in the Florida State Court Actions. Further, since the automatic stay has been vacated as to the Florida State Court Actions, there is little to do in the Chapter 11 Case until the Florida State Court Actions are fully adjudicated.

### B. *Factors (2) through (4): A suitable alternative forum exists in the Florida Court.*

35. Other factors relevant to the Debtor's case are: (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state

court; (3) whether federal proceedings are necessary to reach a just and equitable solution; and (4) whether there is an alternative means of achieving an equitable distribution of assets. *In re Paper I Partners, L.P.*, 283 B.R. at 679. Courts typically evaluate factors (2) through (6) together, because "they touch upon the availability of an alternate forum to efficiently achieve an equitable distribution." *See id.* at *39 quoting *In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 146 (Bankr. N.D. Tex. 2018). Often, where there is pending litigation in an alternate forum that will "'equitably satisfy the creditors and not be unduly burdensome or prejudicial to the debtor,'" factors (2) through (6) will be considered to weigh in favor of dismissal. *See In re Newbury Operating LLC*, 2021 Bankr. LEXIS 773 at *38 ((quoting *In re Navient Solutions, LLC*, Case No. 21-10249, 625 B.R. 801, 2021 Bankr. LEXIS 533, at *14 (Bankr. S.D.N.Y. March 8, 2021) (quoting *In re RAI Marketing Services, Inc.*, 20 B.R. 943, 946 (Bankr. D. Kan. 1982)).

36. Alternatively, factor (2) may be satisfied merely when another forum "available to protect the interests of both parties" exists. *In re Paper I Partners, L.P.*, 283 B.R. at 679. Here, not only is the Florida Court an adequate alternative forum, it is the appropriate forum, and the automatic stay has been vacated so the Florida Court can proceeding to adjudicate the Florida State Court Actions. Because the adjudication of the Siblings Claim in being adjudicated in the Florida Court, neither party is prejudiced by dismissal of this Chapter 11 Case.

### C. Factor (7), the cause of the bankruptcy, weighs in favor of dismissal because the Debtor filed for bankruptcy as a result of the Judgment rendered in the Florida State Court Actions

37. Factor (7), the cause of the bankruptcy, weighs in favor of dismissal because the Debtor filed for bankruptcy as a result of an existing two-party dispute. *See In re LFH Food Hall Operating, LLC*, Case No. 22-22041, 2022 Bankr. LEXIS 2607 at *16 (Bankr. S.D.N.Y. Sept. 13, 2022) (finding dismissal appropriate where the cause of the bankruptcy was inextricably

intertwined with a previous and ongoing two-party dispute, and where the bankruptcy court was merely "the most recent battlefield" for this dispute.")

38. In *In re Newbury Operating LLC*, the Southern District of New York Bankruptcy Court analyzed factor (7) in the context of an involuntary filing of a chapter 7 petition by the debtor's landlord. *See In re Newbury Operating LLC*, 2021 Bankr. LEXIS 773 at *40. There, the court stated that the only reason the bankruptcy had been filed was to gain appointment of a trustee who would investigate the landlord's alleged fraudulent conveyance claims. Because the landlord could obtain substantially the same relief in state court, the bankruptcy court held that abstention under section 305(a)(1) was "particularly appropriate."

39. Here, the Debtor's bankruptcy has been filed under similar circumstances. The Debtor has been in litigation for nearly fifteen (15) years with his Siblings over in the SA Trusts and Estate, which resulted in the Judgment that the Siblings inappropriately filed as a line on the Property. The Debtor filed for bankruptcy with the hope of avoiding the lien as a preference and using that relief as leverage to effectuate a settlement, while the Debtor's Siblings, like the landlord in *Newbury*, aim to use the bankruptcy to conduct in depth discovery into the Debtor's finances and avoid allegedly fraudulent transfers made by the Debtor to his family members. As stated in section (B) the claims at issue in the Debtor's case can be adjudicated under state law and would result in substantially the same relief as would result in bankruptcy court.

40. Further, when the bankruptcy purpose of a case no longer exists, a creditor should not be permitted to prolong or sustain a case merely to take advantage of benefits bankruptcy offers to creditors. "Considering that Congress weighed the competing interests of many parties when developing the bankruptcy process, and crafted a compromise which affects them all, applying § 1112(b) in a way which preserves this parallelism appears warranted." *In re Mazzocone*, 183 B.R.

402, 413 (Bankr. E.D. Pa. 1995). Thus, factor (7) weighs in favor of dismissal.

## NOTICE

41. The Motion is being served upon (i) all creditors, (ii) Office of the United States Trustee; and (iii) all individuals and entities that have filed a notice of appearance and request for documents in the Chapter 11 Case. The Debtor submits that such service is good and sufficient notice.

## CONCLUSION

42. This Chapter 11 Case constitutes a two-party dispute between the Debtor and his Siblings. Since the Debtor's attempt to facilitate a settlement with his Siblings failed and the automatic stay has been vacated to permit the Florida State Court Actions to proceed, a bankruptcy purpose no longer exists. There is no prejudice to the Debtor or his creditors by dismissing the Chapter 11 Case since all litigation can continue in the appropriate state courts, and the Debtor has more than sufficient assets to pay debts. Dismissing this Chapter 11 Case is in the best interests of all parties and accordingly this Motion should be granted.

**WHEREFORE,** the Debtor respectfully requests that the Chapter 11 Case be dismissed, together with such other and further relief as this Court deems appropriate.

Dated: Scarsdale, New York
      February 10, 2023

                                          KIRBY AISNER & CURLEY, LLP
                                          *Attorneys for the Debtor*
                                          700 Post Road, Suite 237
                                          Scarsdale, New York 10583
                                          (914) 401-9500

                                          By: */s/ Julie Cvek Curley*
                                                   Julie Cvek Curley