1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 22-22359

4   - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   MARK STEVEN ACKER,

8

9                Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - -x

12                  Office of the United States Trustee

13                  Southern District of New York

14                  201 Varick Street, Room 1006

15                  New York, NY 10014

16                  July 20, 2022

17                  2:04 p.m.

18

19

20  341 Meeting of Creditors

21

22

23  B E F O R E:

24  SHANNON SCOTT

25  TRUSTEE

1 A P P E A R A N C E S :

2

3 UNITED STATES DEPARTMENT OF JUSTICE

4    Attorney for the U.S. Trustee

5    201 Varick Street, Suite 1006, 10th floor

6    New York, New York 10014

7

8 BY: SHANNON SCOTT

9

10 KIRBY AISNER & CURLEY LLP

11    Attorney for the Debtor

12    700 Post Road, #237

13    Scarsdale, NY 10583

14

15 BY: DAWN KIRBY

16

17 TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, LLP

18    Attorney for Karen Acker, David Acker, Robert Acker

19    900 Third Avenue

20    New York, NY 10022

21

22 BY: MICHAEL RIELA

23

24

25

1 A P P E A R A N C E S :

2

3 DAVIDOFF HUTCHER & CITRON LLP

4    Attorneys for Karen Acker, David Acker

5    605 Third Avenue

6    New York, BY 10158

7

8 BY: JAMES GLUCKSMAN

9    ROBERT RATTET

10    MAX DUVAL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 Transcribed by: Sonya Ledanski Hyde

1         P R O C E E D I N G S

2    MS. SCOTT: Hello?

3    MS. KIRBY: Yes. Just give me one second.

4    MS. SCOTT: All right. All right, everyone. Let

5 the record reflect that today is -- good afternoon -- July

6 20, 2022. The time is 2:04 p.m. This is the meeting of In

7 re Mark Steven Acker, Case Number 22-22359.

8    My name is Shannon Scott. I am a trial attorney

9 in the Office of the United States Trustee, a component of

10 the U.S. Department of Justice, and I am the presiding

11 officer at this hearing.

12    Pursuant to the Judicial Code, the United States

13 Trustee supervises the administration of bankruptcy cases

14 under the Bankruptcy Code. The Debtor is required to appear

15 to be examined under oath regarding the bankruptcy case. By

16 law, the examination must be and is being recorded. All

17 persons questioning the Debtor must state their names and

18 indicate who they represent.

19    At this time, I would like to take appearances of

20 who is on the phone. I will start with the Debtor and the

21 Debtor's counsel. Please state your name and address for

22 the Debtor.

23    MS. KIRBY: Good afternoon --

24    MR. ACKER: Mark Acker --

25    MS. KIRBY: Oh, go ahead, Mark.

1    MR. ACKER: Mark Acker, 2305 Round Pointe Drive,

2 Haverstraw, New York 10927.

3    MS. SCOTT: Okay, and --

4    MS. KIRBY: And Dawn Kirby --

5    MS. SCOTT: Go ahead.

6    MS. KIRBY: Dawn Kirby, Kirby Aisner & Curley,

7 representing the Debtor.

8    MS. SCOTT: Okay. Just one thing, for example,

9 Mr. Acker, you kind of broke up. If you're on speaker, it

10 might be best to just not be on speaker or put yourself very

11 close to the phone. A lot of the answer was in and out and

12 it just wasn't clear.

13    All right. I'm going to take the next appearance

14 --

15    MR. ACKER: Okay.

16    MS. SCOTT: I will clarify on the record though

17 after I swear you in the Debtor's address and whatnot. But

18 I want to take the creditors' appearances. One by one, can

19 one person go and let's try and do this orderly. Proceed.

20    MR. RIELA: Good afternoon, Ms. Scott. My name is

21 Michael Riela, from the law firm Tannenbaum Helpern Syracuse

22 & Hirschtritt. I'm representing Karen and David Acker with

23 respect to the meeting today. I understand that both Karen

24 and David are also dialed in, as well as their uncle, Robert

25 Acker.

1    MS. SCOTT: Okay. Okay. That was very clear.
2 Thank you. An y other creditors on the phone?
3    MR. GLUCKSMAN: Yes. We represent Mark and Karen
4 -- David and Karen as well. Davidoff Hutcher & Citron,
5 James Glucksman. And I think is Robert Rattet on the line
6 as well as Max DuVal?
7    MR. RATTET: (Indiscernible) on the line.
8    MR. GLUCKSMAN: Okay, and we are for Karen and
9 David Acker.
10    MS. SCOTT: Okay. Are you like -- can you explain
11 why there's two counsel? I mean, is one specific counsel
12 for a specific reason?
13    MR. RIELA: Sure. Let me explain this. This is
14 Michael Riela. I had been involved in this case through
15 now. I am actually leaving my law firm effective this
16 Friday to take an in-house counsel job. So the Davidoff
17 firm after today is going to represent David and Karen
18 throughout the case.
19    I'm involved with today because I've had a little
20 bit of involvement with matters prepetition and Karen and
21 David thought it would be most efficient for me to handle
22 the questioning for today's meeting. But after today's
23 meeting, you will not see me again.
24    MS. SCOTT: All right. Perfect. Thank you.
25 Okay. Anyone else?

1    MR. RIELA: You're welcome.
2    MS. SCOTT: Thank you. Okay. Anybody else that I
3 haven't heard from? Okay. Will the Debtor please raise
4 your right hand? Mr. Acker --
5    MR. ACKER: It's raised.
6    MS. SCOTT: Okay. Mr. Acker, do you swear or
7 affirm to tell the truth, the whole truth and nothing but
8 the truth?
9    MR. ACKER: Yes. I do.
10    MS. SCOTT: Okay, and I know you answered this
11 before. But you were breaking up a little bit. So will you
12 please state your full name, current address and last four
13 digits of your Social Security for the record?
14    MR. ACKER: Okay. It's Mark Acker. It's 2305
15 Round Pointe Drive in Haverstraw, New York 10927, and the
16 last four digits, 2375.
17    MS. SCOTT: Thank you. That was much clearer.
18 And Ms. Kirby, can you please make your appearance on the
19 record for the Debtor?
20    MR. ACKER: Good afternoon. Dawn Kirby, Kirby
21 Aisner & Curley, representing the Debtor. Thank you.
22    MS. SCOTT: Thank you. Mr. Acker, did you read
23 the petitions, schedules, statements and related documents
24 before you signed them?
25    MR. ACKER: Yes, ma'am.

1    MS. SCOTT: Do you wish to make any amendments to
2 the petitions, schedules or statements at this time?
3    MR. ACKER: Dawn has one --
4    MS. KIRBY: This is Dawn Kirby --
5    MR. ACKER: Yeah.
6    MS. KIRBY: There is one change. We went over
7 everything in detail before this call, and I mistakenly
8 listed a company named MSA Consulting Corp, which actually
9 belongs and has for a very long time to the Debtor's wife,
10 not the Debtor. So I'm going to need to make an amendment
11 on that.
12    MS. SCOTT: Okay, and Mr. Acker, you have
13 authorized the filings of the petitions, schedules,
14 statements and related documents in this case; is that
15 correct?
16    MR. ACKER: Yes, ma'am.
17    MS. SCOTT: Have you ever filed for
18 bankruptcy before?
19    MR. ACKER: No. I have not.
20    MS. SCOTT: And have you established a post-
21 petition bank account, a debtor in possession bank account
22 at this time?
23    MR. ACKER: I did. But it was -- the bank kind of
24 messed up (indiscernible) I've had to do it now.
25    MS. SCOTT: Okay.

1    MR. ACKER: With the DIP account.
2    MS. KIRBY: This is Dawn. I can clarify. Mr.
3 Acker was -- prepetition banked with Chase which, as we all
4 know on this call, will only sometimes do DIP accounts for
5 existing clients. Mr. Acker went and asked for that and
6 brought the proof of the bankruptcy filing and somebody
7 opened up an account which he believed was a debtor in
8 possession account. But when he provided me the documents,
9 it was very unclear.
10    So he went back to the bank, and the fellow who
11 opened the account said, well, I'm not sure what that is.
12 Let me talk to my supervisor and we'll call you when we can
13 take care of it. So we're working on it.
14    MS. SCOTT: Okay.
15    MS. KIRBY: We may have to use a different bank if
16 ultimately they won't do.
17    MS. SCOTT: Okay. I will say just for that
18 purpose, I'm going to leave the meeting open. But I'll get
19 to that at the end of the -- at the end of the meeting.
20 Okay. Mr. Acker, what type of insurance do you presently
21 have?
22    MR. ACKER: Personal insurance, like life
23 insurance?
24    MS. SCOTT: Yeah. Any type of insurance. Do you
25 have auto, medical, homeowner's, renter's?

3 (Pages 6 - 9)

1 MR. ACKER: Yeah. Yeah. I have life insurance
2 and on one vehicle, one trailer, I have vehicle insurance
3 and trailer insurance.
4 MS. SCOTT: Okay, and homeowner's?
5 MR. ACKER: Homeowner's? It's a little
6 complicated. But I believe I have a percentage in a
7 homeowner's. I'm not sure. I have to kind of leave that to
8 Dawn because we've been trying to figure that out.
9 MS. KIRBY: I can clarify. Mr. Acker and his wife
10 use an insurance agent who sent over maybe ten pages of
11 documents to me. However we need to arrange a call with the
12 insurance agent because the first set of documents go from
13 Page 4 of 8 through Page 8 of 8 (indiscernible) documents,
14 same thing, go through Page (indiscernible) there are things
15 that are missing here.
16 MS. SCOTT: Okay.
17 MS. KIRBY: It seems apparent from what's here,
18 although it's confusing, that there's renter's insurance,
19 that there is homeowner's insurance and (indiscernible)
20 insurance.
21 MS. SCOTT: Okay. Okay. So --
22 MS. KIRBY: But I need to work on getting you the
23 full documents and confirm all that and --
24 MS. SCOTT: Okay. That's -- okay. That's an open
25 item then. So Mr. Acker, you list 47 Tranquility Road,

1 Suffern, New York on your schedules as property owned as a
2 joint tenant; is that correct?
3 MR. ACKER: That's --
4 MS. SCOTT: Okay, and you own that with your wife?
5 MR. ACKER: That is correct.
6 MS. SCOTT: Okay, and it's not tenancy by the
7 entirety?
8 MR. ACKER: I'm not sure what that means. I'm
9 sorry.
10 MS. SCOTT: Okay, and you listed the value as $1.5
11 million; is that correct, the value of the entire property -
12 -
13 MR. ACKER: That's --
14 MS. SCOTT: -- not just your interest; is that
15 correct?
16 MR. ACKER: That's -- yes.
17 MS. SCOTT: Okay. So you also list the current
18 value of the portion you own as $750,000; is that correct?
19 MR. ACKER: Just bear with me for one second.
20 MS. SCOTT: Sure.
21 MR. ACKER: There's a mortgage (indiscernible) so
22 that may be high. I don't know how that would work.
23 MS. SCOTT: Well, I guess my point is that you're
24 claiming a joint tenancy. So you're claiming that the
25 percentage of value is half of the $1.5. So the current

1 value of the portion you own which is listed on the
2 schedules is $750,000; is that correct?
3 MR. ACKER: After I pay the mortgage, yes.
4 MS. SCOTT: Okay.
5 MS. KIRBY: I'm sorry. Mr. Acker (indiscernible)
6 question correctly --
7 MR. ACKER: No, no. That's -- that's -- yeah,
8 that was --
9 MS. KIRBY: Mr. Acker, on the PDF of the schedules
10 that you have in front of you, it's on Page 3 of 36, that's
11 where Ms. Scott is looking. And if you do recall, you
12 called me and we went over this question a day ago.
13 MS. SCOTT: Right. I'm not asking about the
14 mortgage technically. I'm only asking about the percentage
15 -- the current value of the portion you own as an individual
16 debtor.
17 MR. ACKER: I would say -- but I'm kind of
18 confused. What does the mortgage take first? Because, I
19 mean, obviously the 750 and 750 split is $1.5 million. But
20 that doesn't include paying the mortgage.
21 MS. SCOTT: Right. I'm not asking you about the
22 mortgage. I'll get to that question in a minute. I'm just
23 asking the percentage of --
24 MR. ACKER: Okay.
25 MS. SCOTT: -- your portion of the value that you

1 own is $750,000 is what you listed; is that correct?
2 MR. ACKER: That's correct.
3 MS. SCOTT: Okay. Just bear with me. if I'm
4 silent, it's because I'm on my computer taking notes. Okay,
5 and on Schedule D for the creditors who have claims secured
6 by property, you list PHH Mortgage Services, and the amount
7 of the claim, and this is secured by, as listed, the
8 property at 47 Tranquility Road, you list the amount of the
9 claims of the secured creditor as approximately $699,000; is
10 that correct?
11 MR. ACKER: That's correct.
12 MS. SCOTT: Okay.
13 MS. KIRBY: And I don't know if you want
14 additional information. But that's the amount of the proof
15 of claim that they filed. That's where we got that number.
16 MS. SCOTT: Oh, okay. Okay. That's good to know.
17 Thank you. Mr. Acker, you list on creditors who have
18 unsecured claims an Internal Revenue Service claim in the
19 amount of $70,244.02 and a priority amount of $66,475.28.
20 What is that? What is that derived from? Is that just
21 general IRS personal tax claims?
22 MR. ACKER: No. There was a period in 2019 that I
23 needed to cash out my IRAs and my investment, and there were
24 penalties on that just because I had to pay attorney fees
25 and stuff like that.

