DAVIDOFF HUTCHER & CITRON LLP          *Hearing Date: March 7, 2023*
*Attorneys for David & Karen Acker*          *Hearing Time: 10:00 a.m.*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

MARK STEVEN ACKER,                                    Chapter 11
                                                      Case No. 22-22359 (SHL)
                              Debtor.

-------------------------------------------------------------------X

## OBJECTION BY DAVID & KAREN ACKER TO DEBTOR'S MOTION TO DISMISS HIS CHAPTER 11 CASE UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE

**TO THE HONORABLE SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE:**

David and Karen Acker (the "Ackers"), by their attorneys, Davidoff Hutcher & Citron LLP, hereby submit this Objection to the motion of the above captioned debtor Mark Steven Acker (the "Debtor") to dismiss his Chapter 11 case pursuant to Section 1112(b) of the Bankruptcy Code (the "Motion").

1

## SUMMARY OF THE ARGUMENT

1. The Motion is just another in a series of bad faith actions taken by the Debtor in now over eight months in Chapter 11 without having ever attempted to reorganize his affairs in good faith. Now, faced (again) with a compelling motion to convert his case to Chapter 7, which action is clearly in the best interests of his creditors and his bankrupt estate, the Debtor has the "chutzpah" to ask the Court to simply forget about the bankruptcy and all of the Debtor's shortcomings, mismanagements, failures to disclose, and failures to act so that he can continue his decades-long war with his family members, while continuously failing to accept responsibility for his actions, failing to repay his debts, and further secreting and/or wasting assets. Debtor's Motion is just another bad faith attempt at stalling and delaying his creditors and their rights. It would appear that Debtor believes bankruptcy can be used as a tactic to gain leverage against creditors while ignoring the requirements and consequences of a Chapter 11. Clearly, the ability to slip in and out of bankruptcy on a whim is not what is contemplated by the Bankruptcy Code and interpretive case law. The Ackers have spent very significant sums in additional legal fees in this Chapter 11 case "chasing shadows" in order to protect their rights.  In return, along with the Debtor's other creditors, the Ackers are only being further harmed by the Debtor's current role as a debtor-in-possession. The Debtor has proved beyond a reasonable doubt that he is incapable of acting as his own fiduciary, both pre-petition in Florida Probate Court and as a debtor-in-possession in this Chapter 11 case. Multiple court decisions have been issued by courts both in Florida and in New York highlighting the bad acts and bad faith exhibited by Debtor in the litigation crusade against his siblings. A master of legal "gamesmanship"[1], it is clear that Debtor perceived the filing of this bankruptcy as just one more stalling tactic as he continued to secrete

---

[1] The Motion accuses the Ackers of having an "army of lawyers". However, the Debtor himself caused the Ackers to hire multiple attorneys to combat his relentless litigious and malicious conduct.

and squander his assets, incur substantial losses, and otherwise continue to harm his creditors. And now that this stalling tactic has failed, the Debtor seeks dismissal of the case he voluntarily commenced. Dismissal, however, is clearly not in the best interests of creditors and, as demonstrated in the Ackers' renewed Motion to Convert, significant and substantial cause exists to convert the Debtor's case to Chapter 7 immediately and without further delay. Dismissing the Debtor's case would constitute a miscarriage of justice and outright abuse of the bankruptcy system.

2.     The Motion is replete with exaggeration, hyperbole, and falsehoods in a transparent attempt at diverting the Court's attention from Debtor's continued failure to disclose or account for his assets and financial affairs as required in any bankruptcy case in his continuing attempts to hide what is believed to be millions of dollars in secreted assets and/or fraudulent transfers to insiders.  Contrary to what Debtor implies in his papers, the Debtor has no ability to repay his debts in full from his small, residual interest in the Stanley Acker Estate and related trusts.   The Debtor merely fabricates numbers in the Motion to give the impression that such an outcome is possible. Furthermore, consistent with his contentious and combative behavior throughout the course of the Chapter 11 case, the Debtor disputes every single one of his debts in his Motion. The Debtor's outright denial of responsibility for any of his actions – both pre-petition and post-petition – including denial of existing court orders identifying further liabilities of the Debtor, further warrants the need for a Chapter 7 trustee to ascertain and investigate the facts surrounding the Debtor's assets, liabilities, financial affairs and conduct.

