KIRBY AISNER & CURLEY LLP
*Attorneys for the Chapter 11 Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
jcurley@kacllp.com

Hearing Date: September 6, 2023
Hearing Time: 10:00 a.m.
*Via Zoom for Government*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:

MARK STEVEN ACKER,

                Debtor.

------------------------------------------------------------X

Chapter 7

Case No. 22-22359 (SHL)

## FINAL APPLICATION FOR ALLOWANCE OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES OF KIRBY AISNER & CURLEY, LLP, ATTORNEYS FOR THE DEBTOR FOR THE PERIOD OF 06/15/2022 – 03/10/2023

**TO:    THE HONORABLE SEAN H. LANE
          UNITED STATES BANKRUPTCY JUDGE:**

        Kirby Aisner & Curley LLP (the "**Applicant**"), attorneys for the above captioned debtor (the "**Debtor**"), submits this application (the "**Application**") for final approval and allowance of professional fees pursuant to §§ 330 and 503(b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), covering services rendered by the Applicant to the Debtor during his Chapter 11 proceeding from June 15, 2022 through March 10, 2023 (the "**Fee Period**"), plus necessary and reasonable disbursements incurred during the same period.

### LEGAL STANDING OF APPLICANT

        1.     Applicant's attorneys are all admitted to practice law in the State of New York and the Federal and Bankruptcy Court for the Southern District of New York and are all in good

standing in these Courts. Applicant's attorneys have extensive experience in all aspects of insolvency law with varying levels of expertise ranging from six (6) to over twenty-five (25) years.

## FORMAT OF APPLICATION

2. Applicant makes this final application for:

- allowance of reasonable compensation for professional services rendered by Applicant as counsel to the Debtor during the Chapter 11 case from June 15, 2022 through March 10, 2023, in the amount of $88,400.50; and

- reimbursement of actual and necessary out-of-pocket disbursements incurred by Applicant on behalf of the Debtor from June 15, 2022 through March 10, 2023, in the amount of $2,273.62.

3. Applicant files this Application solely to establish the amount of Applicant's administrative claim and is not seeking payment until such time as the Chapter 7 Trustee and/or the Court determines that funds may be available.

4. At the time of retention, Applicant and the Debtor agreed to hourly billing rates for Applicant, subject to Bankruptcy Court approval, as follows:

| | |
|---|---|
| Partners | $450-550.00 per hour |
| Associates | $295.00 per hour |
| Paraprofessionals | $150.00 per hour |

5. Applicant received a prepetition retainer in the amount of $26,800 from the Debtor's wife immediately prior to the filing of his Chapter 11 petition. After application of the pre-petition retainer to contemporaneous billings in the amount of $1,880, the net pre-petition retainer on the Petition Date was $24,920.

6. In accordance with the U.S. Trustee Guidelines, a certification by Julie Cvek Curley is annexed as **Exhibit "A"** and a breakdown of time entries by project category, and a summary cover sheet accompanies Applicant's time records set forth in **Exhibit "B"**.

## SUMMARY OF THE CHAPTER 11 CASE

7. On June 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

8. On March 10, 2023, an Order was entered converting the Chapter 11 Case to one under Chapter 7.

9. Thereafter, Howard P. Magaliff was duly qualified and appointed as interim Chapter 7 Trustee.

10. The Debtor is an individual Chapter 11 debtor. Prior to the Petition Date, the Debtor was embroiled in litigation with his siblings, and filed the Chapter 11 Case in an effort to reorganize his financial affairs.

## SUMMARY OF APPLICANT'S SERVICES

11. To ensure a smooth transition in becoming debtor-in-possession, Applicant worked closely with the Debtor to file the necessary and required filings including the Voluntary Petition, Schedules, Statement of Financial Affairs and Statement Pursuant to LBR 1007-2.