4 (Pages 10 - 13)

1    MS. SCOTT: Okay.

2    MR. ACKER: So that's where that came from.

3    MS. SCOTT: All right, and Mr. Acker, what is your

4 occupation currently?

5    MR. ACKER: Completely disabled at this time.

6    MS. SCOTT: Okay, and what did you do prior to

7 being disabled?

8    MR. ACKER: I was a police officer in Rockland

9 County, New York. I worked for two agencies.

10    MS. SCOTT: Okay, and how long were you engaged in

11 that line of work?

12    MR. ACKER: Thirty (indiscernible) --

13    MS. SCOTT: I'm sorry. You cut out. Thirty?

14 Thirty?

15    MR. ACKER: Thirty years. Thirty years. That's

16 correct.

17    MS. SCOTT: Thirty years. Okay, and how -- can

18 you describe what put you on disability? What happened?

19    MR. ACKER: Yeah. I was a -- I'm a police

20 motorcycle instructor, and I was going to a detail in New

21 Jersey and catastrophic failure on my motorcycle which put

22 me down the Palisades Parkway, and then I had a near fatal -

23 - it was basically a near fatal accident.

24    MS. SCOTT: Okay. So was that -- I mean, you were

25 on your way to work? Did you receive any compensation from

1 your employer for that? Can you describe how that works?

2    MR. ACKER: Yes. I was -- I was already

3 (indiscernible) already. So I was on (indiscernible) on

4 going to Jersey. I receive every two weeks $716.

5    MS. SCOTT: Okay, and that's worker's

6 compensation?

7    MR. ACKER: That's correct.

8    MS. SCOTT: And do you receive disability from

9 either the state or your employer at all, any other

10 disability?

11    MR. ACKER: I'm taking SSDI. It's Social Security

12 Disability.

13    MS. SCOTT: Okay. So your income since the

14 accident which was prepetition and currently is the worker's

15 comp and the SSDI; is that correct?

16    MR. ACKER: That's correct.

17    MS. SCOTT: And do you have any other sources of

18 income?

19    MR. ACKER: No, ma'am.

20    MS. SCOTT: Okay. I did want to clarify that I

21 believe the analyst at the U.S. Trustee's office at the IDI

22 meeting, it was answered or testified that your wife, who's

23 not -- a non-debtor, she is involved in some businesses, as

24 well as Ms. Kirby stating she's going to be amending the

25 petition.

1    I just want to clarify on the record that the

2 Debtor does not have any ownership interest directly or

3 indirectly in your non-debtor wife's business or businesses;

4 is that correct?

5    MR. ACKER: That's correct.

6    MS. SCOTT: Okay, and I notice the Debtor did not

7 list any payments to any monthly credit card as expenses on

8 the petition and schedules. Does the Debtor make any

9 payments, credit card payments, any monthly credit card

10 payments?

11    MR. ACKER: (indiscernible) small amount to

12 American (indiscernible) that's it.

13    MS. SCOTT: I'm sorry. That --

14    MR. ACKER: My wife pays those bills.

15    MS. SCOTT: Okay.

16    MR. ACKER: (indiscernible) pays them. I don't

17 pay them.

18    MS. SCOTT: So your wife pays your credit card

19 bills?

20    MR. ACKER: Yes.

21    MS. SCOTT: Okay.

22    MR. ACKER: Well, yeah. I would say yes.

23    MS. SCOTT: And are you living at the residence,

24 your -- the home that you own with your wife? Do you live

25 there?

1    MR. ACKER: No. We do not.

2    MS. SCOTT: So do you -- okay. So do you rent?

3 Do you rent the premises where you live now? I'll get to --

4 I'll get to the property. But do you pay rent to someone

5 and live -- because you don't live there?

6    MR. ACKER: Yes (indiscernible) to the

7 (indiscernible) location.

8    MS. SCOTT: I'm sorry. You broke up a little bit.

9 I heard you said you pay rent and then what did you say?

10    MR. ACKER: In Haverstraw. That's the Haverstraw

11 address I gave you earlier.

12    MS. SCOTT: Okay. Okay, and how much is that rent

13 monthly?

14    MR. ACKER: It's about $3,400. My wife also pays

15 that as well.

16    MS. SCOTT: Okay, and so -- just give me a second.

17 So the property that you own in Suffern, is that vacant?

18    MR. ACKER: That is correct. It's vacant.

19    MS. SCOTT: Okay, and is the mortgage in the

20 Suffern property, is that being paid up to date? Is there a

21 foreclosure action? What is the status?

22    MR. ACKER: It's paid up to date. My wife is

23 paying that as well.

24    MS. SCOTT: Okay, and how about real estate taxes?

25    MR. ACKER: Taxes, we're behind by I think

1 (indiscernible) --

2     MS. SCOTT: I'm sorry. I don't know if I heard --

3 I heard you say you were behind I think, and then I

4 didn't hear anything.

5     MR. ACKER: Yeah. Two years.

6     MS. SCOTT: Okay. Two years, and that's property

7 taxes?

8     MR. ACKER: That's correct.

9     MS. SCOTT: All right, and I want to ask you about

10 the legal actions listed. If you can -- I'll just go one by

11 one. There's two here. Chubb National Insurance v. Mark

12 Acker, could you please give me the status of that action?

13     MR. ACKER: I was in -- I was T-boned on patrol in

14 my squad car on my village and the individual who hit me

15 maxed on his insurance at $25,000. So the attorney is going

16 after Chubb for the balance of what he feels is the

17 reasonable compensation.

18     MS. SCOTT: Okay. So the insurance company, your

19 insurance company, your employer's insurance company or the

20 uninsured --

21     MR. ACKER: No, mine.

22     MS. SCOTT: Yours

23     MR. ACKER: My insurance company.

24     MS. SCOTT: Okay. Because it says Chubb v. Mark

25 Acker.

1     MR. ACKER: The other --

2     MS. SCOTT: It says you're the defendant.

3     MR. ACKER: Yeah.

4     MS. SCOTT: Okay.

5     MR. ACKER: Did I answer that correctly?

6     MS. SCOTT: Well, there may be some cross-claims.

7 But what is the status? Is there any -- there's no judgment

8 in that case; is that correct?

9     MR. ACKER: Yeah. There's no (indiscernible) at

10 all in that. No.

11     MS. SCOTT: Okay, and I see that's a 2022 case.

12 So it's fairly recent; is that correct?

13     MR. ACKER: That's correct.

14     MS. SCOTT: Okay, and the Rogers, Habas & Eisen v.

15 Mark Acker and Rochelle Acker, what is that case? What is

16 the subject matter of that case?

17     MR. ACKER: That was also an estate matter. But

18 that was satisfied. So they just never removed it off the

19 docket.

20     MS. SCOTT: Oh, okay. I'm getting to another set

21 of questions. Just give me a second.

22     MR. ACKER: Not a problem.

23     MS. SCOTT: Ms. Kirby, can you just point me to

24 the -- oh, I found it. Okay. Never mind. Okay. Can you

25 give me some background and an explanation as to the

1 unsecured debt that's listed on 4.8 for the Estate of

2 Stanley Acker?

3     MR. ACKER: What page is that on?

4     MS. SCOTT: Sixteen of thirty-six.

5     MR. ACKER: Okay. That's the judgment.

6     MS. SCOTT: Okay. It's a judgment. So the --

7     MR. ACKER: That's the judgment.

8     MS. SCOTT: Okay, and that was -- was that

9 litigated in state court?

10     MR. ACKER: In West Palm Beach --

11     MS. SCOTT: I'm sorry. I didn't hear the last --

12 what was that?

13     MR. ACKER: That was in West Palm Beach.

14     MS. SCOTT: West Palm Beach. Okay, and what was

15 the subject matter of the now judgment?

16     MR. ACKER: It's still out there, still pending.

17     MS. SCOTT: Okay. What was the dispute?

18     MR. ACKER: An estate matter in regards to, oh God

19 -- there was a dispute in regards to opinions as far as how

20 the estate was being run and what I felt was correct and

21 what the other two parties felt was correct, and the dispute

22 -- the tail end of the trial, over the last four days of the

23 trial, three or four days of the trial took place after my -

24 - I had the near fatal accident. And I wasn't in a position

25 to defend myself, and the last four days of the trial

1 destroyed me. Basically that's what happened.

2     MS. SCOTT: Okay. Is this a default judgment?

3     MR. ACKER: I don't believe so.

4     MS. SCOTT: Okay, and you had counsel representing

5 you at the time?

6     MR. ACKER: The counsel representing me at the

7 time was part-time after I had the accident. She didn't --

8 she said she was only going to deal with the defense but not

9 do anything on the offense, and that's the reason why I feel

10 there's -- the failure of this case came against me.

11     MS. SCOTT: Are you -- have you made any attempt

12 to dispute the judgment in the court that issued it?

13     MR. ACKER: We tried to appeal it, and the appeal

14 did not work as well because I just -- as I said, I don't

15 have -- I didn't have and I don't have the money for

16 aggressive legal (indiscernible).

17     MS. SCOTT: Okay, and to confirm, the Estate of

18 Stanley Acker is your father; is that correct?

19     MR. ACKER: That's correct.

20     MS. SCOTT: Okay. Have you filed your annual tax

21 returns? Did you file for 2021?

22     MR. ACKER: '19, '20, '21. I believe I did. Yes.

23     MS. SCOTT: Okay. Are you entitled to any

24 refunds?

25     MR. ACKER: $400 I think was one refund. The

1 other one was $50.

2     MS. SCOTT: Okay. Do you individually have any

3 ownership interests in any business, either directly or

4 indirectly?

5     MR. ACKER: No. I do not.

6     MS. SCOTT: Do any businesses or individuals owe

7 you any money?

8     MR. ACKER: Yes. But the money that's owed is

9 money that (indiscernible) insurance company on the police

10 motorcycle.

11     MS. SCOTT: Okay. Is that part of -- can you

12 elaborate? I'm sorry.

13     MR. ACKER: Well, the police motorcycle was my

14 personal vehicle that I used for the escort work. And after

15 the accident, it was $27,000 that they were supposed to pay

16 me. But the broker messed up, and I just didn't have the

17 assets to dispute it. So it's out there and it's went

18 nowhere.

19     MS. SCOTT: Okay. Are you saying your employer

20 collected it?

21     MR. ACKER: No. No one collected it. It was

22 never paid by the insurance company.

23     MS. SCOTT: Okay. What must be done in order for

24 you to successfully reorganize in Chapter 11?

25     MR. ACKER: Put it behind me. I don't know. I

1 mean, it's -- the debt is the main issue --

2     MS. KIRBY: This is Dawn.

3     MR. ACKER: Go ahead, Dawn.

4     MS. KIRBY: Well, I mean, Ms. Scott, the Debtor's

5 significant asset is 47 Tranquility and has been on the

6 market for quite some time. He has a prepetition real

7 estate broker who's engaged and still showing the property.

8 I'm working with her to finalize retention papers.

9 There have been some small bites and offers that weren't

10 solid. But it's -- and the market's softened up a little

11 bit since the interest rates up to 6 percent. But what our

12 goal is, is to find a buyer and sell the property and

13 distribute the proceeds --

14     MS. SCOTT: Okay.

15     MS. KIRBY: -- to creditors.

16     MS. SCOTT: All right.

17     MS. KIRBY: Yeah, and he knows he has to -- the

18 contract has to be approved by the court, the sale has to be

19 approved by the court. We've gone over all of that stuff.

20     MS. SCOTT: Okay. At this time, I'm going to open

21 up the floor to any creditors that wish to ask any

22 questions.