3.     Not only does the Motion corroborate that the Debtor is incapable of rehabilitation or reorganization, he continues to erode and harm his own estate. Despite being aware for at least the last few months that his counsel in Florida was aiming to resign, he not only failed to inform

this Court of such material fact, but to this day Debtor still has not retained replacement counsel, thereby further jeopardizing his estate's interests in the SA Estate and related trusts. Further, despite being de-listed from the market over two and half months ago, the Debtor only now references in the Motion the details of an "offer" in a passing footnote, and has still not produced a contract of sale to sell the 47 Tranquility Property. Indeed, his filing of the Motion appears to be further evidence of the Debtor's implicit hopes that the bankruptcy does not force the sale of the Property thereby further frustrating creditors' attempts to recover from such estate property. Meanwhile, the Debtor continues to mount losses and become further administratively insolvent.

4. "[T]here need not be a significant diminution in the estate to satisfy Section 1112(b)[1]." *In re East Coast Airways, Ltd.,* 146 B.R. 325, 336 (Bankr.E.D.N.Y.1992); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)("All that need be found is that the estate is suffering some diminution in value."); *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004)("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow-including that resulting only from administrative expenses-effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of 1112(b)(1)."); *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992). ("In the context of [a debtor living at the expense of the creditors], every dollar expended by the debtor from the [funds that are property of the estate] thereby reduces and diminishes the property of the estate."); *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the elements of § 1112(b)(1) are satisfied") (citation omitted).

5. A Chapter 7 trustee is therefore immediately required to cut off any further losses and erosion of value, to oversee the Debtor's interests in the SA Estate and related trusts, and to move expeditiously towards a sale of the 47 Tranquility Property while investigating the Debtor's affairs and likely numerous fraudulent conveyances. Only with the appointment of a Chapter 7 trustee will the Debtor's estate stop hemorrhaging and creditors be given the opportunity to recover from the Debtor's estate or to obtain the transparency that bankruptcy was designed to provide.

**Background**

6. The Ackers hold a non-dischargeable judgment (the "Judgment"), and secured and unsecured claims against the Debtor in excess of $2.6 million. Since the Debtor has failed to file any objections to the proofs of claim timely filed by the Ackers, the Ackers' claims are considered allowed pursuant to Section 502(a) of the Bankruptcy Code. All references to the Acker's claims as being disputed, an unsupported assertion made by the Debtor in the Motion, should therefore be disregarded by the Court.

7. As previously set forth in the Ackers' Motion to Convert (ECF Doc. 18) and renewed motion (ECF Doc. 59)[2], the Debtor has already demonstrated through material inaccuracies and omissions in his petition, schedules, and Local Rule 1007 affidavit, along with his shocking and unreliable testimony in the 341(a) Meeting, that he lacks any capacity to be his own fiduciary in this Chapter 11 Case.

---

[2] The Ackers specifically incorporate their renewed Motion to Convert herein by reference for the reasons set forth below. Despite the Debtor's unsupported allegation that the Ackers' claims are disputed, the Ackers have standing to bring the Motion To Convert. See *In re E. Coast Airways, Ltd.*, 146 B.R. 325, 335 (Bankr. E.D.N.Y. 1992) (a creditor with only a disputed claim against the Chapter 11 estate has standing to bring a motion to convert pursuant to 11 U.S.C. § 1112(b)).

8.      The Ackers' Judgment for $960,000.00 is secured by the 47 Tranquility Property. At best, the Debtor's interest in such property is said to be no more than approximately $750,000.00, a value eroding each day by the virtue of, *inter alia,* unpaid real estate taxes accumulating thereon[3]. Most concerning is the Debtor's allegation that the value of the 47 Property is now only $450,000

9.      The Debtor also admits that there are no other classes of impaired creditors, as the mortgage on the 47 Tranquility Property must be paid in full from the sale of said property under any plan. Accordingly, assuming the likely rejection of a Debtor plan by the Ackers, such plan cannot be confirmed under either Sections 1129(a) or (b) of the Bankruptcy Code.

10.     Moreover, the Debtor is conflicted from promulgating a plan which will have to provide for the liquidation of all assets up to the amount of all claims in his estate (no less than $3 million), as such plan will have to include the prosecution of the substantial avoidance claims that the Ackers believe exist against the Debtor's spouse and potentially other insiders. Since the Debtor would not be willing to sue his own spouse or other insiders, compounded by the fact that the Debtor has utterly and intentionally failed to account for any transfers of property over the 6-year pre-petition look-back period, he is not a suitable fiduciary for purposes of confirmation and effectuation of a plan. Instead, an independent fiduciary would be required to prosecute such causes of action. Section 1112(b)(1) of the Bankruptcy Code provides that a court "shall" (which Congress in 2005 changed from "may") convert a case from Chapter 11 to Chapter 7 for cause. There is cause under §1112(b)(4)(A) if there is both (i) substantial or continuing loss to or diminution of the estate and (ii) absence of a reasonable likelihood of rehabilitation. See *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). The Chapter 11 Case should therefore

---

[3] The Ackers fear that the Debtor has stopped paying the mortgage on 47 Tranquility due to his allegedly disclosed limited source of income, causing further erosion of value to the estate.

be converted under Section 1112(b)(4)(A) of the Bankruptcy Code. For the numerous reasons stated herein, conversion of the case to Chapter 7 is clearly in the best interests of the creditors, whereas dismissal will only further harm and prejudice the creditors.