12. Applicant also worked closely with the Debtor to educate him as to the duties and responsibilities of a Chapter 11 Debtor to ensure compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, and the U.S. Trustee Guidelines

### A. Retention of Professionals

13. On July 19, 2022, the Debtor filed an Application to Employ Applicant as of the Petition Date [ECF No. 17].

14. On August 19, 2022, with the assistance of Applicant, the Debtor filed a Motion to Employ Greenspan & Greenspan, P.C. as special litigation counsel to the Debtor (the "**Greenspan Application**") [ECF No. 22]. By Order dated December 29, 2022, the Court approved the Greenspan Application [ECF No. 51].

15. On August 30, 2022, with the assistance of Applicant, the Debtor filed a Motion to Employ Coldwell Banker Realty as real estate brokers to the Debtor (the "**Broker Application**") [ECF No. 27]. By Order dated September 19, 2022, the Court approved the Broker Application [ECF No. 36].

### B. Preparation and Review of Schedules

16. On June 28, 2022, with the assistance of Applicant, the Debtor filed an Application to Extend Time to File Schedules and Statement of Financial Affairs (the "**Motion to Extend**") [ECF No. 8].

17. Thereafter, Applicant worked closely and diligently with the Debtor to prepare schedules of assets and liabilities and statements of financial affairs (collectively the "**Schedules**"), which were filed on July 13, 2022 [ECF No. 10].

18. Applicant worked closely and diligently with the Debtor to prepare Amendments to its Schedules, which were filed on August 19, 2022 [ECF No. 23].

### C. Motion to Convert

19. On August 19, 2022, David Acker and Karen Acker (collectively, the "**Siblings**"), filed a Motion to Convert the Chapter 11 Case to Chapter 7 (the "**Motion to Convert**") [ECF No. 18].

20. On August 29, 2022, the Debtor, with the assistance of Applicant, filed an Objection to the Motion to Convert (the "**Objection**") [ECF No. 26].

21. On August 31, 2022, the Siblings filed a Response in further support of the Motion to Convert (the "**Response**") [ECF No. 31].

22. Applicant appeared at numerous hearings before the Court regarding the Motion to Convert, the Objection and the Response.

23. On September 27, 2022, an Order was entered Denying the Motion to Convert [ECF No. 37].

### D. Motion for Relief from Stay

24. On September 27, 2022, the Siblings filed a Motion for Relief From Stay to Permit Continuation of Florida Proceedings (the "**Motion for Relief**") [ECF No. 39].

25. On October 9, 2022, with the assistance of Applicant, the Debtor filed a Limited Objection to the Motion for Relief (the "**Limited Objection**") [ECF No. 42].

26. Applicant appeared at a hearing before the Court on the Motion for Relief and Limited Objection, and on October 18, 2022, an Order was entered Granting the Motion for Relief [ECF No. 45].

### E. Motion to Extend Exclusivity Period

27. On October 12, 2022, the Debtor, with the assistance of Applicant, filed a Motion to Extend the Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement (the "Exclusivity Motion") [ECF No. 43].

28. On February 3, 2023, the Siblings filed an Objection to the Exclusivity Motion (the "Siblings Objection") [ECF No. 54].

### F. Debtor's Motion to Dismiss/Siblings Second Motion to Convert

29. On February 11, 2023, with the assistance of Applicant, the Debtor filed a Motion to Dismiss his Chapter 11 Case (the "**Debtor's Motion to Dismiss**") [ECF No. 58].

5

30. In response to the Debtor's Motion to Dismiss, on February 14, 2023, the Siblings filed a renewed Motion to Convert the Chapter 11 Case to Chapter 7 (the "**Second Motion to Convert**") [ECF No. 59].

31. On February 28, 2023, the Debtor, with the assistance of Applicant, filed an Objection to the Second Motion to Dismiss [ECF No. 62].

32. On February 28, 2023, the Siblings filed an Objection to the Debtor's Motion to Dismiss [ECF No. 63].

33. On February 28, 2023, the Debtor, with the assistance of Applicant, filed an Objection to the Second Motion to Convert [ECF No. 63]

34. On March 10, 2023, an Order was entered granting the Second Motion to Convert [ECF No. 68], and the Debtor's Chapter 11 Case was converted to one under Chapter 7.