23     MR. RIELA: Thank you, Ms. Scott. This is Michael

24 Riela, of Tannenbaum Helpern again, representing Karen and

25 David Acker, who are also on the line. Their uncle, Robert

1 Acker is also a creditor. I don't represent him personally.

2 But he's also a creditor here.

3 My questions are obviously going to be focused on

4 the documents, Mr. Acker, that you filed with the court. I

5 guess maybe before I begin the questions, just so I don't

6 forget about it, we will -- we do request the following

7 documents from Mr. Acker or his counsel, those being the

8 last two years of Mr. Acker's federal --

9     MS. KIRBY: Michael?

10     MR. RIELA: Yes?

11     MS. KIRBY: Michael, you can just send me an

12 email. I'll work with you on that.

13     MR. RIELA: Okay. Very well. Okay. I will do

14 so. But that'll be federal and state tax returns, bank

15 statements and other financial accounts as well as a title

16 report for the 47 Tranquility Road property. So thank you

17 very much, Ms. Kirby (indiscernible) --

18     MS. KIRBY: Send me an email. I'm very willing to

19 work with you. It's not a problem.

20     MR. RIELA: Thank you so much. Okay. So first

21 couple of questions I have, Mr. Acker, relate to the 47

22 Tranquility Road property. You earlier testified before Ms.

23 Scott that you and your family no longer live at that

24 property. When did you and your wife move out of that

25 property?

1     MR. ACKER: Just around four years ago.

2     MR. RIELA: Four years ago. Okay. Has anyone

3 else other than you or your --

4     MR. ACKER: Correct.

5     MR. RIELA: I'm sorry. Go ahead.

6     MR. ACKER: I said it was approximately four

7 years. I'm sorry.

8     MR. RIELA: Approximately. Okay. Has anyone else

9 other than you and your family lived there since you moved

10 out?

11     MR. ACKER: I had two renters in the very

12 beginning, and then the broker -- the current broker told me

13 to not have any current renters and to have the house deep

14 cleaned so it would sell, which it still has not.

15     MR. RIELA: When did the last renter moved out of

16 the house?

17     MR. ACKER: Well over a year-and-a-half ago.

18     MR. RIELA: And how long have you had this

19 property listed for sale?

20     MR. ACKER: I think about five years or so.

21     MR. RIELA: So you had it listed while you and

22 your wife were still there about five years ago and

23 continuously throughout --

24     MR. ACKER: At the very beginning, correct.

25     MR. RIELA: So I'm now going to turn to, Mr.

7 (Pages 22 - 25)

1 Acker, your schedules, and I'll point you to the specific
2 ones as the questions come up. Earlier you testified to Ms.
3 Scott that you have no interest in any businesses. However
4 have you been a limited partner of the Stanley Acker Family
5 Limited Partnership within the last year?
6      MR. ACKER: Unknown. I can't even answer that.
7 Based on the way the estate's been run, I have no idea what
8 Karen and David have done. So I can't answer that because
9 I'm not sure.
10      MR. RIELA: So you do not know whether you have
11 any partnership or any interest at all in the entity called
12 Stanley Acker Limited Partnership?
13      MR. ACKER: No. I'd have to look into that to
14 find out.
15      MR. RIELA: When you prepared your schedules and
16 statements of financial affairs, did you undertake a
17 specific review of all of the assets such as interest in
18 businesses?
19      MR. ACKER: Could you repeat that? I'm sorry.
20      MR. RIELA: I'm curious as to what level of due
21 diligence you performed in connection with performing your
22 schedules and statements of financial affairs. You told me
23 just now that you'd look into something that I had just
24 asked about.
25      MS. KIRBY: What specifically are you asking?

1 That's a very --
2      MR. ACKER: In regards to anything which is --
3      MS. KIRBY: -- broad question. Can you specify?
4 Because even I don't know how to answer that. What are you
5 asking?
6      MR. RIELA: So when you prepared your schedules,
7 your schedules and your statement of financial affairs in
8 particular with respect to Number 19 on Schedule A, it's
9 asking for non-publicly-traded stock and interest in
10 incorporated or unincorporated businesses. What level of
11 review did you do to determine how to answer that particular
12 question?
13      MR. ACKER: When it comes to my own -- you know,
14 my wife's businesses and my stuff or whatever, there's
15 really nothing. But if you're talking in regards to
16 anything estate related, I don't get -- it's very difficult.
17 Karen and David end up doing what they feel they
18 want to do with your firm and they've made adjustments.
19 They've removed me off of the officers and I think even some
20 of the companies they've closed a whole range of companies.
21 And I've received nothing that I was purportedly an owner
22 in. So they've -- they basically left me in the lurch here.
23 They don't cc me on stuff. They make decisions on
24 (indiscernible) basis that I'm not aware of.
25      MS. KIRBY: I think we're getting -- we're very

1 far astray of what the 341 meeting is for. Sir, is there is
2 some information that you would like us to have, please send
3 it to us. But the 341 meeting is not a deposition. So if
4 we could just continue --
5      MR. RIELA: No. It's fine. Totally agreed. And
6 the purpose of this was to determine whether Mr. Acker has
7 disclosed all of his assets in his schedules. So let me --
8 just with respect to that, I do have a follow-up question
9 specifically with respect to money that he may have
10 received.
11      Mr. Acker, have you ever received distributions on
12 account of your interest in the Stanley Acker Family Limited
13 Partnership interest in 2021?
14      MR. ACKER: I have received distributions from the
15 Stanley Acker Family Limited Partnership, yes.
16      MR. RIELA: How much did you receive --
17      MS. KIRBY: Sorry. The specific -- the specific
18 question was in 2021. Did you hear that?
19      MR. ACKER: Oh, I don't -- I don't believe in '21.
20 I think everything was prior to. I think it was '20 and
21 under.
22      MR. RIELA: Okay. How about 2020?
23      MR. ACKER: Again, I can't answer that off the top
24 of my head. I'm sorry.
25      MS. KIRBY: These are very detailed, specific

1 questions we can find the answers to. But people generally
2 don't know things like that off the top of their head,
3 when's the last date you got a distribution. But we will be
4 happy to follow up with the information.
5      MR. RIELA: I appreciate that, and the reason I'm
6 asking, for the benefit of everybody here, including Ms.
7 Scott, is that in the statement of financial affairs,
8 Question Number 5, Mr. Acker said his yearly income from
9 Social Security benefits is $30,443 (indiscernible) '20
10 Social Security benefits, $3,048. According to our records,
11 Mr. Acker received approximately $530,000 from the Stanley
12 Acker Family Limited Partnership interest, his interest in
13 that, in 2021. It's not on the schedules provided with the
14 statement of financial affairs. In 2020, we believe it was
15 (indiscernible) --
16      MS. KIRBY: Thank you. Would you please send me
17 that information? It sounds like you didn't call me in
18 advance --
19      MR. RIELA: Sure.
20      MS. KIRBY: -- and there's a lot of information
21 you have that I don't. So I would really appreciate if you
22 would send me what you're talking about.
23      MR. RIELA: I'm sorry. Ms. Scott? I'm sorry.
24      MS. KIRBY: No, no. It's Dawn Kirby. I want to
25 get things right.

8 (Pages 26 - 29)

1     MR. RIELA: All right.

2     MS. KIRBY: So if you are in possession of

3 information that I'm not, please reach out to me. I don't

4 know that. You know, I'm looking right now at the Question

5 Number 5, alimony, child support, Social Security,

6 unemployment, public benefits, pension, rental income,

7 interest dividends, money from lawsuits, royalty and

8 gambling, lottery winnings. I'm not sure it would qualify

9 for that answer. But again --

10     MR. RIELA: Yeah. Look --

11     MS. KIRBY: -- if there's information you want me

12 to have, please let me know.

13     MR. RIELA: Okay. I'll send you stuff. But

14 again, for the record, we believe that these were monies --

15 again, these were examples of other income. It's not just

16 limited to that and that were not listed in Item Number 5 in

17 the statement of financial affairs. I'll move --

18     MS. SCOTT: Well, let me just -- let me just

19 interject --

20     MS. KIRBY: (indiscernible) as to what happened

21 and what should be listed. But I wish you had called me

22 first because this is taking a very long time and it's not

23 supposed to.

24     MS. SCOTT: Well, I just want to interject. This

25 is Shannon Scott, for the U.S. Trustee --

1     MR. RIELA: (indiscernible)

2     MS. SCOTT: Hello. This is Shannon Scott, for the

3 U.S. Trustee. I do believe a $530,000 distribution two

4 years prior to the filing should be listed. I won't

5 identify where at this point.

6     But that is something that I believe would

7 interest creditors. I just wanted to state that on the

8 record, and I understand, Ms. Kirby, you may not have the

9 information. But that seems like something the Debtor would

10 remember of receiving such a large distribution. I just

11 wanted to put that on the record.

12     MR. ACKER: Well, let me -- can I mention one

13 thing?

14     MS. SCOTT: Yes. Go ahead.

15     MR. ACKER: I can tell you that I've had no money

16 and the attorney that's been working on the estate for me

17 who's been working part-time, she's been -- when there's

18 been any distributions, she's taken over 60 percent of any

19 distributions that have come to me in legal fees, put it

20 into her accounts and then she took the money and then it

21 was distributed to me and then the monies that -- whatever

22 monies were left from any distributions I received were

23 basically to pay down all credit cards and all debt that I

24 was able to pay down at that time, if that helps.

25     MR. RIELA: I'm going to go through the next

1 several other entities and trusts very briefly here. To the

2 extent -- just so Ms. Scott and the creditors on the phone

3 and Ms. Kirby, you said you're hearing this for the first

4 time.

5     Mr. Acker, do you have a benefit interest in a

6 1987 life insurance trust?

7     MR. ACKER: I don't know at his juncture based on

8 the way they've been running --

9     MR. RIELA: Do you know what the value of that

10 current -- of that interest in that trust might be?

11     MR. ACKER: No. But anything related to the

12 Estate of Stanley Acker, any companies or anything that

13 you're going to ask me about, as I've said, I do not have any

14 definitive information because, as I've said, they've

15 manipulated the numbers from the get-go. So I can't give

16 you any information. I would strongly recommend that you

17 send it to Dawn in writing so we could do some research.

18     MR. RIELA: I guess you'll have the same answer, I

19 suppose, with respect to the Stanley Acker Marital Trust, a

20 different trust?

21     MR. ACKER: That's correct.

22     MR. RIELA: Do you also bear an interest in the

23 Stanley Acker Marital Trust?

24     MR. ACKER: Yes. Karen and David have full

25 control of that trust. I have no idea what they've done

1 with it.

2     MR. RIELA: And I notice in Schedule Number 25,

3 you state that your interest in the Revocable Inter Vivos

4 Stanley Acker Settlor Trust is unknown. Do you have an

5 estimate as to how much your interest in that entity would

6 be?

7     MR. ACKER: I still do not have information on

8 that. I'm sorry.

9     MS. KIRBY: You know, I object to this. This is -

10 - your clients are controlling these items. So Mr. Acker,

11 the Debtor, just testified he's been blacked out from all of

12 this information. They're in possession of it. This is not

13 a proper questioning for a 341 meeting, and I wish you would

14 have called me first because I would have loved to talk

15 these issues through instead of ambushing us at the 341

16 meeting.

17     MR. RIELA: Ms. Scott, if I may proceed, just a

18 few more questions. Here again, I think this may be helpful

19 for understanding perhaps the full scope of Mr. Acker's

20 assets or potential assets.

21     MS. SCOTT: Okay. That was Ms. Kirby speaking.

22 And yes, you can -- this is Shannon Scott. You can ask a

23 few more questions. That's fine.

24     MR. RIELA: Okay. Thank you, Ms. Scott. I'll be

25 very brief here.