11.    In addition to utterly failing to satisfy his burden to prove dismissal is in the best interest of creditors, the Motion is replete with inaccuracies and downright falsehoods. Highlighting one example[4], in Paragraph 20 of the Motion referring to an asset known as 3 Orchard Lane, the Debtor states that "the Florida Court directed an asset of the SA FLP be transferred to the Debtor, after it (the court) caught the Siblings trying to manipulate the SA FLP assets by claiming it had NO value". This is not only false, but it is misleading. Besides the fact that 3 Orchard Lane was owned by the Stanley Acker Estate and not the SA FLP, a transcript from the court hearing attached as Exhibit A actually shows that the Ackers chose to *give* the Debtor the asset of the Orchard Lane property and the Judge actually thanked them and their attorney for offering that settlement and helping to move the estate matters forward. To add insult to injury, Debtor fails to provide the value of the Orchard Lane property in his petition or schedules.  In another example, in the Motion, Debtor conveniently ignores his prior agreement to pay his father's brother, Robert Acker, monies owed pursuant to a promissory note executed by the Debtor. Instead, the Debtor continues to insist that he does not owe Robert Acker any money, a position which is consistent with his blanket dispute of all his unsecured liabilities. Yet, the Debtor never objected to Robert Acker's proof of claim nor any other claim filed in the Chapter 11 case (see proof of existence of Robert Acker promissory note, Exhibit B).  Without belaboring the myriad of misrepresentation in the Motion, it should be noted that the Debtor also spends a great deal of

---

[4] The Court should take note that the Motion is signed only by counsel with no supporting sworn declaration or affidavit of the Debtor. Therefore, the Motion and the facts therein have no probative value. See *Selvaggi v. Grand Union*, 1997 WL 786943 at *3, 1997 U.S. Dist. LEXIS 20546 at *9 (S.D.N.Y. 1997); see also *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.*, 484 F. Supp 1153, 1157 (S.D.N.Y. 1980).

time trying to bring up already adjudicated issues resulting in the Ackers' award of the Judgment for $960,000.00 against the Debtor in the Florida court. The Debtor contends in his Motion, among other things, that the Court Appointed Neutral Florida Fiduciary ("Florida Fiduciary") *conspired* with the Ackers to deprive Debtor of financial resources to protect himself. Not only are the arguments that Debtor makes about the Florida Fiduciary false, but in addition to the Debtor having brought spurious litigations to remove the Ackers from their father's estate (albeit unsuccessfully), he also filed spurious motions and threatened litigations to remove the Florida Fiduciary. This ultimately resulted in the Florida Fiduciary, who did not want to continue wasting resources to fight Debtor's wrongful attacks, settling with the Debtor and resigning.

12.     Even with a non-disparagement agreement as part of Debtor's settlement with the Florida Fiduciary, as well as a clear reprimand in the Judgment against Debtor for "repeatedly attempting to unliterally remove the court-appointed fiduciary", it is curious that Debtor continues to raise these matters in the Motion. Finally, in Paragraph 10, the Debtor suggests that the Ackers used assets of the SA Estate to fund litigation against the Debtor for breach of the 2010 SA before the Florida Fiduciary resigned. To the contrary, the Judgment against the Debtor supported the 2010 SA which stipulated, among other things, that the Ackers' attorneys were charged with resolving two major litigations facing the SA Estate. The first litigation related to the Marital Trust provided for in Stanley Acker's Revocable Trust (the "Accounting Proceeding")[5]. The Ackers' attorneys eventually won this litigation which actually benefited the estate, in spite of the significant costs and delays the Debtor caused with his interferences, for which the Debtor was

---

[5] The Court should know that in the 2010 SA, Debtor agreed to having the Ackers' attorneys representing the Marital Trust in the Accounting Proceeding. He had also agreed to withdraw any objections in the Accounting that he had wrongfully asserted to that litigation, yet despite his agreement he continued taking opposite positions against the SA Estate (where he was a representative) and wanted the SA Estate to pay his attorneys to fight the SA Estate's position.

reprimanded for in the Judgment. The second litigation was involved in handling the SA Estate tax and the IRS Tax Audit. In accordance with the provisions of the 2010 SA, the Ackers were also responsible for defending this action. In fact, again the Debtor was seriously reprimanded in the Judgment for interfering – this time by communicating directly with the IRS (behind the Ackers' and the Florida Fiduciaries' backs). In an effort to attack the credibility of his siblings and the neutral representatives, the Debtor insisted that the Ackers and the Florida Fiduciary were all committing fraud on the IRS. None of his allegations were proven true. In fact, the IRS grew so tired of the Debtor's false narratives that it removed the Debtor from the caption of the litigation. On top of his incessant attacks, the Debtor then had the audacity to file a motion for reconsideration with the US Tax Court to try and overrule its findings. Again, the Debtor was denied his request to have his claims reinstated.