G. **Miscellaneous Correspondences and Other Matters**

35. The above description summarizes the legal services performed by Applicant. It is impossible to detail every service rendered, as the attorneys for the Debtor are a focal point for inquiries by creditors and other interested parties as to the status of the Chapter 11 case, the legal status of the Debtor-In-Possession and the disposition of the Chapter 11 case. Applicant's time records (Exhibit B) provide detailed descriptions of each activity performed by Applicant on behalf of the Debtor. The Court is respectfully referred to said records to more fully analyze Applicant's activities during the Fee Period.

## CASE STATUS

36. Applicant is seeking approval of its fees. With respect to payment, Applicant seeks authority to apply the net retainer in the amount of $24,920, and to file an Administrative Proof of Claim in the chapter 7 case for the remainder of the amount sought. On March 10, 2023, an Order was entered converting the Chapter 11 case to a case under Chapter 7.

37. Applicant files this Application to establish the amount of Applicant's administrative claim and is not seeking payment until such time as the Chapter 7 Trustee and/or the Court determines that funds may be available.

38. In accordance with the U.S. Trustee Guidelines, Applicant hereby represents, to the best of its knowledge and based upon information and belief, the following:

- The Debtor does not currently have sufficient cash on hand to pay the fees requested in this Application or to pay the applications of the other professionals seeking compensation in the Chapter 11 case;

- The Debtor's estate has significant unpaid administrative expenses, including the fees of the chapter 11 professionals;

- All United States Trustee fees have not been paid on a current basis; and

## **APPLICABLE LEGAL STANDARDS**

39. Section 330(a) of the Bankruptcy Code provides that a Bankruptcy Court may ward to a professional person employed under Section 327:

> (A) reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
> \* \* \*
> (3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
>> (A) the time spent on such services;
>>
>> (B) the rates charged for such services;
>>
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>>
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

29. Section 503(b)(2) of the Bankruptcy Code provides that:

After notice and a hearing, there shall be allowed administrative expenses . . . including . . . compensation and reimbursement awarded under section 330(a) of this title . . .

30. Although the Supreme Court has not ruled on the proper method for determining reasonable fees under Section 330(a), the Court has established guidelines generally applicable to awards of attorneys' fees under other federal statues, which require that the fee awarded be "reasonable". *See, Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546 (1986) (construing standards for award of fees under § 304(d) of the Clean Air Act ("Delaware Valley I"); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) ("Delaware Valley II"). In Delaware Valley I, the court concluded that the "lodestar" approach to determining fees for services performed, as articulated in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973), was preferable to other, more subjective methods: "[T]he 'lodestar' figure includes most, if not all, of the relevant factors comprising reasonable attorneys' fees*." Delaware Valley Citizens' Counsel for Clean Air* at 565.

31. Lodestar. Under the lodestar calculation, a reasonable hourly rate is set by the court based on a number of factors, including the difficulty of the task, the prevailing market rate for counsel of the petitioner's experience, counsel's normal billing rate, and the rates awarded by other courts in similar circumstances.

32. The first step to be taken in a lodestar analysis is to determine the nature and extent of services rendered. Applicant's professionals and paraprofessionals have expended **206.80** hours from June 15, 2022 through March 10, 2023. Applicant respectfully submits that the hours worked by Applicant's personnel were both reasonable and necessary.

8

33. The next step to be taken is to establish a reasonable hourly rate. Section 330(a) of the Bankruptcy Code provides for the award of reasonable compensation for actual and necessary services performed by professionals employed pursuant to Section 327 and 11f the Bankruptcy Code based on the time, the nature, the extent, and the value of comparable services.

34. The rates being charged by Applicant are commensurate, if not below, those typically charged by Applicant and other firms in the Eastern and Southern Districts of New York. Accordingly, the lodestar amount of fees sought by Applicant (customary hourly billing rate multiplied by the reasonable/necessary time spent) is both reasonable and appropriate.

35. <u>Time, Nature and Extent of Services, Results Obtained and Related Factors</u>. summary description above, cover sheet, and detailed time runs (Exhibit B) detail the time, nature and extent of the professional services rendered by Applicant during the Fee Period. Further, Applicant believes that the time spent was justified by the extremely favorable and beneficial results that have been achieved thus far.