1      Mr. Acker, did you incorporate an entity called
2  IMA Construction Corp.?
3          MR. ACKER: That's my wife's company.
4          MR. RIELA: Do you own any equity interest in
5  that?
6          MR. ACKER: No. I do not.
7          MR. RIELA: Did you ever own equity interest in
8  that entity?
9          MR. ACKER: There is no equity. I would say I'm
10 uncertain at this point in the very, very beginning prior to
11 2006.
12         MR. RIELA: Did you ever transfer equity -- any
13 equity interest in that company to your wife?
14         MR. ACKER: I don't have an answer to that because
15 the company's hers. I just don't know how it was
16 transferred over.
17         MR. RIELA: So you're saying it was transferred
18 over?
19         MR. ACKER: I think initially I opened it up. But
20 that was 20, 30 years ago probably and then there was a
21 reasoning. I mean, I had a near fatal bout of cancer in
22 2002 and that's what triggered the protection of what I had
23 to my wife because we weren't sure how the cancer situation
24 was going to pan out.
25         MR. RIELA: Thank you. In early 2021, around

1  February of 2021, did IMA Construction sell its assets,
2  specifically a property located at 50 Tranquility Road?
3          MR. ACKER: That's -- again, that's my wife's
4  company. So you're asking me something that's not mine.
5          MR. RIELA: You do not know the answer to that
6  question?
7          MR. ACKER: I don't want to speak for my wife.
8          MS. KIRBY: He's answered the question.
9          MR. RIELA: I'm curious as to --
10         MR. ACKER: I believe the house was sold. I know
11 the house was sold. That was the asset. But I'm not sure
12 of the date. That's the only problem. I don't know if it
13 was '20 or '21 or earlier.
14         MR. RIELA: Okay. Regardless of the date for now,
15 which you can certainly take a look at, do you know
16 approximately what that property was sold for?
17         MR. ACKER: It was under 500. It was like
18 $400,000-and-something, I think, if I can remember
19 correctly.
20         MR. RIELA: What happened to that money? What
21 happened to that money?
22         MR. ACKER: As I said, it's my wife's --
23         MS. KIRBY: Only if you know. That's a very
24 specific question, and only if you know. Don't guess.
25         MR. ACKER: I have no -- I don't know. I mean,

1  that's easy (indiscernible) --
2          MR. RIELA: Do you have an interest in an entity
3  called Galaxy Fine Art which held a Star Trek collection?
4          MR. ACKER: No. I do not.
5          MR. RIELA: Did you ever have an interest in such
6  an entity?
7          MR. ACKER: In the very -- prior to 2002, I
8  probably did.
9          MR. RIELA: And you do not own that entity
10 anymore?
11         MR. ACKER: No. I do not.
12         MR. RIELA: Well, this entity apparently held a
13 Star Trek collection. Do you have any estimate as to what
14 the value of that collection was?
15         MR. ACKER: I'd have to search that out. That's
16 many years.
17         MR. RIELA: Do you recall representing to anyone,
18 either verbally or in writing, that the collection was worth
19 approximately $1.5 million?
20         MR. ACKER: I don't know. As I said --
21         MS. KIRBY: That's a very broad question. Who did
22 -- who was he speaking to?
23         MR. RIELA: Does he remember telling anybody that
24 he believes that the value of the Star Trek collection was
25 around $1.5 million?

1          MS. KIRBY: You know what --
2          MR. ACKER: I have no --
3          MS. KIRBY: -- we're in a 341 meeting. We're
4  talking about a company that he just testified he hasn't
5  owned for decades and you're asking about the assets of a
6  company he does not own and has not owned for decades.
7  That's not a proper question here. It's not proper.
8          MR. RIELA: We'd be interested in knowing about
9  when he transferred that entity and what consideration he
10 received. Ms. Scott, I have a few more questions. Sorry to
11 take a little while. But there is a lot here, certainly by
12 way of assets that don't appear to have been disclosed. Mr.
13 Acker --
14         MS. KIRBY: I think this might be more appropriate
15 for a 2004 order. It's been an hour. You're asking about
16 assets he does not own so far.
17         MR. RIELA: Obviously, Ms. Scott, you're the
18 presiding officer. I think the intent is to take a Rule
19 2004 examination in any event. But the focus of this has
20 been in connection with (indiscernible) --
21         MS. SCOTT: I'll allow for a few more questions.
22         MS. KIRBY: Well, if you're going to do it anyway,
23 then why do it twice?
24         MR. RIELA: I'm sorry. Ms. Scott was speaking.
25         MS. SCOTT: I'll allow for a few more questions.

10 (Pages 34 - 37)

1  I do think while some questions may be a little bit of a
2  fishing expedition, I do think there are relevant questions
3  with regard to any interest or distributions.  If you can
4  stay on that line of questioning, that would be great.
5  MR. RIELA:  Yes.  Of course I will.  I will.  Mr.
6  Acker, in Schedule A, Item 33, you list that you have no
7  claims against third parties.  Do you have a lawsuit pending
8  against Harley-Davidson pertaining to your accident, your
9  motorcycle accident?
10  MR. ACKER:  No.  That's --
11  MS. KIRBY:  Again, I'm sorry -- there is an
12  amendment we need to make.  I was contacted by Michael
13  Greenspan, who's a local personal injury attorney who I've
14  known from other cases.  There was a lawsuit that I didn't
15  put in the schedules, and I'm sorry, I should have said at
16  the beginning that's another retention application we've
17  been working on.
18  And there's a small tort lawsuit and a products
19  liability which Mr. Greenspan told me realistically
20  ultimately it has zero value whatsoever and he wants to
21  continue it.  And I told him that we would need court
22  authority to do that first.  So you'll see papers on that.
23  MR. RIELA:  Okay.  Thank you, Ms. Kirby.  I won't
24  phrase this as a question in the interest of time but more
25  of a statement because it relates to something that Mr.

1  Acker had said earlier in connection with an answer to Ms.
2  Scott's question.
3  There's actually additional litigation in which
4  Mr. Acker is involved not listed in Item Number 9 in the
5  statement of financial affairs, particularly with respect to
6  a litigation regarding a 1987 trust and also in connection
7  with the Estate of Stanley Acker, litigation which actually
8  is not pending anymore.  There actually was a judgment that
9  was entered in February of 2020.  So just to clarify the
10  record with respect to those litigations.
11  MS. KIRBY:  I will add that I spoke at length with
12  Donna Solomon, Ms. Acker's counsel in the Florida estate
13  matter and was not -- I guess you just said that these were
14  litigations that aren't pending any longer.  I wasn't
15  alerted as to anything (indiscernible) but again you have
16  (indiscernible) sorry, my microphone just broke.  If you
17  have a different opinion or there's a lawsuit in Florida
18  that Ms. Solomon didn't advise me of, please let me know.
19  MR. RIELA:  Thank you.  Mr. Acker, on Question
20  Number 3 of Schedule A, you list a 2001 Chevy Suburban and a
21  trailer.  Have you ever owned a Porsche automobile?
22  MR. ACKER:  Yes.
23  MR. RIELA:  What happened to it?
24  MR. ACKER:  My son sold the Porsche to pay bills.
25  MR. RIELA:  What was (indiscernible) exchange for

1  that sale?
2  MR. ACKER:  What do you mean exchange?  He sold
3  the Porsche for me so I could pay bills.
4  MR. RIELA:  Okay.  How much did he sell it for?
5  I'm sorry.  I should have phrased it that way.  How much did
6  he sell the Porsche for?
7  MR. ACKER:  I think for $40 -- for $40,000 or
8  $45,000 I think he sold it for.
9  MR. RIELA:  When did that sale take place?
10  MR. ACKER:  That I can't tell you off the top of
11  my head.  I know it was quite a few years ago.
12  MR. RIELA:  Did you own -- did you own any other
13  cars or other vehicles during the last two years?
14  MR. ACKER:  The truck and that's it, the 2001
15  Suburban.
16  MR. RIELA:  Did you ever receive a distribution of
17  Elian (ph) jewel cases containing things like diamonds and
18  other precious gems?
19  MR. ACKER:  Yes.  I did.  That was also -- that
20  stuff was used to pay bills as well and all related to the
21  estate.
22  MR. RIELA:  Okay, and which did you receive
23  (indiscernible) --
24  MR. ACKER:  Karen and David know the date on that.
25  I'm not sure.  They have the records.

1  MR. RIELA:  So you do not own that jewelry
2  anymore?
3  MR. ACKER:  As soon as it came in, it was used to
4  pay bills, just like all the other distributions.
5  MR. RIELA:  Okay (indiscernible) --
6  MR. ACKER:  I'm sorry.  Go ahead.
7  MR. RIELA:  Oh, no.  Go ahead.  You were still
8  answering the question.  Please, go ahead.
9  MR. ACKER:  No.  I was just saying that any
10  distributions that have taken place, any, have all been to
11  pay bills and/or legal fees and mostly in the legal fee
12  area.  I mean, I think the estate, from what Karen and David
13  have surpassed $8 or $9 million themselves to fight me.
14  MR. RIELA:  Did you obtain certain property, real
15  property from the Estate of Stanley Acker in or about August
16  of 2020?
17  MR. ACKER:  The date, I don't know.  But the
18  property I received, 3 percent of that property went to the
19  attorney and the rest went to pay bills.
20  MR. RIELA:  When did you -- when did you sell that
21  property?
22  MR. ACKER:  You'd have to talk to Karen and David.
23  They know when I got the -- I basically slipped it after the
24  estate (indiscernible) --
25  MR. RIELA:  Would it be fair to estimate around

1 2020?

2     MR. ACKER: No comment. I honestly can't tell you

3 the date on that. All I know is the monies were used to pay

4 bills, whatever was left.

5     MR. RIELA: Okay. So (indiscernible) I'll just

6 note they should have been on Title 5, the statement of

7 financials. But it wasn't. Let me take a look here.

8     MR. ACKER: That's -- it was within the period

9 (indiscernible) okay. Go ahead.

10     MR. RIELA: Okay. In question -- sorry, the

11 answer to Question Number 21 on Schedule A, you state that

12 you have no retirement or pension accounts; is that correct?

13     MR. ACKER: That's correct.

14     MR. RIELA: Did your father give you an IRA that

15 was valued maybe somewhere around $300,000 around 2016?

16     MR. ACKER: No recollection, and if he did, the

17 monies, whatever monies I had were all used to pay legal

18 fees and my bills. So it is what it is.

19     MR. RIELA: You remember -- you remember receiving

20 an IRA (indiscernible) --

21     MR. ACKER: I don't remember 2016. I'm sorry.

22     MR. RIELA: Did you list all of your guns on

23 Schedule A, Item Number 10? You list three Glocks.

24 Anything more?

25     MR. ACKER: That's correct. That's what I --

1 nothing more.

2     MR. RIELA: Did you ever own more guns than that?

3     MR. ACKER: Probably prior to 2002. But whatever

4 additional firearms I had, I gave them to my son and my

5 wife.

6     MR. RIELA: When did you give those guns to your

7 son and your wife?

8     MR. ACKER: Well, prior to 2002.

9     MR. RIELA: Have you ever transferred assets to --

10 have you ever transferred assets to your wife, your children

11 or other family members or friends during the last six

12 years?

13     MS. KIRBY: That's pretty broad. That could be a

14 present. Can you narrow what you're asking, please? Is

15 there something specific on the schedules you're referring

16 to?

17     MR. RIELA: Yeah. I think with respect to the

18 statement of financial affairs, it asks for a one-year

19 lookback with respect to transfers. I asked for six years

20 given that it's the old New York state fraudulent transfer.

21     MS. KIRBY: So excluding gifts or do you want to

22 know (indiscernible) --

23     MR. RIELA: Excluding gifts to minors

24 (indiscernible) --

25     MS. KIRBY: (indiscernible) can you please specify

1 what you're asking?

2     MR. RIELA: I'm not asking about -- we're talking

3 about transfers of material assets. Let's see here. We're

4 talking about transfers of real material assets, equity in

5 businesses, houses, guns, anything like that during the last

6 six years.

7     MS. KIRBY: So from 2014 to current, to today?

8     MR. RIELA: Yes. Yes.

9     MR. ACKER: That's going back too far. And

10 anything that I do is always done -- is always checked with

11 my accountant to make sure that any transfers are done

12 appropriately and based on IRS rules and laws.

13     MR. RIELA: In 2019, did you transfer the title --

14 did you and your wife transfer the title at 47 Tranquility

15 to just your wife only?

16     MR. ACKER: Yes, we did.

17     MR. RIELA: Why did you --

18     MR. ACKER: Because at that point, as I said, most

19 of the assets -- first, 2019, I had a near fatal accident

20 and I'm a hundred percent disabled at this point and still

21 uncertain about where it was going to go, and that's why

22 that asset was switched over to her in 2019.

23     MR. RIELA: Right before you switched over that

24 asset, again, 47 Tranquility from joint ownership between

25 you and your wife to just your wife, did a law firm calls

1 Rogers, Habas & Eisen obtain a judgment against you?

2     MR. ACKER: Yes. At that point they felt they had

3 money due and owing to them. I didn't have the necessary

4 funds to defend myself and the judge -- at that point we

5 ended up putting it back in both names because it wasn't

6 worth the fight or -- I didn't have the monies to fight it

7 basically.

8     MR. RIELA: So do I have it right that you made

9 the transfer -- you and your wife made the transfer of the

10 property in 2019 -- I'm sorry, 2018, forgive me -- to both

11 you, to just your wife after this judgment was entered and

12 then later actually your wife then transferred it back with

13 you jointly.

14     MR. ACKER: Yes, because it wasn't worth the -- we

15 didn't have the money to fight it and (indiscernible) just

16 to transfer it back than to fight it on a legal basis.