13.     In spite of all of Debtor's interferences, the Ackers' attorneys were still able to resolve the SA Estate tax favorably which was of great benefit to the SA Estate. It is worth noting that in accordance with the 2010 SA, if the Debtor's bad faith actions had caused the SA Estate to pay significantly more in taxes, the Ackers would have had to make up any difference above $4.5 million. However, the SA Estate ended up paying less than $500,000 in taxes which was appropriate, and in accordance with the 2010 SA, due to this favorable result for the SA Estate, the Ackers are entitled to receive 90% of the savings while the Debtor would only receive 10%, an issue that is planned for hearing and will materially diminish the Debtor's share of the SA Estate.

14.     In Paragraph 10, the Debtor, without any support or evidence, values his interest in the SA Trust and estates at $1.4 million. In reality and based upon the Judgment and other claims to be set off against his distributive shares, *the Debtor's interest is more likely not to be more than $100,000.*

15.     In paragraph 19 of the Motion, Debtor tries to convince the Court that the Judgment includes attorney's fees. In fact, in 2022, after 18 months of fighting an appeal brought by the Debtor, the Florida Appeals court not only affirmed the Judgment for $960,000, but also granted attorney's fees to the Ackers which is currently planned to be heard in the lower court in Florida.

16.     The Debtor, in the Motion, has not only also grossly overstated his disclosed assets but has also misrepresented his liabilities. In the Motion, Debtor identifies three claims totaling $280,464.18 as disputed without including them in the total of his liabilities and in addition, did not include other filed claims which although he may now consider disputed, the claims are deemed allowed under the Bankruptcy Code. It is also preposterous for the Debtor to suggest in the Motion that the Ackers' claims do not exist, and it should be noted that the Ackers have already litigated much of their unsecured claims in Florida and although more upcoming hearings are needed to resolve and finalize the amounts, the Ackers are already preparing motions to resolve determination of what is to be claimed against the Debtor. Thus, where the Debtor identifies total liabilities as only being $1,078,507.61, the Court must recognize all proofs of claim already filed and not objected to, as well as those Debtor identified as disputed in the Motion which would raise Debtor's total liabilities to approximately $3 million - a number far exceeding the Debtor's disclosed assets and warranting the appointment of a Chapter 7 trustee to investigate further undisclosed assets and fraudulent conveyances which are likely the only other meaningful source of recovery for the Debtor's creditors.

17.     The Debtor suggesting that his share of the Marital Trust should be considered as currently part of his estate is not only incorrect but is totally misleading. Notwithstanding his glaring omission of his one-third remainder interest in the Marital Trust, in his original filed schedules, the Debtor has suddenly had an epiphany and is now trying to use that remainder interest to fortify grounds for dismissal of the bankruptcy.   The calculated move by the Debtor who suddenly wants to assure the Court that there are assets that will be available to address creditor claims, should only further highlight Debtor's knowledge and original affirmative failure to disclose this interest when the Chapter 11 case was commenced.   In any event, it is simply disingenuous to try to argue that this is a basis for dismissal. The fact is that he is but a remainder beneficiary of a trust that is there to support decedent Stanley Acker's spouse, Arlene Acker,  for the rest of her life as per his direction.  The Debtor's present interest in the Marital Trust is therefore *zero* and there is no way to calculate or predict what that share will amount to at the time of her death. Stated simply, until Arlene Acker's death, the Debtor is merely a remainder beneficiary and his claim that those assets are available to him today to satisfy claims is yet another falsehood and another misleading diversion to try and simply dismiss the bankruptcy that *he filed* and which the record makes clear that this bankruptcy is not only needed but needed with a Chapter 7 Trustee in place to protect the creditors who will have no recourse to recover any assets if the Debtor succeeds in, once again, avoiding and misrepresenting his obligations and assets.