36. The services rendered were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed. Whether reviewed individually as to each of the tasks described above or collectively as a whole, the time expended by Applicant has been reasonable and efficient to accomplish the needs of the Debtor in this Chapter 11 case.

37. <u>The Skill Requisite to Perform the Legal Services Properly</u>. In order to perform the services and obtain the results required in its representation of the Debtor, substantial legal skill and experience in the areas of litigation and negotiations were required by Applicant.

38. <u>Preclusion of Other Employment</u>. Adequate representation of the Debtor in this proceeding required a substantial commitment of the resources of Applicant. Although Applicant

was not precluded from accepting other engagements, matters on behalf of the Debtor required Applicant to devote considerable time, often to the preclusion of expending time on other active matters within Applicant's office.

39. <u>Time Limitations or Other Circumstances</u>. Many of the matters on behalf of the Debtor have required the necessity for fast resolutions. By anticipating the needs of the Debtor, Applicant has achieved results at an expedited pace.

40. <u>Amounts Involved and Results Obtained</u>. Applicant, through its services has endeavored and succeeded in assisting the Debtor in restructuring its varied debt obligations while insuring a meaningful distribution to unsecured creditors.

41. <u>The Customary Fee</u>. The hourly rates of the attorneys of Applicant (Exhibit B) reflect the hourly rates billed by Applicant to its clients in other Chapter 11 matters.

42. <u>Awards in Similar Cases</u>. The amount requested by Applicant is not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by Applicant complies with the Bankruptcy Code requirement that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The hourly rates requested by Applicant's attorneys are billed by Applicant to both its court-approved and regular commercial clients, notwithstanding the risk of non-payment in this case.

43. <u>Whether the Fee is Fixed or Contingent</u>. Applicant's compensation in this Chapter 11 case is subject to the approval of the Court. The Applicant's compensation should reflect its assumption of the high degree of risk of non-payment and delay in payment.

44. <u>The Experience, Reputation and Ability of the Attorneys</u>. The attorneys of Applicant working on this Chapter 11 case are experienced in matters of this kind.

## ALLOWANCES FOR COMPENSATION

45. During the course of Applicant's retention during the Fee Period, Applicant performed **206.80** hours of professional services to the Debtor. The professional services demanded a high degree of professional competence and responsibility. Applicant performed services in an efficient and economical manner on the legal issues, which ranged through many specialties of law. Applicant also attempted to avoid duplication of services performed by the other professionals retained in the case. Applicant submits that the value of its services was necessary and beneficial to the Debtor's estate.

46. Not every detail for Applicant's services was recorded by Applicant. Applicant is not seeking compensation for same but asks the Court to take cognizance of this.

47. Applicant requests that it be allowed **$88,400.50** as compensation for professional services rendered from June 15, 2022 through March 10, 2023, and **$2,273.62** for disbursements incurred during the same time. Applicant believes the amount of compensation requested is reasonable in light of the substantial services performed and the beneficial results obtained to date.

48. As previously mentioned, Applicant files this Application solely to establish the amount of Applicant's administrative claim and is not seeking payment until such time as the Chapter 7 Trustee and/or the Court determines that funds may be available.

49. No agreement prohibited by 18 U.S.C. Section 155 has been made.

**WHEREFORE,** the Applicant requests that it be granted final allowance for compensation for professional services rendered, as set forth in this Application, to this Applicant in the sum of **$88,400.50**[1] and necessary out-of-pocket expenses incurred in the sum of **$2,273.62** together with such other and further relief as the Court deems proper under the circumstances.

Dated: Scarsdale, New York
       July 27, 2023

KIRBY AISNER & CURLEY LLP
*Attorneys for the Chapter 11 Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
jcurley@kacllp.com

By: */s/ Julie Cvek Curley*
     Julie Cvek Curley, Esq.

---

[1] Applicant received a pre-petition net retainer in the amount of $24,920.00 to be applied to this amount.