17     MR. RIELA: Did a court order you to -- did any

18 court order Ms. Acker, your wife, to transfer the property

19 back to both --

20     MS. KIRBY: This is far beyond the scope of a 341

21 meeting. This is not in the schedules or statements of

22 financial affairs. Court orders are a matter of public

23 record. So feel free to look it up.

24     MR. RIELA: All right. I think this will be my

25 last question and then we'll be doing a Rule 2004 motion, or

1 the Davidoff firm will. Do you owe your brother -- I'm

2 sorry, your father's brother, your uncle, Robert Acker, any

3 money?

4     MR. ACKER: No. I do not.

5     MR. RIELA: I think that is all that I have here,

6 Ms. Scott and Ms. Kirby. Thank you very much for --

7     MS. SCOTT: Okay. Thank you. All right. I'm

8 going to keep the meeting open, and I will adjourn it for

9 two weeks from today. I need it -- I need a DIP account --

10 proof of opening a DIP account. Let me just get my calendar

11 up.

12     Okay. August 3rd at 2 o'clock, and also

13 classification, I believe, on the insurance and if there are

14 any amendments, I may want to review them and ask some

15 questions at that time. So if you don't mind being

16 available, and at this time, I am adjourning the 341

17 meeting.

18     MS. KIRBY: Ms. Scott?

19     MS. SCOTT: Yes.

20     MS. KIRBY: I'm so sorry.

21     MS. SCOTT: It's okay.

22     MS. KIRBY: I have an appearance before Judge

23 Kinsella in the Northern District --

24     MS. SCOTT: Okay.

25     MS. KIRBY: -- on a contested motion to appoint a

1 Chapter 11 trustee at 1 o'clock on August 3rd.

2     MS. SCOTT: All right. You --

3     MS. KIRBY: So I guess I can (indiscernible) --

4     MS. SCOTT: You want to do it --

5     MS. KIRBY: (indiscernible) definitely be more

6 than an hour.

7     MS. SCOTT: Okay. Do you want to do it the 10th?

8 That way we can ensure that everything -- that has plenty,

9 plenty of time for any --

10     MS. KIRBY: Could we do like the 8th or --

11     MS. SCOTT: Yeah. Well --

12     MS. KIRBY: Or even Tuesday, the 2nd --

13     MS. SCOTT: How about the -- how about the 4th?

14 Thursday, the 4th?

15     MS. KIRBY: Well, if I do not win the motion to

16 appoint the trustee, then the movant is going to take

17 depositions of my clients all before --

18     MS. SCOTT: Okay. All right. Did you say

19 Tuesday, the 9th is okay?

20     MS. KIRBY: No. The 9th and 11th, I'm away on

21 vacation. But I could do the 8th or I could do the 2nd.

22     MS. SCOTT: All right. We'll do the 8th at 2:00.

23 Is everyone okay with that schedule if necessary?

24     MR. RIELA: I'll defer to the Davidoff firm.

25     MR. RATTET: Yeah. That's fine.

1     MS. SCOTT: Okay. All right. At this time,

2 adjourning the meeting, the 341 meeting to August 8th, at

3 2:00. Everyone have a nice afternoon. Thank you.

4     MS. KIRBY: Thank you.

5

6

7

8     C E R T I F I C A T I O N

9

10 I, Sonya Ledanski Hyde, certified that the foregoing

11 transcript is a true and accurate record of the proceedings.