18.     The Debtor's total *disclosed* assets (if the now drastically reduced $450,000 value of the 47 Property is assumed) would add up to no more than $550,000 – a far cry from Debtor's claim that his assets are worth $1.8 million, and a far cry from being able to satisfy liabilities that hover around $3 million dollars. As previously shown, these numbers are but another example of the Debtor's "smoke and mirror" games. The Debtor is insolvent by approximately $2.45 million

and not solvent by $800,000.00 as he suggests in the Motion.  In addition to the fact that Debtor's remainder in the Marital Trust is not a present interest and thus cannot count as an affirmative asset, it is also worth noting that since Debtor has until now not produced any proof that he is serious about selling the 47 Property any time soon, the only amount that can even be deemed an affirmative asset likely amounts to less than $100,000.00.  Leaving almost $3 million dollars in liabilities that Debtor is not willing to address or acknowledge.

19.     Disclosure is a fundamental component of the bankruptcy process. *In re Midwest Properties of Shawano, LLC*., 442 B.R. 278 (Bankr. D. Del. 2010). In order for the bankruptcy system to function, every entity involved in a bankruptcy proceeding must fully disclose all relevant facts. *In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir.1999) ("The duty of disclosure in a bankruptcy proceeding is a continuing one."); *In re eToys, Inc*., 331 B.R. 176, 187 (Bankr.D.Del.2005) ("Disclosure 'goes to the heart of the integrity of the bankruptcy system.' ") (citing *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 236 (Bankr.E.D.Cal.1988)); *In re Century Plaza Assoc*., 154 B.R. 349, 352 (Bankr.S.D.Fla.1992) ("Disclosure of fees is a fundamental concept in bankruptcy.").  A Chapter 7 Trustee is sorely needed in this case as soon as possible as it is clear the Debtor has not adequately disclosed, and is actively attempting to misrepresent, both his assets and liabilities in a preposterous and bad faith attempt to convince the Court that a bankruptcy is no longer needed.

20.     In addition to the numbers "not adding up",  the Debtor has shown that he is not capable of resolving any of the open matters, and with his self-admitted "complete disability", dismissal would only further prejudice the creditors greatly as the Debtor would likely drain the rest of his estate, litigating matters in an attempt to delay the inevitability of further judgment, setoff and personal liability, with the Debtor likely ending up back in bankruptcy.  This would

further prejudice the creditors by allowing Debtor to not only avoid repaying his current debts and further erode his current assets, but further hurt, inter alia, the Ackers who have already incurred millions of dollars of legal expenses dealing with Debtor's malicious and vindictive actions over all these years. If this case is not converted, the Debtor will certainly continue to cause incredible harm to the Ackers, and the judicial system, while his creditors try to resolve matters of the SA Estate and their other claims with Debtor causing them and the court system continued expense and grief while his remaining disclosed assets are dissipated and ultimately exhausted. A Chapter 7 trustee is urgently needed to stop the Debtor from bleeding his estate dry.

21. The Debtor is self-admittedly completely disabled and retired. He has no homestead or non-exempt assets subject to liens that require restructuring or are not otherwise required to be liquidated under a plan to satisfy the best interests test. Chapter 11 is simply not intended to protect this type of debtor. Instead, it is in the best interests of the Debtor's creditors to appoint a Chapter 7 Trustee to liquidate all the Debtor's non-exempt property and pursue the insider causes of action without any further obstruction or interference by the Debtor.

22. Moreover, the Debtor has not prosecuted his Chapter 11 case in good faith. The Debtor has continued to fail to account for all of his assets as well as the pre-petition transfers and other material business affairs which were itemized in the Ackers' renewed Motion to Convert. The Debtor has now had almost 8 months to further disclose the transfers and other assets to the Court but has utterly failed to do so. Such a failure, whether willful or reckless, supports conversion. See 11 U.S.C. Section 1112(b)(4)F); *In re Korn*, 523 B.R. 453, 467 (Bankr. E.D. Pa. 2014)(holding that, while the bankruptcy court could infer that the debtor's "glaring omissions" from his schedules were deliberate, a mere finding of recklessness was sufficient cause for conversion (citing *Bullock v. Bank Champaign, N.A.*, 569 U.S. 267 (2013)).

23.     In addition, the Debtor, despite assuring the Court to the contrary, still has no replacement counsel to represent his interests with respect to the SA Estate and related trust actions pending in Florida. As the Court may recall, the automatic stay has been lifted by this Court to permit the full and final adjudication of the Debtor's interests in such trusts and estates and the Acker's interests and claims of setoff and recoupment against the Debtor.  The Debtor, who caused a stay by filing bankruptcy, and then objected to this lifting of stay, is now trying to suggest in his Motion that the bankruptcy is no longer needed since the automatic stay is vacated and the litigation can proceed in Florida Court.  Besides changing his position like the wind to serve his own selfish purposes, without the bankruptcy in place the Debtor would be in control to continue to prolong the litigations that are now finally underway, causing further delay, additional cost and prejudice to all creditors.   Putting an independent and objective Chapter 7 Trustee in place is what will result in a more efficient and effective resolve to all the claims, litigations and determinations needed for closure.