12

13

14

15 Sonya Ledanski Hyde

16

17

18

19

20

21

22

23

24

25

1

2 Veritext Legal Solutions

3 330 Old Country Road

4 Suite 300

5 Mineola, NY 11501

6

7 Date: July 25, 2022

8

9

10     (Whereupon these proceedings were concluded at

11 0:00 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              I N D E X
2
3              RULINGS
4                        Page     Line
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1         C E R T I F I C A T I O N
2
3     I, Sonya Ledanski Hyde, certified that the foregoing
4  transcript is a true and accurate record of the proceedings.
5
6  Sonya L. Ledanski Hyde
7
8  Sonya Ledanski Hyde
9
10
11
12
13
14
15
16
17
18
19
20  Veritext Legal Solutions
21  330 Old Country Road
22  Suite 300
23  Mineola, NY 11501
24
25  Date:  July 25, 2022
```

14 (Pages 50 - 51)

| & |
| --- |
| **&** 2:10,17 3:3 5:6,22 6:4 7:21 19:14 45:1 |

| 0 |
| --- |
| **0:00** 49:11 |

| 1 |
| --- |
| **1** 47:1 |
| **1.5** 11:10 12:19 36:19,25 |
| **1.5.** 11:25 |
| **10** 42:23 |
| **10014** 1:15 2:6 |
| **10022** 2:20 |
| **1006** 1:14 2:5 |
| **10158** 3:6 |
| **10583** 2:13 |
| **10927** 5:2 7:15 |
| **10th** 2:5 47:7 |
| **11** 22:24 47:1 |
| **11501** 49:5 51:23 |
| **11th** 47:20 |
| **12151** 51:6 |
| **19** 21:22 27:8 |
| **1987** 32:6 39:6 |

| 2 |
| --- |
| **2** 46:12 |
| **20** 1:16 4:6 21:22 28:20 29:9 34:20 35:13 |
| **2001** 39:20 40:14 |
| **2002** 34:22 36:7 43:3,8 |
| **2004** 37:15,19 45:25 |

**2006** 34:11
**201** 1:14 2:5
**2014** 44:7
**2016** 42:15,21
**2018** 45:10
**2019** 13:22 44:13,19,22 45:10
**2020** 28:22 29:14 39:9 41:16 42:1
**2021** 21:21 28:13,18 29:13 34:25 35:1
**2022** 1:16 4:6 19:11 49:7 51:25
**21** 21:22 28:19 35:13 42:11
**22-22359** 1:3 4:7
**2305** 5:1 7:14
**237** 2:12
**2375** 7:16
**25** 33:2 49:7 51:25
**25,000** 18:15
**27,000** 22:15
**2:00** 47:22 48:3
**2:04** 1:17 4:6
**2nd** 47:12,21

| 3 |
| --- |
| **3** 12:10 39:20 41:18 |
| **3,048** 29:10 |
| **3,400** 17:14 |
| **30** 34:20 |
| **30,443** 29:9 |
| **300** 49:4 51:22 |
| **300,000** 42:15 |

**33** 38:6
**330** 49:3 51:21
**341** 1:20 28:1,3 33:13,15 37:3 45:20 46:16 48:2
**36** 12:10
**3rd** 46:12 47:1

| 4 |
| --- |
| **4** 10:13 |
| **4.8** 20:1 |
| **40** 40:7 |
| **40,000** 40:7 |
| **400** 21:25 |
| **400,000** 35:18 |
| **45,000** 40:8 |
| **47** 10:25 13:8 23:5 24:16,21 44:14,24 |
| **4th** 47:13,14 |

| 5 |
| --- |
| **5** 29:8 30:5,16 42:6 |
| **50** 22:1 35:2 |
| **500** 35:17 |
| **530,000** 29:11 31:3 |

| 6 |
| --- |
| **6** 23:11 |
| **60** 31:18 |
| **605** 3:5 |
| **66,475.28.** 13:19 |
| **699,000** 13:9 |

| 7 |
| --- |
| **70,244.02** 13:19 |
| **700** 2:12 |
| **716** 15:4 |

**750** 12:19,19
**750,000** 11:18 12:2 13:1

| 8 |
| --- |
| **8** 10:13,13,13 41:13 |
| **8th** 47:10,21,22 48:2 |

| 9 |
| --- |
| **9** 39:4 41:13 |
| **900** 2:19 |
| **9th** 47:19,20 |

| a |
| --- |
| **able** 31:24 |
| **accident** 14:23 15:14 20:24 21:7 22:15 38:8 38:9 44:19 |
| **account** 8:21,21 9:1,7,8,11 28:12 46:9,10 |
| **accountant** 44:11 |
| **accounts** 9:4 24:15 31:20 42:12 |
| **accurate** 48:11 51:4 |
| **acker** 1:7 2:18 2:18,18 3:4,4 4:7,24,24 5:1,1 5:9,15,22,25 6:9 7:4,5,6,9,14,14 7:20,22,25 8:3,5 8:12,16,19,23 9:1,3,5,20,22 10:1,5,9,25 11:3 11:5,8,13,16,19 11:21 12:3,5,7,9 |

12:17,24 13:2
13:11,17,22
14:2,3,5,8,12,15
14:19 15:2,7,11
15:16,19 16:5
16:11,14,16,20
16:22 17:1,6,10
17:14,18,22,25
18:5,8,12,13,21
18:23,25 19:1,3
19:5,9,13,15,15
19:17,22 20:2,3
20:5,7,10,13,16
20:18 21:3,6,13
21:18,19,22,25
22:5,8,13,21,25
23:3,25 24:1,4,7
24:21 25:1,4,6
25:11,17,20,24
26:1,4,6,12,13
26:19 27:2,13
28:6,11,12,14
28:15,19,23
29:8,11,12
31:12,15 32:5,7
32:11,12,19,21
32:23,24 33:4,7
33:10 34:1,3,6,9
34:14,19 35:3,7
35:10,17,22,25
36:4,7,11,15,20
37:2,13 38:6,10
39:1,4,7,19,22
39:24 40:2,7,10
40:14,19,24
41:3,6,9,15,17
41:22 42:2,8,13
42:16,21,25
43:3,8 44:9,16
44:18 45:2,14

45:18 46:2,4
**acker's** 24:8
33:19 39:12
**action** 17:21
18:12
**actions** 18:10
**add** 39:11
**additional** 13:14
39:3 43:4
**address** 4:21
5:17 7:12 17:11
**adjourn** 46:8
**adjourning**
46:16 48:2
**adjustments**
27:18
**administration**
4:13
**advance** 29:18
**advise** 39:18
**affairs** 26:16,22
27:7 29:7,14
30:17 39:5
43:18 45:22
**affirm** 7:7
**afternoon** 4:5,23
5:20 7:20 48:3
**agencies** 14:9
**agent** 10:10,12
**aggressive** 21:16
**ago** 12:12 25:1,2
25:17,22 34:20
40:11
**agreed** 28:5
**ahead** 4:25 5:5
23:3 25:5 31:14
41:6,7,8 42:9
**aisner** 2:10 5:6
7:21

**alerted** 39:15
**alimony** 30:5
**allow** 37:21,25
**ambushing**
33:15
**amending** 15:24
**amendment**
8:10 38:12
**amendments** 8:1
46:14
**american** 16:12
**amount** 13:6,8
13:14,19,19
16:11
**analyst** 15:21
**annual** 21:20
**answer** 5:11
19:5 26:6,8 27:4
27:11 28:23
30:9 32:18
34:14 35:5 39:1
42:11
**answered** 7:10
15:22 35:8
**answering** 41:8
**answers** 29:1
**anybody** 7:2
36:23
**anymore** 36:10
39:8 41:2
**anyway** 37:22
**apparent** 10:17
**apparently**
36:12
**appeal** 21:13,13
**appear** 4:14
37:12
**appearance** 5:13
7:18 46:22

**appearances**
4:19 5:18
**application**
38:16
**appoint** 46:25
47:16
**appreciate** 29:5
29:21
**appropriate**
37:14
**appropriately**
44:12
**approved** 23:18
23:19
**approximately**
13:9 25:6,8
29:11 35:16
36:19
**area** 41:12
**arrange** 10:11
**art** 36:3
**asked** 9:5 26:24
43:19
**asking** 12:13,14
12:21,23 26:25
27:5,9 29:6 35:4
37:5,15 43:14
44:1,2
**asks** 43:18
**asset** 23:5 35:11
44:22,24
**assets** 22:17
26:17 28:7
33:20,20 35:1
37:5,12,16 43:9
43:10 44:3,4,19
**astray** 28:1
**attempt** 21:11
**attorney** 2:4,11
2:18 4:8 13:24

18:15 31:16
38:13 41:19
**attorneys** 3:4
**august** 41:15
46:12 47:1 48:2
**authority** 38:22
**authorized** 8:13
**auto** 9:25
**automobile**
39:21
**available** 46:16
**avenue** 2:19 3:5
**aware** 27:24

**b**

**b** 1:23
**back** 9:10 44:9
45:5,12,16,19
**background**
19:25
**balance** 18:16
**bank** 8:21,21,23
9:10,15 24:14
**banked** 9:3
**bankruptcy** 1:1
4:13,14,15 8:18
9:6
**based** 26:7 32:7
44:12
**basically** 14:23
21:1 27:22
31:23 41:23
45:7
**basis** 27:24
45:16
**beach** 20:10,13
20:14
**bear** 11:19 13:3
32:22
**beginning** 25:12
25:24 34:10

38:16
**believe** 10:6
15:21 21:3,22
28:19 29:14
30:14 31:3,6
35:10 46:13
**believed** 9:7
**believes** 36:24
**belongs** 8:9
**benefit** 29:6
32:5
**benefits** 29:9,10
30:6
**best** 5:10
**beyond** 45:20
**bills** 16:14,19
39:24 40:3,20
41:4,11,19 42:4
42:18
**bit** 6:20 7:11
17:8 23:11 38:1
**bites** 23:9
**blacked** 33:11
**boned** 18:13
**bout** 34:21
**breaking** 7:11
**brief** 33:25
**briefly** 32:1
**broad** 27:3
36:21 43:13
**broke** 5:9 17:8
39:16
**broker** 22:16
23:7 25:12,12
**brother** 46:1,2
**brought** 9:6
**business** 16:3
22:3
**businesses** 15:23
16:3 22:6 26:3

26:18 27:10,14
44:5
**buyer** 23:12

**c**

**c** 2:1 3:1 4:1
48:8,8 51:1,1
**calendar** 46:10
**call** 8:7 9:4,12
10:11 29:17
**called** 12:12
26:11 30:21
33:14 34:1 36:3
**calls** 44:25
**cancer** 34:21,23
**car** 18:14
**card** 16:7,9,9,18
**cards** 31:23
**care** 9:13
**cars** 40:13
**case** 1:3 4:7,15
6:14,18 8:14
19:8,11,15,16
21:10
**cases** 4:13 38:14
40:17
**cash** 13:23
**catastrophic**
14:21
**cc** 27:23
**certain** 41:14
**certainly** 35:15
37:11
**certified** 48:10
51:3
**change** 8:6
**chapter** 22:24
47:1
**chase** 9:3
**checked** 44:10

**chevy** 39:20
**child** 30:5
**children** 43:10
**chubb** 18:11,16
18:24
**citron** 3:3 6:4
**claim** 13:7,15,18
**claiming** 11:24
11:24
**claims** 13:5,9,18
13:21 19:6 38:7
**clarify** 5:16 9:2
10:9 15:20 16:1
39:9
**classification**
46:13
**cleaned** 25:14
**clear** 5:12 6:1
**clearer** 7:17
**clients** 9:5 33:10
47:17
**close** 5:11
**closed** 27:20
**code** 4:12,14
**collected** 22:20
22:21
**collection** 36:3
36:13,14,18,24
**come** 26:2 31:19
**comes** 27:13
**comment** 42:2
**comp** 15:15
**companies**
27:20,20 32:12
**company** 8:8
18:18,19,19,23
22:9,22 34:3,13
35:4 37:4,6
**company's**
34:15

compensation
 14:25 15:6
 18:17
completely 14:5
complicated
 10:6
component 4:9
computer 13:4
concluded 49:10
confirm 10:23
 21:17
confused 12:18
confusing 10:18
connection
 26:21 37:20
 39:1,6
consideration
 37:9
construction
 34:2 35:1
consulting 8:8
contacted 38:12
containing
 40:17
contested 46:25
continue 28:4
 38:21
continuously
 25:23
contract 23:18
control 32:25
controlling
 33:10
corp 8:8 34:2
correct 8:15
 11:2,5,11,15,18
 12:2 13:1,2,10
 13:11 14:16
 15:7,15,16 16:4
 16:5 17:18 18:8

19:8,12,13
 20:20,21 21:18
 21:19 25:4,24
 32:21 42:12,13
 42:25
correctly 12:6
 19:5 35:19
counsel 4:21
 6:11,11,16 21:4
 21:6 24:7 39:12
country 49:3
 51:21
county 14:9
couple 24:21
course 38:5
court 1:1 20:9
 21:12 23:18,19
 24:4 38:21
 45:17,18,22
credit 16:7,9,9
 16:18 31:23
creditor 13:9
 24:1,2
creditors 1:20
 5:18 6:2 13:5,17
 23:15,21 31:7
 32:2
cross 19:6
curious 26:20
 35:9
curley 2:10 5:6
 7:21
current 7:12
 11:17,25 12:15
 25:12,13 32:10
 44:7
currently 14:4
 15:14
cut 14:13

**d**

d 4:1 13:5 50:1
date 17:20,22
 29:3 35:12,14
 40:24 41:17
 42:3 49:7 51:25
david 2:18 3:4
 5:22,24 6:4,9,17
 6:21 23:25 26:8
 27:17 32:24
 40:24 41:12,22
davidoff 3:3 6:4
 6:16 46:1 47:24
davidson 38:8
dawn 2:15 5:4,6
 7:20 8:3,4 9:2
 10:8 23:2,3
 29:24 32:17
day 12:12
days 20:22,23
 20:25
deal 21:8
debt 20:1 23:1
 31:23
debtor 1:9 2:11
 4:14,17,20,22
 5:7 7:3,19,21
 8:10,21 9:7
 12:16 15:23
 16:2,3,6,8 31:9
 33:11
debtor's 4:21
 5:17 8:9 23:4
decades 37:5,6
decisions 27:23
deep 25:13
default 21:2
defend 20:25
 45:4

defendant 19:2
defense 21:8
defer 47:24
definitely 47:5
definitive 32:14
department 2:3
 4:10
deposition 28:3
depositions
 47:17
derived 13:20
describe 14:18
 15:1
destroyed 21:1
detail 8:7 14:20
detailed 28:25
determine 27:11
 28:6
dialed 5:24
diamonds 40:17
different 9:15
 32:20 39:17
difficult 27:16
digits 7:13,16
diligence 26:21
dip 9:1,4 46:9,10
directly 16:2
 22:3
disability 14:18
 15:8,10,12
disabled 14:5,7
 44:20
disclosed 28:7
 37:12
dispute 20:17,19
 20:21 21:12
 22:17
distribute 23:13
distributed
 31:21

**distribution**
29:3 31:3,10
40:16
**distributions**
28:11,14 31:18
31:19,22 38:3
41:4,10
**district** 1:2,13
46:23
**dividends** 30:7
**docket** 19:19
**documents** 7:23
8:14 9:8 10:11
10:12,13,23
24:4,7
**doing** 27:17
45:25
**donna** 39:12
**don't** 11:22
13:13 16:16