24.     The Debtor is therefore incapable of protecting or administering his bankrupt estate's interests in such assets, further demonstrating he is incapable of acting as a fiduciary for his creditors.

25.     In addition, the Debtor has failed to timely file monthly operating reports, take any actions to adjudicate claims, investigate or prosecute causes of action or otherwise timely or properly administer this Chapter 11 case. This is additional cause for conversation rather than dismissal. See *In re Landmark Atl. Hess Fam, LLC*, 448 B.R. 707-, 716-17 (Bankr. D. Md. 2011)(U.S. Trustee's opinion that the debtor's monthly operating report "contain[ed] deficiencies" was suffic8ent to find cause under Section 1112(b)(4)(F). And now the Debtor seeks to have the Court ignore his blatant, continuous mismanagement of his estate during the Chapter 11 case

without any consequence to him but instead to the material detriment to all his creditors including the Ackers, who have spent hundreds of thousands of dollars in additional legal fees just in this Chapter 11 case trying to settle with the Debtor and enforce their rights in this Bankruptcy proceeding.

26.     The Debtor does not dispute that the 47 Tranquility Property was taken off multiple listings in November 2022, and, even after being pressed by the Court about the sale status of the property at the most recent hearing before the Court, still no explanation has been forthcoming regarding such de-listing, when the property is still not in contract and thus leaving the Ackers and other creditors and, most importantly, the Court, in the dark as to the marketing and sale status of the Debtor's only disclosed significant, but wasting asset, subject to, inter alia, accumulating real estate taxes and potential mortgage arrears in amount and to an extent unknown to the creditors. Other courts have found this type of behavior via a vis the sale of estate property to constitute incompetence and gross mismanagement, warranting conversion to Chapter 7 under Section 1112(b)(2)(A) of the Bankruptcy Code. See *In re No Rust Rebar, Inc.*, Case No. 21-12188-PDR (Bankr. S.D. Fla. May 23, 2022) at page 31.

27.     Accordingly, The Debtor's bad conduct and mismanagement in the Chapter 11 case warrants denial of the Motion and granting of the Acker's renewed Motion to Convert. With the appointment of a Chapter 7 Trustee this Bankruptcy will finally be able to resolve the Debtor's estate and all the outstanding issues most efficiently and effectively.

**Legal Standard**

28.     The Motion should also be denied under the significant prevailing case law applied in this Circuit. As shown in overwhelming fact and detail above, dismissal is not in the best interests of the creditors, and conversion of the Debtor's Chapter 11 Case to Chapter 7 is therefore appropriate.

29.     In a case with similar circumstances, this Court found *In re Red Bull Taxi Inc.*, 2017 WL 1753234, at *5 (Bankr. S.D.N.Y. May 3, 2017). that:

> "Having found cause to convert or dismiss the Debtor's case, the Court further concludes that conversion, rather than dismissal, is in the best interest of the creditors and the estate. In the Debtors Schedule A/B: Assets—Real and Personal Property [ECF No. 17] ("Schedule A/B"), the Debtor lists an account receivable in the amount of $1,045,509. At the Hearing, in response to the Court's question about this receivable, the Debtor's counsel explained that the receivable is owing to the Debtor by its president and sole shareholder, Mr. Friedman. Moreover, a copy of the Debtor's lease agreement with Tunnel Management, an entity in which Mr. Friedman holds a one-third ownership interest (Pisciotta Decl. ¶ 15, Exh. U), has yet to be provided to the Court. In addition, the holders of the Lender Claims, the two largest unsecured claims, with the possible exception of Capital One (depending upon the extent, if any, of Capital One's deficiency claim), are solely owned by Mr. Friedman. A chapter 7 trustee would be best positioned to recover the receivable listed on Schedule A/B upon conversion and to investigate the Lender Claims and the rights and obligations of the Debtor and Tunnel Management under the purported lease agreement between the parties, and thereby maximize the estate's value for the benefit of all creditors. In light of these facts, the Court also finds that equality of distribution would be best ensured by conversion, as opposed to dismissal."