17:5 18:2 21:3
21:14,15 22:25
24:1,5 27:4,16
28:19,19 29:2
29:21 30:3 32:7
34:14,15 35:7
35:12,25 36:20
37:12 41:17
42:21 46:15
**drive** 5:1 7:15
**due** 26:20 45:3
**duval** 3:10 6:6

**e**

**e** 1:23,23 2:1,1
3:1,1 4:1,1 48:8
50:1 51:1
**earlier** 17:11
24:22 26:2
35:13 39:1

**early** 34:25
**easy** 36:1
**effective** 6:15
**efficient** 6:21
**eisen** 19:14 45:1
**either** 15:9 22:3
36:18
**elaborate** 22:12
**elian** 40:17
**email** 24:12,18
**employer** 15:1,9
22:19
**employer's**
18:19
**ended** 45:5
**engaged** 14:10
23:7
**ensure** 47:8
**entered** 39:9
45:11
**entire** 11:11
**entirety** 11:7
**entities** 32:1
**entitled** 21:23
**entity** 26:11
33:5 34:1,8 36:2
36:6,9,12 37:9
**equity** 34:4,7,9
34:12,13 44:4
**escort** 22:14
**established** 8:20
**estate** 17:24
19:17 20:1,18
20:20 21:17
23:7 27:16
31:16 32:12
39:7,12 40:21
41:12,15,24
**estate's** 26:7

**estimate** 33:5
36:13 41:25
**event** 37:19
**everybody** 29:6
**examination**
4:16 37:19
**examined** 4:15
**example** 5:8
**examples** 30:15
**exchange** 39:25
40:2
**excluding** 43:21
43:23
**existing** 9:5
**expedition** 38:2
**expenses** 16:7
**explain** 6:10,13
**explanation**
19:25
**extent** 32:2

**f**

**f** 1:23 48:8 51:1
**failure** 14:21
21:10
**fair** 41:25
**fairly** 19:12
**family** 24:23
25:9 26:4 28:12
28:15 29:12
43:11
**far** 20:19 28:1
37:16 44:9
45:20
**fatal** 14:22,23
20:24 34:21
44:19
**father** 21:18
42:14
**father's** 46:2

**february** 35:1
39:9
**federal** 24:8,14
**fee** 41:11
**feel** 21:9 27:17
45:23
**feels** 18:16
**fees** 13:24 31:19
41:11 42:18
**fellow** 9:10
**felt** 20:20,21
45:2
**fight** 41:13 45:6
45:6,15,16
**figure** 10:8
**file** 21:21
**filed** 8:17 13:15
21:20 24:4
**filing** 9:6 31:4
**filings** 8:13
**finalize** 23:8
**financial** 24:15
26:16,22 27:7
29:7,14 30:17
39:5 43:18
45:22
**financials** 42:7
**find** 23:12 26:14
29:1
**fine** 28:5 33:23
36:3 47:25
**firearms** 43:4
**firm** 5:21 6:15
6:17 27:18
44:25 46:1
47:24
**first** 10:12 12:18
24:20 30:22
32:3 33:14
38:22 44:19

fishing 38:2
five 25:20,22
floor 2:5 23:21
florida 39:12,17
focus 37:19
focused 24:3
follow 28:8 29:4
following 24:6
foreclosure 17:21
foregoing 48:10 51:3
forget 24:6
forgive 45:10
found 19:24
four 7:12,16 20:22,23,25 25:1,2,6
fraudulent 43:20
free 45:23
friday 6:16
friends 43:11
front 12:10
full 7:12 10:23 32:24 33:19
funds 45:4

**g**

g 4:1
galaxy 36:3
gambling 30:8
gems 40:18
general 13:21
generally 29:1
getting 10:22 19:20 27:25
gifts 43:21,23
give 4:3 17:16 18:12 19:21,25 32:15 42:14

43:6
given 43:20
glocks 42:23
glucksman 3:8 6:3,5,8
go 4:25 5:5,19 10:12,14 18:10 23:3 25:5 31:14 31:25 32:15 41:6,7,8 42:9 44:21
goal 23:12
god 20:18
going 5:13 6:17 8:10 9:18 14:20 15:4,24 18:15 21:8 23:20 24:3 25:25 31:25 32:13 34:24 37:22 44:9,21 46:8 47:16
good 4:5,23 5:20 7:20 13:16
great 38:4
greenspan 38:13 38:19
guess 11:23 24:5 32:18 35:24 39:13 47:3
guns 42:22 43:2 43:6 44:5

**h**

habas 19:14 45:1
half 11:25 25:17
hand 7:4
handle 6:21
happened 14:18 21:1 30:20 35:20,21 39:23

happy 29:4
harley 38:8
haverstraw 5:2 7:15 17:10,10
head 28:24 29:2 40:11
hear 18:4 20:11 28:18
heard 7:3 17:9 18:2,3
hearing 4:11 32:3
held 36:3,12
hello 4:2 31:2
helpern 2:17 5:21 23:24
helpful 33:18
helps 31:24
high 11:22
hirschtritt 2:17 5:22
hit 18:14
home 16:24
homeowner's 9:25 10:4,5,7,19
honestly 42:2
hour 37:15 47:6
house 6:16 25:13,16 35:10 35:11
houses 44:5
hundred 44:20
hutcher 3:3 6:4
hyde 3:25 48:10 48:15 51:3,8

**i**

idea 26:7 32:25
identify 31:5
idi 15:21

ima 34:2 35:1
include 12:20
including 29:6
income 15:13,18 29:8 30:6,15
incorporate 34:1
incorporated 27:10
indicate 4:18
indirectly 16:3 22:4
indiscernible 6:7 8:24 10:13 10:14,19 11:21 12:5 14:12 15:3 15:3 16:11,12 16:16 17:6,7 18:1 19:9 21:16 22:9 24:17 27:24 29:9,15 30:20 31:1 36:1 37:20 39:15,16 39:25 40:23 41:5,24 42:5,9 42:20 43:22,24 43:25 45:15 47:3,5
individual 12:15 18:14
individually 22:2
individuals 22:6
information 13:14 28:2 29:4 29:17,20 30:3 30:11 31:9 32:14,16 33:7 33:12

**initially** 34:19
**injury** 38:13
**instructor** 14:20
**insurance** 9:20
9:22,23,24 10:1
10:2,3,10,12,18
10:19,20 18:11
18:15,18,19,19
18:23 22:9,22
32:6 46:13
**intent** 37:18
**inter** 33:3
**interest** 11:14
16:2 23:11 26:3
26:11,17 27:9
28:12,13 29:12
29:12 30:7 31:7
32:5,10,22 33:3
33:5 34:4,7,13
36:2,5 38:3,24
**interested** 37:8
**interests** 22:3
**interject** 30:19
30:24
**internal** 13:18
**investment**
13:23
**involved** 6:14,19
15:23 39:4
**involvement**
6:20
**ira** 42:14,20
**iras** 13:23
**irs** 13:21 44:12
**issue** 23:1
**issued** 21:12
**issues** 33:15
**item** 10:25 30:16
38:6 39:4 42:23

**items** 33:10
**i'm** 12:5 14:13
26:20

**j**

**james** 3:8 6:5
**jersey** 14:21
15:4
**jewel** 40:17
**jewelry** 41:1
**job** 6:16
**joint** 11:2,24
44:24
**jointly** 45:13
**judge** 45:4 46:22
**judgment** 19:7
20:5,6,7,15 21:2
21:12 39:8 45:1
45:11
**judicial** 4:12
**july** 1:16 4:5
49:7 51:25
**juncture** 32:7
**justice** 2:3 4:10

**k**

**karen** 2:18 3:4
5:22,23 6:3,4,8
6:17,20 23:24
26:8 27:17
32:24 40:24
41:12,22
**keep** 46:8
**kind** 5:9 8:23
10:7 12:17
**kinsella** 46:23
**kirby** 2:10,15
4:3,23,25 5:4,4
5:6,6,6 7:18,20
7:20 8:4,4,6 9:2
9:15 10:9,17,22

12:5,9 13:13
15:24 19:23
23:2,4,15,17
24:9,11,17,18
26:25 27:3,25
28:17,25 29:16
29:20,24,24
30:2,11,20 31:8
32:3 33:9,21
35:8,23 36:21
37:1,3,14,22
38:11,23 39:11
43:13,21,25
44:7 45:20 46:6
46:18,20,22,25
47:3,5,10,12,15
47:20 48:4
**know** 7:10 9:4
11:22 13:13,16
18:2 22:25
26:10 27:4,13
29:2 30:4,4,12
32:7,9 33:9
34:15 35:5,10
35:12,15,23,24
35:25 36:20
37:1 39:18
40:11,24 41:17
41:23 42:3
43:22
**knowing** 37:8
**known** 38:14
**knows** 23:17

**l**

**large** 31:10
**law** 4:16 5:21
6:15 44:25
**laws** 44:12
**lawsuit** 38:7,14
38:18 39:17

**lawsuits** 30:7
**leave** 9:18 10:7
**leaving** 6:15
**ledanski** 3:25
48:10,15 51:3,8
**left** 27:22 31:22
42:4
**legal** 18:10
21:16 31:19
41:11,11 42:17
45:16 49:2
51:20
**length** 39:11
**level** 26:20
27:10
**liability** 38:19
**life** 9:22 10:1
32:6
**limited** 26:4,5
26:12 28:12,15
29:12 30:16
**line** 6:5,7 14:11
23:25 38:4 50:4
**list** 10:25 11:17
13:6,8,17 16:7
38:6 39:20
42:22,23
**listed** 8:8 11:10
12:1 13:1,7
18:10 20:1
25:19,21 30:21
30:21 31:4 39:4
**litigated** 20:9
**litigation** 39:3,6
39:7
**litigations** 39:10
39:14
**little** 6:19 7:11
10:5 17:8 23:10
37:11 38:1

**live** 16:24 17:3,5
17:5 24:23
**lived** 25:9
**living** 16:23
**llp** 2:10,17 3:3
**local** 38:13
**located** 35:2
**location** 17:7
**long** 8:9 14:10
25:18 30:22
**longer** 24:23
39:14
**look** 26:13,23
30:10 35:15
42:7 45:23
**lookback** 43:19
**looking** 12:11
30:4
**lot** 5:11 29:20
37:11
**lottery** 30:8
**loved** 33:14
**lurch** 27:22

**m**

**ma'am** 7:25
8:16 15:19
**main** 23:1
**manipulated**
32:15
**marital** 32:19,23
**mark** 1:7 4:7,24
4:25 5:1 6:3
7:14 18:11,24
19:15
**market** 23:6
**market's** 23:10
**material** 44:3,4
**matter** 1:5 19:16
19:17 20:15,18
39:13 45:22

**matters** 6:20
**max** 3:10 6:6
**maxed** 18:15
**mean** 6:11 12:19
14:24 23:1,4
34:21 35:25
40:2 41:12
**means** 11:8
**medical** 9:25
**meeting** 1:20 4:6
5:23 6:22,23
9:18,19 15:22
28:1,3 33:13,16
37:3 45:21 46:8
46:17 48:2,2
**members** 43:11
**mention** 31:12
**messed** 8:24
22:16
**michael** 2:22
5:21 6:14 23:23
24:9,11 38:12
**microphone**
39:16
**million** 11:11
12:19 36:19,25
41:13
**mind** 19:24
46:15
**mine** 18:21 35:4
**mineola** 49:5
51:23
**minors** 43:23
**minute** 12:22
**missing** 10:15
**mistakenly** 8:7
**money** 21:15
22:7,8,9 28:9
30:7 31:15,20
35:20,21 45:3

45:15 46:3
**monies** 30:14
31:21,22 42:3
42:17,17 45:6
**monthly** 16:7,9
17:13
**mortgage** 11:21
12:3,14,18,20
12:22 13:6
17:19
**motion** 45:25
46:25 47:15
**motorcycle**
14:20,21 22:10
22:13 38:9
**movant** 47:16
**move** 24:24
30:17
**moved** 25:9,15
**msa** 8:8

**n**

**n** 2:1 3:1 4:1
48:8 50:1 51:1
**name** 4:8,21
5:20 7:12
**named** 8:8
**names** 4:17 45:5
**narrow** 43:14
**national** 18:11
**near** 14:22,23
20:24 34:21
44:19
**necessary** 45:3
47:23
**need** 8:10 10:11
10:22 38:12,21
46:9,9
**needed** 13:23
**never** 19:18,24
22:22

**new** 1:2,13,15
2:6,6,20 3:6 5:2
7:15 11:1 14:9
14:20 43:20
**nice** 48:3
**non** 15:23 16:3
27:9
**northern** 46:23
**note** 42:6
**notes** 13:4
**notice** 16:6 33:2
**number** 4:7
13:15 27:8 29:8
30:5,16 33:2
39:4,20 42:11
42:23
**numbers** 32:15
**ny** 1:15 2:13,20
49:5 51:23

**o**

**o** 1:23 4:1 48:8
51:1
**o'clock** 46:12
47:1
**oath** 4:15
**object** 33:9
**obtain** 41:14
45:1
**obviously** 12:19
24:3 37:17
**occupation** 14:4
**offense** 21:9
**offers** 23:9
**office** 1:12 4:9
15:21
**officer** 4:11 14:8
37:18
**officers** 27:19
**oh** 4:25 13:16
19:20,24 20:18

28:19 41:7
**okay** 5:3,8,15
6:1,1,8,10,25
7:2,3,6,10,14
8:12,17,25 9:14
9:17,20 10:4,16
10:21,21,24,24
11:4,6,10,17
12:4,24 13:3,4
13:12,16,16
14:1,6,10,17,24
15:5,13,20 16:6
16:15,21 17:2
17:12,12,16,19
17:24 18:6,18
18:24 19:4,11
19:14,20,24,24
20:5,6,8,14,17
21:2,4,17,20,23
22:2,11,19,23
23:14,20 24:13
24:13,20 25:2,8
28:22 30:13
33:21,24 35:14
38:23 40:4,22
41:5 42:5,9,10
46:7,12,21,24
47:7,18,19,23
48:1
**old** 43:20 49:3
51:21
**ones** 26:2
**open** 9:18 10:24
23:20 46:8
**opened** 9:7,11
34:19
**opening** 46:10
**opinion** 39:17
**opinions** 20:19

**order** 22:23
37:15 45:17,18
**orderly** 5:19
**orders** 45:22
**owe** 22:6 46:1
**owed** 22:8
**owing** 45:3
**owned** 11:1 37:5
37:6 39:21
**owner** 27:21
**ownership** 16:2
22:3 44:24

**p**

**p** 2:1,1 3:1,1 4:1
**p.m.** 1:17 4:6
**page** 10:13,13
10:14 12:10
20:3 50:4
**pages** 10:10
**paid** 17:20,22
22:22
**palisades** 14:22
**palm** 20:10,13
20:14
**pan** 34:24
**papers** 23:8
38:22
**parkway** 14:22
**part** 21:7 22:11
31:17
**particular** 27:8
27:11
**particularly**
39:5
**parties** 20:21
38:7
**partner** 26:4
**partnership**
26:5,11,12
28:13,15 29:12

**patrol** 18:13
**pay** 12:3 13:24
16:17 17:4,9
22:15 31:23,24
39:24 40:3,20
41:4,11,19 42:3
42:17
**paying** 12:20
17:23
**payments** 16:7,9
16:9,10
**pays** 16:14,16
16:18 17:14
**pdf** 12:9
**penalties** 13:24
**pending** 20:16
38:7 39:8,14
**pension** 30:6
42:12
**people** 29:1
**percent** 23:11
31:18 41:18
44:20
**percentage** 10:6
11:25 12:14,23
**perfect** 6:24
**performed**
26:21
**performing**
26:21
**period** 13:22
42:8