30.     In *SWJ Mgmt., LLC v. Coan*, 551 B.R. 93 (D. Conn. 2015), the District Court affirmed the Bankruptcy Court's motion to convert, rather than dismiss, a Chapter 11 case, stating,

> "The Code does not define the phrase 'best interests of creditors and the estate.' " 7 Collier on Bankruptcy ¶ 1112.04[7]. As a result, courts have indicated various reasons for choosing conversion and rejecting dismissal. Courts have considered "prejudice to creditors" to be a proper reason for a bankruptcy court's refusal to dismiss a chapter 11 case. See id.; Matter of Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir.1988) ("If dismissal would prejudice the creditors, then it will ordinarily be denied."). Misconduct of the debtor, i.e., debtor actions that delay creditors' ability to collect their claims or otherwise protect their interests, also warrants conversion rather than dismissal. See In re Simmons, 200 F.3d 738, 743 (11th Cir.2000)

("When dismissal will only *99 allow the Debtor to hinder creditors, secret[e] assets, and further the Debtor's abuse of the system, dismissal or her voluntary petition is not warranted."); In re Picacho Hills Utility Co., Inc., 518 B.R. 75, 80 (Bankr.N.M.2014)(finding the need for a "neutral, unbiased trustee" to investigate transfers favored conversion rather than dismissal); In re FL. Invest. USA, Inc., No. 13–10814, 2013 WL 4039807, at *5 (Bankr. E.D. Cal. Aug. 7, 2013); see also 7 Collier on Bankruptcy ¶ 1112.04[7] ("In [choosing between conversion and dismissal], the court may consider such factors as … whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests."). Collier also lists "whether the debtor would simply file a further case upon dismissal" as a reason to convert rather than dismiss. 7 Collier on Bankruptcy ¶ 1112.04[7].

***

The considerations listed above formed the basis of the bankruptcy court's decision to convert rather than dismiss. In its non-exhaustive list of reasons favoring conversion, the bankruptcy court noted that Management had failed to take steps to reorganize, had made avoidable transfers, and had attempted to employ counsel with actual or potential conflicts of interest."

*Id.,* 551 B.R. at 98-99. *See also, In re Gilbert Broadcasting Corp., 54 B.R. 2 (Bankr. D.N.J. 1984)*

(interests of all creditors would best be served by conversion, rather than by dismissal of Chapter 11 petition that had not been filed in good faith, in light of pending state court action in which judgment creditor sought to enforce his judgment and the underlying bankruptcy principle of equality of distribution).

31. These cases are exactly on point with this Chapter 11 case that has clearly not been prosecuted in good faith. Dismissal will only result in further cost, litigation "chaos" and delay with no hope for creditor recovery, whereas a Chapter 7 trustee will effectively liquidate all assets including the 47 Tranquility Property, investigate the Debtor's affairs, *objectively* review all filed claims and prosecute the likely millions of dollars in claims arising from the Debtor's series of omissions of disclosure and/or fraudulent conveyances made over the last 6 years.

32.     Similar to the above facts, the Court in *In re Babayoff*, 445 B.R. 64, 82 (Bankr. E.D.N.Y. 2011) chose conversion over dismissal, finding that:

> "Conversion supports the Bankruptcy Code policy of "vigorous maximization of the value of the economic enterprise." *In re Staff Inv. Co., 146 B.R. 256, 261* (Bankr. E.D. Ca. 1992). <u>Value for the estate and creditors may be enhanced through a trustee's avoiding powers if the trustee discovers assets to bring into the estate.</u> See *In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. S.D.N.Y.2009) (Chapter 7 trustee would be "independent fiduciary" who could examine claims and transactions and prosecute as appropriate). <u>Value also may be created where, by converting the case, an orderly liquidation of the debtor's assets will occur and a prompt conclusion to the bankruptcy process may be anticipated.</u> (emphasis supplied).

33.     A Chapter 7 trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors, just as "the benefits of bankruptcy protection" benefitted the Debtor. *In re Tuscan Sun Ristorante, Inc.*, 2010 WL 4929444, at *5 (Bankr. E.D.N.Y. 2010). Viewed another way, if "[t]he creditors ... are better served by the centralized collection and disbursement provided by the bankruptcy process," then conversion, rather than dismissal, is in the best interests of creditors and serves as the preferred remedy. *In re Westhampton Coachworks, Ltd.*, 2010 WL 5348422, at *7. (Bankr. E.D.N.Y. 2010)"

34.     In *In re BH S & B Holdings, LLC*, 439 B.R. 342, 351 (Bankr. S.D.N.Y. 2010), this Court held in finding similar facts supported conversion as opposed to dismissal:

> "At this juncture, it is more appropriate that the case be converted rather than dismissed. Collier articulates ten factors that are useful in determining whether the parties' interests are better served by dismissal or conversion. 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7]. Several of these factors support conversion, <u>namely the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors… At this stage, the creditors' best hope for recovery is through conversion of these cases to cases under chapter 7.</u> Conversion will give the chapter 7 trustee one year to commence the prosecution of avoidance claims. 11 U.S.C. § 546(a)(1)(B). (emphasis supplied)."