**person** 5:19
**personal** 9:22
13:21 22:14
38:13
**personally** 24:1
**persons** 4:17
**pertaining** 38:8

**petition** 8:21
15:25 16:8
**petitions** 7:23
8:2,13
**ph** 40:17
**phh** 13:6
**phone** 4:20 5:11
6:2 32:2
**phrase** 38:24
**phrased** 40:5
**place** 20:23 40:9
41:10
**please** 4:21 7:3
7:12,18 18:12
28:2 29:16 30:3
30:12 39:18
41:8 43:14,25
**plenty** 47:8,9
**pm** 49:11
**point** 11:23
19:23 26:1 31:5
34:10 44:18,20
45:2,4
**pointe** 5:1 7:15
**police** 14:8,19
22:9,13
**porsche** 39:21
39:24 40:3,6
**portion** 11:18
12:1,15,25
**position** 20:24
**possession** 8:21
9:8 30:2 33:12
**post** 2:12 8:20
**potential** 33:20
**precious** 40:18
**premises** 17:3
**prepared** 26:15
27:6

**prepetition** 6:20
9:3 15:14 23:6
**present** 43:14
**presently** 9:20
**presiding** 4:10
37:18
**pretty** 43:13
**prior** 14:6 28:20
31:4 34:10 36:7
43:3,8
**priority** 13:19
**probably** 34:20
36:8 43:3
**problem** 19:22
24:19 35:12
**proceed** 5:19
33:17
**proceedings**
48:11 49:10
51:4
**proceeds** 23:13
**products** 38:18
**proof** 9:6 13:14
46:10
**proper** 33:13
37:7,7
**property** 11:1
11:11 13:6,8
17:4,17,20 18:6
23:7,12 24:16
24:22,24,25
25:19 35:2,16
41:14,15,18,18
41:21 45:10,18
**protection** 34:22
**provided** 9:8
29:13
**public** 30:6
45:22

**publicly** 27:9
**purportedly**
27:21
**purpose** 9:18
28:6
**pursuant** 4:12
**put** 5:10 14:18
14:21 22:25
31:11,19 38:15
**putting** 45:5

**q**

**qualify** 30:8
**question** 12:6,12
12:22 27:3,12
28:8,18 29:8
30:4 35:6,8,24
36:21 37:7
38:24 39:2,19
41:8 42:10,11
45:25
**questioning**
4:17 6:22 33:13
38:4
**questions** 19:21
23:22 24:3,5,21
26:2 29:1 33:18
33:23 37:10,21
37:25 38:1,2
46:15
**quite** 23:6 40:11

**r**

**r** 1:23 2:1 3:1
4:1 48:8 51:1
**raise** 7:3
**raised** 7:5
**range** 27:20
**rates** 23:11
**rattet** 3:9 6:5,7
47:25

**reach** 30:3
**read** 7:22
**real** 17:24 23:6
41:14 44:4
**realistically**
38:19
**really** 27:15
29:21
**reason** 6:12 21:9
29:5
**reasonable**
18:17
**reasoning** 34:21
**recall** 12:11
36:17
**receive** 14:25
15:4,8 28:16
40:16,22
**received** 27:21
28:10,11,14
29:11 31:22
37:10 41:18
**receiving** 31:10
42:19
**recollection**
42:16
**recommend**
32:16
**record** 4:5 5:16
7:13,19 16:1
30:14 31:8,11
39:10 45:23
48:11 51:4
**recorded** 4:16
**records** 29:10
40:25
**referring** 43:15
**reflect** 4:5
**refund** 21:25

**refunds** 21:24
**regard** 38:3
**regarding** 4:15
39:6
**regardless** 35:14
**regards** 20:18
20:19 27:2,15
**relate** 24:21
**related** 7:23
8:14 27:16
32:11 40:20
**relates** 38:25
**relevant** 38:2
**remember** 31:10
35:18 36:23
42:19,19,21
**removed** 19:18
27:19
**rent** 17:2,3,4,9
17:12
**rental** 30:6
**renter** 25:15
**renter's** 9:25
10:18
**renters** 25:11,13
**reorganize**
22:24
**repeat** 26:19
**report** 24:16
**represent** 4:18
6:3,17 24:1
**representing** 5:7
5:22 7:21 21:4,6
23:24 36:17
**request** 24:6
**required** 4:14
**research** 32:17
**residence** 16:23
**respect** 5:23
27:8 28:8,9

32:19 39:5,10
43:17,19
**rest** 41:19
**retention** 23:8
38:16
**retirement**
42:12
**returns** 21:21
24:14
**revenue** 13:18
**review** 26:17
27:11 46:14
**revocable** 33:3
**riela** 2:22 5:20
5:21 6:13,14 7:1
23:23,24 24:10
24:13,20 25:2,5
25:8,15,18,21
25:25 26:10,15
26:20 27:6 28:5
28:16,22 29:5
29:19,23 30:1
30:10,13 31:1
31:25 32:9,18
32:22 33:2,17
33:24 34:4,7,12
34:17,25 35:5,9
35:14,20 36:2,5
36:9,12,17,23
37:8,17,24 38:5
38:23 39:19,23
39:25 40:4,9,12
40:16,22 41:1,5
41:7,14,20,25
42:5,10,14,19
42:22 43:2,6,9
43:17,23 44:2,8
44:13,17,23
45:8,17,24 46:5
47:24

**right** 4:4,4 5:13
6:24 7:4 12:13
12:21 14:3 18:9
23:16 29:25
30:1,4 44:23
45:8,24 46:7
47:2,18,22 48:1
**road** 2:12 10:25
13:8 24:16,22
35:2 49:3 51:21
**robert** 2:18 3:9
5:24 6:5 23:25
46:2
**rochelle** 19:15
**rockland** 14:8
**rogers** 19:14
45:1
**room** 1:14
**round** 5:1 7:15
**royalty** 30:7
**rule** 37:18 45:25
**rules** 44:12
**rulings** 50:3
**run** 20:20 26:7
**running** 32:8

**s**

**s** 2:1 3:1 4:1
**sale** 23:18 25:19
40:1,9
**satisfied** 19:18
**saying** 22:19
34:17 41:9
**says** 18:24 19:2
**scarsdale** 2:13
**schedule** 13:5
27:8 33:2 38:6
39:20 42:11,23
47:23
**schedules** 7:23
8:2,13 11:1 12:2

12:9 16:8 26:1
26:15,22 27:6,7
28:7 29:13
38:15 43:15
45:21
**scope** 33:19
45:20
**scott** 1:24 2:8
4:2,4,8 5:3,5,8
5:16,20 6:1,10
6:24 7:2,6,10,17
7:22 8:1,12,17
8:20,25 9:14,17
9:24 10:4,16,21
10:24 11:4,6,10
11:14,17,20,23
12:4,11,13,21
12:25 13:3,12
13:16 14:1,3,6
14:10,13,17,24
15:5,8,13,17,20
16:6,13,15,18
16:21,23 17:2,8
17:12,16,19,24
18:2,6,9,18,22
18:24 19:2,4,6
19:11,14,20,23
20:4,6,8,11,14
20:17 21:2,4,11
21:17,20,23
22:2,6,11,19,23
23:4,14,16,20
23:23 24:23
26:3 29:7,23
30:18,24,25
31:2,2,14 32:2
33:17,21,22,24
37:10,17,21,24
37:25 46:6,7,18
46:19,21,24

47:2,4,7,11,13
47:18,22 48:1
**scott's** 39:2
**search** 36:15
**second** 4:3 11:19
17:16 19:21
**secured** 13:5,7,9
**security** 7:13
15:11 29:9,10
30:5
**see** 6:23 19:11
38:22 44:3
**sell** 23:12 25:14
35:1 40:4,6
41:20
**send** 24:11,18
28:2 29:16,22
30:13 32:17
**sent** 10:10
**service** 13:18
**services** 13:6
**set** 10:12 19:20
**settlor** 33:4
**shannon** 1:24
2:8 4:8 30:25
31:2 33:22
**showing** 23:7
**signature** 51:6
**signed** 7:24
**significant** 23:5
**silent** 13:4
**sir** 28:1
**situation** 34:23
**six** 20:4 43:11
43:19 44:6
**sixteen** 20:4
**slipped** 41:23
**small** 16:11 23:9
38:18

social 7:13 15:11 29:9,10 30:5
softened 23:10
sold 35:10,11,16 39:24 40:2,8
solid 23:10
solomon 39:12 39:18
solutions 49:2 51:20
somebody 9:6
son 39:24 43:4,7
sonya 3:25 48:10,15 51:3,8
soon 41:3
sorry 11:9 12:5 14:13 16:13 17:8 18:2 20:11 22:12 25:5,7 26:19 28:17,24 29:23,23 33:8 37:10,24 38:11 38:15 39:16 40:5 41:6 42:10 42:21 45:10 46:2,20
sounds 29:17
sources 15:17
southern 1:2,13
speak 35:7
speaker 5:9,10
speaking 33:21 36:22 37:24
specific 6:11,12 26:1,17 28:17 28:17,25 35:24 43:15
specifically 26:25 28:9 35:2

specify 27:3 43:25
split 12:19
spoke 39:11
squad 18:14
ssdi 15:11,15
stanley 20:2 21:18 26:4,12 28:12,15 29:11 32:12,19,23 33:4 39:7 41:15
star 36:3,13,24
start 4:20
state 4:17,21 7:12 15:9 20:9 24:14 31:7 33:3 42:11 43:20
statement 27:7 29:7,14 30:17 38:25 39:5 42:6 43:18
statements 7:23 8:2,14 24:15 26:16,22 45:21
states 1:1,12 2:3 4:9,12
stating 15:24
status 17:21 18:12 19:7
stay 38:4
steven 1:7 4:7
stock 27:9
street 1:14 2:5
strongly 32:16
stuff 13:25 23:19 27:14,23 30:13 40:20
subject 19:16 20:15

suburban 39:20 40:15
successfully 22:24
suffern 11:1 17:17,20
suite 2:5 49:4 51:22
supervises 4:13
supervisor 9:12
support 30:5
suppose 32:19
supposed 22:15 30:23
sure 6:13 9:11 10:7 11:8,20 26:9 29:19 30:8 34:23 35:11 40:25 44:11
surpassed 41:13
swear 5:17 7:6
switched 44:22 44:23
syracuse 2:17 5:21

**t**

t 18:13 48:8,8 51:1,1
tail 20:22
take 4:19 5:13 5:18 6:16 9:13 12:18 35:15 37:11,18 40:9 42:7 47:16
taken 31:18 41:10
talk 9:12 33:14 41:22
talking 27:15 29:22 37:4 44:2

44:4
tannenbaum 2:17 5:21 23:24
tax 13:21 21:20 24:14
taxes 17:24,25 18:7
technically 12:14
tell 7:7 31:15 40:10 42:2
telling 36:23
ten 10:10
tenancy 11:6,24
tenant 11:2
testified 15:22 24:22 26:2 33:11 37:4
thank 6:2,24 7:2 7:17,21,22 13:17 23:23 24:16,20 29:16 33:24 34:25 38:23 39:19 46:6,7 48:3,4
thing 5:8 10:14 31:13
things 10:14 29:2,25 40:17
think 6:5 17:25 18:3 21:25 25:20 27:19,25 28:20,20 33:18 34:19 35:18 37:14,18 38:1,2 40:7,8 41:12,12 43:17 45:24 46:5
third 2:19 3:5 38:7

**thirty** 14:12,13 14:14,15,15,17 20:4
**thought** 6:21
**three** 20:23 42:23
**thursday** 47:14
**time** 4:6,19 8:2,9 8:22 14:5 21:5,7 21:7 23:6,20 30:22 31:17,24 32:4 38:24 46:15,16 47:9 48:1
**title** 24:15 42:6 44:13,14
**today** 4:5 5:23 6:17,19 44:7 46:9
**today's** 6:22,22
**told** 25:12 26:22 38:19,21
**top** 28:23 29:2 40:10
**tort** 38:18
**totally** 28:5
**traded** 27:9
**trailer** 10:2,3 39:21
**tranquility** 10:25 13:8 23:5 24:16,22 35:2 44:14,24
**transcribed** 3:25
**transcript** 48:11 51:4
**transfer** 34:12 43:20 44:13,14 45:9,9,16,18

**transferred** 34:16,17 37:9 43:9,10 45:12
**transfers** 43:19 44:3,4,11
**trek** 36:3,13,24
**trial** 4:8 20:22 20:23,23,25
**tried** 21:13
**triggered** 34:22
**truck** 40:14
**true** 48:11 51:4
**trust** 32:6,10,19 32:20,23,25 33:4 39:6
**trustee** 1:12,25 2:4 4:9,13 30:25 31:3 47:1,16
**trustee's** 15:21
**trusts** 32:1
**truth** 7:7,7,8
**try** 5:19
**trying** 10:8
**tuesday** 47:12 47:19
**turn** 25:25
**twice** 37:23
**two** 6:11 14:9 15:4 18:5,6,11 20:21 24:8 25:11 31:3 40:13 46:9
**type** 9:20,24

**u**

**u.s.** 2:4 4:10 15:21 30:25 31:3
**ultimately** 9:16 38:20

**uncertain** 34:10 44:21
**uncle** 5:24 23:25 46:2
**unclear** 9:9
**understand** 5:23 31:8
**understanding** 33:19
**undertake** 26:16
**unemployment** 30:6
**unincorporated** 27:10
**uninsured** 18:20
**united** 1:1,12 2:3 4:9,12
**unknown** 26:6 33:4
**unsecured** 13:18 20:1
**use** 9:15 10:10

**v**

**v** 18:11,24 19:14
**vacant** 17:17,18
**vacation** 47:21
**value** 11:10,11 11:18,25 12:1 12:15,25 32:9 36:14,24 38:20
**valued** 42:15
**varick** 1:14 2:5
**vehicle** 10:2,2 22:14
**vehicles** 40:13
**verbally** 36:18
**veritext** 49:2 51:20
**village** 18:14

**vivos** 33:3

**w**

**want** 5:18 13:13 15:20 16:1 18:9 27:18 29:24 30:11,24 35:7 43:21 46:14 47:4,7
**wanted** 31:7,11
**wants** 38:20
**way** 14:25 26:7 32:8 37:12 40:5 47:8
**we've** 10:8 23:19 38:16
**weeks** 15:4 46:9
**welcome** 7:1
**went** 8:6 9:5,10 12:12 22:17 41:18,19
**west** 20:10,13,14
**whatnot** 5:17
**whatsoever** 38:20
**when's** 29:3
**wife** 8:9 10:9 11:4 15:22 16:14,18,24 17:14,22 24:24 25:22 34:13,23 35:7 43:5,7,10 44:14,15,25,25 45:9,11,12,18
**wife's** 16:3 27:14 34:3 35:3 35:22
**willing** 24:18
**win** 47:15
**winnings** 30:8

**wish**  8:1 23:21
  30:21 33:13
**work**  10:22
  11:22 14:11,25
  21:14 22:14
  24:12,19
**worked**  14:9
**worker's**  15:5
  15:14
**working**  9:13
  23:8 31:16,17
  38:17
**works**  15:1
**worth**  36:18
  45:6,14
**writing**  32:17
  36:18

**x**

**x**  1:4,11 50:1

**y**

**y**  6:2
**yeah**  8:5 9:24
  10:1,1 12:7
  14:19 16:22
  18:5 19:3,9
  23:17 30:10
  43:17 47:11,25
**year**  25:17 26:5
  43:18
**yearly**  29:8
**years**  14:15,15
  14:17 18:5,6
  24:8 25:1,2,7,20
  25:22 31:4
  34:20 36:16
  40:11,13 43:12
  43:19 44:6
**york**  1:2,13,15
  2:6,6,20 3:6 5:2

  7:15 11:1 14:9
  43:20

**z**

**zero**  38:20