35.     For these reasons, in addition to the many other reasons set forth in this Objection, dismissal is therefore *not* in the best interests of the creditors and the estate, whereas Chapter 7 clearly is. A number of courts have also found 'cause' to convert or dismiss where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers. *In re Picacho Hills Util. Co., Inc.,* 518 B.R. 75, 82 (Bankr. D.N.M. 2014) (converting the Chapter 11 case to Chapter 7 and holding that "a Chapter 7 trustee should be installed to investigate the suspect transfers, unburdened by any conflict of interest," where the court was not convinced that the debtor was capable of pursuing estate causes of action in a professional and unbiased manner.) See also *In re Ashley River Consulting, LLC,* Case No. 14-13406(MG), 2015 WL 1540941 (Bankr. S.D.N.Y. 2015). See e.g. *In re Brutsche,* 476 B.R. 298, 309 (Bankr. D.N.M. 2012) (finding "cause" under § 1112(b) where the court had "a serious doubt about whether [d]ebtor would adequately investigate [...] and pursue potential [fraudulent transfer] claims against his spouse"); *In re Fisher*, 07-61338-11, 2008 WL 1775123, at *12 (Bankr. D. Mont. Apr. 15, 2008) (remarking that conversion was appropriate because "a Chapter 7 would [...] no doubt, investigate [d]ebtors' alleged fraudulent conveyances").

36.     It is patently clear that the Debtor cannot and will not prosecute the causes of action necessary to try and make creditors whole. Only a Chapter 7 trustee would be truly independent and capable of fully marshalling assets and administering the estate.[6]

37.     To grant the Motion would truly be a miscarriage of justice and would send the wrong signal to debtors who think they can use and abuse the Bankruptcy system for purposes of obfuscation, frustration and litigation tactics.

---

[6] A Chapter 11 trustee, in contrast, would only add additional administrative expense through a liquidating plan process that the Ackers likely will not support or consent to. Therefore, a Chapter 7 trustee is the most efficient and effective alternative to dismissal.

38.     The Motion should therefore not only be denied, with prejudice, and with costs awarded to the Ackers, but the renewed Motion to Convert granted and a Chapter 7 trustee immediately appointed.

**Request for Sanctions and/or Costs**

39.     The Debtor filed the Motion only after Movants announced in Court at the last hearing that Movants were filing the renewed Motion to Convert. The Motion is therefore nothing more than another bad faith litigation tactic of the Debtor which seeks to avoid the consequences of the Debtor's post-petition mismanagement and pre-petition fraudulent transfers and to cause further erosion, harm and delay to the Ackers and the Debtor's other creditors. The Debtor cannot simply jump in and out of bankruptcy for his own convenient and strategic needs and bad faith litigation strategies. The Debtor has completely abused the bankruptcy system and now, through his Motion, seeks to force his creditors to further litigate and chase the Debtor outside of bankruptcy in an endless continuation of costly and harmful litigation with no end in sight while avoiding the bankruptcy consequences of his conduct. Only through conversion can the Debtor's estate and creditors ensure *any* recovery against the Debtor and avoid further fees, costs, delay and potentially irreparable harm.

40.     The Motion is replete with inaccuracies and falsehoods and is not supported by evidence or even an affidavit of declaration from the Debtor as to its veracity. The filing of the Motion has caused the Ackers to incur additional unnecessary costs and fees. Accordingly, the Ackers request that, in addition to denial of the Motion, that the Court award the Ackers sanctions and/or costs against the Debtor in connection with the Motion under Bankruptcy Code Section 105 and Bankruptcy Rule 11.

**WHEREFORE,** the Ackers request that the Court deny the Motion with prejudice, award the Ackers costs and sanctions against the Debtor, and grant the Ackers such other and further relief as this Court deems just and proper.

Dated: New York, New York
        February 28, 2023

DAVIDOFF HUTCHER & CITRON LLP

By: _/s/ Jonathan S. Pasternak_
Jonathan S. Pasternak
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
jsp@dhclegal.com

*Attorneys for David & Karen Acker*

## **DECLARATION**

Karen and David Acker hereby declare, under penalties of perjury, that they have read the foregoing Objection, that they are fully familiar with the contents thereof, and that the facts stated therein are true and correct to the best of their information and belief.

Dated: February 28, 2023

*/s/ Karen Acker*
KAREN ACKER


*/s/ David Acker*
DAVID ACKER